Shannon G. Splaine, Esq.
Lincoln, Gustafson & Cercos, L.L.C.
3960 Howard Hughes Parkway, Suite 200
Las Vegas, NV 89169
Telephone: (702) 257-1997
Facsimile: (702) 257-2203
Email: ssplaine@lgclawoffice.com
Attorneys for Defendants,
National Collegiate Student Loan Trusts
2004-2, 2005-2, 2005-3 and 2006-3

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| RE:  JAVIER MEDINA | Case No.: BK-S-10-33712-MKN |
| Debtor | Chapter 7 |
| | |
| JAVIER MEDINA, | Adversary Proceeding Number: 15-01175-mkn |
| PLAINTIFF, | |
| v. | |
| NATIONAL COLLEGIATE STUDENT LOAN TRUST 2004-2; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-2; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-3; and NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-3, Delaware Statutory Trust(s). | |
| DEFENDANTS | |
| | |

1

**DECLARATION OF DEFENDANTS'**
**NATIONAL COLLEGIATE STUDENT LOAN TRUST 2004-2,**
**NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-2,**
**NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-3,**
**NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-3 AND**
**NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-4**
**PURSUANT TO FEDERAL RULES OF EVIDENCE 803(6) AND 902(11)**
**AND IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

I, James H. Cummins, hereby affirm as follows:

1.     I am a Legal Case Manager for Transworld Systems, Inc. ("TSI"), the designated custodian of records and loan servicer for National Collegiate Student Loan Trust 2004-2 ("NCSLT 2004-2"), National Collegiate Student Loan Trust 2005-2 ("NCSLT 2005-2"), National Collegiate Student Loan Trust 2005-3 ("NCSLT 2005-3"), National Collegiate Student Loan Trust 2006-3 ("NCSLT 2006-3"), and National Collegiate Student Loan Trust 2007-4 (collectively "Trust Defendants").

2.     I am eighteen (18) years of age or older for all times relevant to this Affidavit.

3.     I have personal knowledge of the facts set forth below, drawn from the Trust Defendants' records and, if called to testify, can attest to the following facts.

4.     I am qualified as a custodian of the Trust Defendants' records of regularly conducted activity, including those of Plaintiff Javier Medina ("Plaintiff"), consisting of Plaintiff's Student Loan Applications and Credit Agreements, Promissory Note Disclosure Statement, Disbursement Checks, Deposit and Sale Agreements, Pool Supplements, Servicing Notes, and Loan Payment History Reports (collectively "Business Records") for the following six (6) education loans incurred by Plaintiff and owned by Trust Defendants:

2

### The NCSLT 2004-2 Loan

A. The NCSLT 2004-2 Loan, disbursed to Plaintiff on July 23, 2004, in the amount of $33,149.17, and a current balance of $54,943.20 due and owing, including principal and interest (the Business Records for this loan are attached as Ex. A). Plaintiff has failed to make any payments on this loan since August 27, 2010.

### The NCSLT 2005-2 Loan

B. The NCSLT 2005-2 Loan, disbursed to Plaintiff on May 16, 2005, in the amount of $33,149.17, and a current balance of $52,193.91 due and owing, including principal and interest (the Business Records for this loan are attached as Ex. B). Plaintiff has failed to make any payments on this loan since August 27, 2010.

### The NCSLT 2005-3 Loan

C. The NCSLT 2005-3 Loan, disbursed to Plaintiff on August 29, 2005, in the amount of $33,149.17, and a current balance of $51,092.16 due and owing, including principal and interest (the Business Records for this loan are attached as Ex. C). Plaintiff has failed to make any payments on this loan since August 27, 2010.

### The First NCSLT 2006-3 Loan

D. The NCSLT 2006-3 Loan, disbursed to Plaintiff on April 12, 2006 in the amount of $10,809.94, and a current balance of $15,332.55 due and owing, including principal and interest (the Business Records for this loan are attached as Ex. D). Plaintiff has failed to make any payments on this loan since August 27, 2010.

### The Second NCSLT 2006-3 Loan

E.  The NCSLT 2006-3 Loan, disbursed to Plaintiff on June 21, 2006 in the amount of $33,149.17, and a current balance of $47,690.44 due and owing, including principal and interest (the Business Records for this loan are attached as Ex. E). Plaintiff has failed to make any payments on this loan since August 27, 2010.

### The NCSLT 2007-4 Loan

F.  The NCSLT 2007-4 Loan, disbursed to Plaintiff on July 19, 2007 in the amount of $33,519.55, and a current balance of $42,268.33 due and owing, including principal and interest (the Business Records for this loan are attached as Ex. F). Plaintiff has failed to make any payments on this loan since August 27, 2010.

5.  I am personally familiar with and have detailed knowledge of the processes by which these Business Records are both created and maintained.

6.  The Business Records were created by a qualified individual with personal knowledge of the information set forth in the Business Records, or created and maintained by the Trust Defendants' automatic or computerized systems.

7.  The Business Records were created by such a qualified individual, or generated by Trust Defendants' automatic or computerized systems, at or near the time of the occurrence of the matters set forth in the Business Records.

8.  The Business Records were kept in the course of regularly conducted business activity, and the Business Records were created pursuant to established procedures for the routine and timely making and preserving of such Business Records, and are relied upon by Trust Defendants and their loan servicers in the performance of Trust Defendants' regular business functions.

4

9.      It is a regular practice of Trust Defendants' regularly conducted business activities and standard operating procedures for qualified individuals with relevant personal knowledge, to create and maintain accountings such as the Business Records, or for the Business Records to be generated and maintained by Trust Defendants' automatic or computerized systems.

10.     The Business Records were not created for this litigation or any other litigation.

11.     When obligating himself for each above-referenced loan, Plaintiff "acknowledge[d] that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523(a)(8) of the United States Bankruptcy Code because either or both of the following apply: (a) this loan was made pursuant to a program funded in whole or in part by The Education Resources Institute, Inc. ("TERI"), a non-profit institution, or (b) this is a qualified education loan as defined in the Internal Revenue Code. This means that if, in the event of bankruptcy, my other debts are discharged, I will probably still have to pay this loan in full." (Ex. A., P. 3 of 4 at ¶ 11; Ex. B., P. 3 of 4 at ¶ 11; Ex. C., P. 4 of 5 at ¶ 11, Ex. D., P. 4 of 5 at ¶ 11, Ex. E, P. 4 of 5 at ¶ 11, Ex. F., P. 4 of 5 at ¶ 11).

12.     I affirm under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

This Declaration is executed this 20th day of May, 2016, in Norcross, Georgia.

By: _____

James H. Cummins

Exhibit A

## Continuing Student / Loan Application / Promissory Note - Signature Page

### NON-NEGOTIABLE CREDIT AGREEMENT ~ THIS IS A CONSUMER CREDIT TRANSACTION

#### LOAN PROGRAM INFORMATION

Education Maximizer Undergraduate Loan        Lender: Bank of America, N.A.        Repayment Option: Deferred Principal and Interest

Loan Amount Requested: $30000.00        School: SPARTAN COLLEGE OF AERONAUTICS    Academic Period: 01/2004-05/2004

Deferral Period Margin: 4.85        Repayment Period Margin: 4.65

Loan Origination Fee Percentage: 9.50

#### STUDENT/BORROWER INFORMATION

Borrower Name: Javier Medina        Home Address: 7917 S Wheeling Ave Apt 45H  Tulsa, OK 74136
Social Security #: ████-3065        Date of Birth: ███1970        Home Telephone: █████████
Current Employer: COCA COLA CO            Employer Telephone: █████████
Current Position: Other        Years There: 3 Years 6 Months
Years at Previous Employment:

Alimony, child support, or separate maintenance incomes do not have to be revealed if you do not want them considered for repaying this obligation. If you are relying on such additional income, please provide details on a separate sheet of paper.

Student Citizenship (check one box):  ☐ U.S. Citizen        JM  ☒ Eligible Non-Citizen (Attach front & back copy of INS or student visa card)
Personal Reference Name: Jason Newell        Reference Home Tel #: ████████    Work Tel #: _____
Reference Street Address: ████████
Reference City/State/Zip: ████████

By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all four (4) pages of this Application/Promissory Note BK.03-04.CRWO.10DC.0403. I understand that any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment. I understand that I am not required to fax my signature on this Application/Promissory Note to Lender. If I choose to fax my signature on this Application/Promissory Note to Lender, I intend: (i) my fax signature to be an electronic signature under applicable federal and state law, (ii) the fax to be an original document, (iii) to conduct business with the Lender by electronic records and electronic signatures, and (iv) that this Application/Promissory Note will not be governed by Article 3 of the Uniform Commercial Code.

FOR ALABAMA RESIDENTS: CAUTION—IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

FOR WISCONSIN RESIDENTS - NOTICE TO CUSTOMER:
(a)  DO NOT SIGN THIS APPLICATION/PROMISSORY NOTE BEFORE YOU READ THE WRITING ON THE FOLLOWING PAGES, EVEN IF OTHERWISE ADVISED.
(b)  DO NOT SIGN THIS APPLICATION/PROMISSORY NOTE IF IT CONTAINS ANY BLANK SPACES.
(c)  YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.
(d)  YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

Signature of Borrower: _____        Date: 06/21/04

BK.03-04.CRWO.10DC.0403
PN03_BO_03-04_CRWO_F_X_MEDINA_A(03)02818.pdf        LENDER COPY        BKTUOP

In this Application/Promissory Note, the words "I", "me", "my", and "mine" mean the person who signed this Application/Promissory Note as Borrower. The words "you", "your", "yours", and "Lender" mean Bank of America, National Association, its successors and assigns, and any other holder of this Application/Promissory Note. "School" means the school named at the top of the first page of this Application/Promissory Note.

**A. PROMISE TO PAY:** I promise to pay to you the principal sum of the Loan Amount Requested shown on the first page of this Application/Promissory Note, to the extent it is advanced to me or paid on my behalf, and any Loan Origination Fee added to my loan (see Paragraph F), interest on such principal sum, interest on any unpaid interest added to the principal balance and late charges (see Paragraph E.7).

**B. IMPORTANT – READ THIS CAREFULLY:**

1. When you receive my signed Application, you are not agreeing to lend me money. If you decide to make a loan to me, you will electronically transfer the loan funds to the School for me, mail a loan check to the School for me, or mail a loan check directly to me. You have the right to not make a loan or to lend an amount less than the Loan Amount Requested. I agree to accept an amount less than the Loan Amount Requested and to repay that portion of the Loan Amount Requested that you actually lend to me. You have the right to disburse my loan through an agent.

2. **HOW I AGREE TO THE TERMS OF THIS LOAN.** By signing this Application/Promissory Note, and submitting it to the Lender, I am requesting that you make this loan to me in an amount equal to the Loan Amount Requested plus any Loan Origination Fee described in Paragraph F of this Application/Promissory Note. If you approve this request and agree to make this loan, you will notify me in writing and provide me with a Disclosure Statement, as required by law, at the time the Loan proceeds are disbursed. The Disclosure Statement is incorporated herein by reference and made a part hereof. The Disclosure Statement will tell me the amount of the loan which you have approved, the amount of the Loan Origination Fee, and other important information. I will let you know that I agree to the terms of the loan as set forth in this Application/Promissory Note and in the Disclosure Statement by doing either of the following: (a) endorsing the check that disburses the loan proceeds; or (b)using or allowing the loan proceeds to be used on my behalf without objection. Upon receipt of the Disclosure Statement, I will review the Disclosure Statement and notify you in writing if I have any questions. If I am not satisfied with the terms of my loan as disclosed in the Disclosure Statement, I may cancel my loan. To cancel my loan, I will give you a written cancellation notice within ten (10) days after I received the Disclosure Statement. If loan proceeds have been disbursed, I agree that I will immediately return the loan proceeds to you, will not endorse any check which disburses the loan proceeds and will instruct the School to return any loan proceeds to you. If I give notice of cancellation but do not comply with the requirements of this Paragraph B.2, this Application/Promissory Note will not be canceled and I will be in default of this Application/Promissory Note. (See Paragraph I.)

**C. DEFINITIONS:**

1. "Disbursement Date" means the date or dates on which you lend money to me in consideration for my Application/Promissory Note and will be the date(s) shown on any loan check you prepare or the date(s) you initiate any electronic funds transfer.

2. The "Deferment Period" will begin on the Disbursement Date and end on the Deferment End Date.

3. "Deferment End Date" means the date specified below for the applicable loan program (the applicable loan program is stated on the first page of this Application/Promissory Note).

(a) *Undergraduate Alternative Loan Program:* If I have elected the "Immediate Repayment" option (the applicable repayment option is stated on the first page of this Application/Promissory Note), there is no Deferment Period, and my first payment will be 30-60 days after the last disbursement of my loan. If I have elected the "Interest Only" repayment option (the applicable repayment option is stated on the first page of this Application/Promissory Note), then interest payments will begin 30-60 days after the first disbursement of my loan. The "Deferment End Date" will be the date the Student graduates or ceases to be enrolled at least half-time in the School (or another school participating in this loan program), and principal and interest payments will begin 30-60 days after that date. If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Application/Promissory Note), then the "Deferment End Date" will be 180 days after the Student graduates or ceases to be enrolled at least half-time in the School (or another school participating in this Loan Program). In any event, the Deferment End Date will be no more than 4½ years after the Disbursement Date (or 5½ years if the Student is enrolled in a five-year undergraduate program at the School).

(b) *Graduate Professional Education Loan Program:* 180 days after the Student graduates or ceases for any other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 4½ years after the Disbursement Date provided, however, that if the Student begins a medical residency or internship during the Deferment Period, then the Deferment Period will end 180 days after the day the residency or internship ends, but no more than 8½ years after the Disbursement Date.

(c) *Health Professions Education Loan Program:* 270 days after the Student graduates or ceases for any other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 6½ years after the Disbursement Date (or 8½ years if the Student is enrolled in a six-year program at the School; provided, however, that if the Student begins a medical residency or

internship during the Deferment Period, then the Deferment Period will end 270 days after the day the residency or internship ends, but no more than 10½ years after the Disbursement Date.

4. The "Repayment Period" begins the day after the Deferment Period ends. If there is no Deferment Period for my loan, the Repayment Period will begin when my loan is fully disbursed. The Repayment Period is 20 years (25 years for loans $40,000 or more) unless monthly payments equal to the minimum monthly payment amount (see Paragraph E.4) will repay all amounts owed in less than 20 years, in which case the Repayment Period will be the number of months necessary to pay in full the amount I owe at the minimum payment.

**D. INTEREST:**

1. **Accrual** – Beginning on the first Disbursement Date, interest on the outstanding balance of this Application/Promissory Note will be calculated at the Variable Rate (Paragraph D.2) on the principal balance advanced, and on any unpaid interest added to principal according to Paragraph D.3 below, until all amounts are paid in full. Interest will be calculated on a daily simple interest basis. The daily interest rate will be equal to the annual interest rate in effect on that day, divided by the number of days in that calendar year.

2. **Variable Rate** – The "Variable Rate" is equal to the Current Index plus or minus a Margin. The Margins for both the Deferment Period and the Repayment Period are shown on the first page of this Application/Promissory Note. In no event will the Variable Rate exceed the maximum interest rate allowed by the laws of the State of California. The Variable Rate will change quarterly on the first day of each January, April, July and October (the "Change Date(s)") if the Current Index changes. The "Current Index" for any calendar quarter beginning on a Change Date (or for any shorter period beginning on the Disbursement Date and ending on the first Change Date) is based on the one-month London Interbank Offered Rate ("LIBOR") as published in the "Money Rates" section of *The Wall Street Journal*. The index for each calendar quarter (or for any shorter period beginning on a Disbursement Date and ending on the last day of a calendar quarter) will equal the average of the LIBOR rates published on the first business day of each of the three (3) immediately preceding calendar months, rounded to the nearest one-hundredth percent (0.01%). If *The Wall Street Journal* is not published or the Current Index is not given on that date, then the Current Index will be determined by using the immediately preceding published Current Index. If the Current Index is no longer available, you will choose a comparable index.

3. **Capitalization** – If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Application/Promissory Note), I am not obligated to make any payments until the loan enters the Repayment Period. You will add unpaid accrued interest to the principal loan balance as of the last day of each calendar quarter (the last day of December, March, June and September) during the Deferment Period and at the end of my Deferment Period. Interest that is added to principal is called "Capitalized" interest. Capitalized interest will be treated as principal. In addition, if I am in default and the loan has been sold to TERI (see Section L.12), TERI may capitalize accrued and unpaid interest as of the date it purchases my loan. I understand that you will add all accrued and unpaid interest to the principal balance of my loan on the last day of the Deferment Period and at the end of any forbearance period.

**E. TERMS OF REPAYMENT:**

1. **Deferment Period** – If I have elected either the "Interest Only" repayment option or the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Application/Promissory Note), you will send me statements during the Deferment Period (showing the total outstanding principal balance of my loan and the interest that has accrued on my loan). Statements will be sent to the address shown on your records. If I have elected the "Interest Only" repayment option, I agree to make payments each month during the Deferment Period equal to the accrued interest on the outstanding balance of this Application/Promissory Note. If I have elected the "Full Deferral" repayment option I may, but am not required to make payments during the Deferment Period. You will add any interest that I do not pay during the Deferment Period to the principal balance, as described in Paragraph D.3.

2. **Repayment Period** – During the Repayment Period, you will send me monthly statements or a coupon book which shows the amounts of minimum monthly payments and the payment due dates. I will make consecutive monthly payments in amounts at least equal to such minimum monthly payments by the applicable payment due dates until I have paid all of the principal and interest and any other charges I may owe under this Application/Promissory Note.

3. **Repayment Terms** – My monthly payment will be established based on the rules in this Application/Promissory Note when my Repayment Period begins. My monthly payment amount will be calculated as of the day the Repayment Period begins ("Repayment Date"). It will also be calculated following any subsequent deferment or forbearance period or any request by the Borrower to the servicer to change the monthly payment due date (each of which events is a new "Repayment Date"). After any Repayment Date is set, my monthly payment will be recalculated once each year prior to the anniversary of the Repayment Date. My new monthly payment amount, which will take effect on the anniversary of the Repayment Date, will be disclosed to me each year by the servicer. The new monthly repayment amount will equal the amount necessary to pay in full, over the number of months remaining in the Repayment Period, the amount I owe in equal monthly installments of principal and interest at the Variable Rate in effect at the time of the calculation. I understand that this may result in the reduction of my monthly payment as calculated each year. I

understand that during the Repayment Period (and, if I have elected the "Interest Only" repayment option, during the period of Interest payments) the servicer may change the monthly payment due date of future payments to a later date for the convenience of the servicer in processing payments or in order to coordinate the due dates of all of my loans processed by the servicer.

4. Minimum Repayment – Notwithstanding Paragraph E.3, I agree to pay at least $25 each month during the Repayment Period or the unpaid balance whichever is less. I understand that I may pay more than my monthly payment at any time without penalty or charge.

5. Amounts Owing at the End of the Repayment Period – Since interest accrues daily upon the unpaid principal balance of my loan, if I make payments after my payment due dates, I may owe additional interest. If I have not paid my late charges, I will also owe additional amounts for those late charges. In such cases you will increase the amount of my last monthly payment to the amount necessary to repay my loan in full.

6. Payments – Payments will be applied first to late charges, other fees and charges, accrued interest, and the remainder to principal.

7. Other Charges - If any part of a monthly payment remains unpaid for a period of more than 15 days after the payment due date, I will pay a late charge not exceeding $5.00 or 5% of the overdue payment amount, whichever is less. To the extent permitted by law, I agree to pay you all amounts you incur in enforcing the terms of this Application/Promissory Note, including reasonable collection agency and attorney's fees and court costs and other collection costs.

F. LOAN ORIGINATION FEE: If you charge me, I will pay you a Loan Origination Fee at the time my loan is disbursed. The dollar amount of any Loan Origination Fee will be determined by multiplying the sum of the Loan Origination Fee and the Loan Amount Requested, to the extent advanced to me, times the Loan Origination Fee Percentage shown on the first page of this Application/Promissory Note. The percentage would be higher if computed only on the amount advanced rather than the entire principal amount (Loan Origination Fee plus Loan Amount Requested). For example, a nominal Loan Origination Fee of 6.5% on the entire principal amount would equal 6.9519% of the amount advanced. The Loan Origination Fee I will pay, if any, will be shown on my Disclosure Statement and will be added to the principal amount of my loan. To the extent permitted by law, and unless I timely cancel this Application/Promissory Note (see Paragraph B.2), I will not be entitled to a refund of any Loan Origination Fee after my loan has been disbursed.

G. RIGHT TO PREPAY: I have the right to prepay all or any part of my loan at any time without penalty.

H. FORBEARANCE: If I am unable to repay my loan in accordance with the terms established under this Application/Promissory Note, I may request that you modify these terms. I understand that such modification would be at your option. I understand that I will remain responsible for all interest accruing during any period of forbearance and that you will add any interest that I do not pay during any forbearance period to the principal balance, as described in Paragraph D.3.

I. WHOLE LOAN DUE: To the extent permitted by applicable law, I will be in default and you have the right to give me notice that the whole outstanding principal balance, accrued interest, and all other amounts payable to you under the terms of this Application/Promissory Note, are due and payable at once (subject to any applicable law which may give me a right to cure my default) if: (1) I fail to make any monthly payment to you when due, (2) I die, (3) I break any of my other promises in this Application/Promissory Note, (4) Any bankruptcy proceeding is begun by or against me, or I assign any of my assets for the benefits of my creditors, or (5) I make any false written statement in applying for this loan or at any time during the Deferment or Repayment Periods. If I default, I will be required to pay interest on this loan accruing after default. The interest rate after default will be subject to adjustment in the same manner as before default. Upon default, you may also capitalize any interest and fees (i.e., add accrued and unpaid interest and fees to the principal balance), and increase the Margin used to compute the Variable Rate by two percentage points (2%).

J. NOTICES:

1. I will send written notice to you, or any subsequent holder of this Application/Promissory Note, within ten days after any change in my name, address, or enrollment status.

2. Any notice required to be given to me by you will be effective when mailed by first class mail to the latest address you have for me.

K. INFORMATION:

1. I must update the information I provided to you whenever you ask me to do so.

2. I authorize you from time to time to request and receive from others credit related information about me (and about my spouse if I live in a community property state).

L. ADDITIONAL AGREEMENTS:

1. I understand that you are located in California and that this Application/Promissory Note will be entered into in the same state. CONSEQUENTLY, THE PROVISIONS OF THIS APPLICATION/PROMISSORY NOTE WILL BE GOVERNED BY FEDERAL LAW AND THE LAWS OF THE STATE OF CALIFORNIA, WITHOUT REGARD TO CONFLICT OF LAW RULES.

2. The proceeds of this loan will be used only for my educational expenses at the School.

3. My responsibility for paying the loan evidenced by this Application/Promissory Note is unaffected by the liability of any other person to me or by your failure to notify me that a required payment has not been made. Without losing any of your rights under this Application/Promissory Note you may accept (a) late payments, (b) partial payments or (c) payments marked "paid in full" or with other restrictions. You may

delay, fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise the right at any future time, or on any future occasion. You will not be obligated to make any demand upon me, send me any notice, present this Application/Promissory Note to me for payment or make protest of non-payment to me before suing to collect on this Application/Promissory Note if I am in default, and to the extent permitted by applicable law, I hereby waive any right I might otherwise have to require such actions. I WILL NOT SEND YOU PAYMENTS MARKED "PAID IN FULL", "WITHOUT RECOURSE" OR WITH OTHER SIMILAR LANGUAGE UNLESS THOSE PAYMENTS ARE MARKED FOR SPECIAL HANDLING AND SENT TO THE ADDRESS IDENTIFIED FOR SUCH PAYMENTS ON MY BILLING STATEMENT, OR TO SUCH OTHER ADDRESS AS I MAY BE GIVEN IN THE FUTURE.

4. I may not assign this Application/Promissory Note or any of its benefits or obligations. You may assign this Application/Promissory Note at any time.

5. The terms and conditions set forth in this Application/Promissory Note and Instructions and the Disclosure Statement constitute the entire agreement between you and me.

6. If any provision of this Application/Promissory Note is held invalid or unenforceable, that provision shall be considered omitted from this Application/Promissory Note without affecting the validity or enforceability of the remainder of this Application/Promissory Note.

7. A provision of this Application/Promissory Note may only be modified if jointly agreed upon in writing by you and me. Any modification will not affect the validity or enforceability of the remainder of this Application/Promissory Note.

8. To the extent permitted by law, you have the right to apply money from any of my deposit account(s) with you to pay all or a portion of any amount overdue under this Application/Promissory Note. I hereby authorize you to obtain from the School all amounts which may be owed to me by the School, including any refund due to overpayment, early termination of enrollment, or otherwise, and I give you a security interest in all such amounts.

9. All dollar amounts stated in this Application/Promissory Note are in United States dollars. I will make all payments in United States Dollars with no deduction for currency exchange.

10. If I fail to complete the education program paid for with this loan, I am not relieved of any obligation within or pursuant to this Application/Promissory Note.

11. I acknowledge that the requested loan may be subject to the limitations on dischargeability in bankruptcy contained in Section 523 (a) (8) of the United States Bankruptcy Code. Specifically, I understand that you have purchased a guaranty of this loan, and that this loan is guaranteed by The Education Resources Institute, Inc. ("TERI"), a non-profit loan guaranty agency.

12. I authorize any school that I may attend to release to you, and any other persons designated by you, any requested information pertinent to this loan (e.g., enrollment status, prior loan history, and current address).

13. I authorize the Lender, any subsequent holder of this Application/Promissory Note, and their agents (including TERI) to: (1) advise the School of the status of my application and my loan, (2) respond to inquiries from prior or subsequent lenders or holders with respect to my Application/Promissory Note and related documents, (3) release information and make inquiries to the persons I have given you as references, for the purposes of learning my current address and telephone number, (4) check my credit and employment history and to answer questions about their credit experience with me, and (5) retain for use in any future transaction with the Borrower all information (including status information and non-public personal information) of the Borrower provided in connection with this Application/Promissory Note.

14. Waiver by Lender. Except as stated in Paragraph L.8, you waive (give up) any right to claim a security interest in any property to secure this Application/Promissory Note. This does not affect any right to offset as a matter of law.

15. If I fax my signature(s) on the first page of this Application/Promissory Note back to you and keep the copy I signed, I understand that under federal law the fax you receive will be an original of the first page of this Application/Promissory Note. You and I agree that all copies of this Application/Promissory Note (including the fax you receive and the copy I retain), taken together, shall constitute a single original agreement.

M. STATE DISCLOSURE NOTICES

IOWA RESIDENTS (For purposes of the following notice, the word "you" refers to the Borrower, not the Lender): NOTICE TO CONSUMER. This is a consumer credit transaction. 1. DO NOT SIGN THIS APPLICATION/PROMISSORY NOTE BEFORE YOU READ THIS APPLICATION/PROMISSORY NOTE. 2. YOU ARE ENTITLED TO A COPY OF THIS PAPER. 3. YOU MAY PREPAY THE UNPAID BALANCE AT ANY TIME WITHOUT PENALTY AND MAYBE ENTITLED TO A REFUND OF UNEARNED CHARGES IN ACCORDANCE WITH LAW.

CALIFORNIA RESIDENTS: I have the right to prohibit the use of information contained in my credit file in connection with transactions not initiated by me. I may exercise this right by notifying the consumer credit reporting agency. A married applicant may apply for a separate account. If you take any adverse action as defined by Section 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, I have the right to obtain within 60 days a free copy of my consumer credit report from the consumer reporting agency who furnished my consumer credit report and from any other consumer credit reporting agency which compiles and maintains files on consumers on a nationwide basis. I have the right as described by Section 1785.16 of the California Civil Code to

dispute the accuracy or completeness of any information in a consumer credit report furnished by the consumer credit reporting agency.

CALIFORNIA AND UTAH RESIDENTS: As required by California and Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations.

NEW YORK, RHODE ISLAND AND VERMONT RESIDENTS: A consumer report (credit report) may be obtained from a consumer-reporting agency (credit bureau) in connection with this loan. If I request (1) I will be informed whether or not consumer reports were obtained, and (2) if reports were obtained, I will be informed of the names and addresses of the credit bureaus that furnished the reports. If you agree to make this loan to me, a consumer credit report may be requested or used in connection with renewals or extensions of any credit for which I have applied, reviewing my loan, taking collection action on my loan, or legitimate purposes associated with my loan.

MARYLAND RESIDENTS: You elect Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland only to the extent not inconsistent with 12 U.S.C. § 85 and related regulations and opinions, which you expressly reserve.

**MISSOURI RESIDENTS: Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect me (borrower(s)) and you (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**

NEVADA RESIDENTS: This is a loan for study.

OHIO RESIDENTS: The Ohio laws against discrimination require that all creditors make credit equally available to all credit worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

WISCONSIN RESIDENTS: For married Wisconsin residents, my signature on this Application/Promissory Note confirms that this loan obligation is being incurred in the interest of my marriage or family. No provision of any marital property agreement (pre-marital agreement), unilateral statement under Section 766.59 or court decree under Section 766.70 adversely affects the interest of the Lender unless the Lender, prior to the time that the loan is approved, is furnished with a copy of the agreement, statement, or decree or has actual knowledge of the adverse provision when the obligation to the Lender is incurred. If the loan for which I am applying is granted, my spouse will also receive notification that credit has been extended to me.

NEW JERSEY RESIDENTS: The section headings of this Application/Promissory Note are a table of contents and not contract terms. Portions of this Application/Promissory Note with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Application/Promissory Note, acts or practices (i) by you which are or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law.

N. BORROWER'S CERTIFICATION: I declare under penalty of perjury under the laws of the United States of America that the following is true and correct. I certify that all information I provided to you in connection with this loan, including without limitation, the information contained in this Application/Promissory Note, is true, complete and correct to the best of my knowledge and belief and is made in good faith. I understand that I am responsible for repaying immediately any funds that I receive which are not to be used or are not used for educational expenses related to attendance at the School for the academic period stated. I certify that I am not now in default on a Federal Perkins Loan, a Federal Stafford Loan, a Federally Insured Student Loan, a Federal Supplemental Loan for Students (SLS), a Federal PLUS Loan, an Income Contingent Loan, a Federal Consolidation Loan, a Federal Ford Direct Loan, or any other education loan received for attendance at any school.

## NOTE DISCLOSURE STATEMENT

$ __33,149.17__
__07107816__
Loan No.

Borrower(s)  __JAVIER MEDINA__

Student:  __JAVIER MEDINA__
Date:  __July 23, 2004__

__JAVIER MEDINA__
__PO BOX 700881__
__TULSA, OK  74170__

Lender Name and Address:
__BANK OF AMERICA, N.A__
__600 WILSHIRE BLVD. 4TH FLOOR__
__LOS ANGELES, CA 90017__

This disclosure statement relates to your Loan Note disbursed on     __July 23, 2004__
Because your Loan is either being disbursed or entering repayment, or the repayment terms are being modified, the following information about your Loan is being given to you.

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| __6.179__ % | $ __28,809.60__ | $ __30,000.00__ | $ __58,809.60__ |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments are due |
|---|---|---|
| 240 | $  245.04 | On the 15th day of each month beginning on 7/2005 |
|  |  |  |
|  |  |  |

VARIABLE RATE: The Annual Percentage Rate, which is based on an Index plus a margin, may increase during the term of the loan if the Index rate increases. The index is (check one):

☐ Prime Rate Index Adjusted Monthly - The highest U.S. bank prime rate published in the "Money Rates" section of The Wall Street Journal on the last business day of each calendar month.

☐ Prime Rate Index Adjusted Quarterly - The highest U.S. bank prime rate published in the "Money Rates" section of The Wall Street Journal on the last business day of each calendar quarter.

☒ LIBOR Index Adjusted Quarterly - The average of the one-month London Interbank Offered Rates published in the "Money Rates" section of The Wall Street Journal on the first business day of each of the three (3) calendar months immediately preceding the first day of each calendar quarter.

Any increase in the index and the Annual Percentage Rate which occurs while principal payments are deferred will increase the amount of any current and all future payments. Any increase in the index and the Annual Percentage Rate which occurs while principal and interest payments are deferred will increase the amount of all future payments. Any increase in the index and the Annual Percentage Rate which occurs after you have begun to make principal and interest payments on your loan will increase the amount of your future principal and interest payments beginning with your next annual payment adjustment date. For example, assume you obtain a loan in your junior year, in the amount of $30,000, at an interest rate of 6.1%, and you defer principal and interest payments until after your graduation, and the repayment term of the loan is 20 years. If the interest rate increased to 12% on January 1st of your senior year, the interest which accrues while principal and interest payments are deferred will increase by $ 91.01, and your monthly principal and interest payments would increase by $ 9.37.

SECURITY: You have given a security interest in all refunds or amounts owed to you at any time by the student's educational institution. Collateral securing other loans with the Lender may also secure this Loan.
LATE CHARGES: If a payment is more than 15 days late, you may be charged $5.00 or 5% of the payment, whichever is less. If you default, Lender (or any subsequent holder or any subsequent holder of your Loan Note) may increase the margin used to compute the Annual Percentage Rate by two percentage points (2%).
PREPAYMENT: If you pay off early, you will not have to pay a penalty.

See your contract documents for any additional information about non-payment, default, any required repayment in full before the scheduled date, any security interest and prepayment refunds and penalties.

Estimates: All numerical disclosures except the late payment disclosure are estimates.

Principal Amount of Note (Amount Financed plus Prepaid Finance Charge)     $ __33,149.17__

Itemization of Amount Financed
Amount paid to JAVIER MEDINA     $ __30,000.00__
Amount paid to     $ _____
Total Amount Financed     $ __30,000.00__

Itemization of Prepaid Finance Charge
Origination Fee     $ __3,149.17__
Total Prepaid Finance Charge(s)     $ __3,149.17__

TX-LN0-1770 12

BKTUDF  Education Maximizer UG Loan     File Copy

## DEPOSIT AND SALE AGREEMENT
## THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2004-2

This Deposit and Sale Agreement (the "Sale Agreement"), dated as of October 28, 2004, between The National Collegiate Funding LLC, in its capacity as seller (in such capacity, the "Seller"), and The National Collegiate Student Loan Trust 2004-2, as purchaser (the "Purchaser"), shall be effective upon execution by the parties hereto.

WHEREAS, the Seller is the owner of certain student loans; and

WHEREAS, the Seller desires to sell its interest in such student loans and the Purchaser desires to purchase such loans from the Seller.

NOW, THEREFORE, in connection with the mutual promises contained herein, the parties hereto agree as follows:

## ARTICLE I
## TERMS

This Sale Agreement sets forth the terms under which the Seller is selling and the Purchaser is purchasing the student loans listed on Schedule 2 to each of the Pool Supplements set forth on Schedule A attached hereto (the "Transferred Student Loans").

## ARTICLE II
## DEFINITIONS

Capitalized terms used but not otherwise defined herein shall have the definitions set forth in Appendix A of the Indenture dated as of October 1, 2004 between U.S. Bank National Association (the "Indenture Trustee") and the Purchaser.

## ARTICLE III
## SALE AND PURCHASE

Section 3.01. Sale of Loans. The Seller hereby sells and the Purchaser hereby purchases the Transferred Student Loans.

Section 3.02. Assignment of Rights. The Seller hereby assigns to the Purchaser and the Purchaser hereby accepts all of the Seller's rights and interests under each of the Pool Supplements listed on Schedule A attached hereto and the related Student Loan Purchase Agreements listed on Schedule B attached hereto.

Section 3.03. Settlement of the Payment. The Purchaser shall pay the Seller the purchase price set forth in Schedule 1 of each of the Pool Supplements by wire transfer in immediately available funds to the account specified by the Seller. In addition, the Purchaser will also issue the Class A-5 Notes to the Seller pursuant to the Indenture.

Section 3.04.  Assistance by Seller.  Following the execution of this Sale Agreement, the Seller shall provide any reasonable assistance requested by the Purchaser in determining that all required documentation on the Transferred Student Loans is present and correct.

## ARTICLE IV
## REPRESENTATIONS, WARRANTIES AND COVENANTS OF SELLER

Section 4.01.  General.  The Seller represents and warrants to the Purchaser that as of the date of this Sale Agreement:

(a)     The Seller is duly organized and existing under the laws of the State of Delaware; and

(b)     The Seller has all requisite power and authority to enter into and to perform the terms of this Sale Agreement.

Section 4.02.  Loan Representations.  The Seller represents and warrants to the Purchaser that with respect to each Transferred Student Loan purchased by the Purchaser pursuant to this Sale Agreement, the Seller is making the same representations and warranties made by the respective program lender with respect to each Transferred Student Loan pursuant to the respective Student Loan Purchase Agreement listed on Schedule B attached hereto.

Section 4.03.  Covenants.  The Seller, in its capacity as purchaser of the Transferred Student Loans pursuant to the Pool Supplements, hereby covenants that it will enforce the covenants and agreements of each program lender in the respective Student Loan Purchase Agreement and related Pool Supplement.  The Seller further covenants that it will not waive, amend, modify, supplement or terminate any Student Loan Purchase Agreement or Pool Supplement or any provision thereof without the consent of the Purchaser, which consent the Purchaser hereby agrees not to provide without the prior written consent of the Indenture Trustee and the Interested Noteholders in accordance with the Purchaser's covenant in Section 3.07(c) of the Indenture.

## ARTICLE V
## PURCHASE OF LOANS; REIMBURSEMENT

Each party to this Sale Agreement shall give notice to the other such parties and to the Servicer, First Marblehead Data Services, Inc. and Wachovia Trust Company, National Association (the "Owner Trustee") promptly, in writing, upon the discovery of any breach of the Seller's representations and warranties made pursuant to this Sale Agreement which has a materially adverse effect on the interest of the Purchaser in any Transferred Student Loan.  In the event of such a material breach, the Seller shall cure or repurchase the Transferred Student Loan in accordance with the remedies set forth in the respective Student Loan Purchase Agreement.

## ARTICLE VI
## LIABILITY OF SELLER; INDEMNITIES

The Seller shall be liable in accordance herewith only to the extent of the obligations specifically undertaken by the Seller under this Sale Agreement.

(a)    The Seller shall indemnify, defend and hold harmless the Purchaser and the Owner Trustee in its individual capacity and their officers, directors, employees and agents from and against any taxes that may at any time be asserted against any such Person with respect to the transactions contemplated herein and in the other Basic Documents (except any such income taxes arising out of fees paid to the Owner Trustee), including any sales, gross receipts, general corporation, tangible and intangible personal property, privilege or license taxes and costs and expenses in defending against the same.

(b)    The Seller shall indemnify, defend and hold harmless the Purchaser and the Owner Trustee in its individual capacity and their officers, directors, employees and agents of the Purchaser and the Owner Trustee from and against any and all costs, expenses, losses, claims, damages and liabilities arising out of, or imposed upon such Person through, the Seller's willful misfeasance, bad faith or gross negligence in the performance of its duties under this Sale Agreement, or by reason of reckless disregard of its obligations and duties under this Sale Agreement.

Indemnification under this Section shall survive the termination of this Sale Agreement and shall include reasonable fees and expenses of counsel and expenses of litigation. If the Seller shall have made any indemnity payments pursuant to this Section and the Person to or for the benefit of whom such payments are made thereafter shall collect any of such amounts from others, such Person shall promptly repay such amounts to the Seller, without interest.

## ARTICLE VII
## MERGER OR CONSOLIDATION OF, OR ASSUMPTION
## OF THE OBLIGATIONS OF SELLER

Any Person (a) into which the Seller may be merged or consolidated, (b) which may result from any merger or consolidation to which the Seller shall be a party or (c) which may succeed to the properties and assets of the Seller substantially as a whole, shall be the successor to the Seller without the execution or filing of any document or any further act by any of the parties to this Sale Agreement; provided, however, that the Seller hereby covenants that it will not consummate any of the foregoing transactions except upon satisfaction of the following: (i) the surviving Person, if other than the Seller, executes an agreement of assumption to perform every obligation of the Seller under this Sale Agreement, (ii) immediately after giving effect to such transaction, no representation or warranty made pursuant to this Sale Agreement shall have been breached, (iii) the surviving Person, if other than the Seller, shall have delivered an Officers' Certificate and an opinion of counsel each stating that such consolidation, merger or succession and such agreement of assumption comply with this Section and that all conditions precedent, if any, provided for in this Sale Agreement relating to such transaction have been complied with, and that the Rating Agency Condition shall have been satisfied with respect to such transaction, (iv) if the Seller is not the surviving entity, such transaction will not result in a material adverse federal or state tax consequence to the Purchaser or the Noteholders and holders of the grantor trust certificates (the "Certifcates") (the "Certificateholders", together with the Noteholders, the "Securityholders") and (v) if the Seller is not the surviving entity, the Seller shall have delivered an opinion of counsel either (A) stating that, in the opinion of such counsel, all financing statements and continuation statements and amendments thereto have been executed and filed that are necessary fully to preserve and protect the interest of the Purchaser in

the Transferred Student Loans and reciting the details of such filings, or (B) stating that, in the opinion of such counsel, no such action shall be necessary to preserve and protect such interests.

## ARTICLE VIII
## LIMITATION ON LIABILITY OF SELLER AND OTHERS

The Seller and any director or officer or employee or agent thereof may rely in good faith on the advice of counsel or on any document of any kind, prima facie properly executed and submitted by any Person respecting any matters arising hereunder (provided that such reliance shall not limit in any way the Seller's obligations under this Sale Agreement). The Seller shall not be under any obligation to appear in, prosecute or defend any legal action that shall not be incidental to its obligations under this Sale Agreement or the Student Loan Purchase Agreements, and that in its opinion may involve it in any expense or liability.

## ARTICLE IX
## SURVIVAL OF COVENANTS

All covenants, agreements, representations and warranties made herein shall survive the consummation of the purchase of the Transferred Student Loans; provided, however, that to the extent any of the same relate to a corresponding covenant, agreement, representation or warranty contained in a Student Loan Purchase Agreement, the same shall survive to the extent that such corresponding covenant, agreement, representation or warranty survives the applicable Student Loan Purchase Agreement. All covenants, agreements, representations and warranties made or furnished pursuant hereto by or for the benefit of the Seller shall bind and inure to the benefit of any successors or assigns of the Purchaser, including the Indenture Trustee and the Grantor Trustee. This Sale Agreement may be changed, modified or discharged, and any rights or obligations hereunder may be waived, only by a written instrument signed by a duly authorized officer of the party against whom enforcement of any such waiver, change, modification or discharge is sought. The waiver by the Indenture Trustee, at the direction of the Noteholders (pursuant to the Indenture), and the Grantor Trustee, at the direction of the Certificateholders (pursuant to the Grantor Trust Agreement), of any covenant, agreement, representation or warranty required to be made or furnished by the Seller or the waiver by the Indenture Trustee, at the direction of the Noteholders (pursuant to the Indenture), and the Grantor Trustee, at the direction of the Certificateholders (pursuant to the Grantor Trust Agreement), of any provision herein contained shall not be deemed to be a waiver of any breach of any other covenant, agreement, representation, warranty or provision herein contained, nor shall any waiver or any custom or practice which may evolve between the parties in the administration of the terms hereof, be construed to lessen the right of the Indenture Trustee, at the direction of the Noteholders (pursuant to the Indenture), and the Grantor Trustee, at the direction of the Certificateholders (pursuant to the Grantor Trust Agreement), to insist upon the performance by the Seller in strict accordance with said terms.

## ARTICLE X
## COMMUNICATION AND NOTICE REQUIREMENTS

All communications, notices and approvals provided for hereunder shall be in writing and mailed or delivered to the Seller or the Purchaser, as the case may be. Notice given in any such

4

communication, mailed to the Seller or the Purchaser by appropriately addressed registered mail, shall be deemed to have been given on the day following the date of such mailing and shall be addressed as follows:

> If to the Purchaser, to:

>> The National Collegiate Student Loan Trust 2004-2
>> c/o Wachovia Trust Company, National Association, as Owner Trustee
>> One Rodney Square, 1st Floor
>> 920 King Street
>> Wilmington, Delaware 19801
>> Attention: Mr. Sterling C. Correia

> If to the Seller, to:

>> The National Collegiate Funding LLC
>> c/o First Marblehead Data Services, Inc.
>> 230 Park Avenue, 10th Floor
>> New York, NY 10169
>> Attention: Mr. Rob Baron

>> with a copy to:

>> First Marblehead Corporation
>> The Prudential Tower
>> 800 Boylston Street - 34th Floor
>> Boston, MA 02199-8157
>> Attention: Mr. Richard P. Zermani

or to such other address as either party shall have provided to the other parties in writing. Any notice required to be in writing hereunder shall be deemed given if such notice is mailed by certified mail, postage prepaid, or hand-delivered to the address of such party as provided above.

## ARTICLE XI
## AMENDMENT

This Sale Agreement may be amended by the parties hereto without the consent of the related Securityholders for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of the Sale Agreement or of modifying in any manner the rights of such Securityholders; provided that such action will not, in the opinion of counsel satisfactory to the Indenture Trustee and the Grantor Trustee, materially affect the interest of any such Securityholder.

In addition, this Sale Agreement may also be amended from time to time by the Seller and the Purchaser, with the consent of the Noteholders of the Notes evidencing a majority of the Outstanding Amount of the Notes and the consent of the Certificateholders of the Certificates evidencing a majority of the outstanding principal amount of the Certificates, for the purpose of

5

adding any provisions to or changing in any manner or eliminating any of the provisions of this Sale Agreement or of modifying in any manner the rights of the Noteholders or the Certificateholders, respectively; provided, however, that no such amendment shall (a) increase or reduce in any manner the amount of, or accelerate or delay the time of, collections of payments with respect to Transferred Student Loans or distributions that shall be required to be made for the benefit of the Securityholders or (b) reduce the aforesaid percentage of the Outstanding Amount of the Notes or the Certificates, the Noteholders or the Certificateholders of which are required to consent to any such amendment, without the consent of all outstanding Noteholders or Certificateholders, respectively.

Promptly after the execution of any such amendment or consent (or, in the case of the Rating Agencies, five Business Days prior thereto), the Purchaser shall furnish written notification of the substance of such amendment or consent to the Indenture Trustee, the Grantor Trustee and each of the Rating Agencies.

It shall not be necessary for the consent of Securityholders pursuant to this Section to approve the particular form of any proposed amendment or consent, but it shall be sufficient if such consent shall approve the substance thereof.

Prior to the execution of any amendment to this Sale Agreement, the Owner Trustee shall be entitled to receive and rely upon an opinion of counsel stating that execution of such amendment is authorized or permitted by this Sale Agreement, the Owner Trustee may, but shall not be obligated to, enter into any such amendment which affects the Owner Trustee's own rights, duties or immunities under this Sale Agreement or otherwise.

## ARTICLE XII
## ASSIGNMENT

The Seller hereby assigns its entire right, title and interest as purchaser under this Sale Agreement and the Student Loan Purchase Agreement thereunder to the Purchaser as of the date hereof and acknowledges that the Purchaser will assign the same, together with the right, title and interest of the Purchaser hereunder, to the Indenture Trustee under the Indenture.

## ARTICLE XIII
## GOVERNING LAW

**THIS SALE AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, INCLUDING SECTIONS 5-1401 AND 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW, BUT OTHERWISE WITHOUT REGARD TO CONFLICT OF LAW PRINCIPLES, AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES, HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.**

## ARTICLE XIV
## LIMITATION OF LIABILITY OF OWNER TRUSTEE

Notwithstanding anything contained herein to the contrary, this instrument has been executed by Wachovia Trust Company, National Association, not in its individual capacity but

6

solely in its capacity as Owner Trustee of the Purchaser, and in no event shall Wachovia Trust Company, National Association in its individual capacity or any beneficial owner of the Purchaser have any liability for the representations, warranties, covenants, agreements or other obligations of the Purchaser hereunder, as to all of which recourse shall be had solely to the assets of the Purchaser. For all purposes of this Sale Agreement, in the performance of any duties or obligations of the Purchaser hereunder, the Owner Trustee shall be subject to, and entitled to the benefits of, the terms and provisions of Articles VIII, IX and X of the Trust Agreement.

[Signature Pages Follow]

7

IN WITNESS WHEREOF, the parties hereto have caused this Sale Agreement to be duly executed by their respective officers hereunto duly authorized, as of the day and year first above written.

THE NATIONAL COLLEGIATE FUNDING LLC, as Seller

By: GATE Holdings, Inc., Member

By:_____

    Name:     Stephen Anbinder
    Title:      President
                GATE Holdings, Inc.

THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2004-2, as Purchaser

By:    Wachovia Trust Company, National Association, not in its individual capacity but solely as Owner Trustee

    By:_____

      Name:
      Title:

**Deposit and Sale Agreement**

IN WITNESS WHEREOF, the parties hereto have caused this Sale Agreement to be duly executed by their respective officers hereunto duly authorized, as of the day and year first above written.

THE NATIONAL COLLEGIATE FUNDING LLC, as Seller

By: GATE Holdings, Inc., Member

By:_____
    Name:
    Title:

THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2004-2, as Purchaser

By:    Wachovia Trust Company, National Association, not in its individual capacity but solely as Owner Trustee

By:_____
    Name:  STERLING C. CORREIA
    Title:     VICE PRESIDENT

**Deposit and Sale Agreement**

## SCHEDULE A
### Pool Supplements

Each of the following Pool Supplements was entered into by and among The First Marblehead Corporation, The National Collegiate Funding LLC and:

- Bank of America, N.A., dated October 28, 2004, for loans that were originated under Bank of America's BAGEL Loan Program, CEDU Loan Program, Direct to Consumer Loan Program and ISLP Loan Program.
- Bank One, N.A., dated October 28, 2004, for loans that were originated under Bank One's CORPORATE ADVANTAGE Loan Program, EDUCATION ONE Loan Program and M&T REFERRAL Loan Program.
- Charter One Bank, N.A., dated October 28, 2004, for loans that were originated under the following Charter One programs: AAA Southern New England Bank, AES EducationGAIN Loan Program, (AMS) TuitionPay Diploma Loan Program, Brazos Alternative Loan Program, CFS Direct to Consumer Loan Program, Citibank Flexible Education Loan Program, College Loan Corporation Loan Program, Comerica Alternative Loan Program, Custom Educredit Loan Program, Education Assistance Services Loan Program, ESF Alternative Loan Program, Extra Credit II Loan Program (North Texas Higher Education), M&I Alternative Loan Program, National Education Loan Program, Navy Federal Alternative Loan Program, NextStudent Alternative Loan Program, PNC Bank Resource Loan Program, SAF Alternative Loan Program, Start Education Loan Program, Southwest Loan Program and WAMU Alternative Student Loan Program.
- Chase Manhattan Bank USA, N.A., dated October 28, 2004, for loans that were originated under Chase's Chase Extra Loan Program.
- Citizens Bank of Rhode Island, dated October 28, 2004, for loans that were originated under Citizens Bank of Rhode Island's DTC Loan Program, Navy Federal Referral Loan Program, Xanthus Loan Program and Pennsylvania State University Undergraduate and Continuing Education Loan Program.
- GMAC Bank, dated October 28, 2004, for loans that were originated under GMAC Bank's GMAC Alternative Loan Program.
- The Huntington National Bank, dated October 28, 2004, for loans that were originated under The Huntington National Bank's Huntington Bank Education Loan Program.
- Manufacturers and Traders Trust Company, dated October 28, 2004, for loans that were originated under Manufacturers and Traders Trust Company's M&T Alternative Loan Program.
- PNC Bank, dated October 28, 2004, for loans that were originated under PNC Bank's PNC Bank Alternative Loan Program.
  SunTrust Bank, dated October 28, 2004, for loans that were originated under SunTrust Bank's SunTrust Alternative Loan Program.

## SCHEDULE B
### Student Loan Purchase Agreements

Each of the Note Purchase Agreements, as amended or supplemented, was entered into by and between The First Marblehead Corporation and:

- Bank of America, N.A., dated April 30, 2001, for loans that were originated under Bank of America's BAGEL Loan Program, CEDU Loan Program and ISLP Loan Program.
- Bank of America, N.A., dated June 30, 2003, for loans that were originated under Bank of America's Direct to Consumer Loan Program.
- Bank One, N.A., dated May 1, 2002, for loans that were originated under Bank One's CORPORATE ADVANTAGE Loan Program and EDUCATION ONE Loan Program.
- Bank One, N.A., dated July 26, 2002, for loans that were originated under Bank One's M&T REFERRAL Loan Program
- Charter One Bank, N.A., dated as of December 29, 2003 for loans that were originated under Charter One's AAA Southern New England Bank Loan Program.
- Charter One Bank, N.A., dated October 31, 2003, for loans that were originated under Charter One's AES EducationGAIN Loan Program.
- Charter One Bank, N.A., dated May 15, 2002, for loans that were originated under Charter One's (AMS) TuitionPay Diploma Loan Program.
- Charter One Bank, N.A., dated July 15, 2003, for loans that were originated under Charter One's Brazos Alternative Loan Program.
- Charter One Bank, N.A., dated May 15, 2002, for loans that were originated under Charter One's CFS Direct to Consumer Loan Program.
- Charter One Bank, N.A., dated June 30, 2003, for loans that were originated under Charter One's Citibank Flexible Education Loan Program.
- Charter One Bank, N.A., dated July 1, 2002, for loans that were originated under Charter One's College Loan Corporation Loan Program.
- Charter One Bank, N.A., dated December 4, 2002, for loans that were originated under Charter One's Comerica Alternative Loan Program.
- Charter One Bank, N.A., dated December 1, 2003, for loans that were originated under Charter One's Custom Educredit Loan Program.
- Charter One Bank, N.A., dated May 15, 2002, for loans that were originated under Charter One's Education Assistance Services Loan Program.
- Charter One Bank, N.A., dated May 15, 2003, for loans that were originated under Charter One's ESF Alternative Loan Program.
- Charter One Bank, N.A., dated September 15, 2003, for loans that were originated under Charter One's Extra Credit II Loan Program (North Texas Higher Education).
- Charter One Bank, N.A., dated September 20, 2003, for loans that were originated under Charter One's M&I Alternative Loan Program.
- Charter One Bank, N.A., dated November 17, 2003, for loans that were originated under Charter One's National Education Loan Program.
- Charter One Bank, N.A., dated May 15, 2003, for loans that were originated under Charter One's Navy Federal Alternative Loan Program.

- Charter One Bank, N.A., dated May 15, 2002, for loans that were originated under Charter One's NextStudent Alternative Loan Program.
- Charter One Bank, N.A., dated March 17, 2003, for loans that were originated under Charter One's PNC Bank Resource Loan Program.
- Charter One Bank, N.A., dated May 1, 2003, for loans that were originated under Charter One's SAF Alternative Loan Program.
- Charter One Bank, N.A., dated September 20, 2002, for loans that were originated under Charter One's Southwest Loan Program.
- Charter One Bank, N.A., dated March 25, 2004, for loans that were originated under Charter One's Start Education Loan Program.
- Charter One Bank, N.A., dated May 15, 2003, for loans that were originated under Charter One's WAMU Alternative Student Loan Program.
- Chase Manhattan Bank USA, N.A., dated September 30, 2003, for loans that were originated under Chase's Chase Extra Loan Program.
- Citizens Bank of Rhode Island, dated April 30, 2004, for loans that were originated under Citizens Bank of Rhode Island's DTC Alternative Loan Program.
- Citizens Bank of Rhode Island, dated April 30, 2004, for loans that were originated under Citizens Bank of Rhode Island's Navy Federal Referral Loan Program.
- Citizens Bank of Rhode Island, dated April 30, 2004, for loans that were originated under Citizens Bank of Rhode Island's Xanthus Loan Program.
- Citizens Bank of Rhode Island, dated October 1, 2002, for loans that were originated under Citizens Bank of Rhode Island's Pennsylvania State University Undergraduate and Continuing Education Loan Program.
- GMAC Bank, dated May 30, 2003, for loans that were originated under GMAC Bank's GMAC Alternative Loan Program.
- The Huntington National Bank, dated May 20, 2003, for loans that were originated under The Huntington National Bank's Huntington Bank Education Loan Program.
- Manufacturers and Traders Trust Company, dated April 29, 2004, for loans that were originated under Manufacturers and Traders Trust Company's Alternative Loan Program.
- PNC Bank, N.A., dated April 22, 2004, for loans that were originated under PNC Bank's Alternative Conforming Loan Program.
- SunTrust Bank, dated March 1, 2002, for loans that were originated under SunTrust Bank's SunTrust Alternative Loan Program.

```
<DOCUMENT>
<TYPE>EX-10.15
<SEQUENCE>16
<FILENAME>d281317.txt
<DESCRIPTION>POOL SUPPLEMENT (BANK OF AMERICA, N.A.)
<TEXT>
```

EXHIBIT 10.15

POOL SUPPLEMENT
BANK OF AMERICA, N.A.

This Pool Supplement (the "Supplement") is entered into pursuant to and forms a part of that certain (i) Note Purchase Agreement dated as of April 30, 2001 and (ii) Note Purchase Agreement dated as of June 30, 2003, each as amended or supplemented from the date of execution of the Agreement through the date of this Supplement (together, the "Agreement"), by and between The First Marblehead Corporation and Bank of America, N.A. (the "Program Lender"). This Supplement is dated as of October 28, 2004. Capitalized terms used in this Supplement without definitions have the meanings set forth in the Agreement.

Article 1:  Purchase and Sale.

In consideration of the Minimum Purchase Price set forth in Schedule 1 attached hereto, the Program Lender hereby transfers, sells, sets over and assigns to The National Collegiate Funding LLC (the "Depositor"), upon the terms and conditions set forth in the Agreement (which are incorporated herein by reference with the same force and effect as if set forth in full herein), each student loan set forth on the attached Schedule 2 (the "Transferred Bank of America Loans") along with all of the Program Lender's rights under the Guaranty Agreement relating to the Transferred Bank of America Loans. The Depositor in turn will sell the Transferred Bank of America Loans to The National Collegiate Student Loan Trust 2004-2 (the "Trust"). The Program Lender hereby transfers and delivers to the Depositor each Note evidencing such Transferred Bank of America Loan and all Origination Records relating thereto, in accordance with the terms of the Agreement. The Depositor hereby purchases said Notes on said terms and conditions.

Article 2:  Price.

The amounts paid pursuant to this Supplement are the amounts set forth on Schedule 1 attached hereto.

Article 3:  Representations and Warranties.

3.01. By Program Lender.

The Program Lender repeats the representations and warranties contained in Section 5.02 of the Agreement for the benefit of each of the Depositor and the Trust and confirms the same are true and correct as of the date hereof with respect to the Agreement and to this Supplement.

3.02. By Depositor.

The Depositor hereby represents and warrants to the Program Lender that at the date of execution and delivery of this Supplement by the Depositor:

(a) The Depositor is duly organized and validly existing as a limited liability company under the laws of the State of Delaware with the due power and

authority to own its properties and to conduct its business as such properties are currently owned and such business is presently conducted, and had at all relevant times, and has, the power, authority and legal right to acquire and own the Transferred Bank of America Loans.

<PAGE>

(b) The Depositor is duly qualified to do business and has obtained all necessary licenses and approvals in all jurisdictions in which the ownership or lease of property or the conduct of its business shall require such qualifications.

(c) The Depositor has the power and authority to execute and deliver this Supplement and to carry out its respective terms; the Depositor has the power and authority to purchase the Transferred Bank of America Loans and rights relating thereto as provided herein from the Program Lender, and the Depositor has duly authorized such purchase from the Program Lender by all necessary action; and the execution, delivery and performance of this Supplement has been duly authorized by the Depositor by all necessary action on the part of the Depositor.

(d) This Supplement, together with the Agreement of which this Supplement forms a part, constitutes a legal, valid and binding obligation of the Depositor, enforceable in accordance with its terms.

(e) The consummation of the transactions contemplated by the Agreement and this Supplement and the fulfillment of the terms hereof do not conflict with, result in any breach of any of the terms and provisions of, or constitute (with or without notice or lapse of time) a default under, the governing instruments of the Depositor or any indenture, agreement or other instrument to which the Depositor is a party or by which it is bound; or result in the creation or imposition of any lien upon any of its properties pursuant to the terms of any such indenture, agreement or other instrument; or violate any law or any order, rule or regulation applicable to the Depositor of any court or of any federal or state regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties.

(f) There are no proceedings or investigations pending, or threatened, before any court, regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties: (i) asserting the invalidity of the Agreement or this Supplement, (ii) seeking to prevent the consummation of any of the transactions contemplated by the Agreement or this Supplement, or (iii) seeking any determination or ruling that is likely to materially or adversely affect the performance by the Depositor of its obligations under, or the validity or enforceability of the Agreement or this Supplement.

Article 4:  Cross Receipt.

The Program Lender hereby acknowledges receipt of the Minimum Purchase Price. The Depositor hereby acknowledges receipt of the Transferred Bank of America Loans.

Article 5:  Assignment of Origination, Guaranty and Servicing Rights.

The Program Lender hereby assigns and sets over to the Depositor any claims it may now or hereafter have under the Guaranty Agreement, the Origination Agreement and the Servicing Agreement to the extent the same relate

8/18/2011

to the Transferred Bank of America Loans described in Schedule 2, other than any right to obtain servicing after the date hereof. It is the intent of this provision to vest in the Depositor any claim of the Program Lender relating to defects in origination, guaranty or servicing of the loans purchased hereunder in order to permit the Depositor to assert such claims directly and obviate any need to make the same claims against the Program Lender under this Supplement.

2

<PAGE>

        IN WITNESS WHEREOF, the parties have caused this Supplement to be executed as of the date set forth above.

                    THE FIRST MARBLEHEAD CORPORATION


                    By: /s/ John A. Hupalo
                        ----------------------------------
                        Name: John A. Hupalo
                        Title: Executive Vice President


                    BANK OF AMERICA, N.A.


                    By: /s/ Kathy Cannon
                        ----------------------------------
                        Kathy Cannon
                        Senior Vice President


                    THE NATIONAL COLLEGIATE FUNDING LLC

                    By: GATE Holdings, Inc., Member


                    By: /s/ Stephen Anbinder
                        ----------------------------------
                        Name: Stephen Anbinder
                        Title: President


<PAGE>


                    SCHEDULE 1


                    [**]

[Confidential Treatment Requested]

<PAGE>

SCHEDULE 2

[On file with the Indenture Trustee]

</TEXT>
</DOCUMENT>

8/18/2011

| Bank of America Education Loan Programs |
| :--- |
| *Final Sale Roster* |

| Social Security Number | Sequence | Int Rate Margin | Borrower Fee | Gross Principal Purchased |
| :--- | :--- | :--- | :--- | :--- |
| 3085 | 1 | 4.65% | 9.50% | $33,149.17 |

| National Collegiate Student Loan Trust 2004-2 | | | |
| :--- | :--- | :--- | :--- |
| *Closing Date: October 28, 2004* | | | |
| Unpaid Interest Purchased | Total Interest Capitalized | Total Disbursed Amount | Last Disbursement Date |
| $515.18 | $0.00 | $33,149.17 | 7/23/2004 |

```
ITS2C        3085;;                  AES/PA      VTAM NAC6     TSX2D
DATE 11/04/15 09:14:13     LOAN FINANCIAL ACTIVITY        PAGE  1 OF  5

BORROWER SSN:        -3085   NAME: MEDINA, JAVIER
1ST DISB: 07/23/04 LN SEQ: 0001   LN PGM: ALPLN    OWN: 122962QC-NCT
GUARANTOR: TERI                  CUST ACCT:  LT04  ORIG BAL:  33,149.17
BOND ISSUE: NCT20042   PD AHEAD:    STATUS: ACTIVE    CURR BAL:     0.00
```

|    | REV | EFFECTIVE | POSTED   | TRAN | TRAN        | INTEREST | PRINCIPAL |
|----|-----|-----------|----------|------|-------------|----------|-----------|
|    | REA | DATE      | DATE     | TYPE | AMOUNT      | ACCRUED  | BALANCE   |
| 1  |     | 12/02/11  | 12/02/11 | 5003A | 30.00CR     | 0.00     | 0.00      |
| 2  |     | 12/01/11  | 12/01/11 | 1030A | 54,943.20CR | 205.14   | 0.00      |
| 3  |     | 11/02/11  |          | 2601A | 5.00        | 212.21   | 53,236.54 |
| 4  |     | 10/03/11  |          | 2601A | 5.00        | 219.71   | 53,236.54 |
| 5  |     | 09/02/11  |          | 2601A | 5.00        | 219.74   | 53,236.54 |
| 6  |     | 08/02/11  |          | 2601A | 5.00        | 212.65   | 53,236.54 |
| 7  |     | 07/03/11  |          | 2601A | 5.00        | 221.85   | 53,236.54 |
| 8  |     | 06/02/11  |          | 2601A | 5.00        | 415.36   | 53,236.54 |
| 9  |     | 04/05/11  | 04/08/11 | 7001A | 0.00        | 735.07   | 53,236.54 |
| 10 |     | 12/22/10  | 04/08/11 | 7001A | 0.00        | 815.67   | 52,501.47 |

```
        SELECTION __

F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

```
   ITS2Q      3085;;              AES/PA        VTAM NAC6       TSX2D
   DATE 11/04/15 09:16:39    LOAN FINANCIAL ACTIVITY      PAGE  2 OF  5

   BORROWER SSN:       3085  NAME: MEDINA, JAVIER
   1ST DISB: 07/23/04 LN SEQ: 0001  LN PGM: ALPLN     OWN: 122962QC-NCT
   GUARANTOR: TERI                  CUST ACCT:  LT04  ORIG BAL:  33,149.17
   BOND ISSUE: NCT20042   PD AHEAD:    STATUS: ACTIVE     CURR BAL:     0.00
```

|    | REV<br>REA | EFFECTIVE<br>DATE | POSTED<br>DATE | TRAN<br>TYPE | TRAN<br>AMOUNT | INTEREST<br>ACCRUED | PRINCIPAL<br>BALANCE |
|----|------------|-------------------|----------------|--------------|----------------|---------------------|----------------------|
| 1  |            | 08/27/10          | 08/27/10       | 1010C        | 662.00CR       | 174.04              | 51,437.72            |
| 2  |            | 08/02/10          | 08/02/10       | 1010C        | 30.32CR        | 208.85              | 51,437.72            |
| 3  |            | 08/02/10          |                | 2601A        | 1.25           | 0.00                | 51,437.72            |
| 4  |            | 07/03/10          |                | 2601A        | 1.25           | 13.92               | 51,437.72            |
| 5  |            | 07/01/10          | 07/01/10       | 1010C        | 30.32CR        | 199.43              | 51,437.72            |
| 6  |            | 06/02/10          |                | 2601A        | 1.25           | 61.89               | 51,437.72            |
| 7  |            | 05/24/10          | 05/25/10       | 1010C        | 30.32CR        | 144.42              | 51,437.72            |
| 8  |            | 05/03/10          |                | 2601A        | 5.00           | 137.54              | 51,437.72            |
| 9  |            | 04/13/10          | 04/13/10       | 1010C        | 30.32CR        | 82.52               | 51,437.72            |
| 10 |            | 04/01/10          | 04/01/10       | 7001A        | 0.00           | 403.39              | 51,437.72            |

```
      SELECTION __

   F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

```
ITS2C    3085;;                    AES/PA       VTAM NAC6      TSX2D
DATE 11/04/15 09:16:57      LOAN FINANCIAL ACTIVITY        PAGE  3 OF  5

BORROWER SSN:    -3085  NAME: MEDINA, JAVIER
1ST DISB: 07/23/04 LN SEQ: 0001  LN PGM: ALPLN      OWN: 122962QC-NCT
GUARANTOR: TERI                 CUST ACCT:  LT04  ORIG BAL:  33,149.17
BOND ISSUE: NCT20042   PD AHEAD:     STATUS: ACTIVE     CURR BAL:      0.00
```

| | REV | EFFECTIVE | POSTED | TRAN | TRAN | INTEREST | PRINCIPAL |
|---|---|---|---|---|---|---|---|
| | REA | DATE | DATE | TYPE | AMOUNT | ACCRUED | BALANCE |
| 1 | | 02/01/10 | 02/01/10 | 7001A | 0.00 | 832.32 | 51,034.33 |
| 2 | | 10/01/09 | 10/02/09 | 7001A | 0.00 | 1,314.95 | 50,202.01 |
| 3 | | 03/25/09 | 03/25/09 | 7001A | 0.00 | 814.40 | 48,887.06 |
| 4 | | 01/01/09 | 01/02/09 | 7001A | 0.00 | 845.24 | 48,072.66 |
| 5 | | 10/01/08 . | 11/07/08 | 7001A | 0.00 | 140.87 | 47,227.42 |
| 6 | | 09/16/08 | 11/07/08 | 7001A | 0.00 | 620.93 | 47,086.55 |
| 7 | | 07/11/08 | 11/07/08 | 7001A | 0.00 | 92.49 | 46,465.62 |
| 8 | | 07/01/08 | 11/07/08 | 7001A | 0.00 | 934.31 | 46,373.13 |
| 9 | | 04/01/08 | 11/07/08 | 7001A | 0.00 | 1,066.83 | 45,438.82 |
| 10 | | 01/01/08 | 01/02/08 | 7001A | 0.00 | 1,103.68 | 44,371.99 |

```
      SELECTION __

F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

Nov 4, 2015 9:17:10 AM

```
ITS2C     3085;;              AES/PA        VTAM NAC6      TSX2D
DATE 11/04/15 09:17:12    LOAN FINANCIAL ACTIVITY        PAGE  4 OF  5

BORROWER SSN:       3085  NAME: MEDINA, JAVIER
1ST DISB: 07/23/04 LN SEQ: 0001  LN PGM: ALPLN    OWN: 122962QC-NCT
GUARANTOR: TERI                  CUST ACCT:  LT04  ORIG BAL:  33,149.17
BOND ISSUE: NCT20042   PD AHEAD:   STATUS: ACTIVE    CURR BAL:      0.00
```

|    | REV | EFFECTIVE | POSTED | TRAN | TRAN | INTEREST | PRINCIPAL |
|----|-----|-----------|--------|------|------|----------|-----------|
|    | REA | DATE | DATE | TYPE | AMOUNT | ACCRUED | BALANCE |
| 1  |     | 10/01/07 | 10/01/07 | 7001A | 0.00 | 1,060.67 | 43,268.31 |
| 2  |     | 07/01/07 | 07/02/07 | 7001A | 0.00 | 1,023.69 | 42,207.64 |
| 3  |     | 04/01/07 | 04/02/07 | 7001A | 0.00 | 989.12 | 41,183.95 |
| 4  |     | 01/01/07 | 01/02/07 | 7001A | 0.00 | 988.22 | 40,194.83 |
| 5  |     | 10/01/06 | 10/02/06 | 7001A | 0.00 | 930.04 | 39,206.61 |
| 6  |     | 07/01/06 | 07/03/06 | 7001A | 0.00 | 856.43 | 38,276.57 |
| 7  |     | 04/01/06 | 04/03/06 | 7001A | 0.00 | 788.53 | 37,420.14 |
| 8  |     | 01/01/06 | 01/03/06 | 7001A | 0.00 | 739.12 | 36,631.61 |
| 9  |     | 10/01/05 | 10/03/05 | 7001A | 0.00 | 681.60 | 35,892.49 |
| 10 |     | 07/01/05 | 07/05/05 | 7001A | 0.00 | 622.60 | 35,210.89 |

```
        SELECTION __

  F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

```
ITS2C       3085;;              AES/PA      VTAM NAC6      TSX2D
DATE 11/04/15 09:17:26     LOAN FINANCIAL ACTIVITY        PAGE  5 OF  5

BORROWER SSN:        3085  NAME: MEDINA, JAVIER
1ST DISB: 07/23/04 LN SEQ: 0001  LN PGM: ALPLN     OWN: 122962QC-NCT
GUARANTOR: TERI                  CUST ACCT:  LT04  ORIG BAL: 33,149.17
BOND ISSUE: NCT20042   PD AHEAD:    STATUS: ACTIVE    CURR BAL:     0.00
```

|   | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|---|---------|----------------|-------------|-----------|-------------|------------------|-------------------|
| 1 |         | 04/01/05       | 04/04/05    | 7001A     | 0.00        | 561.30           | 34,588.29         |
| 2 |         | 01/01/05       | 01/03/05    | 7001A     | 0.00        | 362.64           | 34,026.99         |
| 3 |         | 10/28/04       | 10/28/04    | 0390A     | 33,664.35   | 0.00             | 33,149.17         |
| 4 |         | 10/28/04       | 10/28/04    | 0395A     | 33,664.35CR | 515.18           | 0.00              |
| 5 |         | 07/23/04       | 07/23/04    | 0101A     | 33,149.17   | 0.00             | 33,149.17         |

```
    SELECTION __


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```



```
   ITS2X       3085;               AES/PA        VTAM NAC6       TSX2Y
   DATE 11/04/15 09:17:43 REPAYMENT SCHEDULE SUMMARY SELECTION   PAGE  1 OF  4


   BORROWER SSN      -3085   NAME JAVIER MEDINA


          SCHED   INSTALL  REPAY  REPAY  1ST DUE 1ST DISB    LOAN
   SEL STA TYPE   AMOUNT   LVLS   TERM    DATE    DATE       PGM       OWNER
    1  I   L      372.26      2    216   05/17/11 07/23/04 ALPLN       NCT




    7  I   L      358.39      2    222   08/17/10 07/23/04 ALPLN       NCT




   SELECTION   __


   F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

Nov 4, 2015 9:18:03 AM

```
ITS2X      3085;                    AES/PA        VTAM NAC6      TSX2Y
DATE 11/04/15 09:18:05 REPAYMENT SCHEDULE SUMMARY SELECTION   PAGE  2 OF  4

BORROWER SSN 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   NAME JAVIER MEDINA


           SCHED   INSTALL  REPAY  REPAY  1ST DUE 1ST DISB    LOAN
   SEL STA TYPE    AMOUNT   LVLS   TERM    DATE    DATE       PGM       OWNER

    2  I   RP       25.00     3     225   05/17/10 07/23/04 ALPLN        NCT




    7  I   L       347.72     2     226   03/17/10 07/23/04 ALPLN        NCT




   SELECTION   __


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

Nov 4, 2015 9:18:12 AM

```
ITS2X     3085;                    AES/PA        VTAM NAC6        TSX2Y
DATE 11/04/15 09:19:03 REPAYMENT SCHEDULE SUMMARY SELECTION   PAGE  3 OF  4


BORROWER SSN     -3085    NAME JAVIER MEDINA


        SCHED  INSTALL  REPAY  REPAY  1ST DUE 1ST DISB    LOAN
SEL STA TYPE   AMOUNT   LVLS   TERM    DATE    DATE       PGM        OWNER
 1   I   L      336.77    2     231   11/01/09 07/23/04 ALPLN       NCT
```

```
 7   I   L      394.47    2     237   04/24/09 07/23/04 ALPLN       NCT
```


SELECTION   __


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN

```
ITS2X    085;                    AES/PA          VTAM NAC6      TSX2Y
DATE 11/04/15 09:19:13 REPAYMENT SCHEDULE SUMMARY SELECTION   PAGE 4 OF 4

BORROWER SSN   3085   NAME JAVIER MEDINA

          SCHED   INSTALL  REPAY  REPAY  1ST DUE 1ST DISB    LOAN
SEL STA TYPE   AMOUNT   LVLS   TERM   DATE    DATE       PGM    OWNER
 1  I   L      397.91    2     239   08/18/08 07/23/04 ALPLN    NCT
```

SELECTION  __

F1=HELP   F3=EXIT   F5=RFR   F7=BKWD   F8=FWD   F9=PRT   F12=CAN

Nov 4, 2015 9:19:26 AM

```
ITS2V     3085;                    AES/PA        VTAM NAC6        TSX2W
DATE 11/04/15 09:32:08    DEFERMENT/FORBEARANCE SUMMARY        PAGE  1 OF  4

BORROWER SSN     -3085   NAME JAVIER MEDINA

   DEFER/FORB    BEGIN      END
      TYPE       DATE       DATE     1ST DISB LOAN PGM           OWNER
   F-BANKRUPT  12/22/10  04/04/11   1 07/19/07 ALPLN  .     NCT
                                    2 06/21/06 ALPLN        NCT
                                    3 04/12/06 ALPLN        NCT
                                    4 08/29/05 ALPLN        NCT
                                    5 05/16/05 ALPLN        NCT
                                    6 07/23/04 ALPLN        NCT
   F-ADMINIST  09/17/10  12/21/10   7 07/19/07 ALPLN        NCT
                                    8 06/21/06 ALPLN        NCT
                                    9 04/12/06 ALPLN        NCT
                                   10 08/29/05 ALPLN        NCT
                                   11 05/16/05 ALPLN        NCT
                                   12 07/23/04 ALPLN        NCT

                               SELECTION __


F1=HELP   F3=EXIT   F5=RFR   F7=BKWD   F8=FWD   F9=PRT   F12=CAN
```

Nov 4, 2015 9:32:28 AM

```
ITS2V    3085;                    AES/PA        VTAM NAC6        TSX2W
DATE 11/04/15 09:28:57   DEFERMENT/FORBEARANCE SUMMARY      PAGE  2 OF  4

BORROWER SSN     -3085   NAME JAVIER MEDINA

   DEFER/FORB   BEGIN    END
     TYPE       DATE     DATE      1ST DISB LOAN PGM          OWNER
   F-ADMINIST  03/01/10 03/31/10  1 07/19/07 ALPLN      NCT
                                  2 06/21/06 ALPLN      NCT
                                  3 04/12/06 ALPLN      NCT
                                  4 08/29/05 ALPLN      NCT
                                  5 05/16/05 ALPLN      NCT
                                  6 07/23/04 ALPLN      NCT
   F-TEMP HRD  10/01/09 01/31/10  7 07/19/07 ALPLN      NCT
                                  8 06/21/06 ALPLN      NCT
                                  9 04/12/06 ALPLN      NCT
                                 10 08/29/05 ALPLN      NCT
                                 11 05/16/05 ALPLN      NCT
                                 12 07/23/04 ALPLN      NCT

                         SELECTION __


 F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

Nov 4, 2015 9:29:05 AM

```
ITS2V5    3085;              AES/PA        VTAM NAC6      TSX2W
DATE 11/04/15 09:32:41    DEFERMENT/FORBEARANCE SUMMARY      PAGE  3 OF  4


BORROWER SSN      -3085   NAME JAVIER MEDINA


   DEFER/FORB    BEGIN    END
     TYPE        DATE     DATE     1ST DISB LOAN PGM        OWNER
   F-TEMP HRD  04/01/09 09/30/09  1 07/19/07 ALPLN     NCT
                                  2 06/21/06 ALPLN     NCT
                                  3 04/12/06 ALPLN     NCT
                                  4 08/29/05 ALPLN     NCT
                                  5 05/16/05 ALPLN     NCT
                                  6 07/23/04 ALPLN     NCT
   D-SCHL FUL  09/16/08 11/29/10  7 07/19/07 ALPLN     NCT
                                  8 06/21/06 ALPLN     NCT
                                  9 04/12/06 ALPLN     NCT
                                 10 08/29/05 ALPLN     NCT
                                 11 05/16/05 ALPLN     NCT
                                 12 07/23/04 ALPLN     NCT


                        SELECTION __



   F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

Nov 4, 2015 9:32:49 AM

```
ITS2V    3085;                    AES/PA          VTAM NAC6          TSX2W
DATE 11/04/15 09:29:17    DEFERMENT/FORBEARANCE SUMMARY         PAGE  4 OF  4

BORROWER SSN    3085    NAME JAVIER MEDINA

   DEFER/FORB    BEGIN    END
      TYPE       DATE     DATE     1ST DISB LOAN PGM         OWNER
   F-TEMP HRD   08/01/08 01/31/09  1 07/19/07 ALPLN        NCT
                                   2 06/21/06 ALPLN        NCT
                                   3 04/12/06 ALPLN        NCT
                                   4 08/29/05 ALPLN        NCT
                                   5 05/16/05 ALPLN        NCT
                                   6 07/23/04 ALPLN        NCT




                              SELECTION ___


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

Nov 4, 2015 9:29:27 AM

# Loan Payment History Report
## Date: 2015-11-04

| | | | |
|---|---|---|---|
| Account Number: | 3085/001-001000 | | |
| Social Security Number: | 3085 | Product: | DFU DIRECT TO CONSUMER UNDERGRAD |
| Name: | MEDINA, JAVIER | Officer Code: | 777042 |
| Birth Date: | 1979- | School: | SPARTAN COLLEGE OF AERONAUTICS & TECH |
| Address 1: | C/O MINCIN  DAVID | Program Year: | 2003-04 |
| Address 2: | 528 S CASION DR  325 | | |
| City: | LAS VEGAS | Variable Rate Code: | FU LIBOR |
| State: | NV | Interest Rate: | 4.84% |
| Zip Code: | 89101 | Last Payment Date: | 2010-08-27 |
| | | Last Payment Amount: | $662.00 |
| | | Payment Due Date: | 2011-11-17 |
| Contract Date: | 2004-07-23 | Last Interest Date: | 2015-11-04 |
| Date Assigned: | | Accrued Interest: | $10,498.48 |
| Charge Off Date: | 2011-12-01 | Recovered Interest: | $0.00 |
| Charge Off Amount: | $54,943.20 | Net Interest: | $10,498.48 |
| Recovered Principal: | $0.00 | Associated Costs: | $366.60 |
| Net Charge Off: | $54,943.20 | Recovered Costs: | $0.00 |
| Disbursement Date: | 2004-07-23 | Net Costs: | $366.60 |
| Disbursement Amount: | $33,149.17 | | |

## Transaction History

| User | Date | Time | Code | Description | Amount |
|---|---|---|---|---|---|
| System | 2011-12-31 | 00:01 | 82 | $54,943.20 @ 4.850 / 12/01/2011 - 12/31/2011 | $219.02 |
| System | 2012-01-03 | 00:01 | 82 | $54,943.20 @ 4.900 / 12/31/2011 - 01/03/2012 | $22.07 |
| System | 2012-01-31 | 00:01 | 82 | $54,943.20 @ 4.900 / 01/03/2012 - 01/31/2012 | $205.96 |
| System | 2012-02-01 | 00:01 | 82 | $54,943.20 @ 4.900 / 01/31/2012 - 02/01/2012 | $7.36 |
| System | 2012-02-29 | 00:01 | 82 | $54,943.20 @ 4.900 / 02/01/2012 - 02/29/2012 | $205.96 |
| System | 2012-03-01 | 00:01 | 82 | $54,943.20 @ 4.900 / 02/29/2012 - 03/01/2012 | $7.36 |
| System | 2012-03-31 | 00:01 | 82 | $54,943.20 @ 4.900 / 03/01/2012 - 03/31/2012 | $220.67 |
| System | 2012-04-02 | 00:01 | 82 | $54,943.20 @ 4.900 / 03/31/2012 - 04/02/2012 | $14.71 |
| System | 2012-04-30 | 00:01 | 82 | $54,943.20 @ 4.920 / 04/02/2012 - 04/30/2012 | $206.80 |
| System | 2012-05-02 | 00:01 | 82 | $54,943.20 @ 4.920 / 04/30/2012 - 05/02/2012 | $14.77 |
| System | 2012-05-31 | 00:01 | 82 | $54,943.20 @ 4.920 / 05/02/2012 - 05/31/2012 | $214.19 |
| System | 2012-06-01 | 00:01 | 82 | $54,943.20 @ 4.920 / 05/31/2012 - 06/01/2012 | $7.39 |
| System | 2012-06-30 | 00:01 | 82 | $54,943.20 @ 4.920 / 06/01/2012 - 06/30/2012 | $214.19 |
| System | 2012-07-01 | 00:01 | 82 | $54,943.20 @ 4.920 / 06/30/2012 - 07/01/2012 | $7.39 |
| System | 2012-07-02 | 00:01 | 82 | $54,943.20 @ 4.890 / 07/01/2012 - 07/02/2012 | $7.34 |
| System | 2012-07-31 | 00:01 | 82 | $54,943.20 @ 4.890 / 07/02/2012 - 07/31/2012 | $212.88 |

| System | 2012-08-01 | 00:01 | 82 | $54,943.20 @ 4.890 / 07/31/2012 - 08/01/2012 | $7.34 |
|--------|------------|-------|----|---------------------------------------------|-------|
| System | 2012-08-31 | 00:01 | 82 | $54,943.20 @ 4.890 / 08/01/2012 - 08/31/2012 | $220.22 |
| System | 2012-09-04 | 00:01 | 82 | $54,943.20 @ 4.890 / 08/31/2012 - 09/04/2012 | $29.36 |
| System | 2012-09-30 | 00:01 | 82 | $54,943.20 @ 4.890 / 09/04/2012 - 09/30/2012 | $190.86 |
| System | 2012-10-01 | 00:01 | 82 | $54,943.20 @ 4.890 / 09/30/2012 - 10/01/2012 | $7.34 |
| System | 2012-10-31 | 00:01 | 82 | $54,943.20 @ 4.890 / 10/01/2012 - 10/31/2012 | $220.22 |
| System | 2012-11-09 | 00:01 | 82 | $54,943.20 @ 4.890 / 10/31/2012 - 11/09/2012 | $66.07 |
| System | 2012-12-03 | 00:01 | 82 | $54,943.20 @ 4.890 / 11/09/2012 - 12/03/2012 | $176.18 |
| System | 2012-12-04 | 00:01 | 82 | $54,943.20 @ 4.890 / 12/03/2012 - 12/04/2012 | $7.34 |
| System | 2012-12-05 | 00:01 | 82 | $54,943.20 @ 4.890 / 12/04/2012 - 12/05/2012 | $7.34 |
| System | 2012-12-11 | 00:01 | 82 | $54,943.20 @ 4.890 / 12/05/2012 - 12/11/2012 | $44.04 |
| System | 2012-12-17 | 00:01 | 82 | $54,943.20 @ 4.890 / 12/11/2012 - 12/17/2012 | $44.04 |
| System | 2012-12-18 | 00:01 | 82 | $54,943.20 @ 4.890 / 12/17/2012 - 12/18/2012 | $7.34 |
| System | 2012-12-26 | 00:01 | 82 | $54,943.20 @ 4.890 / 12/18/2012 - 12/26/2012 | $58.73 |
| System | 2012-12-31 | 00:01 | 82 | $54,943.20 @ 4.890 / 12/26/2012 - 12/31/2012 | $36.70 |
| System | 2013-01-01 | 00:01 | 82 | $54,943.20 @ 4.890 / 12/31/2012 - 01/01/2013 | $7.36 |
| System | 2013-01-03 | 00:01 | 82 | $54,943.20 @ 4.890 / 01/01/2013 - 01/03/2013 | $14.72 |
| System | 2013-01-31 | 00:01 | 82 | $54,943.20 @ 4.860 / 01/03/2013 - 01/31/2013 | $204.84 |
| System | 2013-02-01 | 00:01 | 82 | $54,943.20 @ 4.860 / 01/31/2013 - 02/01/2013 | $7.32 |
| System | 2013-02-04 | 00:01 | 82 | $54,943.20 @ 4.860 / 02/01/2013 - 02/04/2013 | $21.95 |
| System | 2013-02-07 | 00:01 | 82 | $54,943.20 @ 4.860 / 02/04/2013 - 02/07/2013 | $21.95 |
| System | 2013-02-11 | 00:01 | 82 | $54,943.20 @ 4.860 / 02/07/2013 - 02/11/2013 | $29.26 |
| System | 2013-02-13 | 00:01 | 82 | $54,943.20 @ 4.860 / 02/11/2013 - 02/13/2013 | $14.63 |
| System | 2013-02-14 | 00:01 | 82 | $54,943.20 @ 4.860 / 02/13/2013 - 02/14/2013 | $7.32 |
| System | 2013-02-28 | 00:01 | 82 | $54,943.20 @ 4.860 / 02/14/2013 - 02/28/2013 | $102.42 |
| System | 2013-03-31 | 00:01 | 82 | $54,943.20 @ 4.860 / 02/28/2013 - 03/31/2013 | $226.79 |
| System | 2013-04-09 | 00:01 | 82 | $54,943.20 @ 4.860 / 03/31/2013 - 04/09/2013 | $65.84 |
| System | 2013-04-30 | 00:01 | 82 | $54,943.20 @ 4.850 / 04/09/2013 - 04/30/2013 | $153.31 |
| System | 2013-05-31 | 00:01 | 82 | $54,943.20 @ 4.850 / 04/30/2013 - 05/31/2013 | $226.32 |
| System | 2013-06-30 | 00:01 | 82 | $54,943.20 @ 4.850 / 05/31/2013 - 06/30/2013 | $219.02 |
| System | 2013-07-31 | 00:01 | 82 | $54,943.20 @ 4.850 / 06/30/2013 - 07/31/2013 | $226.32 |
| System | 2013-08-02 | 00:01 | 82 | $54,943.20 @ 4.850 / 07/31/2013 - 08/02/2013 | $14.60 |
| System | 2013-08-31 | 00:01 | 82 | $54,943.20 @ 4.850 / 08/02/2013 - 08/31/2013 | $211.72 |
| System | 2013-09-03 | 00:01 | 82 | $54,943.20 @ 4.850 / 08/31/2013 - 09/03/2013 | $21.90 |
| System | 2013-12-31 | 00:01 | 82 | $54,943.20 @ 4.850 / 09/03/2013 - 12/31/2013 | $868.78 |
| System | 2014-01-06 | 00:01 | 82 | $54,943.20 @ 4.850 / 12/31/2013 - 01/06/2014 | $43.80 |
| System | 2014-01-16 | 00:00 | 34 | Advn'd by Agency | $3.50 |
| System | 2014-01-16 | 00:00 | 34 | Advn'd by Agency | $270.00 |
| System | 2014-01-16 | 00:01 | 82 | $54,943.20 @ 4.820 / 01/06/2014 - 01/16/2014 | $72.56 |
| System | 2014-01-17 | 00:00 | 34 | Advn'd by Agency | $8.10 |
| System | 2014-01-17 | 00:01 | 82 | $54,943.20 @ 4.820 / 01/16/2014 - 01/17/2014 | $7.26 |
| System | 2014-01-31 | 00:01 | 82 | $54,943.20 @ 4.820 / 01/17/2014 - 01/31/2014 | $101.58 |
| System | 2014-02-28 | 00:01 | 82 | $54,943.20 @ 4.820 / 01/31/2014 - 02/28/2014 | $203.15 |
| System | 2014-03-18 | 00:00 | 34 | Advn'd by Agency | $67.50 |
| System | 2014-03-18 | 00:01 | 82 | $54,943.20 @ 4.820 / 02/28/2014 - 03/18/2014 | $130.60 |
| System | 2014-04-03 | 00:01 | 82 | $54,943.20 @ 4.820 / 03/18/2014 - 04/03/2014 | $116.09 |
| System | 2014-04-04 | 00:00 | 34 | Advn'd by Agency | $67.50 |
| System | 2014-04-04 | 00:01 | 82 | $54,943.20 @ 4.810 / 04/03/2014 - 04/04/2014 | $7.24 |

| System | 2014-04-14 | 00:00 | 34 | Advn'd by Agency | $-67.50 |
|--------|-----------|-------|-----|-----------------|---------|
| System | 2014-04-14 | 00:01 | 82 | $54,943.20 @ 4.810 / 04/04/2014 - 04/14/2014 | $72.40 |
| System | 2014-05-21 | 00:01 | 82 | $54,943.20 @ 4.810 / 04/14/2014 - 05/21/2014 | $267.90 |
| System | 2014-07-03 | 00:01 | 82 | $54,943.20 @ 4.810 / 05/21/2014 - 07/03/2014 | $311.34 |
| System | 2014-07-31 | 00:01 | 82 | $54,943.20 @ 4.800 / 07/03/2014 - 07/31/2014 | $202.31 |
| System | 2014-08-01 | 00:01 | 82 | $54,943.20 @ 4.800 / 07/31/2014 - 08/01/2014 | $7.23 |
| System | 2014-08-31 | 00:01 | 82 | $54,943.20 @ 4.805 / 08/01/2014 - 08/31/2014 | $216.99 |
| System | 2014-09-02 | 00:01 | 82 | $54,943.20 @ 4.805 / 08/31/2014 - 09/02/2014 | $14.47 |
| System | 2014-09-30 | 00:01 | 82 | $54,943.20 @ 4.800 / 09/02/2014 - 09/30/2014 | $202.31 |
| System | 2014-10-01 | 00:01 | 82 | $54,943.20 @ 4.800 / 09/30/2014 - 10/01/2014 | $7.23 |
| System | 2014-10-31 | 00:01 | 82 | $54,943.20 @ 4.800 / 10/01/2014 - 10/31/2014 | $216.76 |
| System | 2014-11-04 | 00:01 | 82 | $54,943.20 @ 4.800 / 10/31/2014 - 11/04/2014 | $28.90 |
| System | 2014-11-30 | 00:01 | 82 | $54,943.20 @ 4.810 / 11/04/2014 - 11/30/2014 | $188.25 |
| System | 2014-12-31 | 00:01 | 82 | $54,943.20 @ 4.810 / 11/30/2014 - 12/31/2014 | $224.45 |
| System | 2015-01-31 | 00:01 | 82 | $54,943.20 @ 4.810 / 12/31/2014 - 01/31/2015 | $224.45 |
| System | 2015-02-19 | 00:00 | 34 | Advn'd by Agency | $3.50 |
| System | 2015-02-19 | 00:01 | 82 | $54,943.20 @ 4.810 / 01/31/2015 - 02/19/2015 | $137.57 |
| System | 2015-02-24 | 00:00 | 34 | Advn'd by Agency | $3.50 |
| System | 2015-02-24 | 00:01 | 82 | $54,943.20 @ 4.810 / 02/19/2015 - 02/24/2015 | $36.20 |
| System | 2015-02-28 | 00:01 | 82 | $54,943.20 @ 4.810 / 02/24/2015 - 02/28/2015 | $28.96 |
| System | 2015-03-31 | 00:01 | 82 | $54,943.20 @ 4.810 / 02/28/2015 - 03/31/2015 | $224.45 |
| System | 2015-04-02 | 00:01 | 82 | $54,943.20 @ 4.810 / 03/31/2015 - 04/02/2015 | $14.48 |
| System | 2015-04-20 | 00:00 | 34 | Advn'd by Agency | $3.50 |
| System | 2015-04-20 | 00:01 | 82 | $54,943.20 @ 4.820 / 04/02/2015 - 04/20/2015 | $130.60 |
| System | 2015-04-29 | 00:00 | 34 | Advn'd by Agency | $3.50 |
| System | 2015-04-29 | 00:01 | 82 | $54,943.20 @ 4.820 / 04/20/2015 - 04/29/2015 | $65.30 |
| System | 2015-04-30 | 00:01 | 82 | $54,943.20 @ 4.820 / 04/29/2015 - 04/30/2015 | $7.26 |
| System | 2015-05-31 | 00:01 | 82 | $54,943.20 @ 4.820 / 04/30/2015 - 05/31/2015 | $224.92 |
| System | 2015-06-23 | 00:00 | 34 | Advn'd by Agency | $3.50 |
| System | 2015-06-23 | 00:01 | 82 | $54,943.20 @ 4.820 / 05/31/2015 - 06/23/2015 | $166.88 |
| System | 2015-06-30 | 00:01 | 82 | $54,943.20 @ 4.820 / 06/23/2015 - 06/30/2015 | $50.79 |
| System | 2015-07-01 | 00:01 | 82 | $54,943.20 @ 4.820 / 06/30/2015 - 07/01/2015 | $7.26 |
| System | 2015-07-31 | 00:01 | 82 | $54,943.20 @ 4.830 / 07/01/2015 - 07/31/2015 | $218.12 |
| System | 2015-08-31 | 00:01 | 82 | $54,943.20 @ 4.830 / 07/31/2015 - 08/31/2015 | $225.39 |
| System | 2015-09-30 | 00:01 | 82 | $54,943.20 @ 4.830 / 08/31/2015 - 09/30/2015 | $218.12 |
| System | 2015-10-01 | 00:01 | 82 | $54,943.20 @ 4.830 / 09/30/2015 - 10/01/2015 | $7.27 |
| System | 2015-10-30 | 00:01 | 82 | $54,943.20 @ 4.840 / 10/01/2015 - 10/30/2015 | $211.28 |
| System | 2015-11-04 | 00:01 | 82 | $54,943.20 @ 4.840 / 10/30/2015 - 11/04/2015 | $36.43 |

Exhibit B

From: 9184926237   Page: 2/5   Date: 5/10/2005 7:50:19 PM

## Creditworthy Nation Loan Request/Credit Agreement - Signature Page

NON-NEGOTIABLE CREDIT AGREEMENT – THIS IS A CONSUMER CREDIT TRANSACTION

### LOAN PROGRAM INFORMATION

Education Maximizer Undergraduate Loan

Academic Period: 06/2005-12/2005

Lender: Bank of America, National Association

School: SPARTAN COLLEGE OF AERONAUTICS

Loan Amount Requested: $30000.00

Repayment Option: Deferred Principal and Interest

Deferral Period Margin: 4.55

Repayment Period Margin: 4.65

Loan Origination Fee Percentage: 9.50

### STUDENT/BORROWER INFORMATION

Borrower Name: Javier Medina
Social Security #: ___ ___ 3052
Current Employer: DRECIV
Current Position: Services
Years of Previous Employment: 3 Years 6 Months

Home Address: 7917 S Wheeling Ave Apt 48 h  Tulsa, OK 74136
Date of Birth: __/__/1979   Home Telephone: ___ ___ 7786
Years There: 0 Years 3 Months    Employer Telephone: _____

Alimony, child support, or separate maintenance incomes do not have to be revealed if you do not want them considered for repaying this obligation. If you are relying on such additional income, please provide details on a separate sheet of paper.

Student Citizenship (check one box):   ☒ U.S. Citizen
Personal Reference Name: Casey Wright
Reference Street Address: _____
Reference City/State/Zip: _____

☐ Eligible Non-Citizen (Attach front & back copy of INS or student visa card)
Reference Home Tel _____   Work Tel _____

By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all four (4) pages of this Loan Request/Credit Agreement BK.04-05.CRWO.10DC.0104 ("Credit Agreement"). I understand that any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment. This Credit Agreement is signed under seal. I understand that I am not required to fax my signature on to sign electronically this Credit Agreement and my related notices that require signature. If I choose to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature, I intend: (i) my fax or electronic signature to be an electronic signature under applicable federal and state law, (ii) any fax printout or printout of Lender's electronic record of this Credit Agreement and related notices to be an original document, (iii) to conduct business with the Lender by electronic records and electronic signatures, and (iv) that this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code, and my obligations under this Credit Agreement will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code.

FOR ALABAMA RESIDENTS: CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

FOR WISCONSIN RESIDENTS - NOTICE TO CUSTOMER:
(a) DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE WRITING ON THE FOLLOWING PAGES, EVEN IF OTHERWISE ADVISED.
(b) DO NOT SIGN THIS CREDIT AGREEMENT IF IT CONTAINS ANY BLANK SPACES.
(c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY CREDIT AGREEMENT YOU SIGN.
(d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS CREDIT AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

### PLEASE SIGN BELOW - RETURN THIS Page With Proof of Income and Other Information if applicable
### FAX TO: 800-704-9400

Signature of Borrower _____

Date  05/10/05

2005 MAY 11  A 8:05

In this Credit Agreement, the words "I", "me", "my", and "mine" mean the person who signed this Credit Agreement as Borrower. The words "you", "your", "yours", and "Lender" mean Bank of America, National Association, its successors and assigns, and any other holder of this Credit Agreement. "School" means the school named at the top of the first page of this Credit Agreement.

**A. PROMISE TO PAY:** I promise to pay to you the Loan Amount Requested shown on the first page of this Credit Agreement, to the extent it is advanced to me or paid on my behalf, and any Loan Origination Fee added to my loan (see Paragraph F) (together, the "Principal Sum"), interest on such Principal Sum, interest on any unpaid interest added to the Principal Sum and late fees (see Paragraph E.7).

**B. IMPORTANT – READ THIS CAREFULLY:**

1. When you receive my signed Credit Agreement, you are not agreeing to lend me money. If you decide to make a loan to me, you will electronically transfer the loan funds to the School for me, mail a loan check to the School for me, or mail a loan check directly to me. You have the right to not make a loan or to lend an amount less than the Loan Amount Requested. I agree to accept an amount less than the Loan Amount Requested and to repay that portion of the Loan Amount Requested that you actually lend to me. You have the right to disburse my loan through an agent. At your option, you may also make any loan check co-payable to me and the School.

2. **HOW I AGREE TO THE TERMS OF THIS LOAN.** By signing this Credit Agreement, and submitting it to the Lender, I am requesting that you make this loan to me in an amount equal to the Loan Amount Requested plus any Loan Origination Fee described in Paragraph F of this Credit Agreement. If you approve this request and agree to make this loan, you will notify me in writing and provide me with a Disclosure Statement, as required by law, at the time the loan proceeds are disbursed. The Disclosure Statement is incorporated herein by reference and made a part hereof. The Disclosure Statement will tell me the amount of the loan which you have approved, the amount of the Loan Origination Fee, and other important information. I will let you know that I agree to the terms of the loan as set forth in this Credit Agreement and in the Disclosure Statement by doing either of the following: (a) endorsing the check that disburses the loan proceeds; or (b) using or allowing the loan proceeds to be used on my behalf without objection. Upon receipt of the Disclosure Statement, I will review the Disclosure Statement and notify you in writing if I have any questions. If I am not satisfied with the terms of my loan as disclosed in the Disclosure Statement, I may cancel my loan. To cancel my loan, I will give you a written cancellation notice within ten (10) days after I received the Disclosure Statement. If loan proceeds have been disbursed, I agree that I will immediately return the loan proceeds to you, will not endorse any check which disburses the loan proceeds and will instruct the School to return any loan proceeds to you. If I give notice of cancellation but do not comply with the requirements of this Paragraph B.2, this Credit Agreement will not be canceled and I will be in default of this Credit Agreement. (See Paragraph I.)

**C. DEFINITIONS:**

1. "Disbursement Date" means the date or dates on which you lend money to me in consideration for my Credit Agreement and will be the date(s) shown on any loan check you prepare or the date(s) you initiate any electronic funds transfer.

2. The "Deferment Period" will begin on the Disbursement Date and end on the Deferment End Date.

3. "Deferment End Date" means the date specified below for the applicable loan program (the applicable loan program is stated on the first page of this Credit Agreement).

(a) *Undergraduate Alternative Loan Program:* If I have elected the "Immediate Repayment" option (the applicable repayment option is stated on the first page of this Credit Agreement), there is no Deferment Period, and my first payment will be 30-60 days after the disbursement of my loan. If I have elected the "Interest Only" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then interest payments will begin 30-60 days after the disbursement of my loan, the "Deferment End Date" will be the date the Student graduates or ceases to be enrolled at least half-time in the School (or another school participating in this loan program), and principal and interest payments will begin 30-60 days after that date. In any event, if I have elected the "Interest Only" repayment option, the Deferment End Date will be no more than 5 years after the Disbursement Date. If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then the "Deferment End Date" will be 180 days after the Student graduates or ceases to be enrolled at least half-time in the School (or another school participating in this Loan Program). In any event, if I have elected the "Full Deferral" repayment option, the Deferment End Date will be no more than 5½ years after the Disbursement Date.

(b) *Graduate Professional Education Loan Program:* 180 days after the Student graduates or ceases for any other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 4½ years after the Disbursement Date; provided, however, that if the Student begins a medical residency or internship during the Deferment Period, then the Deferment Period will end 180 days after the day the residency or internship ends, but no more than 8½ years after the Disbursement Date.

(c) *Health Professions Education Loan Program:* 270 days after the Student graduates or ceases for any other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 5 ¼ years after the Disbursement Date; provided, however, that if the Student begins a medical

residency or internship during the Deferment Period, then the Deferment Period will end 270 days after the day the residency or internship ends, but no more than 10 ¼ years after the Disbursement Date.

(d) *Residency Loan Program:* 270 days after the Disbursement Date.

4. The "Repayment Period" begins the day after the Deferment Period ends. If there is no Deferment Period for my loan, the Repayment Period will begin when my loan is fully disbursed. The Repayment Period is 20 years unless monthly payments equal to the minimum monthly payment amount (See Paragraph E.4) will repay all amounts owed in less than 20 years, in which case the Repayment Period will be the number of months necessary to pay in full the amount I owe at the minimum payment.

**D. INTEREST:**

1. Accrual – Beginning on the Disbursement Date, interest will be calculated at the Variable Rate (Paragraph D.2) and charged on the Principal Sum, and on any unpaid interest later added to the Principal Sum according to Paragraph D.3. During the Repayment Period, interest will be calculated at the Variable Rate and charged on the outstanding balance of this Credit Agreement until all amounts are paid in full. Interest will be calculated on a daily simple interest basis. The daily interest rate will be equal to the annual interest rate in effect on that day, divided by the number of days in that calendar year.

2. Variable Rate – The "Variable Rate" is equal to the Current Index plus or minus a Margin. The Margins for both the Deferment Period and the Repayment Period are shown on the first page of this Credit Agreement. In no event will the Variable Rate exceed the maximum interest rate allowed by the laws of the State of California. The Variable Rate will change quarterly on the first day of each January, April, July and October (the "Change Date(s)") if the Current Index changes. The "Current Index" for any calendar quarter beginning on a Change Date (or for any shorter period beginning on the Disbursement Date and ending on the last day of a calendar quarter) is based on the one-month London Interbank Offered Rate ("LIBOR") as published in the "Money Rates" section of *The Wall Street Journal*. The index for each calendar quarter (or for any shorter period beginning on a Disbursement Date and ending on the last day of a calendar quarter) will equal the average of the LIBOR rates published on the first business day of each of the three (3) immediately preceding calendar months, rounded to the nearest one-hundredth percent (0.01%). If *The Wall Street Journal* is not published or the Current Index is not given on that date, then the Current Index will be determined by using the immediately preceding published Current Index. If the Current Index is no longer available, you will choose a comparable index.

3. Capitalization – If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), I am not obligated to make any payments until the loan enters the Repayment Period. You will add unpaid accrued interest to the principal loan balance as of the last day of each calendar quarter (the last day of December, March, June and September) during the Deferment Period and at the end of my Deferment Period. Interest that is added to principal is called "Capitalized" interest. Capitalized interest will be treated as principal. In addition, if I am in default and the loan has been sold to TERI (see Section L.11), TERI may capitalize accrued and unpaid interest as of the date it purchases my loan. I understand that you will add all accrued and unpaid interest to the principal balance of my loan on the last day of the Deferment Period and at the end of any forbearance period.

**E. TERMS OF REPAYMENT:**

1. Deferment Period – If I have elected either the "Interest Only" repayment option or the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), you will send me statements during the Deferment Period (showing the total outstanding principal balance of my loan and the interest that has accrued on my loan). Statements will be sent to the address shown on your records. If I have elected the "Interest Only" repayment option, I agree to make payments each month during the Deferment Period equal to the accrued interest on the outstanding balance of this Credit Agreement. If I have elected the "Full Deferral" repayment option I may, but am not required to make payments during the Deferment Period. You will add any interest that I do not pay during the Deferment Period to the principal balance, as described in Paragraph D.3.

2. Repayment Period – During the Repayment Period, you will send me monthly statements that show the amounts of minimum monthly payments and the payment due dates. I will make consecutive monthly payments in amounts at least equal to such minimum monthly payments by the applicable payment due dates until I have paid all of the principal and interest and any other charges I may owe under this Credit Agreement. If my loan is in paid-ahead status, I may, but will not be required to, make monthly payments.

3. Repayment Terms – My monthly payment will be established based on the rules in this Credit Agreement when my Repayment Period begins. My monthly payment amount will be calculated as of the day the Repayment Period begins ("Repayment Date"). It will be recalculated (a) once each year prior to the anniversary of the Repayment Date, (b) if the Variable Rate changes between anniversaries of the Repayment Date to the extent that the amount of my monthly payment would not pay in full the accrued monthly interest on my loan, (c) following any subsequent deferment or forbearance period or (d) following any request by the Borrower to the servicer to change the monthly payment due date (each of which events is a new "Repayment Date"). As of any Repayment Date, my monthly payment will be recalculated. My new monthly payment amount will be disclosed to me by the servicer. The new monthly repayment amount will equal the amount necessary to pay in full, over the number of months remaining in the Repayment Period, the amount I owe in equal monthly

installments of principal and interest at the Variable Rate in effect at the time of the calculation. I understand that this may result in a reduction or increase in my monthly payment as calculated as of each Repayment Date. I understand that during the Repayment Period (and, if I have elected the "Interest Only" payment option, during the period of interest payments) the servicer may change the monthly payment due date of future payments to a later date for the convenience of the servicer in processing payments or in order to coordinate the due dates of all of my loans processed by the servicer.

4. Minimum Repayment – Notwithstanding Paragraph E.3, I agree to pay at least $25 each month during the Repayment Period or the unpaid balance whichever is less. I understand that I may pay more than my monthly payment at any time without penalty or charge. If my loan is in paid-ahead status, I may, but will not be required to, make monthly payments.

5. Amounts Owing at the End of the Repayment Period – Since interest accrues daily upon the unpaid principal balance of my loan, if I make payments after my payment due dates, I may owe additional interest. If I have not paid my late fees, I will also owe additional amounts for those late fees. In such cases you will increase the amount of my last monthly payment to the amount necessary to repay my loan in full.

6. Payments – Payments will be applied first to late fees, other fees and charges, accrued interest, and the remainder to principal.

7. Other Charges - if any part of a monthly payment remains unpaid for a period of more than 15 days after the payment due date, I will pay a late fee not exceeding $5.00 or 5% of the overdue payment amount, whichever is less. To the extent permitted by law, I agree to pay you all amounts you incur in enforcing the terms of this Credit Agreement, including reasonable collection agency and attorney's fees and court costs and other collection costs.

F. LOAN ORIGINATION FEE: If you charge me, I will pay you a Loan Origination Fee at the time my loan is disbursed. The dollar amount of any Loan Origination Fee will be determined by multiplying the sum of the Loan Origination Fee and the Loan Amount Requested, to the extent advanced to me, times the Loan Origination Fee Percentage shown on the first page of this Credit Agreement. The percentage would be higher if computed only on the amount advanced rather than the entire principal amount (Loan Origination Fee plus Loan Amount Requested). For example, a nominal Loan Origination Fee of 6.5% on the entire principal amount would equal 6.9519% of the amount advanced. The Loan Origination Fee I will pay, if any, will be shown on my Disclosure Statement and will be added to the principal amount of my loan. To the extent permitted by law, and unless I timely cancel this Credit Agreement (see Paragraph B.2), I will not be entitled to a refund of any Loan Origination Fee after my loan has been disbursed.

G. RIGHT TO PREPAY: I have the right to prepay all or any part of my loan at any time without penalty.

H. FORBEARANCE: If I am unable to repay my loan in accordance with the terms established under this Credit Agreement, I may request that you modify these terms. I understand that such modification would be at your option. I understand that I will remain responsible for all interest accruing during any period of forbearance and that you will add any interest that I do not pay during any forbearance period to the principal balance, as described in Paragraph D.5.

I. WHOLE LOAN DUE: To the extent permitted by applicable law, I will be in default and you have the right to give me notice that the whole outstanding principal balance, accrued interest, and all other amounts payable to you under the terms of this Credit Agreement, are due and payable at once (subject to any applicable law which may give me a right to cure my default) if: (1) I fail to make any monthly payment to you when due, (2) I die, (3) I break any of my other promises in this Credit Agreement, (4) Any bankruptcy proceeding is begun by or against me, or I assign any of my assets for the benefit of my creditors, or (5) I make any false written statement in applying for this loan or any other student or education loan or at any time during the Deferment or Repayment Periods. If I default, I will be required to pay interest on this loan accruing after default. The interest rate after default will be subject to adjustment in the same manner as before default. Upon default, you may also capitalize any interest and fees (i.e., add accrued and unpaid interest and fees to the principal balance), and increase the Margin used to compute the Variable Rate by two percentage points (2%).

J. NOTICES:

1. I will send written notice to you, or any subsequent holder of this Credit Agreement, within ten days after any change in my name, address, or enrollment status (for example, if I withdraw from the School or transfer to another school participating in this loan program).

2. Any notice required to be given to me by you will be effective when mailed by first class mail to the latest address you have for me.

K. INFORMATION:

1. I must update the information I provided to you whenever you ask me to do so.

2. I authorize you from time to time to request and receive from others credit related information about me (and about my spouse if I live in a community property state).

L. ADDITIONAL AGREEMENTS:

1. I understand that you are located in California and that this Credit Agreement will be entered into in the same state. CONSEQUENTLY, THE PROVISIONS OF THIS CREDIT AGREEMENT WILL BE GOVERNED BY FEDERAL LAW AND THE LAWS OF THE STATE OF CALIFORNIA, WITHOUT REGARD TO CONFLICT OF LAW RULES.

2. The proceeds of this loan will be used only for my educational expenses at the School.

3. My responsibility for paying the loan evidenced by this Credit Agreement is unaffected by the liability of any other person to me or by your failure to notify me that a required payment has not been made. Without losing any of your rights under this Credit Agreement you may accept (a) late payments, (b) partial payments or (c) payments marked "paid in full" or with other restrictions. You may delay, fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise the right at any future time, or on any future occasion. You will not be obligated to make any demand upon me, send me any notice, present this Credit Agreement to me for payment or make protest of non-payment to me before suing to collect on this Credit Agreement if I am in default, and to the extent permitted by applicable law, I hereby waive any right I might otherwise have to require such actions. I WILL NOT SEND YOU PAYMENTS MARKED "PAID IN FULL", "WITHOUT RECOURSE" OR WITH OTHER SIMILAR LANGUAGE UNLESS THOSE PAYMENTS ARE MARKED FOR SPECIAL HANDLING AND SENT TO THE ADDRESS IDENTIFIED FOR SUCH PAYMENTS ON MY BILLING STATEMENT, OR TO SUCH OTHER ADDRESS AS I MAY BE GIVEN IN THE FUTURE.

4. I may not assign this Credit Agreement or any of its benefits or obligations. You may assign this Credit Agreement at any time.

5. The terms and conditions set forth in this Credit Agreement and Instructions and the Disclosure Statement constitute the entire agreement between you and me.

6. If any provision of this Credit Agreement is held invalid or unenforceable, that provision shall be considered omitted from this Credit Agreement without affecting the validity or enforceability of the remainder of this Credit Agreement.

7. A provision of this Credit Agreement may only be modified if jointly agreed upon in writing by you and me. Any modification will not affect the validity or enforceability of the remainder of this Credit Agreement.

8. To the extent permitted by law, you have the right to apply money from any of my deposit account(s) with you to pay all or a portion of any amount overdue under this Credit Agreement. I hereby authorize you to obtain from the School all amounts which may be owed to me by the School, including any refund due to overpayment, early termination of enrollment, or otherwise.

9. All dollar amounts stated in this Credit Agreement are in United States dollars. I will make all payments in United States Dollars with no deduction for currency exchange.

10. If I fail to complete the education program paid for with this loan, I am not relieved of any obligation within or pursuant to this Credit Agreement.

11. I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523 (a) (8) of the United States Bankruptcy Code. Specifically, I understand that you have purchased a guaranty of this loan, and that this loan is guaranteed by The Education Resources Institute, Inc. ("TERI"), a non-profit institution.

12. I authorize any school that I may attend to release to you, and any other persons designated by you, any requested information pertinent to this loan (e.g., enrollment status, prior loan history, and current address).

13. I authorize the Lender, any subsequent holder of this Credit Agreement, and their agents (including TERI) to: (1) advise the School of the status of my application and my loan, (2) respond to inquiries from prior or subsequent lenders or holders with respect to my Credit Agreement and related documents, (3) release information and make inquiries to the persons I have given you as references, for the purposes of learning my current address and telephone number, (4) check my credit and employment history and to answer questions about their credit experience with me, and (5) retain for use in any future transaction with the Borrower all information (including status information and non-public personal information) of the Borrower provided in connection with this Credit Agreement.

14. Waiver by Lender: You waive (give up) any right to claim a security interest in any property to secure this Credit Agreement. This does not affect any right to offset as a matter of law.

15. If I fax my signature(s) on the first page of this Credit Agreement back to you and keep the copy I signed, I understand that under federal law the fax you receive will be an original of the first page of this Credit Agreement. You and I agree that all copies of this Credit Agreement (including the fax you receive and the copy I retain), taken together, shall constitute a single original agreement.

16. If I elect to sign electronically an electronic record of this Credit Agreement, then the following will apply as between Lender and me: (a) Lender will keep a non-modifiable electronic record of this document and provide a copy to me upon request, (b) I can and have downloaded and/or printed a copy of this document for my records or notified the Lender to mail me a copy of this document, and (c) the Lender's electronic record of this document and any printout from that record shall be an original for all purposes, including any lawsuit to collect amounts that I owe.

M. DISCLOSURE NOTICES

**ALL APPLICANTS:**
**IMPORTANT FEDERAL LAW NOTICE—**

*Important information about procedures for opening a new account:*
To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.

**What this means for you:**
When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

CALIFORNIA RESIDENTS: I have the right to prohibit the use of information contained in my credit file in connection with transactions not initiated by me. I may exercise this right by notifying the consumer credit reporting agency. A married applicant may apply for a separate account. If you take any adverse action as defined by Section 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, I have the right to obtain within 60 days a free copy of my consumer credit report from the consumer reporting agency who furnished you my consumer credit report and from any other consumer credit reporting agency which compiles and maintains files on consumers on a nationwide basis. I have the right as described by Section 1785.16 of the California Civil Code to dispute the accuracy or completeness of any information in a consumer credit report furnished by the consumer credit reporting agency.
CALIFORNIA AND UTAH RESIDENTS: As required by California and Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations.
IOWA, KANSAS AND NEBRASKA RESIDENTS [For purposes of the following notice, the word "you" refers to the Borrower, not the Lender]: NOTICE TO CONSUMER. This is a consumer credit transaction. 1. DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THIS CREDIT AGREEMENT. 2. YOU ARE ENTITLED TO A COPY OF THIS CREDIT AGREEMENT. 3. YOU MAY PREPAY THE UNPAID BALANCE AT ANY TIME WITHOUT PENALTY AND MAY BE ENTITLED TO A REFUND OF UNEARNED CHARGES IN ACCORDANCE WITH LAW.
MARYLAND RESIDENTS: You elect Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland only to the extent not inconsistent with 12 U.S.C. § 85 and related regulations and opinions, which you expressly reserve.
**MISSOURI RESIDENTS: Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect me (borrower(s)) and you (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**
NEVADA RESIDENTS: This is a loan for study.
NEW JERSEY RESIDENTS: The section headings of this Credit Agreement are a table of contents and not contract terms. Portions of this Credit Agreement with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Credit Agreement, acts or practices (i) by you which are or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law.
NEW YORK, RHODE ISLAND AND VERMONT RESIDENTS: A consumer report (credit report) may be obtained from a consumer-reporting agency (credit bureau) in connection with this loan. If I request (1) I will be informed whether or not consumer reports were obtained, and (2) if reports were obtained, I will be informed of the names and addresses of the credit bureaus that furnished the reports. If you agree to make this loan to me, a consumer credit report may be requested or used in connection with renewals or extensions of any credit for which I have applied, reviewing my loan, taking collection action on my loan, or legitimate purposes associated with my loan.
OHIO RESIDENTS: The Ohio laws against discrimination require that all creditors make credit equally available to all credit worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.
WISCONSIN RESIDENTS: For married Wisconsin residents, my signature on this Credit Agreement confirms that this loan obligation is being incurred in the interest of my marriage or family. No provision of any marital property agreement (pre-marital agreement), unilateral statement under Section 766.59 or court decree under Section 766.70 adversely affects the interest of the Lender unless the Lender, prior to the time that the loan is approved, is furnished with a copy of the agreement, statement, or decree or has actual knowledge of the adverse provision when the obligation to the Lender is incurred. If the loan for which I am applying is granted, my spouse will also receive notification that credit has been extended to me.
N. BORROWER'S CERTIFICATION: I declare under penalty of perjury under the laws of the United States of America that the following is true and correct. I certify that all information I provided to you in connection with this loan, including without limitation, the information contained in this Credit Agreement, is true, complete and correct to the best of my knowledge and belief and is made in good faith. I understand that I am responsible for repaying immediately any funds that I receive which are not to be used or are not used for educational expenses related to attendance at the School for the academic period stated. I certify that I am not now in default on a Federal Perkins Loan, a Federal Stafford Loan, a Federally Insured Student Loan, a Federal Supplemental Loan for Students (SLS), a Federal PLUS Loan, an Income Contingent Loan, a Federal Consolidation Loan, a Federal Ford Direct Loan, or any other education loan received for attendance at any school. The legal age for entering into contracts is 18 years of age in every State in the United States except the following: Alabama and Nebraska (19 years old), and Mississippi and Puerto Rico (21 years old). I certify that I meet these state age requirements.

## NOTE DISCLOSURE STATEMENT

$ __33,149.17__
02885471
Loan No.

Borrower(s)    JAVIER MEDINA

Student:    JAVIER MEDINA
Date:    May 16, 2005

JAVIER MEDINA
70088) PO BOX
TULSA, OK 74170

Lender Name and Address:
BANK OF AMERICA, N.A.
600 WILSHIRE BLVD, 4TH FLOOR
LOS ANGELES, CA 90017

This disclosure statement relates to your Loan Note disbursed on    May 16, 2005
Because your Loan is either being disbursed or entering repayment, or the repayment terms are being modified, the following information about your Loan is being given to you

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you | Amount Financed The amount of credit provided to you on on your behalf | Total of Payments The amount you will have paid after you have made all payments as scheduled |
|---|---|---|---|
| 8.341 % | $ 39,376.80 | $ 30,000.00 | $ 69,376.80 |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments are due |
|---|---|---|
| 240 | $ 289.07 | On the 5th day of each month beginning on 11/2006 |
| | | |
| | | |

**VARIABLE RATE:** The Annual Percentage Rate, which is based on an index plus a margin, may increase during the term of the loan if the index rate increases. The index is (check one):

☐ Prime Rate Index Adjusted Monthly - The highest U.S. bank prime rate published in the "Money Rates" section of The Wall Street Journal on the last business day of each calendar month.

☐ Prime Rate Index Adjusted Quarterly - The highest U.S. bank prime rate published in the "Money Rates" section of The Wall Street Journal on the last business day of each calendar quarter.

☒ LIBOR Index Adjusted Quarterly - The average of the one-month London Interbank Offered Rates published in the "Money Rates" section of The Wall Street Journal on the first business day of each of the three (3) calendar months immediately preceding the first day of each calendar quarter.

Any increase in the index and the Annual Percentage Rate which occurs while principal payments are deferred will increase the amount of any current and all future payments. Any increase in the index and the Annual Percentage Rate which occurs while principal and interest payments are deferred will increase the amount of all future payments. Any increase in the index and the Annual Percentage Rate which occurs after you have begun to make principal and interest payments on your loan will increase the amount of your future principal and interest payments beginning with your next annual payment adjustment date. For example, assume you obtain a loan in your junior year, in the amount of $10,000, at an interest rate of 11%, and you defer principal and interest payments until after your graduation, and the repayment term of the loan is 20 years. If the interest rate increased to 12% on January 1st of your senior year, the interest which accrues while principal and interest payments are deferred will increase by $ 91.04, and your monthly principal and interest payments would increase by $ 9.37.

**SECURITY:** You have given a security interest in all refunds or amounts owed to you at any time by the student's educational institution. Collateral securing other loans with the Lender may also secure this Loan.
**LATE CHARGES:** If a payment is more than 15 days late, you may be charged $5.00 or 5% of the payment, whichever is less. If you default, Lender (or any subsequent holder or any subsequent holder of your Loan Note) may increase the margin used to compute the Annual Percentage Rate by two percentage points (2%).
**PREPAYMENT:** If you pay off early, you will not have to pay a penalty.

See your contract documents for any additional information about non-payment, default, any required repayment in full before the scheduled date, any security interest and prepayment refunds and penalties.

Estimates: All numerical disclosures except the late payment disclosure are estimates.

Principal Amount of Note (Amount Financed plus Prepaid Finance Charge)    $ __33,149.17__

Itemization of Amount Financed
Amount paid to   JAVIER MEDINA    $ __30,000.00__
Amount paid to    $ _____
Total Amount Financed    $ __30,000.00__

Itemization of Prepaid Finance Charge
Origination Fee    $ __3,149.17__
Total Prepaid Finance Charge(s)    $ __3,149.17__

# DEPOSIT AND SALE AGREEMENT
## THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-2

This Deposit and Sale Agreement (the "Sale Agreement"), dated as of June 9, 2005, between The National Collegiate Funding LLC, in its capacity as seller (in such capacity, the "Seller"), and The National Collegiate Student Loan Trust 2005-2, as purchaser (the "Purchaser"), shall be effective upon execution by the parties hereto.

WHEREAS, the Seller is the owner of certain student loans; and

WHEREAS, the Seller desires to sell its interest in such student loans and the Purchaser desires to purchase such loans from the Seller.

NOW, THEREFORE, in connection with the mutual promises contained herein, the parties hereto agree as follows:

## ARTICLE I
## TERMS

This Sale Agreement sets forth the terms under which the Seller is selling and the Purchaser is purchasing the student loans listed on Schedule 2 to each of the Pool Supplements set forth on Schedule A attached hereto (the "Transferred Student Loans").

## ARTICLE II
## DEFINITIONS

Capitalized terms used but not otherwise defined herein shall have the definitions set forth in Appendix A of the Indenture dated as of June 1, 2005 between U.S. Bank National Association (the "Indenture Trustee") and the Purchaser.

## ARTICLE III
## SALE AND PURCHASE

Section 3.01. Sale of Loans. The Seller hereby sells and the Purchaser hereby purchases the Transferred Student Loans.

Section 3.02. Assignment of Rights. The Seller hereby assigns to the Purchaser and the Purchaser hereby accepts all of the Seller's rights and interests under each of the Pool Supplements listed on Schedule A attached hereto and the related Student Loan Purchase Agreements listed on Schedule B attached hereto.

Section 3.03. Settlement of the Payment. The Purchaser shall pay the Seller the purchase price set forth in Schedule 1 of each of the Pool Supplements by wire transfer in immediately available funds to the account specified by the Seller. In addition, the Purchaser will also issue the Class A-5 Notes and Class A-IO Notes to the Seller pursuant to the Indenture.

Section 3.04.  Assistance by Seller.  Following the execution of this Sale Agreement, the Seller shall provide any reasonable assistance requested by the Purchaser in determining that all required documentation on the Transferred Student Loans is present and correct.

## ARTICLE IV
## REPRESENTATIONS, WARRANTIES AND COVENANTS OF SELLER

Section 4.01.  General.  The Seller represents and warrants to the Purchaser that as of the date of this Sale Agreement:

(a)    The Seller is duly organized and existing under the laws of the State of Delaware; and

(b)    The Seller has all requisite power and authority to enter into and to perform the terms of this Sale Agreement.

Section 4.02.  Loan Representations.  The Seller represents and warrants to the Purchaser that with respect to each Transferred Student Loan purchased by the Purchaser pursuant to this Sale Agreement, the Seller is making the same representations and warranties made by the respective program lender with respect to each Transferred Student Loan pursuant to the respective Student Loan Purchase Agreement listed on Schedule B attached hereto.

Section 4.03.  Covenants.  The Seller, in its capacity as purchaser of the Transferred Student Loans pursuant to the Pool Supplements, hereby covenants that it will enforce the covenants and agreements of each program lender in the respective Student Loan Purchase Agreement and related Pool Supplement.  The Seller further covenants that it will not waive, amend, modify, supplement or terminate any Student Loan Purchase Agreement or Pool Supplement or any provision thereof without the consent of the Purchaser, which consent the Purchaser hereby agrees not to provide without the prior written consent of the Indenture Trustee and the Interested Noteholders in accordance with the Purchaser's covenant in Section 3.07(c) of the Indenture.

## ARTICLE V
## PURCHASE OF LOANS; REIMBURSEMENT

Each party to this Sale Agreement shall give notice to the other such parties and to the Servicers, First Marblehead Data Services, Inc. and Delaware Trust Company, National Association (the "Owner Trustee") promptly, in writing, upon the discovery of any breach of the Seller's representations and warranties made pursuant to this Sale Agreement which has a materially adverse effect on the interest of the Purchaser in any Transferred Student Loan.  In the event of such a material breach, the Seller shall cure or repurchase the Transferred Student Loan in accordance with the remedies set forth in the respective Student Loan Purchase Agreement.

## ARTICLE VI
## LIABILITY OF SELLER; INDEMNITIES

The Seller shall be liable in accordance herewith only to the extent of the obligations specifically undertaken by the Seller under this Sale Agreement.

2

(a)    The Seller shall indemnify, defend and hold harmless the Purchaser and the Owner Trustee in its individual capacity and their officers, directors, employees and agents from and against any taxes that may at any time be asserted against any such Person with respect to the transactions contemplated herein and in the other Basic Documents (except any such income taxes arising out of fees paid to the Owner Trustee), including any sales, gross receipts, general corporation, tangible and intangible personal property, privilege or license taxes and costs and expenses in defending against the same.

(b)    The Seller shall indemnify, defend and hold harmless the Purchaser and the Owner Trustee in its individual capacity and their officers, directors, employees and agents of the Purchaser and the Owner Trustee from and against any and all costs, expenses, losses, claims, damages and liabilities arising out of, or imposed upon such Person through, the Seller's willful misfeasance, bad faith or gross negligence in the performance of its duties under this Sale Agreement, or by reason of reckless disregard of its obligations and duties under this Sale Agreement.

Indemnification under this Section shall survive the termination of this Sale Agreement and shall include reasonable fees and expenses of counsel and expenses of litigation. If the Seller shall have made any indemnity payments pursuant to this Section and the Person to or for the benefit of whom such payments are made thereafter shall collect any of such amounts from others, such Person shall promptly repay such amounts to the Seller, without interest.

## ARTICLE VII
## MERGER OR CONSOLIDATION OF, OR ASSUMPTION
## OF THE OBLIGATIONS OF SELLER

Any Person (a) into which the Seller may be merged or consolidated, (b) which may result from any merger or consolidation to which the Seller shall be a party or (c) which may succeed to the properties and assets of the Seller substantially as a whole, shall be the successor to the Seller without the execution or filing of any document or any further act by any of the parties to this Sale Agreement; provided, however, that the Seller hereby covenants that it will not consummate any of the foregoing transactions except upon satisfaction of the following: (i) the surviving Person, if other than the Seller, executes an agreement of assumption to perform every obligation of the Seller under this Sale Agreement, (ii) immediately after giving effect to such transaction, no representation or warranty made pursuant to this Sale Agreement shall have been breached, (iii) the surviving Person, if other than the Seller, shall have delivered an Officers' Certificate and an opinion of counsel each stating that such consolidation, merger or succession and such agreement of assumption comply with this Section and that all conditions precedent, if any, provided for in this Sale Agreement relating to such transaction have been complied with, and that the Rating Agency Condition shall have been satisfied with respect to such transaction, (iv) if the Seller is not the surviving entity, such transaction will not result in a material adverse federal or state tax consequence to the Purchaser or the Noteholders and holders of the grantor trust certificates (the "Certificates") (the "Certificateholders", together with the Noteholders, the "Securityholders") and (v) if the Seller is not the surviving entity, the Seller shall have delivered an opinion of counsel either (A) stating that, in the opinion of such counsel, all financing statements and continuation statements and amendments thereto have been executed and filed that are necessary fully to preserve and protect the interest of the Purchaser in

3

the Transferred Student Loans and reciting the details of such filings, or (B) stating that, in the opinion of such counsel, no such action shall be necessary to preserve and protect such interests.

## ARTICLE VIII
## LIMITATION ON LIABILITY OF SELLER AND OTHERS

The Seller and any director or officer or employee or agent thereof may rely in good faith on the advice of counsel or on any document of any kind, prima facie properly executed and submitted by any Person respecting any matters arising hereunder (provided that such reliance shall not limit in any way the Seller's obligations under this Sale Agreement). The Seller shall not be under any obligation to appear in, prosecute or defend any legal action that shall not be incidental to its obligations under this Sale Agreement or the Student Loan Purchase Agreements, and that in its opinion may involve it in any expense or liability.

## ARTICLE IX
## SURVIVAL OF COVENANTS

All covenants, agreements, representations and warranties made herein shall survive the consummation of the purchase of the Transferred Student Loans; provided, however, that to the extent any of the same relate to a corresponding covenant, agreement, representation or warranty contained in a Student Loan Purchase Agreement, the same shall survive to the extent that such corresponding covenant, agreement, representation or warranty survives the applicable Student Loan Purchase Agreement. All covenants, agreements, representations and warranties made or furnished pursuant hereto by or for the benefit of the Seller shall bind and inure to the benefit of any successors or assigns of the Purchaser, including the Indenture Trustee and the Grantor Trustee. This Sale Agreement may be changed, modified or discharged, and any rights or obligations hereunder may be waived, only by a written instrument signed by a duly authorized officer of the party against whom enforcement of any such waiver, change, modification or discharge is sought. The waiver by the Indenture Trustee, at the direction of the Noteholders (pursuant to the Indenture), and the Grantor Trustee, at the direction of the Certificateholders (pursuant to the Grantor Trust Agreement), of any covenant, agreement, representation or warranty required to be made or furnished by the Seller or the waiver by the Indenture Trustee, at the direction of the Noteholders (pursuant to the Indenture), and the Grantor Trustee, at the direction of the Certificateholders (pursuant to the Grantor Trust Agreement), of any provision herein contained shall not be deemed to be a waiver of any breach of any other covenant, agreement, representation, warranty or provision herein contained, nor shall any waiver or any custom or practice which may evolve between the parties in the administration of the terms hereof, be construed to lessen the right of the Indenture Trustee, at the direction of the Noteholders (pursuant to the Indenture), and the Grantor Trustee, at the direction of the Certificateholders (pursuant to the Grantor Trust Agreement), to insist upon the performance by the Seller in strict accordance with said terms.

## ARTICLE X
## COMMUNICATION AND NOTICE REQUIREMENTS

All communications, notices and approvals provided for hereunder shall be in writing and mailed or delivered to the Seller or the Purchaser, as the case may be. Notice given in any such

communication, mailed to the Seller or the Purchaser by appropriately addressed registered mail, shall be deemed to have been given on the day following the date of such mailing and shall be addressed as follows:

If to the Purchaser, to:

> The National Collegiate Student Loan Trust 2005-2
> c/o Delaware Trust Company, National Association, as Owner Trustee
> 300 Delaware Avenue, 9th Floor
> Wilmington, Delaware 19801
> Attention: Mr. Sterling C. Correia

If to the Seller, to:

> The National Collegiate Funding LLC
> c/o First Marblehead Data Services, Inc.
> 230 Park Avenue, 10th Floor
> New York, NY 10169
> Attention: Mr. Rob Baron

with a copy to:

> First Marblehead Corporation
> The Prudential Tower
> 800 Boylston Street - 34th Floor
> Boston, MA 02199-8157
> Attention: Mr. Richard P. Zermani

or to such other address as either party shall have provided to the other parties in writing. Any notice required to be in writing hereunder shall be deemed given if such notice is mailed by certified mail, postage prepaid, or hand-delivered to the address of such party as provided above.

## ARTICLE XI
## AMENDMENT

This Sale Agreement may be amended by the parties hereto without the consent of the related Securityholders for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of the Sale Agreement or of modifying in any manner the rights of such Securityholders; provided that such action will not, in the opinion of counsel satisfactory to the Indenture Trustee and the Grantor Trustee, materially affect the interest of any such Securityholder.

In addition, this Sale Agreement may also be amended from time to time by the Seller and the Purchaser, with the consent of the Noteholders of the Notes evidencing a majority of the Outstanding Amount of the Notes and the consent of the Certificateholders of the Certificates evidencing a majority of the outstanding principal amount of the Certificates, for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this

Sale Agreement or of modifying in any manner the rights of the Noteholders or the Certificateholders, respectively; provided, however, that no such amendment shall (a) increase or reduce in any manner the amount of, or accelerate or delay the time of, collections of payments with respect to Transferred Student Loans or distributions that shall be required to be made for the benefit of the Securityholders or (b) reduce the aforesaid percentage of the Outstanding Amount of the Notes or the Certificates, the Noteholders or the Certificateholders of which are required to consent to any such amendment, without the consent of all outstanding Noteholders or Certificateholders, respectively.

Promptly after the execution of any such amendment or consent (or, in the case of the Rating Agencies, five Business Days prior thereto), the Purchaser shall furnish written notification of the substance of such amendment or consent to the Indenture Trustee, the Grantor Trustee and each of the Rating Agencies.

It shall not be necessary for the consent of Securityholders pursuant to this Section to approve the particular form of any proposed amendment or consent, but it shall be sufficient if such consent shall approve the substance thereof.

Prior to the execution of any amendment to this Sale Agreement, the Owner Trustee shall be entitled to receive and rely upon an opinion of counsel stating that execution of such amendment is authorized or permitted by this Sale Agreement, the Owner Trustee may, but shall not be obligated to, enter into any such amendment which affects the Owner Trustee's own rights, duties or immunities under this Sale Agreement or otherwise.

## ARTICLE XII
## ASSIGNMENT

The Seller hereby assigns its entire right, title and interest as purchaser under this Sale Agreement and the Student Loan Purchase Agreement thereunder to the Purchaser as of the date hereof and acknowledges that the Purchaser will assign the same, together with the right, title and interest of the Purchaser hereunder, to the Indenture Trustee under the Indenture.

## ARTICLE XIII
## GOVERNING LAW

THIS SALE AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, INCLUDING SECTIONS 5-1401 AND 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW, BUT OTHERWISE WITHOUT REGARD TO CONFLICT OF LAW PRINCIPLES, AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES, HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

## ARTICLE XIV
## LIMITATION OF LIABILITY OF OWNER TRUSTEE

Notwithstanding anything contained herein to the contrary, this instrument has been executed by Delaware Trust Company, National Association, not in its individual capacity but solely in its capacity as Owner Trustee of the Purchaser, and in no event shall Delaware Trust

6

Company, National Association in its individual capacity or any beneficial owner of the Purchaser have any liability for the representations, warranties, covenants, agreements or other obligations of the Purchaser hereunder, as to all of which recourse shall be had solely to the assets of the Purchaser. For all purposes of this Sale Agreement, in the performance of any duties or obligations of the Purchaser hereunder, the Owner Trustee shall be subject to, and entitled to the benefits of, the terms and provisions of Articles VIII, IX and X of the Trust Agreement.

[Signature Pages Follow]

IN WITNESS WHEREOF, the parties hereto have caused this Sale Agreement to be duly executed by their respective officers hereunto duly authorized, as of the day and year first above written.

THE NATIONAL COLLEGIATE FUNDING LLC, as Seller

By: GATE Holdings, Inc., Member

By: _____

Name: Stephen Anbinder
Title: President


THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-2, as Purchaser

By:    Delaware Trust Company, National Association, not in its individual capacity but solely as Owner Trustee


By: _____

Name: Sterling C. Correia
Title: Vice President

IN WITNESS WHEREOF, the parties hereto have caused this Sale Agreement to be duly executed by their respective officers hereunto duly authorized, as of the day and year first above written.

THE NATIONAL COLLEGIATE FUNDING LLC, as Seller

By: GATE Holdings, Inc., Member

By:_____
    Name: Stephen Anbinder
    Title: President


THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-2, as Purchaser

By:    Delaware Trust Company, National Association, not in its individual capacity but solely as Owner Trustee

By:_____
    Name: Sterling C. Correia
    Title: Vice President

Deposit and Sale Agreement

## SCHEDULE A
### *Pool Supplements*

Each of the following Pool Supplements was entered into by and among The First Marblehead Corporation, The National Collegiate Funding LLC and:

- Bank of America, N.A., dated June 9, 2005, for loans that were originated under Bank of America's BAGEL Loan Program, CEDU Loan Program, Direct to Consumer Loan Program and ISLP Loan Program.
- Bank One, N.A., dated June 9, 2005, for loans that were originated under Bank One's CORPORATE ADVANTAGE Loan Program, EDUCATION ONE Loan Program and M&T REFERRAL Loan Program.
- Charter One Bank, N.A., dated June 9, 2005, for loans that were originated under the following Charter One programs: AAA Southern New England Bank, AES EducationGAIN Loan Program, (AMS) TuitionPay Diploma Loan Program, Brazos Alternative Loan Program, CFS Direct to Consumer Loan Program, Citibank Flexible Education Loan Program, College Loan Corporation Loan Program, Comerica Alternative Loan Program, Custom Educredit Loan Program, Edfinancial Loan Program, Education Assistance Services Loan Program, ESF Alternative Loan Program, Extra Credit II Loan Program (North Texas Higher Education), M&I Alternative Loan Program, National Education Loan Program, Navy Federal Alternative Loan Program, NextStudent Alternative Loan Program, NextStudent Private Consolidation Loan Program, PNC Bank Resource Loan Program, SAF Alternative Loan Program, START Education Loan Program, Southwest Loan Program, WAMU Alternative Student Loan Program, Charter One Referral Loan Program and Axiom Alternative Loan Program.
- Chase Manhattan Bank USA, N.A., dated June 9 2005, for loans that were originated under Chase's Chase Extra Loan Program.
- Citizens Bank of Rhode Island, dated June 9, 2005, for loans that were originated under Citizens Bank of Rhode Island's Compass Bank Loan Program, DTC Loan Program, Navy Federal Referral Loan Program and Xanthus Loan Program.
- First National Bank Northeast, dated June 9, 2005, for loans that were originated under First National Bank Northeast's CASL Undergraduate Loan Program.
- GMAC Bank, dated June 9, 2005, for loans that were originated under GMAC Bank's GMAC Alternative Loan Program.
- HSBC Bank USA, National Association, dated June 9, 2005, for loans that were originated under the HSBC Loan Program.
- The Huntington National Bank, dated June 9, 2005, for loans that were originated under The Huntington National Bank's Huntington Bank Education Loan Program.
- Manufacturers and Traders Trust Company, dated June 9, 2005, for loans that were originated under Manufacturers and Traders Trust Company's M&T Alternative Loan Program.
- PNC Bank, N.A., dated June 9, 2005, for loans that were originated under PNC Bank's PNC Bank Alternative Loan Program.
- Sovereign Bank, dated June 9, 2005, for loans that were originated under Sovereign Bank's Alternative Loan Program.

- SunTrust Bank, dated June 9, 2005, for loans that were originated under SunTrust Bank's SunTrust Alternative Loan Program.

## SCHEDULE B
### *Student Loan Purchase Agreements*

Each of the Note Purchase Agreements, as amended or supplemented, was entered into by and between The First Marblehead Corporation and:

- Bank of America, N.A., dated April 30, 2001, for loans that were originated under Bank of America's BAGEL Loan Program, CEDU Loan Program and ISLP Loan Program.
- Bank of America, N.A., dated June 30, 2003, for loans that were originated under Bank of America's Direct to Consumer Loan Program.
- Bank One, N.A., dated May 1, 2002, for loans that were originated under Bank One's CORPORATE ADVANTAGE Loan Program and EDUCATION ONE Loan Program.
- Bank One, N.A., dated July 26, 2002, for loans that were originated under Bank One's M&T REFERRAL Loan Program
- Charter One Bank, N.A., dated as of December 29, 2003 for loans that were originated under Charter One's AAA Southern New England Bank Loan Program.
- Charter One Bank, N.A., dated October 31, 2003, for loans that were originated under Charter One's AES EducationGAIN Loan Program.
- Charter One Bank, N.A., dated May 15, 2002, for loans that were originated under Charter One's (AMS) TuitionPay Diploma Loan Program.
- Charter One Bank, N.A., dated July 15, 2003, for loans that were originated under Charter One's Brazos Alternative Loan Program.
- Charter One Bank, N.A., dated May 15, 2002, for loans that were originated under Charter One's CFS Direct to Consumer Loan Program.
- Charter One Bank, N.A., dated June 30, 2003, for loans that were originated under Charter One's Citibank Flexible Education Loan Program.
- Charter One Bank, N.A., dated July 1, 2002, for loans that were originated under Charter One's College Loan Corporation Loan Program.
- Charter One Bank, N.A., dated December 4, 2002, for loans that were originated under Charter One's Comerica Alternative Loan Program.
- Charter One Bank, N.A., dated December 1, 2003, for loans that were originated under Charter One's Custom Educredit Loan Program.
- Charter One Bank, N.A., dated May 10, 2004, for loans that were originated under Charter One's Edfinancial Loan Program.
- Charter One Bank, N.A., dated May 15, 2002, for loans that were originated under Charter One's Education Assistance Services Loan Program.
- Charter One Bank, N.A., dated May 15, 2003, for loans that were originated under Charter One's ESF Alternative Loan Program.
- Charter One Bank, N.A., dated September 15, 2003, for loans that were originated under Charter One's Extra Credit II Loan Program (North Texas Higher Education).
- Charter One Bank, N.A., dated September 20, 2003, for loans that were originated under Charter One's M&I Alternative Loan Program.
- Charter One Bank, N.A., dated November 17, 2003, for loans that were originated under Charter One's National Education Loan Program.

- Charter One Bank, N.A., dated May 15, 2003, for loans that were originated under Charter One's Navy Federal Alternative Loan Program.
- Charter One Bank, N.A., dated May 15, 2002, for loans that were originated under Charter One's NextStudent Alternative Loan Program.
- Charter One Bank, N.A., dated March 26, 2004, for loans that were originated under Charter One's NextStudent Private Consolidation Loan Program.
- Charter One Bank, N.A., dated March 17, 2003, for loans that were originated under Charter One's PNC Bank Resource Loan Program.
- Charter One Bank, N.A., dated May 1, 2003, for loans that were originated under Charter One's SAF Alternative Loan Program.
- Charter One Bank, N.A., dated September 20, 2002, for loans that were originated under Charter One's Southwest Loan Program.
- Charter One Bank, N.A., dated March 25, 2004, for loans that were originated under Charter One's START Education Loan Program.
- Charter One Bank, N.A., dated May 15, 2003, for loans that were originated under Charter One's WAMU Alternative Student Loan Program.
- Charter One Bank, N.A., dated February 15, 2005, for loans that were originated under Charter One's Referral Loan Program and Axiom Alternative Loan Program.
- Chase Manhattan Bank USA, N.A., dated September 30, 2003, as amended on March 1, 2004, September 8, 2004 and February 25, 2005, for loans that were originated under Chase's Chase Extra Loan Program.
- Citizens Bank of Rhode Island, dated April 30, 2004, for loans that were originated under Citizens Bank of Rhode Island's Compass Bank Loan Program.
- Citizens Bank of Rhode Island, dated April 30, 2004, for loans that were originated under Citizens Bank of Rhode Island's DTC Alternative Loan Program.
- Citizens Bank of Rhode Island, dated April 30, 2004, for loans that were originated under Citizens Bank of Rhode Island's Navy Federal Referral Loan Program.
- Citizens Bank of Rhode Island, dated April 30, 2004, for loans that were originated under Citizens Bank of Rhode Island's Xanthus Loan Program.
- First National Bank Northeast, dated August 1, 2001, for loans that were originated under First National Bank Northeast's CASL Undergraduate Loan Program.
- GMAC Bank, dated May 30, 2003, as amended on March 1, 2005, for loans that were originated under GMAC Bank's GMAC Alternative Loan Program.
- HSBC Bank USA, National Association, dated April 17, 2002, as amended on June 2, 2003 and August 1, 2003, for loans that were originated under the HSBC Loan Program.
- The Huntington National Bank, dated May 20, 2003, for loans that were originated under The Huntington National Bank's Huntington Bank Education Loan Program.
- Manufacturers and Traders Trust Company, dated April 29, 2004, for loans that were originated under Manufacturers and Traders Trust Company's Alternative Loan Program.
- PNC Bank, N.A., dated April 22, 2004, for loans that were originated under PNC Bank's Alternative Conforming Loan Program.
- Sovereign Bank, dated April 30, 2004, for loans that were originated under Sovereign Bank's Alternative Loan Program.
- SunTrust Bank, dated March 1, 2002, for loans that were originated under SunTrust Bank's SunTrust Alternative Loan Program.

EX-10.15 16 nationalcollegiate_ex10-15.htm POOL SUPPLEMENT

## 2005-2 POOL SUPPLEMENT

This Pool Supplement (the "Supplement") is entered into pursuant to and forms a part of that certain (i) Note Purchase Agreement dated as of April 30, 2001 and (ii) Note Purchase Agreement dated as of June 30, 2003, each as amended or supplemented from the date of execution of the Agreement through the date of this Supplement (together, the "Agreement"), by and between The First Marblehead Corporation and Bank of America, N.A. (the "Program Lender"). This Supplement is dated as of June 9, 2005. Capitalized terms used in this Supplement without definitions have the meanings set forth in the Agreement.

#### Article 1: Purchase and Sale.

In consideration of the Minimum Purchase Price set forth in Schedule 1 attached hereto, the Program Lender hereby transfers, sells, sets over and assigns to The National Collegiate Funding LLC (the "Depositor"), upon the terms and conditions set forth in the Agreement (which are incorporated herein by reference with the same force and effect as if set forth in full herein), each student loan set forth on the attached Schedule 2 (the "Transferred Bank of America Loans") along with all of the Program Lender's rights under the Guaranty Agreement relating to the Transferred Bank of America Loans. The Depositor in turn will sell the Transferred Bank of America Loans to The National Collegiate Student Loan Trust 2005-2 (the "Trust"). The Program Lender hereby transfers and delivers to the Depositor each Note evidencing such Transferred Bank of America Loan and all Origination Records relating thereto, in accordance with the terms of the Agreement. The Depositor hereby purchases said Notes on said terms and conditions.

#### Article 2: Price.

The amounts paid pursuant to this Supplement are the amounts set forth on Schedule 1 attached hereto.

#### Article 3: Representations and Warranties.

##### 3.01. By Program Lender.

The Program Lender repeats the representations and warranties contained in Section 5.02 of the Agreement for the benefit of each of the Depositor and the Trust and confirms the same are true and correct as of the date hereof with respect to the Agreement and to this Supplement.

##### 3.02. By Depositor.

The Depositor hereby represents and warrants to the Program Lender that at the date of execution and delivery of this Supplement by the Depositor:

(a)    The Depositor is duly organized and validly existing as a limited liability company under the laws of the State of Delaware with the due power and authority to own its properties and to conduct its business as such properties are currently owned and such business is presently conducted, and had at all relevant times, and has, the power, authority and legal right to acquire and own the Transferred Bank of America Loans.

(b)     The Depositor is duly qualified to do business and has obtained all necessary licenses and approvals in all jurisdictions in which the ownership or lease of property or the conduct of its business shall require such qualifications.

(c)     The Depositor has the power and authority to execute and deliver this Supplement and to carry out its respective terms; the Depositor has the power and authority to purchase the Transferred Bank of America Loans and rights relating thereto as provided herein from the Program Lender, and the Depositor has duly authorized such purchase from the Program Lender by all necessary action; and the execution, delivery and performance of this Supplement has been duly authorized by the Depositor by all necessary action on the part of the Depositor.

(d)     This Supplement, together with the Agreement of which this Supplement forms a part, constitutes a legal, valid and binding obligation of the Depositor, enforceable in accordance with its terms.

(e)     The consummation of the transactions contemplated by the Agreement and this Supplement and the fulfillment of the terms hereof do not conflict with, result in any breach of any of the terms and provisions of, or constitute (with or without notice or lapse of time) a default under, the governing instruments of the Depositor or any indenture, agreement or other instrument to which the Depositor is a party or by which it is bound; or result in the creation or imposition of any lien upon any of its properties pursuant to the terms of any such indenture, agreement or other instrument; or violate any law or any order, rule or regulation applicable to the Depositor of any court or of any federal or state regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties.

(f)     There are no proceedings or investigations pending, or threatened, before any court, regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties: (i) asserting the invalidity of the Agreement or this Supplement, (ii) seeking to prevent the consummation of any of the transactions contemplated by the Agreement or this Supplement, or (iii) seeking any determination or ruling that is likely to materially or adversely affect the performance by the Depositor of its obligations under, or the validity or enforceability of the Agreement or this Supplement.

<u>Article 4: Cross Receipt.</u>

The Program Lender hereby acknowledges receipt of the Minimum Purchase Price. The Depositor hereby acknowledges receipt of the Transferred Bank of America Loans.

<u>Article 5: Assignment of Origination, Guaranty and Servicing Rights.</u>

The Program Lender hereby assigns and sets over to the Depositor any claims it may now or hereafter have under the Guaranty Agreement, the Origination Agreement and the Servicing Agreement to the extent the same relate to the Transferred Bank of America Loans described in <u>Schedule 2</u>, other than any right to obtain servicing after the date hereof. It is the intent of this provision to vest in the Depositor any claim of the Program Lender relating to defects in origination, guaranty or servicing of the loans purchased hereunder in order to permit the Depositor to assert such claims directly and obviate any need to make the same claims against the Program Lender under this Supplement.

IN WITNESS WHEREOF, the parties have caused this Supplement to be executed as of the date set forth above.

THE FIRST MARBLEHEAD CORPORATION

By: /s/ John A. Hupalo
Name: John A. Hupalo
Title: Executive Vice President

BANK OF AMERICA, N.A.

By: /s/ K L Connor
Name: K L Connor
Title: Senior Vice President

THE NATIONAL COLLEGIATE FUNDING LLC

By: GATE Holdings, Inc., Member

By: /s/ Stephen Anbinder
Name: Stephen Anbinder
Title: President

| National Collegiate Trust Student Loan Trust 2005-2 Master Roster | | | | |
|---|---|---|---|---|
| LENDER_ NAME | MARKETER | LOAN_DESC | BSSN | SEQ |
| BANK OF AMERICA | Bank of America | DTC - Undergraduate | ███ 3085 | 0002 |

| ACTUAL_ MARGIN | RECON_ PRIN | RECON_ INT |
|---|---|---|
| 4.65% | $33,149.17 | $157.37 |

```
ITS2C      3085;;               AES/PA        VTAM NAC6      TSX2D
DATE 11/04/15 09:22:44    LOAN FINANCIAL ACTIVITY         PAGE  1 OF  5

BORROWER SSN:      3085  NAME: MEDINA, JAVIER
1ST DISB: 05/16/05 LN SEQ: 0002  LN PGM: ALPLN    OWN: 122962QC-NCT
GUARANTOR: TERI                  CUST ACCT:  LT06  ORIG BAL:  33,149.17
BOND ISSUE: NCT20052    PD AHEAD:    STATUS: ACTIVE     CURR BAL:      0.00
```

|   | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|---|---------|----------------|-------------|-----------|-------------|------------------|-------------------|
| 1 |         | 12/02/11       | 12/02/11    | 5003A     | 30.00CR     | 0.00             | 0.00              |
| 2 |         | 12/01/11       | 12/01/11    | 1030A     | 52,193.91CR | 194.87           | 0.00              |
| 3 |         | 11/02/11       |             | 2601A     | 5.00        | 201.59           | 50,572.67         |
| 4 |         | 10/03/11       |             | 2601A     | 5.00        | 208.71           | 50,572.67         |
| 5 |         | 09/02/11       |             | 2601A     | 5.00        | 208.74           | 50,572.67         |
| 6 |         | 08/02/11       |             | 2601A     | 5.00        | 202.01           | 50,572.67         |
| 7 |         | 07/03/11       |             | 2601A     | 5.00        | 210.75           | 50,572.67         |
| 8 |         | 06/02/11       |             | 2601A     | 5.00        | 394.57           | 50,572.67         |
| 9 |         | 04/05/11       | 04/08/11    | 7001A     | 0.00        | 698.29           | 50,572.67         |
| 10|         | 12/22/10       | 04/08/11    | 7001A     | 0.00        | 774.90           | 49,874.38         |

```
     SELECTION __


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

Nov 4, 2015 9:23:04 AM

```
ITS2C       3085;;              AES/PA        VTAM NAC6      TSX2D
DATE 11/04/15 09:23:06    LOAN FINANCIAL ACTIVITY        PAGE  2 OF  5

BORROWER SSN:      -3085  NAME: MEDINA, JAVIER
1ST DISB: 05/16/05 LN SEQ: 0002  LN PGM: ALPLN    OWN: 122962QC-NCT
GUARANTOR: TERI              CUST ACCT:  LT06  ORIG BAL: 33,149.17
BOND ISSUE: NCT20052   PD AHEAD:   STATUS: ACTIVE    CURR BAL:      0.00
```

|    | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|----|---------|----------------|-------------|-----------|-------------|------------------|-------------------|
| 1  |         | 08/27/10       | 08/27/10    | 1010C     | 632.00CR    | 165.34           | 48,866.48         |
| 2  |         | 08/02/10       | 08/02/10    | 1010C     | 28.81CR     | 198.41           | 48,866.48         |
| 3  |         | 08/02/10       |             | 2601A     | 1.25        | 0.00             | 48,866.48         |
| 4  |         | 07/03/10       |             | 2601A     | 1.25        | 13.22            | 48,866.48         |
| 5  |         | 07/01/10       | 07/01/10    | 1010C     | 28.81CR     | 189.46           | 48,866.48         |
| 6  |         | 06/02/10       |             | 2601A     | 1.25        | 58.80            | 48,866.48         |
| 7  |         | 05/24/10       | 05/25/10    | 1010C     | 28.81CR     | 137.20           | 48,866.48         |
| 8  |         | 05/03/10       |             | 2601A     | 5.00        | 130.66           | 48,866.48         |
| 9  |         | 04/13/10       | 04/13/10    | 1010C     | 28.81CR     | 78.40            | 48,866.48         |
| 10 |         | 04/01/10       | 04/01/10    | 7001A     | 0.00        | 383.23           | 48,866.48         |

```
        SELECTION __

F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

```
ITS2C      3085;;                 AES/PA      VTAM NAC6      TSX2D
DATE 11/04/15 09:23:29     LOAN FINANCIAL ACTIVITY        PAGE  3 OF  5

BORROWER SSN:      -3085  NAME: MEDINA, JAVIER
1ST DISB: 05/16/05 LN SEQ: 0002  LN PGM: ALPLN      OWN: 122962QC-NCT
GUARANTOR: TERI                  CUST ACCT:  LT06  ORIG BAL:  33,149.17
BOND ISSUE: NCT20052  PD AHEAD:     STATUS: ACTIVE     CURR BAL:      0.00
```

| | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|---|---|---|---|---|---|---|---|
| 1 | | 02/01/10 | 02/01/10 | 7001A | 0.00 | 790.71 | 48,483.25 |
| 2 | | 10/01/09 | 10/02/09 | 7001A | 0.00 | 1,249.22 | 47,692.54 |
| 3 | | 03/25/09 | 03/25/09 | 7001A | 0.00 | 773.69 | 46,443.32 |
| 4 | | 01/01/09 | 01/02/09 | 7001A | 0.00 | 802.99 | 45,669.63 |
| 5 | | 10/01/08 | 11/07/08 | 7001A | 0.00 | 133.83 | 44,866.64 |
| 6 | | 09/16/08 | 11/07/08 | 7001A | 0.00 | 589.89 | 44,732.81 |
| 7 | | 07/11/08 | 11/07/08 | 7001A | 0.00 | 87.86 | 44,142.92 |
| 8 | | 07/01/08 | 11/07/08 | 7001A | 0.00 | 887.61 | 44,055.06 |
| 9 | | 04/01/08 | 11/07/08 | 7001A | 0.00 | 1,013.50 | 43,167.45 |
| 10 | | 01/01/08 | 01/02/08 | 7001A | 0.00 | 1,048.51 | 42,153.95 |

```
     SELECTION __

 F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

```
ITS2C      3085;;              AES/PA       VTAM NAC6      TSX2D
DATE 11/04/15 09:23:38   LOAN FINANCIAL ACTIVITY        PAGE  4 OF  5

BORROWER SSN:        3085  NAME: MEDINA, JAVIER
1ST DISB: 05/16/05 LN SEQ: 0002  LN PGM: ALPLN     OWN: 122962QC-NCT
GUARANTOR: TERI                   CUST ACCT:  LT06  ORIG BAL:  33,149.17
BOND ISSUE: NCT20052   PD AHEAD:     STATUS: ACTIVE     CURR BAL:      0.00
```

|    | REV<br>REA | EFFECTIVE<br>DATE | POSTED<br>DATE | TRAN<br>TYPE | TRAN<br>AMOUNT | INTEREST<br>ACCRUED | PRINCIPAL<br>BALANCE |
|----|-----|-----------|----------|-------|--------|----------|-----------|
| 1  |     | 10/01/07  | 10/01/07 | 7001A | 0.00   | 1,007.65 | 41,105.44 |
| 2  |     | 07/01/07  | 07/02/07 | 7001A | 0.00   | 972.52   | 40,097.79 |
| 3  |     | 04/01/07  | 04/02/07 | 7001A | 0.00   | 939.67   | 39,125.27 |
| 4  |     | 01/01/07  | 01/02/07 | 7001A | 0.00   | 938.82   | 38,185.60 |
| 5  |     | 10/01/06  | 10/02/06 | 7001A | 0.00   | 883.55   | 37,246.78 |
| 6  |     | 07/01/06  | 07/03/06 | 7001A | 0.00   | 813.62   | 36,363.23 |
| 7  |     | 04/01/06  | 04/03/06 | 7001A | 0.00   | 749.11   | 35,549.61 |
| 8  |     | 01/01/06  | 01/03/06 | 7001A | 0.00   | 702.18   | 34,800.50 |
| 9  |     | 10/01/05  | 10/04/05 | 7001A | 0.00   | 647.53   | 34,098.32 |
| 10 |     | 07/01/05  | 07/05/05 | 7001A | 0.00   | 144.25   | 33,450.79 |

```
     SELECTION __

F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

```
   ITS2C      3085;;              AES/PA       VTAM NAC6      TSX2D
   DATE 11/04/15 09:23:50   LOAN FINANCIAL ACTIVITY        PAGE  5 OF  5

BORROWER SSN:      -3085  NAME: MEDINA, JAVIER
1ST DISB: 05/16/05 LN SEQ: 0002  LN PGM: ALPLN    OWN: 122962QC-NCT
GUARANTOR: TERI                  CUST ACCT:  LT06  ORIG BAL: 33,149.17
BOND ISSUE: NCT20052   PD AHEAD:   STATUS: ACTIVE    CURR BAL:     0.00
```

|   | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|---|---------|----------------|-------------|-----------|-------------|------------------|-------------------|
| 1 |         | 06/09/05       | 06/09/05    | 0390A     | 33,306.54   | 0.00             | 33,149.17         |
| 2 |         | 06/09/05       | 06/09/05    | 0395A     | 33,306.54CR | 157.37           | 0.00              |
| 3 |         | 05/16/05       | 05/16/05    | 0101A     | 33,149.17   | 0.00             | 33,149.17         |

```
        SELECTION  __

F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

```
ITS2X     3085;                    AES/PA        VTAM NAC6      TSX2Y
DATE 11/04/15 09:24:04 REPAYMENT SCHEDULE SUMMARY SELECTION    PAGE  1 OF  4

BORROWER SSN     3085    NAME JAVIER MEDINA

          SCHED   INSTALL  REPAY  REPAY  1ST DUE 1ST DISB   LOAN
SEL STA TYPE     AMOUNT   LVLS   TERM    DATE    DATE       PGM       OWNER

 2  I   L        353.64    2     216   05/17/11 05/16/05 ALPLN       NCT




 8  I   L        340.48    2     222   08/17/10 05/16/05 ALPLN       NCT




SELECTION  __


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

Nov 4, 2015 9:24:32 AM

```
 ITS2X        3085;                    AES/PA        VTAM NAC6      TSX2Y
 DATE 11/04/15 09:24:33 REPAYMENT SCHEDULE SUMMARY SELECTION    PAGE  2 OF  4

 BORROWER SSN        3085    NAME JAVIER MEDINA

         SCHED   INSTALL  REPAY  REPAY  1ST DUE 1ST DISB    LOAN
 SEL STA TYPE    AMOUNT   LVLS   TERM    DATE    DATE       PGM       OWNER


 3   I   RP       25.00     3     225   05/17/10 05/16/05 ALPLN       NCT



 8   I   L       330.34     2     226   03/17/10 05/16/05 ALPLN       NCT




 SELECTION   __


 F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

Nov 4, 2015 9:24:42 AM



ITS2X█████3085;                    AES/PA          VTAM NAC6        TSX2Y
DATE 11/04/15 09:24:44 REPAYMENT SCHEDULE SUMMARY SELECTION    PAGE  3 OF  4

BORROWER SSN █████3085    NAME JAVIER MEDINA

|  | | SCHED | INSTALL | REPAY | REPAY | 1ST DUE | 1ST DISB | LOAN | |
| SEL | STA | TYPE | AMOUNT | LVLS | TERM | DATE | DATE | PGM | OWNER |
| 2 | I | L | 319.93 | 2 | 231 | 11/01/09 | 05/16/05 | ALPLN | NCT |
| 8 | I | L | 374.75 | 2 | 237 | 04/24/09 | 05/16/05 | ALPLN | NCT |

SELECTION  __

F1=HELP   F3=EXIT   F5=RFR   F7=BKWD   F8=FWD   F9=PRT   F12=CAN

Nov 4, 2015 9:24:57 AM

```
ITS2X     3085;                  AES/PA          VTAM NAC6      TSX2Y
DATE 11/04/15 09:24:57 REPAYMENT SCHEDULE SUMMARY SELECTION    PAGE  4 OF  4

BORROWER SSN     3085   NAME JAVIER MEDINA

        SCHED   INSTALL  REPAY  REPAY  1ST DUE 1ST DISB   LOAN
SEL STA TYPE    AMOUNT   LVLS   TERM    DATE    DATE      PGM       OWNER

 2  I   L       378.02    2     239   08/18/08 05/16/05 ALPLN      NCT
```

SELECTION  __

F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN

Nov 4, 2015 9:25:07 AM

```
ITS2V    3085;                    AES/PA      VTAM NAC6        TSX2W
DATE 11/04/15 09:32:08    DEFERMENT/FORBEARANCE SUMMARY        PAGE  1 OF  4

BORROWER SSN [    ]-3085   NAME JAVIER MEDINA

    DEFER/FORB    BEGIN    END
    TYPE          DATE     DATE       1ST DISB LOAN PGM        OWNER
    F-BANKRUPT    12/22/10 04/04/11  1 07/19/07 ALPLN    .   NCT
                                     2 06/21/06 ALPLN        NCT
                                     3 04/12/06 ALPLN        NCT
                                     4 08/29/05 ALPLN        NCT
                                     5 05/16/05 ALPLN        NCT
                                     6 07/23/04 ALPLN        NCT
    F-ADMINIST    09/17/10 12/21/10  7 07/19/07 ALPLN        NCT
                                     8 06/21/06 ALPLN        NCT
                                     9 04/12/06 ALPLN        NCT
                                    10 08/29/05 ALPLN        NCT
                                    11 05/16/05 ALPLN        NCT
                                    12 07/23/04 ALPLN        NCT


                              SELECTION __


F1=HELP   F3=EXIT   F5=RFR   F7=BKWD   F8=FWD   F9=PRT   F12=CAN
```

Nov 4, 2015 9:32:28 AM

Case 15-01175-mkn    Doc 99-34    Entered 06/09/16 14:02:26    Page 78 of 240

```
ITS2V   3085;                    AES/PA        VTAM NAC6         TSX2W
DATE 11/04/15 09:28:57    DEFERMENT/FORBEARANCE SUMMARY      PAGE  2 OF  4

BORROWER SSN    -3085    NAME JAVIER MEDINA

  DEFER/FORB      BEGIN    END
     TYPE         DATE     DATE        1ST DISB LOAN PGM      OWNER
   F-ADMINIST   03/01/10 03/31/10   1 07/19/07 ALPLN      NCT
                                    2 06/21/06 ALPLN      NCT
                                    3 04/12/06 ALPLN      NCT
                                    4 08/29/05 ALPLN      NCT
                                    5 05/16/05 ALPLN      NCT
                                    6 07/23/04 ALPLN      NCT
   F-TEMP HRD   10/01/09 01/31/10   7 07/19/07 ALPLN      NCT
                                    8 06/21/06 ALPLN      NCT
                                    9 04/12/06 ALPLN      NCT
                                   10 08/29/05 ALPLN      NCT
                                   11 05/16/05 ALPLN      NCT
                                   12 07/23/04 ALPLN      NCT


                               SELECTION __


  F1=HELP   F3=EXIT   F5=RFR   F7=BKWD   F8=FWD   F9=PRT   F12=CAN
```

```
ITS2V5    3085;              AES/PA        VTAM NAC6      TSX2W
DATE 11/04/15 09:32:41    DEFERMENT/FORBEARANCE SUMMARY    PAGE  3 OF  4

BORROWER SSN       -3085    NAME JAVIER MEDINA

  DEFER/FORB    BEGIN    END
    TYPE        DATE     DATE      1ST DISB LOAN PGM      OWNER
  F-TEMP HRD  04/01/09 09/30/09  1 07/19/07 ALPLN      NCT
                                 2 06/21/06 ALPLN      NCT
                                 3 04/12/06 ALPLN      NCT
                                 4 08/29/05 ALPLN      NCT
                                 5 05/16/05 ALPLN      NCT
                                 6 07/23/04 ALPLN      NCT
  D-SCHL FUL  09/16/08 11/29/10  7 07/19/07 ALPLN      NCT
                                 8 06/21/06 ALPLN      NCT
                                 9 04/12/06 ALPLN      NCT
                                10 08/29/05 ALPLN      NCT
                                11 05/16/05 ALPLN      NCT
                                12 07/23/04 ALPLN      NCT

                        SELECTION __


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

```
ITS2V   3085;                    AES/PA          VTAM NAC6        TSX2W
DATE 11/04/15 09:29:17    DEFERMENT/FORBEARANCE SUMMARY        PAGE  4 OF  4

BORROWER SSN    3085    NAME JAVIER MEDINA

  DEFER/FORB    BEGIN    END
    TYPE        DATE     DATE      1ST DISB LOAN PGM        OWNER
  F-TEMP HRD  08/01/08 01/31/09  1 07/19/07 ALPLN     NCT
                                 2 06/21/06 ALPLN     NCT
                                 3 04/12/06 ALPLN     NCT
                                 4 08/29/05 ALPLN     NCT
                                 5 05/16/05 ALPLN     NCT
                                 6 07/23/04 ALPLN     NCT




                            SELECTION __


  F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

# Loan Payment History Report
## Date: 2015-11-04

| | | | |
|---|---|---|---|
| Account Number: | 3085/002-001000 | | |
| Social Security Number: | 3085 | Product: | DFU DIRECT TO CONSUMER UNDERGRAD |
| Name: | MEDINA, JAVIER | Officer Code: | 777052 |
| Birth Date: | 1979- | School: | SPARTAN COLLEGE OF AERONAUTICS & TECH |
| Address 1: | C/O GOLDSTEIN PHILIP K | Program Year: | 2004-05 |
| Address 2: | 609 S 7TH ST | | |
| City: | LAS VEGAS | Variable Rate Code: | FU LIBOR |
| State: | NV | Interest Rate: | 4.84% |
| Zip Code: | 89101 | Last Payment Date: | 2010-08-27 |
| | | Last Payment Amount: | $632.00 |
| | | Payment Due Date: | 2011-11-17 |
| Contract Date: | 2005-05-16 | Last Interest Date: | 2015-11-04 |
| Date Assigned: | | Accrued Interest: | $9,973.15 |
| Charge Off Date: | 2011-12-01 | Recovered Interest: | $0.00 |
| Charge Off Amount: | $52,193.91 | Net Interest: | $9,973.15 |
| Recovered Principal: | $0.00 | Associated Costs: | $0.00 |
| Net Charge Off: | $52,193.91 | Recovered Costs: | $0.00 |
| Disbursement Date: | 2005-05-16 | Net Costs: | $0.00 |
| Disbursement Amount: | $33,149.17 | | |

## Transaction History

| | | | | | |
|---|---|---|---|---|---|
| System | 2011-12-31 | 00:01 | 82 | $52,193.91 @ 4.850 / 12/01/2011 - 12/31/2011 | $208.06 |
| System | 2012-01-03 | 00:01 | 82 | $52,193.91 @ 4.900 / 12/31/2011 - 01/03/2012 | $20.97 |
| System | 2012-01-31 | 00:01 | 82 | $52,193.91 @ 4.900 / 01/03/2012 - 01/31/2012 | $195.66 |
| System | 2012-02-01 | 00:01 | 82 | $52,193.91 @ 4.900 / 01/31/2012 - 02/01/2012 | $6.99 |
| System | 2012-02-29 | 00:01 | 82 | $52,193.91 @ 4.900 / 02/01/2012 - 02/29/2012 | $195.66 |
| System | 2012-03-01 | 00:01 | 82 | $52,193.91 @ 4.900 / 02/29/2012 - 03/01/2012 | $6.99 |
| System | 2012-03-31 | 00:01 | 82 | $52,193.91 @ 4.900 / 03/01/2012 - 03/31/2012 | $209.63 |
| System | 2012-04-02 | 00:01 | 82 | $52,193.91 @ 4.900 / 03/31/2012 - 04/02/2012 | $13.98 |
| System | 2012-04-30 | 00:01 | 82 | $52,193.91 @ 4.920 / 04/02/2012 - 04/30/2012 | $196.45 |
| System | 2012-05-02 | 00:01 | 82 | $52,193.91 @ 4.920 / 04/30/2012 - 05/02/2012 | $14.03 |
| System | 2012-05-31 | 00:01 | 82 | $52,193.91 @ 4.920 / 05/02/2012 - 05/31/2012 | $203.47 |
| System | 2012-06-01 | 00:01 | 82 | $52,193.91 @ 4.920 / 05/31/2012 - 06/01/2012 | $7.02 |
| System | 2012-06-30 | 00:01 | 82 | $52,193.91 @ 4.920 / 06/01/2012 - 06/30/2012 | $203.47 |
| System | 2012-07-01 | 00:01 | 82 | $52,193.91 @ 4.920 / 06/30/2012 - 07/01/2012 | $7.02 |
| System | 2012-07-02 | 00:01 | 82 | $52,193.91 @ 4.890 / 07/01/2012 - 07/02/2012 | $6.97 |
| System | 2012-07-31 | 00:01 | 82 | $52,193.91 @ 4.890 / 07/02/2012 - 07/31/2012 | $202.23 |

| System | 2012-08-01 | 00:01 | 82 | $52,193.91 @ 4.890 / 07/31/2012 - 08/01/2012 | $6.97 |
|--------|-----------|-------|----|---------------------------------------------|-------|
| System | 2012-08-31 | 00:01 | 82 | $52,193.91 @ 4.890 / 08/01/2012 - 08/31/2012 | $209.20 |
| System | 2012-09-04 | 00:01 | 82 | $52,193.91 @ 4.890 / 08/31/2012 - 09/04/2012 | $27.89 |
| System | 2012-09-30 | 00:01 | 82 | $52,193.91 @ 4.890 / 09/04/2012 - 09/30/2012 | $181.31 |
| System | 2012-10-01 | 00:01 | 82 | $52,193.91 @ 4.890 / 09/30/2012 - 10/01/2012 | $6.97 |
| System | 2012-10-31 | 00:01 | 82 | $52,193.91 @ 4.890 / 10/01/2012 - 10/31/2012 | $209.20 |
| System | 2012-11-09 | 00:01 | 82 | $52,193.91 @ 4.890 / 10/31/2012 - 11/09/2012 | $62.76 |
| System | 2012-12-03 | 00:01 | 82 | $52,193.91 @ 4.890 / 11/09/2012 - 12/03/2012 | $167.36 |
| System | 2012-12-05 | 00:01 | 82 | $52,193.91 @ 4.890 / 12/03/2012 - 12/05/2012 | $13.95 |
| System | 2012-12-11 | 00:01 | 82 | $52,193.91 @ 4.890 / 12/05/2012 - 12/11/2012 | $41.84 |
| System | 2012-12-17 | 00:01 | 82 | $52,193.91 @ 4.890 / 12/11/2012 - 12/17/2012 | $41.84 |
| System | 2012-12-18 | 00:01 | 82 | $52,193.91 @ 4.890 / 12/17/2012 - 12/18/2012 | $6.97 |
| System | 2012-12-26 | 00:01 | 82 | $52,193.91 @ 4.890 / 12/18/2012 - 12/26/2012 | $55.79 |
| System | 2012-12-31 | 00:01 | 82 | $52,193.91 @ 4.890 / 12/26/2012 - 12/31/2012 | $34.87 |
| System | 2013-01-01 | 00:01 | 82 | $52,193.91 @ 4.890 / 12/31/2012 - 01/01/2013 | $6.99 |
| System | 2013-01-03 | 00:01 | 82 | $52,193.91 @ 4.890 / 01/01/2013 - 01/03/2013 | $13.99 |
| System | 2013-01-31 | 00:01 | 82 | $52,193.91 @ 4.860 / 01/03/2013 - 01/31/2013 | $194.59 |
| System | 2013-02-01 | 00:01 | 82 | $52,193.91 @ 4.860 / 01/31/2013 - 02/01/2013 | $6.95 |
| System | 2013-02-04 | 00:01 | 82 | $52,193.91 @ 4.860 / 02/01/2013 - 02/04/2013 | $20.85 |
| System | 2013-02-07 | 00:01 | 82 | $52,193.91 @ 4.860 / 02/04/2013 - 02/07/2013 | $20.85 |
| System | 2013-02-11 | 00:01 | 82 | $52,193.91 @ 4.860 / 02/07/2013 - 02/11/2013 | $27.80 |
| System | 2013-02-13 | 00:01 | 82 | $52,193.91 @ 4.860 / 02/11/2013 - 02/13/2013 | $13.90 |
| System | 2013-02-14 | 00:01 | 82 | $52,193.91 @ 4.860 / 02/13/2013 - 02/14/2013 | $6.95 |
| System | 2013-02-28 | 00:01 | 82 | $52,193.91 @ 4.860 / 02/14/2013 - 02/28/2013 | $97.30 |
| System | 2013-03-31 | 00:01 | 82 | $52,193.91 @ 4.860 / 02/28/2013 - 03/31/2013 | $215.44 |
| System | 2013-04-09 | 00:01 | 82 | $52,193.91 @ 4.860 / 03/31/2013 - 04/09/2013 | $62.55 |
| System | 2013-04-30 | 00:01 | 82 | $52,193.91 @ 4.850 / 04/09/2013 - 04/30/2013 | $145.64 |
| System | 2013-05-31 | 00:01 | 82 | $52,193.91 @ 4.850 / 04/30/2013 - 05/31/2013 | $215.00 |
| System | 2013-06-30 | 00:01 | 82 | $52,193.91 @ 4.850 / 05/31/2013 - 06/30/2013 | $208.06 |
| System | 2013-07-31 | 00:01 | 82 | $52,193.91 @ 4.850 / 06/30/2013 - 07/31/2013 | $215.00 |
| System | 2013-08-02 | 00:01 | 82 | $52,193.91 @ 4.850 / 07/31/2013 - 08/02/2013 | $13.87 |
| System | 2013-08-31 | 00:01 | 82 | $52,193.91 @ 4.850 / 08/02/2013 - 08/31/2013 | $201.13 |
| System | 2013-09-03 | 00:01 | 82 | $52,193.91 @ 4.850 / 08/31/2013 - 09/03/2013 | $20.81 |
| System | 2013-12-05 | 00:01 | 82 | $52,193.91 @ 4.850 / 09/03/2013 - 12/05/2013 | $644.99 |
| System | 2013-12-31 | 00:01 | 82 | $52,193.91 @ 4.850 / 12/05/2013 - 12/31/2013 | $180.32 |
| System | 2014-01-06 | 00:01 | 82 | $52,193.91 @ 4.850 / 12/31/2013 - 01/06/2014 | $41.62 |
| System | 2014-01-31 | 00:01 | 82 | $52,193.91 @ 4.820 / 01/06/2014 - 01/31/2014 | $172.31 |
| System | 2014-02-28 | 00:01 | 82 | $52,193.91 @ 4.820 / 01/31/2014 - 02/28/2014 | $192.99 |
| System | 2014-04-03 | 00:01 | 82 | $52,193.91 @ 4.820 / 02/28/2014 - 04/03/2014 | $234.34 |
| System | 2014-05-21 | 00:01 | 82 | $52,193.91 @ 4.810 / 04/03/2014 - 05/21/2014 | $330.15 |
| System | 2014-06-13 | 00:01 | 82 | $52,193.91 @ 4.810 / 05/21/2014 - 06/13/2014 | $158.20 |
| System | 2014-06-19 | 00:01 | 82 | $52,193.91 @ 4.810 / 06/13/2014 - 06/19/2014 | $41.27 |
| System | 2014-07-03 | 00:01 | 82 | $52,193.91 @ 4.810 / 06/19/2014 - 07/03/2014 | $96.29 |
| System | 2014-07-31 | 00:01 | 82 | $52,193.91 @ 4.800 / 07/03/2014 - 07/31/2014 | $192.19 |
| System | 2014-08-01 | 00:01 | 82 | $52,193.91 @ 4.800 / 07/31/2014 - 08/01/2014 | $6.86 |
| System | 2014-08-31 | 00:01 | 82 | $52,193.91 @ 4.805 / 08/01/2014 - 08/31/2014 | $206.13 |
| System | 2014-09-02 | 00:01 | 82 | $52,193.91 @ 4.805 / 08/31/2014 - 09/02/2014 | $13.74 |
| System | 2014-09-30 | 00:01 | 82 | $52,193.91 @ 4.800 / 09/02/2014 - 09/30/2014 | $192.19 |

| System | 2014-10-31 | 00:01 | 82 | $52,193.91 @ 4.800 / 09/30/2014 - 10/31/2014 | $212.78 |
|--------|------------|-------|----|----------------------------------------------|---------|
| System | 2014-11-04 | 00:01 | 82 | $52,193.91 @ 4.800 / 10/31/2014 - 11/04/2014 | $27.46 |
| System | 2014-11-30 | 00:01 | 82 | $52,193.91 @ 4.810 / 11/04/2014 - 11/30/2014 | $178.83 |
| System | 2014-12-31 | 00:01 | 82 | $52,193.91 @ 4.810 / 11/30/2014 - 12/31/2014 | $213.22 |
| System | 2015-01-31 | 00:01 | 82 | $52,193.91 @ 4.810 / 12/31/2014 - 01/31/2015 | $213.22 |
| System | 2015-02-28 | 00:01 | 82 | $52,193.91 @ 4.810 / 01/31/2015 - 02/28/2015 | $192.59 |
| System | 2015-03-31 | 00:01 | 82 | $52,193.91 @ 4.810 / 02/28/2015 - 03/31/2015 | $213.22 |
| System | 2015-04-02 | 00:01 | 82 | $52,193.91 @ 4.810 / 03/31/2015 - 04/02/2015 | $13.76 |
| System | 2015-04-06 | 00:01 | 82 | $52,193.91 @ 4.820 / 04/02/2015 - 04/06/2015 | $27.57 |
| System | 2015-04-30 | 00:01 | 82 | $52,193.91 @ 4.820 / 04/06/2015 - 04/30/2015 | $165.42 |
| System | 2015-05-31 | 00:01 | 82 | $52,193.91 @ 4.820 / 04/30/2015 - 05/31/2015 | $213.67 |
| System | 2015-06-30 | 00:01 | 82 | $52,193.91 @ 4.820 / 05/31/2015 - 06/30/2015 | $206.77 |
| System | 2015-07-01 | 00:01 | 82 | $52,193.91 @ 4.820 / 06/30/2015 - 07/01/2015 | $6.89 |
| System | 2015-07-31 | 00:01 | 82 | $52,193.91 @ 4.830 / 07/01/2015 - 07/31/2015 | $207.20 |
| System | 2015-08-31 | 00:01 | 82 | $52,193.91 @ 4.830 / 07/31/2015 - 08/31/2015 | $214.11 |
| System | 2015-09-30 | 00:01 | 82 | $52,193.91 @ 4.830 / 08/31/2015 - 09/30/2015 | $207.20 |
| System | 2015-10-01 | 00:01 | 82 | $52,193.91 @ 4.830 / 09/30/2015 - 10/01/2015 | $6.91 |
| System | 2015-10-12 | 00:01 | 82 | $52,193.91 @ 4.840 / 10/01/2015 - 10/12/2015 | $76.13 |
| System | 2015-10-30 | 00:01 | 82 | $52,193.91 @ 4.840 / 10/12/2015 - 10/30/2015 | $124.58 |
| System | 2015-11-04 | 00:01 | 82 | $52,193.91 @ 4.840 / 10/30/2015 - 11/04/2015 | $34.61 |

Exhibit C

From: 9182992872    Page: 2/5    Date: 8/23/2005 9:53:09 AM

Education Maximizer Undergraduate Student — Loan Request/Credit Agreement — Signature Page 1

NON-NEGOTIABLE CREDIT AGREEMENT – THIS IS A CONSUMER CREDIT TRANSACTION

## LOAN PROGRAM INFORMATION

Education Maximizer Undergraduate Loan                           Academic Period: 09/2005-04/2006

Lender: Bank of America, National Association   School: SPARTAN COLLEGE OF AERONAUTICS

Loan Amount Requested: $38000.00      Repayment Option: Deferred Principal and Interest

Deferral Period Margin: 4.85      Repayment Period Margin: 4.85      Loan Origination Fee Percentage: 9.50

## STUDENT BORROWER INFORMATION (Must be at least 18 years of age)

Borrower Name: Javier Medina          Home Address: 11211 S 2nd St E      Jenks, OK 74037
Social Security #: ___-__-3085          Date of Birth: __/__/1979      Home Telephone: ___-___-2872
Current Employer: DIRECTV          Employer Telephone: ___-___-____
Current Position: Support          Years There:
Years at Previous Employment: 1 Years 6 Months

Alimony, child support, or separate maintenance incomes do not have to be revealed if you do not want them considered for repaying this obligation. If you are relying on such additional income, please provide details on a separate sheet of paper.

Student Citizenship (check one box):    ☒ U.S. Citzen          ☐ Eligible Non-Citizen (Attach front & back copy of CIS or student visa card)
Personal Reference Name: Carin Wright          Reference Home Tel #: ___-___-____          Work Tel #:
Reference Street Address:
Reference City/State/Zip:

By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all five (5) pages of this Loan Request/Credit Agreement BK.05-06.CRWO.10DC.0105 ("Credit Agreement"). I understand that any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment. This Credit Agreement is signed under seal. I understand that I am not required to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature. If I choose to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature, I intend (i) my fax or electronic signature to be an electronic signature under applicable federal and state law, (ii) my fax or electronic signature on or to this Credit Agreement and related notices to be an original document, (iii) to conduct business with the Lender by electronic records and electronic signatures, and (iv) that this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code, and my obligations under this Credit Agreement will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code.

FOR ALABAMA RESIDENTS: CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

FOR WISCONSIN RESIDENTS - NOTICE TO CUSTOMER:
(a) _____
(b) DO NOT SIGN THIS CREDIT AGREEMENT IF IT CONTAINS ANY BLANK SPACES.
(c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY CREDIT AGREEMENT YOU SIGN.
(d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS CREDIT AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

PLEASE SIGN BELOW – RETURN This Page With Proof of Income and Other Information (if applicable)
FAX TO: 800-704-8400

Signature of Borrower _____          Date 08/18/05

BK.05-06.CRWO.10DC.0105          LENDER COPY
PN01_BD_05-06_CRWO_F_X_MEDINA_A103240296.pdf          BKTCDP

In this Credit Agreement, the words "I", "me", "my", and "mine" mean the person who signed this Credit Agreement as Borrower. The words "you", "your", "yours", and "Lender" mean Bank of America, National Association, its successors and assigns, and any other holder of this Credit Agreement. "School" means the school named at the top of the first page of this Credit Agreement. The "Servicer" means the Lender or any entity it designates to service my loan.

**A. PROMISE TO PAY:** I promise to pay to you the Loan Amount Requested shown on the first page of this Credit Agreement, to the extent it is advanced to me or paid on my behalf, and any Loan Origination Fee added to my loan (see Paragraph F) (together, the "Principal Sum"), interest on such Principal Sum, interest on any unpaid interest added to the Principal Sum and late fees (see Paragraph E.6).

**B. IMPORTANT – READ THIS CAREFULLY:**
1. When you receive my signed Credit Agreement, you are not agreeing to lend me money. If you decide to make a loan to me, you will electronically transfer the loan funds to the School for me, mail a loan check to the School for me, or mail a loan check directly to me. You have the right to not make a loan or to lend an amount less than the Loan Amount Requested. I agree to accept an amount less than the Loan Amount Requested and to repay that portion of the Loan Amount Requested that you actually lend to me. You have the right to disburse my loan through an agent. At your option, you may also make any loan check co-payable to me and the School.
2. **HOW I AGREE TO THE TERMS OF THIS LOAN.** By signing this Credit Agreement, and submitting it to the Lender, I am requesting that you make this loan to me in an amount equal to the Loan Amount Requested plus any Loan Origination Fee described in Paragraph F of this Credit Agreement. If you approve this request and agree to make this loan, you will notify me in writing and provide me with a Disclosure Statement, as required by law, at the time the loan proceeds are disbursed. The Disclosure Statement is incorporated herein by reference and made a part hereof. The Disclosure Statement will tell me the amount of the loan which you have approved, the amount of the Loan Origination Fee, and other important information. I will let you know that I agree to the terms of the loan as set forth in this Credit Agreement and in the Disclosure Statement by doing either of the following: (a) endorsing or depositing the check that disburses the loan proceeds; or (b)using or allowing the loan proceeds to be used on my behalf without objection. Upon receipt of the Disclosure Statement, I will review the Disclosure Statement and notify you in writing if I have any questions. If I am not satisfied with the terms of my loan as disclosed in the Disclosure Statement, I may cancel my loan. To cancel my loan, I will give you a written cancellation notice within ten (10) days after I receive the Disclosure Statement. If loan proceeds have been disbursed, I agree that I will immediately return the loan proceeds to you, will not endorse any check which disburses the loan proceeds and will instruct the School to return any loan proceeds to you. If I give notice of cancellation but do not comply with the requirements of this Paragraph B.2, this Credit Agreement will not be canceled and I will be in default of this Credit Agreement. (See Paragraph I.)

**C. DEFINITIONS:**
1. "Disbursement Date" means the date or dates on which you lend money to me in consideration for my Credit Agreement and will be the date(s) shown on any loan check you prepare or the date(s) you initiate any electronic funds transfer.
2. The "Deferment Period" will begin on the Disbursement Date and end on the Deferment End Date.
3. "Deferment End Date" means the date specified below for the applicable loan program (the applicable loan program is stated on the first page of this Credit Agreement).
(a) _Undergraduate Alternative Loan Program:_ If I have elected the "Immediate Repayment" option (the applicable repayment option is stated on the first page of this Credit Agreement), there is no Deferment Period, and my first payment will be 30-60 days after the disbursement of my loan. If I have elected the "Interest Only" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then Interest payments will begin 30-60 days after the disbursement of my loan, the "Deferment End Date" will be the date the Student graduates or ceases to be enrolled at least-time in the School (or another school participating in this loan program), and principal and interest payments will begin 30-60 days after that date. In any event, if I have elected the "Interest Only" repayment option, the Deferment End Date will be no more than 5 years after the Disbursement Date. If I have elected the "Full Deferral" repayment option

(the applicable repayment option is stated on the first page of this Credit Agreement), then the "Deferment End Date" will be 180 days after the Student graduates or ceases to be enrolled at least half-time in the School (or another school participating in this Loan Program). In any event, if I have elected the "Full Deferral" repayment option, the Deferment End Date will be no more than 5½ years after the Disbursement Date.
(b) _Graduate Professional Education Loan Program:_ 180 days after the Student graduates or ceases for any other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 4½ years after the Disbursement Date; provided, however, that if the Student begins a medical residency or internship during the Deferment Period, then the Deferment Period will end 180 days after the day the residency or internship ends, but no more than 8½ years after the Disbursement Date.
4. The "Repayment Period" begins the day after the Deferment Period ends. If there is no Deferment Period for my loan, the Repayment Period will begin when my loan is fully disbursed. The Repayment Period is 20 years unless monthly payments equal to the minimum monthly payment amount (See Paragraph E.2) will repay all amounts owed in less than 20 years, in which case the Repayment Period will be the number of months necessary to pay in full the amount I owe at the minimum payment.

**D. INTEREST:**
1. Accrual – Beginning on the Disbursement Date, interest will be calculated at the Variable Rate (Paragraph D.2) and charged on the Principal Sum, and on any unpaid interest later added to the Principal Sum according to Paragraph D.3. During the Repayment Period, interest will be calculated at the Variable Rate and charged on the outstanding balance of this Credit Agreement until all amounts are paid in full. Interest will be calculated on a daily simple interest basis. The daily interest rate will be equal to the annual interest rate in effect on that day, divided by the number of days in that calendar year.
2. Variable Rate – The "Variable Rate" is equal to the Current Index plus a Margin. The Margins for both the Deferment Period and the Repayment Period are shown on the first page of this Credit Agreement. In no event will the Variable Rate exceed the maximum interest rate allowed by the laws of the State of California. The Variable Rate will change quarterly on the first day of each January, April, July and October (the "Change Date(s)") if the Current Index changes. The "Current Index" for any calendar quarter beginning on a Change Date (or for any shorter period beginning on the Disbursement Date and ending on the last day of a calendar quarter) is based on the one-month London Interbank Offered Rate ("LIBOR") as published in the "Money Rates" section of _The Wall Street Journal_. The index for each calendar quarter (or for any shorter period beginning on a Disbursement Date and ending on the last day of a calendar quarter) will equal the average of the LIBOR rates published on the first business day of each of the three (3) immediately preceding calendar months, rounded to the nearest one-hundredth percent (0.01%). If _The Wall Street Journal_ is not published or the Current Index is not given on that date, then the Current Index will be determined by using the immediately preceding published Current Index. If the Current Index is no longer available, you will choose a comparable index.
3. Capitalization – If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), I am not obligated to make any payments until the loan enters the Repayment Period and you will add unpaid accrued interest to the principal loan balance as of the last day of each calendar quarter (the last day of December, March, June and September) during the Deferment Period and as of the last day of my Deferment Period. Interest that is added to principal is called "Capitalized" interest. Capitalized interest will be treated as principal. In addition, if I am in default (see Paragraph I) and the loan has been sold to TERI (see Paragraph L.12), TERI may capitalize accrued and unpaid interest as of the date it purchases my loan. I understand that you will also add all accrued and unpaid interest to the principal balance of my loan at the end of any forbearance period (see Paragraph H).

**E. TERMS OF REPAYMENT:**
1. Deferment Period – If I have elected either the "Interest Only" repayment option or the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), you will send me statements during the Deferment Period (showing the total outstanding principal balance of my loan and the interest that has accrued on my loan). Statements will be sent to the address shown on your records. If I have

elected the "Interest Only" repayment option, I agree to make payments each month during the Deferment Period equal to the accrued interest on the outstanding balance of this Credit Agreement. If I have elected the "Full Deferral" repayment option I may, but am not required to make payments during the Deferment Period. You will add any interest that I do not pay during the Deferment Period to the principal balance, as described in Paragraph D.3.

2. Repayment Period – The amount of my monthly payment ("Monthly Payment Amount") will be established based on the rules in this Credit Agreement when my Repayment Period begins. During the Repayment Period, you will send me monthly statements that show the Monthly Payment Amount and the payment due dates, and I will pay the Monthly Payment Amount shown on my monthly statement, which amount will in no event be less than $25 or the unpaid balance, whichever is less. I understand that the Monthly Payment Amount is due each month. I may pay more than my Monthly Payment Amount at any time without penalty or charge. If my loan is in paid-ahead status, I may, but will not be required to make monthly payments. Even if I do not receive monthly statements, I will make consecutive monthly payments in amounts at least equal to the Monthly Payment Amount by the applicable payment due dates until I have paid all of the principal and interest and any other charges I may owe under this Credit Agreement.

3. Repayment Terms – My Monthly Payment Amount will be calculated as of the day the Repayment Period begins ("Repayment Date"). It will be recalculated (a) once each year prior to the anniversary of the Repayment Date, (b) if the Variable Rate changes between anniversaries of the Repayment Date to the extent that the Monthly Payment Amount would not pay in full the accrued monthly interest on my loan, (c) following any subsequent deferment or forbearance period or (d) following any request by the Borrower to the servicer to change the monthly payment due date (each of which events is a new "Repayment Date"). As of any Repayment Date, my Monthly Payment Amount will be recalculated. My new Monthly Payment Amount will be disclosed to me by the servicer. The new Monthly Payment Amount will equal the amount necessary to pay in full, over the number of months remaining in the Repayment Period, the amount I owe in equal monthly installments of principal and interest at the Variable Rate in effect at the time of the calculation. I understand that this may result in a reduction or increase in my monthly payment as calculated as of each Repayment Date. I understand that during the Repayment Period (and, if I have elected the "Interest Only" repayment option, during the period of interest payments) the servicer may change the monthly payment due date of future payments to a later date for the convenience of the servicer in processing payments or in order to coordinate the due dates of all of my loans processed by the servicer.

4. Amounts Owing at the End of the Repayment Period – Since interest accrues daily upon the unpaid principal balance of my loan, if I make payments after my payment due dates, I may owe additional interest. If I have not paid my late fees, I will also owe additional amounts for those late fees. In such cases you will increase the amount of my last monthly payment to the amount necessary to repay my loan in full.

5. Payments – Payments will be applied first to late fees, other fees and charges, accrued interest, and the remainder to principal.

6. Other Charges - If any part of a monthly payment remains unpaid for a period of more than 15 days after the payment due date, I will pay a late fee not exceeding $5.00 or 5% of the overdue payment amount, whichever is less. To the extent permitted by law, I agree to pay you all amounts you incur in enforcing the terms of this Credit Agreement, including reasonable collection agency and attorney's fees and court costs and other collection costs.

F. LOAN ORIGINATION FEE: If you charge me, I will pay you a Loan Origination Fee at the time my loan is disbursed. The dollar amount of any Loan Origination Fee will be determined by multiplying the Principal Sum times the Loan Origination Fee Percentage shown on the first page of this Credit Agreement. The percentage would be higher if computed only on the amount advanced rather than on the entire Principal Sum (Loan Origination Fee plus the loan amount advanced). For example, a nominal Loan Origination Fee of 6.5% on the entire principal amount would equal 6.9519% of the amount advanced. The Loan Origination Fee I will pay, if any, will be shown on my Disclosure Statement and included with the Principal Sum. To the extent permitted by law, and unless I timely cancel this Credit Agreement

(see Paragraph B.2), I will not be entitled to a refund of any Loan Origination Fee after my loan has been disbursed.

G. RIGHT TO PREPAY: I have the right to prepay all or any part of my loan at any time without penalty.

H. FORBEARANCE: If I am unable to repay my loan in accordance with the terms established under this Credit Agreement because of a hardship such as financial or medical difficulty, I may request that you modify these terms. I understand that such modification would be at your option. I understand that I will remain responsible for all interest accruing during any period of forbearance and that you will add any interest that I do not pay during any forbearance period to the principal balance, as described in Paragraph D.3.

I. WHOLE LOAN DUE: To the extent permitted by applicable law, I will be in default and you have the right to give me notice that the whole outstanding principal balance, accrued interest, and all other amounts payable to you under the terms of this Credit Agreement, are due and payable at once (subject to any applicable law which may give me a right to cure any default) if: (1) I fail to make any monthly payment to you when due, (2) I die, (3) I break any of my other promises in this Credit Agreement, (4) any bankruptcy proceeding is begun by or against me, or I assign any of my assets for the benefits of my creditors, or (5) I make any false written statement in applying for this loan or any other loan or at any time during the Deferment or Repayment Periods. If I default, I will be required to pay interest on this loan accruing after default. The interest rate after default will be subject to adjustment in the same manner as before default. Upon default, you may also capitalize any interest and fees (i.e., add accrued and unpaid interest and fees to the principal balance), and increase the Variable Rate by two percentage points (2%).

J. NOTICES:
1. I will send written notice to you, any subsequent holder of this Credit Agreement, and the servicer within ten days after any change in my name, address, or enrollment status (for example, if the Borrower withdraws from the School or transfers to another school participating in this loan program).
2. Any notice required to be given to me by you will be effective when mailed by first class mail to the latest address you have for me.

K. INFORMATION:
1. I must update the information I provided to you whenever you ask me to do so.
2. I authorize you from time to time to request and receive from others credit related information about me (and about my spouse if I live in a community property state).
3. CREDIT BUREAU REPORTING

> **You may report information about my account to credit bureaus. Late payments, missed payments, or other defaults in my account may be reflected in my credit report.**

I understand that the reporting of information about my account to credit bureaus may adversely affect my credit rating and my ability to obtain other credit. You may also report the status of my loan and my payment history, including information about a late payment, missed payment or other defaults in accordance with applicable law.

L. ADDITIONAL AGREEMENTS:
1. I understand that you are located in California and that this Credit Agreement will be entered into in the same state. CONSEQUENTLY, THE PROVISIONS OF THIS CREDIT AGREEMENT WILL BE GOVERNED BY FEDERAL LAW AND THE LAWS OF THE STATE OF CALIFORNIA, WITHOUT REGARD TO CONFLICT OF LAW RULES.
2. The proceeds of this loan will be used only for my educational expenses at the School.
3. My responsibility for paying the loan evidenced by this Credit Agreement is unaffected by the liability of any other person to me or by your failure to notify me that a required payment has not been made. Without losing any of your rights under this Credit Agreement you may accept (a) late payments, (b) partial payments or (c) payments marked "paid in full" or with other restrictions. You may delay, fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise the right at any future time, or on any future occasion. You will not be obligated to make any demand upon me, send me any notice, present this Credit Agreement to me for payment or make protest of non-payment to me before suing to collect on this Credit Agreement if I am in default, and to the extent permitted by

applicable law, I hereby waive any right I might otherwise have to require such actions. I WILL NOT SEND YOU PAYMENTS MARKED "PAID IN FULL", "WITHOUT RECOURSE" OR WITH OTHER SIMILAR LANGUAGE UNLESS THOSE PAYMENTS ARE MARKED FOR SPECIAL HANDLING AND SENT TO THE ADDRESS IDENTIFIED FOR SUCH PAYMENTS ON MY BILLING STATEMENT, OR TO SUCH OTHER ADDRESS AS I MAY BE GIVEN IN THE FUTURE.

4.  I may not assign this Credit Agreement or any of its benefits or obligations. You may assign this Credit Agreement at any time.

5. The terms and conditions set forth in this Credit Agreement and Instructions and the Disclosure Statement constitute the entire agreement between you and me.

6.  If any provision of this Credit Agreement is held invalid or unenforceable, that provision shall be considered omitted from this Credit Agreement without affecting the validity or enforceability of the remainder of this Credit Agreement.

7.  A provision of this Credit Agreement may only be modified if jointly agreed upon in writing by you and me. Any modification will not affect the validity or enforceability of the remainder of this Credit Agreement.

8. To the extent permitted by law, you have the right to apply money from any of my deposit account(s) with you to pay all or a portion of any amount overdue under this Credit Agreement.  I hereby authorize you to obtain from the School all amounts which may be owed to me by the School, including any refund due to overpayment, early termination of enrollment, or otherwise.

9.  All dollar amounts stated in this Credit Agreement are in United States dollars.  I will make all payments in United States Dollars with no deduction for currency exchange.

10.  If I fail to complete the education program paid for with this loan, I am not relieved of any obligation within or pursuant to this Credit Agreement.

11.  I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523 (a) (8) of the United States Bankruptcy Code.  Specifically, I understand that you have purchased a guaranty of this loan, and that this loan is guaranteed by The Education Resources Institute, Inc. ("TERI"), a non-profit institution.

12.  I authorize any school that I may attend to release to you, and any other persons designated by you, any requested information pertinent to this loan (e.g., enrollment status, prior loan history, and current address).

13.  I authorize the Lender, any subsequent holder of this Credit Agreement, and their agents (including TERI) to: (1) advise the School of the status of my application and my loan, (2) respond to inquiries from prior or subsequent lenders or holders with respect to my Credit Agreement and related documents, (3) release information and make inquiries to the persons I have given you as references, for the purposes of learning my current address and telephone number, (4) check my credit and employment history and to answer questions about their credit experience with me, and (5) retain for use in any future transaction with the Borrower all information (including status information and non-public personal information) of the Borrower provided in connection with this Credit Agreement.

14.  Waiver by Lender.  You waive (give up) any right to claim a security interest in any property to secure this Credit Agreement.  This does not affect any right to offset as a matter of law.

15. If I fax my signature(s) on the first page of this Credit Agreement back to you and keep the copy I signed, I understand that under federal law the fax you receive will be an original of the first page of this Credit Agreement.  You and I agree that all copies of this Credit Agreement (including the fax you receive and the copy I retain), taken together, shall constitute a single original agreement.

16.  If I elect to sign electronically an electronic record of this Credit Agreement, then the following will apply as between Lender and me:  (a) Lender will keep a non-modifiable electronic record of this document and provide a copy to me upon request, (b) I can and have downloaded and/or printed a copy of this document for my records or notified the Lender to mail me a copy of this document, and (c) the Lender's electronic record of this document and any printout from that record shall be an original for all purposes, including any lawsuit to collect amounts that I owe.

## M. DISCLOSURE NOTICES

**ALL APPLICANTS:**
**IMPORTANT FEDERAL LAW NOTICE—**

*Important information about procedures for opening a new account:*
**To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.**

**What this means for you:**
**When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.**

CALIFORNIA RESIDENTS: I have the right to prohibit the use of information contained in my credit file in connection with transactions not initiated by me. I may exercise this right by notifying the consumer credit reporting agency.  A married applicant may apply for a separate account.  If you take any adverse action as defined by Section 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, I have the right to obtain within 60 days a free copy of my consumer credit report from the consumer reporting agency who furnished you my consumer credit report and from any other consumer credit reporting agency which compiles and maintains files on consumers on a nationwide basis.  I have the right as described by Section 1785.16 of the California Civil Code to dispute the accuracy or completeness of any information in a consumer credit report furnished by the consumer credit reporting agency.

CALIFORNIA AND UTAH RESIDENTS: As required by California and Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations.

IOWA, KANSAS AND NEBRASKA RESIDENTS (For purposes of the following notice, the word "you" refers to the Borrower, not the Lender): NOTICE TO CONSUMER.  This is a consumer credit transaction. 1. DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THIS CREDIT AGREEMENT.  2. YOU ARE ENTITLED TO A COPY OF THIS CREDIT AGREEMENT.  3. YOU MAY PREPAY THE UNPAID BALANCE AT ANY TIME WITHOUT PENALTY AND MAY BE ENTITLED TO A REFUND OF UNEARNED CHARGES IN ACCORDANCE WITH LAW.

MARYLAND RESIDENTS: In Paragraph L.1, Lender and I have agreed that this Credit Agreement is governed by federal law and the laws of CALIFORNIA, without regard to conflict of laws rules; if any court should nevertheless determine that this Credit Agreement is subject to Maryland laws concerning credit, then only to the extent that Maryland law applies, Lender and I agree and elect that this loan is made under and governed by Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland, except as preempted by federal law.

MISSOURI RESIDENTS: Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect me (borrower(s)) and you (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

NEVADA RESIDENTS:  This is a loan for study.

NEW JERSEY RESIDENTS: The section headings of this Credit Agreement are a table of contents and not contract terms.  Portions of this Credit Agreement with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires.  In this Credit Agreement, acts or practices (i) by you which are or may be permitted

by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law.

NEW YORK, RHODE ISLAND AND VERMONT RESIDENTS: A consumer report (credit report) may be obtained from a consumer-reporting agency (credit bureau) in connection with this loan. If I request (1) I will be informed whether or not consumer reports were obtained, and (2) if reports were obtained, I will be informed of the names and addresses of the credit bureaus that furnished the reports. If you agree to make this loan to me, a consumer credit report may be requested or used in connection with renewals or extensions of any credit for which I have applied, reviewing my loan, taking collection action on my loan, or legitimate purposes associated with my loan.

OHIO RESIDENTS: The Ohio laws against discrimination require that all creditors make credit equally available to all credit worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

WISCONSIN RESIDENTS: For married Wisconsin residents, my signature on this Credit Agreement confirms that this loan obligation is being incurred in the interest of my marriage or family. No provision of any marital property agreement (pre-marital agreement), unilateral statement under Section 766.59 or court decree under Section 766.70 adversely affects the interest of the Lender unless the Lender, prior to the time that the loan is approved, is furnished with a copy of the agreement, statement, or decree or has actual knowledge of the adverse provision when the obligation to the Lender is incurred. If the loan for which I am applying is granted, my spouse will also receive notification that credit has been extended to me.

**N. BORROWER'S CERTIFICATION:** I declare under penalty of perjury under the laws of the United States of America that the following is true and correct. I certify that all information I provided to you in connection with this loan, including without limitation, the information contained in this Credit Agreement, is true, complete and correct to the best of my knowledge and belief and is made in good faith. I understand that I am responsible for repaying immediately any funds that I receive which are not to be used or are not used for educational expenses related to attendance at the School for the academic period stated. I certify that I am not now in default on a Federal Perkins Loan, a Federal Stafford Loan, a Federally Insured Student Loan, a Federal Supplemental Loan for Students (SLS), a Federal PLUS Loan, an Income Contingent Loan, a Federal Consolidation Loan, a Federal Ford Direct Loan, or any other education loan received for attendance at any school. The legal age for entering into contracts is 18 years of age in every State in the United States except the following: Alabama and Nebraska (19 years old), and Mississippi and Puerto Rico (21 years old). I certify that I meet these state age requirements.

## NOTE DISCLOSURE STATEMENT

$ 33,149.17
Loan No. 03240290

Borrower(s)  JAVIER MEDINA

Student:  JAVIER MEDINA
Date:  August 29, 2005

JAVIER MEDINA
11211 S 2ND ST E
JENKS, OK 74037

Lender Name and Address:
BANK OF AMERICA, N.A.
600 WILSHIRE BLVD, 9TH FLOOR
LOS ANGELES, CA 90017

This disclosure statement relates to your Loan Note disbursed on    August 29, 2005
Because your Loan is either being disbursed or entering repayment, or the repayment terms are being modified, the following information about your Loan is being given to you.

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled |
| 8.860 % | $ 40,636.80 | $ 10,000.00 | $ 70,636.80 |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments are due |
|---|---|---|
| 240 | $ 294.32 | On the  2nd  day of each month beginning on  11/2005 |
| | | |
| | | |

**VARIABLE RATE:** The Annual Percentage Rate, which is based on an index plus a margin, may increase during the term of the loan if the index rate increases. The index is (check one):

☐ Prime Rate Index Adjusted Monthly - The highest U.S. bank prime rate published in the "Money Rates" section of The Wall Street Journal on the last business day of each calendar month.

☐ Prime Rate Index Adjusted Quarterly - The highest U.S. bank prime rate published in the "Money Rates" section of The Wall Street Journal on the first business day of each calendar quarter.

☒ LIBOR Index Adjusted Quarterly - The average of the one-month London Interbank Offered Rates published in the "Money Rates" section of The Wall Street Journal on the first business day of each of the three (3) calendar months immediately preceding the first day of each calendar quarter.

Any increase in the index and the Annual Percentage Rate which occurs while principal payments are deferred will increase the amount of any current and all future payments. Any increase in the Annual Percentage Rate which occurs while principal and interest payments are deferred will increase the amount of all future payments. Any increase in the index and the Annual Percentage Rate which occurs after you have begun to make principal and interest payments on your loan will increase the amounts of your future principal and interest payments beginning with your next annual payment adjustment date. For example, assume you obtain a loan in your junior year, in the amount of $10,000, at an interest rate of 81%, and you defer principal and interest payments until after your graduation, and the repayment term of the loan is 20 years. If the interest rate increased to 12% on January 1st of your senior year, the interest which accrues while principal and interest payments are deferred will increase by $ 91.31, and your monthly principal and interest payments would increase by $ 9.37.

**SECURITY:** You have given a security interest in all refunds or amounts owed to you at any time by the student's educational institution. Collateral securing other loans with the Lender may also secure this Loan.
**LATE CHARGES:** If a payment is more than 15 days late, you may be charged $5.00 or 5% of the payment, whichever is less. If you default, Lender (or any subsequent holder or any subsequent holder of your Loan Note) may increase the margin used to compute the Annual Percentage Rate by two percentage points (2%).
**PREPAYMENT:** If you pay off early, you will not have to pay a penalty.

See your contract documents for any additional information about non-payment, default, any required repayment in full before the scheduled date, any security interest and prepayment refunds and penalties.

**Estimates:** All numerical disclosures except the late payment disclosure are estimates.

Principal Amount of Note (Amount Financed plus Prepaid Finance Charge)     $        33,149.17

Itemization of Amount Financed
Amount paid to  JAVIER MEDINA        $        10,000.00
Amount paid to                       $
Total Amount Financed                                     $        10,000.00

Itemization of Prepaid Finance Charge
Origination Fee                      $        3,149.17
Total Prepaid Finance Charge(s)                          $        3,149.17

# DEPOSIT AND SALE AGREEMENT
# THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-3

This Deposit and Sale Agreement (the "Sale Agreement"), dated as of October 12, 2005, between The National Collegiate Funding LLC, in its capacity as seller (in such capacity, the "Seller"), and The National Collegiate Student Loan Trust 2005-3, as purchaser (the "Purchaser"), shall be effective upon execution by the parties hereto.

WHEREAS, the Seller is the owner of certain student loans; and

WHEREAS, the Seller desires to sell its interest in such student loans and the Purchaser desires to purchase such loans from the Seller.

NOW, THEREFORE, in connection with the mutual promises contained herein, the parties hereto agree as follows:

## ARTICLE I
## TERMS

This Sale Agreement sets forth the terms under which the Seller is selling and the Purchaser is purchasing the student loans listed on Schedule 2 to each of the Pool Supplements set forth on Schedule A attached hereto (the "Transferred Student Loans").

## ARTICLE II
## DEFINITIONS

Capitalized terms used but not otherwise defined herein shall have the definitions set forth in Appendix A of the Indenture dated as of October 1, 2005 between U.S. Bank National Association (the "Indenture Trustee") and the Purchaser.

## ARTICLE III
## SALE AND PURCHASE

Section 3.01.  Sale of Loans.  The Seller hereby sells and the Purchaser hereby purchases the Transferred Student Loans.

Section 3.02.  Assignment of Rights.  The Seller hereby assigns to the Purchaser and the Purchaser hereby accepts all of the Seller's rights and interests under each of the Pool Supplements listed on Schedule A attached hereto and the related Student Loan Purchase Agreements listed on Schedule B attached hereto.

Section 3.03.  Settlement of the Payment.  The Purchaser shall pay the Seller the purchase price set forth in Schedule 1 of each of the Pool Supplements by wire transfer in immediately available funds to the account specified by the Seller.  In addition, the Purchaser will also issue the Class A-5 Notes to the Seller pursuant to the Indenture.

Section 3.04. <u>Assistance by Seller</u>. Following the execution of this Sale Agreement, the Seller shall provide any reasonable assistance requested by the Purchaser in determining that all required documentation on the Transferred Student Loans is present and correct.

## ARTICLE IV
## REPRESENTATIONS, WARRANTIES AND COVENANTS OF SELLER

Section 4.01. <u>General</u>. The Seller represents and warrants to the Purchaser that as of the date of this Sale Agreement:

(a)    The Seller is duly organized and existing under the laws of the State of Delaware; and

(b)    The Seller has all requisite power and authority to enter into and to perform the terms of this Sale Agreement.

Section 4.02. <u>Loan Representations</u>. The Seller represents and warrants to the Purchaser that with respect to each Transferred Student Loan purchased by the Purchaser pursuant to this Sale Agreement, the Seller is making the same representations and warranties made by the respective program lender with respect to each Transferred Student Loan pursuant to the respective Student Loan Purchase Agreement listed on <u>Schedule B</u> attached hereto.

Section 4.03. <u>Covenants</u>. The Seller, in its capacity as purchaser of the Transferred Student Loans pursuant to the Pool Supplements, hereby covenants that it will enforce the covenants and agreements of each program lender in the respective Student Loan Purchase Agreement and related Pool Supplement. The Seller further covenants that it will not waive, amend, modify, supplement or terminate any Student Loan Purchase Agreement or Pool Supplement or any provision thereof without the consent of the Purchaser, which consent the Purchaser hereby agrees not to provide without the prior written consent of the Indenture Trustee and the Interested Noteholders in accordance with the Purchaser's covenant in Section 3.07(c) of the Indenture.

## ARTICLE V
## PURCHASE OF LOANS; REIMBURSEMENT

Each party to this Sale Agreement shall give notice to the other such parties and to the Servicers, First Marblehead Data Services, Inc. and Delaware Trust Company, National Association (the "<u>Owner Trustee</u>") promptly, in writing, upon the discovery of any breach of the Seller's representations and warranties made pursuant to this Sale Agreement which has a materially adverse effect on the interest of the Purchaser in any Transferred Student Loan. In the event of such a material breach, the Seller shall cure or repurchase the Transferred Student Loan in accordance with the remedies set forth in the respective Student Loan Purchase Agreement.

## ARTICLE VI
## LIABILITY OF SELLER; INDEMNITIES

The Seller shall be liable in accordance herewith only to the extent of the obligations specifically undertaken by the Seller under this Sale Agreement.

2

(a)    The Seller shall indemnify, defend and hold harmless the Purchaser and the Owner Trustee in its individual capacity and their officers, directors, employees and agents from and against any taxes that may at any time be asserted against any such Person with respect to the transactions contemplated herein and in the other Basic Documents (except any such income taxes arising out of fees paid to the Owner Trustee), including any sales, gross receipts, general corporation, tangible and intangible personal property, privilege or license taxes and costs and expenses in defending against the same.

(b)    The Seller shall indemnify, defend and hold harmless the Purchaser and the Owner Trustee in its individual capacity and their officers, directors, employees and agents from and against any and all costs, expenses, losses, claims, damages and liabilities arising out of, or imposed upon such Person through, the Seller's willful misfeasance, bad faith or gross negligence in the performance of its duties under this Sale Agreement, or by reason of reckless disregard of its obligations and duties under this Sale Agreement.

Indemnification under this Section shall survive the termination of this Sale Agreement and shall include reasonable fees and expenses of counsel and expenses of litigation.  If the Seller shall have made any indemnity payments pursuant to this Section and the Person to or for the benefit of whom such payments are made thereafter shall collect any of such amounts from others, such Person shall promptly repay such amounts to the Seller, without interest.

## ARTICLE VII
## MERGER OR CONSOLIDATION OF, OR ASSUMPTION
## OF THE OBLIGATIONS OF, SELLER

Any Person (a) into which the Seller may be merged or consolidated, (b) which may result from any merger or consolidation to which the Seller shall be a party or (c) which may succeed to the properties and assets of the Seller substantially as a whole, shall be the successor to the Seller without the execution or filing of any document or any further act by any of the parties to this Sale Agreement; provided, however, that the Seller hereby covenants that it will not consummate any of the foregoing transactions except upon satisfaction of the following:  (i) the surviving Person, if other than the Seller, executes an agreement of assumption to perform every obligation of the Seller under this Sale Agreement, (ii) immediately after giving effect to such transaction, no representation or warranty made pursuant to this Sale Agreement shall have been breached, (iii) the surviving Person, if other than the Seller, shall have delivered an Officers' Certificate and an opinion of counsel each stating that such consolidation, merger or succession and such agreement of assumption comply with this Section and that all conditions precedent, if any, provided for in this Sale Agreement relating to such transaction have been complied with, and that the Rating Agency Condition shall have been satisfied with respect to such transaction, (iv) if the Seller is not the surviving entity, such transaction will not result in a material adverse federal or state tax consequence to the Purchaser or the Noteholders and holders of the grantor trust certificates (the "Certificates") (the "Certificateholders" and together with the Noteholders, the "Securityholders") and (v) if the Seller is not the surviving entity, the Seller shall have delivered an opinion of counsel either (A) stating that, in the opinion of such counsel, all financing statements and continuation statements and amendments thereto have been executed and filed that are necessary fully to preserve and protect the interest of the Purchaser in

3

the Transferred Student Loans and reciting the details of such filings, or (B) stating that, in the opinion of such counsel, no such action shall be necessary to preserve and protect such interests.

## ARTICLE VIII
## LIMITATION ON LIABILITY OF SELLER AND OTHERS

The Seller and any director or officer or employee or agent thereof may rely in good faith on the advice of counsel or on any document of any kind, prima facie properly executed and submitted by any Person respecting any matters arising hereunder (provided that such reliance shall not limit in any way the Seller's obligations under this Sale Agreement). The Seller shall not be under any obligation to appear in, prosecute or defend any legal action that shall not be incidental to its obligations under this Sale Agreement or the Student Loan Purchase Agreements, and that in its opinion may involve it in any expense or liability.

## ARTICLE IX
## SURVIVAL OF COVENANTS

All covenants, agreements, representations and warranties made herein shall survive the consummation of the purchase of the Transferred Student Loans; provided, however, that to the extent any of the same relate to a corresponding covenant, agreement, representation or warranty contained in a Student Loan Purchase Agreement, the same shall survive to the extent that such corresponding covenant, agreement, representation or warranty survives the applicable Student Loan Purchase Agreement. All covenants, agreements, representations and warranties made or furnished pursuant hereto by or for the benefit of the Seller shall bind and inure to the benefit of any successors or assigns of the Purchaser, including the Indenture Trustee and the Grantor Trustee. This Sale Agreement may be changed, modified or discharged, and any rights or obligations hereunder may be waived, only by a written instrument signed by a duly authorized officer of the party against whom enforcement of any such waiver, change, modification or discharge is sought. The waiver by the Indenture Trustee, at the direction of the Noteholders (pursuant to the Indenture), and the Grantor Trustee, at the direction of the Certificateholders (pursuant to the Grantor Trust Agreement), of any covenant, agreement, representation or warranty required to be made or furnished by the Seller or the waiver by the Indenture Trustee, at the direction of the Noteholders (pursuant to the Indenture), and the Grantor Trustee, at the direction of the Certificateholders (pursuant to the Grantor Trust Agreement), of any provision herein contained shall not be deemed to be a waiver of any breach of any other covenant, agreement, representation, warranty or provision herein contained, nor shall any waiver or any custom or practice which may evolve between the parties in the administration of the terms hereof, be construed to lessen the right of the Indenture Trustee, at the direction of the Noteholders (pursuant to the Indenture), and the Grantor Trustee, at the direction of the Certificateholders (pursuant to the Grantor Trust Agreement), to insist upon the performance by the Seller in strict accordance with said terms.

## ARTICLE X
## COMMUNICATION AND NOTICE REQUIREMENTS

All communications, notices and approvals provided for hereunder shall be in writing and mailed or delivered to the Seller or the Purchaser, as the case may be. Notice given in any such

4

communication, mailed to the Seller or the Purchaser by appropriately addressed registered mail, shall be deemed to have been given on the day following the date of such mailing and shall be addressed as follows:

If to the Purchaser, to:

The National Collegiate Student Loan Trust 2005-3
c/o Delaware Trust Company, National Association, as Owner Trustee
300 Delaware Avenue, 9th Floor
Wilmington, Delaware 19801
Attention: Mr. Sterling C. Correia

If to the Seller, to:

The National Collegiate Funding LLC
c/o First Marblehead Data Services, Inc.
The Prudential Tower
800 Boylston Street - 34th Floor
Boston, MA 02199-8157
Attention: Ms. Rosalyn Bonaventure

with a copy to:

First Marblehead Corporation
The Prudential Tower
800 Boylston Street - 34th Floor
Boston, MA 02199-8157
Attention: Mr. Richard P. Zermani

or to such other address as either party shall have provided to the other parties in writing. Any notice required to be in writing hereunder shall be deemed given if such notice is mailed by certified mail, postage prepaid, or hand delivered to the address of such party as provided above.

## ARTICLE XI
## AMENDMENT

This Sale Agreement may be amended by the parties hereto without the consent of the related Securityholders for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of the Sale Agreement or of modifying in any manner the rights of such Securityholders; provided that such action will not, in the opinion of counsel satisfactory to the Indenture Trustee and the Grantor Trustee, materially affect the interest of any such Securityholder.

In addition, this Sale Agreement may also be amended from time to time by the Seller and the Purchaser, with the consent of the Noteholders of the Notes evidencing a majority of the Outstanding Amount of the Notes and the consent of the Certificateholders of the Certificates evidencing a majority of the outstanding principal amount of the Certificates, for the purpose of

5

adding any provisions to or changing in any manner or eliminating any of the provisions of this Sale Agreement or of modifying in any manner the rights of the Noteholders or the Certificateholders, respectively; provided, however, that no such amendment shall (a) increase or reduce in any manner the amount of, or accelerate or delay the time of, collections of payments with respect to Transferred Student Loans or distributions that shall be required to be made for the benefit of the Securityholders, or (b) reduce the aforesaid percentage of the Outstanding Amount of the Notes or the Certificates, the Noteholders or the Certificateholders of which are required to consent to any such amendment, without the consent of all outstanding Noteholders or Certificateholders, respectively.

Promptly after the execution of any such amendment or consent (or, in the case of the Rating Agencies, five Business Days prior thereto), the Purchaser shall furnish written notification of the substance of such amendment or consent to the Indenture Trustee, the Grantor Trustee and each of the Rating Agencies.

It shall not be necessary for the consent of Securityholders pursuant to this Section to approve the particular form of any proposed amendment or consent, but it shall be sufficient if such consent shall approve the substance thereof.

Prior to the execution of any amendment to this Sale Agreement, the Owner Trustee shall be entitled to receive and rely upon an opinion of counsel stating that execution of such amendment is authorized or permitted by this Sale Agreement. The Owner Trustee may, but shall not be obligated to, enter into any such amendment which affects the Owner Trustee's own rights, duties or immunities under this Sale Agreement or otherwise.

## ARTICLE XII
## ASSIGNMENT

The Seller hereby assigns its entire right, title and interest as purchaser under this Sale Agreement and the Student Loan Purchase Agreement thereunder to the Purchaser as of the date hereof and acknowledges that the Purchaser will assign the same, together with the right, title and interest of the Purchaser hereunder, to the Indenture Trustee under the Indenture.

## ARTICLE XIII
## GOVERNING LAW

THIS SALE AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, INCLUDING SECTIONS 5-1401 AND 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW, BUT OTHERWISE WITHOUT REGARD TO CONFLICT OF LAW PRINCIPLES, AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

## ARTICLE XIV
## LIMITATION OF LIABILITY OF OWNER TRUSTEE

Notwithstanding anything contained herein to the contrary, this instrument has been executed by Delaware Trust Company, National Association, not in its individual capacity but

6

solely in its capacity as Owner Trustee of the Purchaser, and in no event shall Delaware Trust Company, National Association in its individual capacity or any beneficial owner of the Purchaser have any liability for the representations, warranties, covenants, agreements or other obligations of the Purchaser hereunder, as to all of which recourse shall be had solely to the assets of the Purchaser. For all purposes of this Sale Agreement, in the performance of any duties or obligations of the Purchaser hereunder, the Owner Trustee shall be subject to, and entitled to the benefits of, the terms and provisions of Articles VIII, IX and X of the Trust Agreement.

[Signature Pages Follow]

7

IN WITNESS WHEREOF, the parties hereto have caused this Sale Agreement to be duly executed by their respective officers hereunto duly authorized, as of the day and year first above written.

THE NATIONAL COLLEGIATE FUNDING LLC, as Seller

By: GATE Holdings, Inc., Member

By: _____

Name: Donald R. Peck

Title: Treasurer and Secretary

THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-3, as Purchaser

By: Delaware Trust Company, National Association, not in its individual capacity but solely as Owner Trustee

By: _____

Name:

Title:

IN WITNESS WHEREOF, the parties hereto have caused this Sale Agreement to be duly executed by their respective officers hereunto duly authorized, as of the day and year first above written.

THE NATIONAL COLLEGIATE FUNDING LLC, as Seller

By: GATE Holdings, Inc., Member

By:_____
    Name:
    Title:

THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-3, as Purchaser

By:    Delaware Trust Company, National Association, not in its individual capacity but solely as Owner Trustee

By:_____
    Name: STERLING C. CORREIA
    Title:    VICE PRESIDENT

Deposit and Sale Agreement

## SCHEDULE A
*Pool Supplements*

Each of the following Pool Supplements was entered into by and among The First Marblehead Corporation, The National Collegiate Funding LLC and:

- Bank of America, N.A., dated October 12, 2005, for loans that were originated under Bank of America's BAGEL Loan Program, CEDU Loan Program, Direct to Consumer Loan Program and ISLP Loan Program.
- Bank One, N.A., dated October 12, 2005, for loans that were originated under Bank One's CORPORATE ADVANTAGE Loan Program, EDUCATION ONE Loan Program and M&T REFERRAL Loan Program.
- Charter One Bank, N.A., dated October 12, 2005, for loans that were originated under the following Charter One programs: AAA Southern New England Bank, AES EducationGAIN Loan Program, (AMS) TuitionPay Diploma Loan Program, Brazos Alternative Loan Program, CFS Direct to Consumer Loan Program, Citibank Flexible Education Loan Program, College Loan Corporation Loan Program, Comerica Alternative Loan Program, Custom Educredit Loan Program, Edfinancial Loan Program, Education Assistance Services Loan Program, ESF Alternative Loan Program, Extra Credit II Loan Program (North Texas Higher Education), M&I Alternative Loan Program, National Education Loan Program, Navy Federal Alternative Loan Program, NextStudent Alternative Loan Program, NextStudent Private Consolidation Loan Program, PNC Bank Resource Loan Program, SAF Alternative Loan Program, START Education Loan Program, Southwest Loan Program, WAMU Alternative Student Loan Program, Charter One Referral Loan Program and Axiom Alternative Loan Program.
- Chase Manhattan Bank USA, N.A., dated June 9 2005, for loans that were originated under Chase's Chase Extra Loan Program.
- Citizens Bank of Rhode Island, dated October 12, 2005, for loans that were originated under Citizens Bank of Rhode Island's Compass Bank Loan Program, DTC Loan Program, Navy Federal Referral Loan Program and Xanthus Loan Program.
- GMAC Bank, dated October 12, 2005, for loans that were originated under GMAC Bank's GMAC Alternative Loan Program.
- HSBC Bank USA, National Association, dated October 12, 2005, for loans that were originated under the HSBC Loan Program.
- The Huntington National Bank, dated October 12, 2005, for loans that were originated under The Huntington National Bank's Huntington Bank Education Loan Program.
- Manufacturers and Traders Trust Company, dated October 12, 2005, for loans that were originated under Manufacturers and Traders Trust Company's M&T Alternative Loan Program.
- PNC Bank, N.A., dated October 12, 2005, for loans that were originated under PNC Bank's PNC Bank Alternative Loan Program.
- Sovereign Bank, dated October 12, 2005, for loans that were originated under Sovereign Bank's Alternative Loan Program.
- SunTrust Bank, dated October 12, 2005, for loans that were originated under SunTrust Bank's SunTrust Alternative Loan Program.

## SCHEDULE B
### *Student Loan Purchase Agreements*

Each of the following Note Purchase Agreements, as amended or supplemented, was entered into
by and between The First Marblehead Corporation and:

- Bank of America, N.A., dated April 30, 2001, for loans that were originated under Bank
  of America's BAGEL Loan Program, CEDU Loan Program and ISLP Loan Program.
- Bank of America, N.A., dated June 30, 2003, for loans that were originated under Bank
  of America's Direct to Consumer Loan Program.
- Bank One, N.A., dated May 1, 2002, for loans that were originated under Bank One's
  CORPORATE ADVANTAGE Loan Program and EDUCATION ONE Loan Program.
- Bank One, N.A., dated July 26, 2002, for loans that were originated under Bank One's
  M&T REFERRAL Loan Program
- Charter One Bank, N.A., dated as of December 29, 2003 for loans that were originated
  under Charter One's AAA Southern New England Bank Loan Program.
- Charter One Bank, N.A., dated October 31, 2003, for loans that were originated under
  Charter One's AES EducationGAIN Loan Program.
- Charter One Bank, N.A., dated May 15, 2002, for loans that were originated under
  Charter One's (AMS) TuitionPay Diploma Loan Program.
- Charter One Bank, N.A., dated July 15, 2003, for loans that were originated under
  Charter One's Brazos Alternative Loan Program.
- Charter One Bank, N.A., dated May 15, 2002, for loans that were originated under
  Charter One's CFS Direct to Consumer Loan Program.
- Charter One Bank, N.A., dated June 30, 2003, for loans that were originated under
  Charter One's Citibank Flexible Education Loan Program.
- Charter One Bank, N.A., dated July 1, 2002, for loans that were originated under Charter
  One's College Loan Corporation Loan Program.
- Charter One Bank, N.A., dated December 4, 2002, for loans that were originated under
  Charter One's Comerica Alternative Loan Program.
- Charter One Bank, N.A., dated December 1, 2003, for loans that were originated under
  Charter One's Custom Educredit Loan Program.
- Charter One Bank, N.A., dated May 10, 2004, for loans that were originated under
  Charter One's Edfinancial Loan Program.
- Charter One Bank, N.A., dated May 15, 2002, for loans that were originated under
  Charter One's Education Assistance Services Loan Program.
- Charter One Bank, N.A., dated May 15, 2003, for loans that were originated under
  Charter One's ESF Alternative Loan Program.
- Charter One Bank, N.A., dated September 15, 2003, for loans that were originated under
  Charter One's Extra Credit II Loan Program (North Texas Higher Education).
- Charter One Bank, N.A., dated September 20, 2003, for loans that were originated under
  Charter One's M&I Alternative Loan Program.
- Charter One Bank, N.A., dated November 17, 2003, for loans that were originated under
  Charter One's National Education Loan Program.

- Charter One Bank, N.A., dated May 15, 2003, for loans that were originated under Charter One's Navy Federal Alternative Loan Program.
- Charter One Bank, N.A., dated May 15, 2002, for loans that were originated under Charter One's NextStudent Alternative Loan Program.
- Charter One Bank, N.A., dated March 26, 2004, for loans that were originated under Charter One's NextStudent Private Consolidation Loan Program.
- Charter One Bank, N.A., dated March 17, 2003, for loans that were originated under Charter One's PNC Bank Resource Loan Program.
- Charter One Bank, N.A., dated May 1, 2003, for loans that were originated under Charter One's SAF Alternative Loan Program.
- Charter One Bank, N.A., dated September 20, 2002, for loans that were originated under Charter One's Southwest Loan Program.
- Charter One Bank, N.A., dated March 25, 2004, for loans that were originated under Charter One's START Education Loan Program.
- Charter One Bank, N.A., dated May 15, 2003, for loans that were originated under Charter One's WAMU Alternative Student Loan Program.
- Charter One Bank, N.A., dated February 15, 2005, for loans that were originated under Charter One's Referral Loan Program and Axiom Alternative Loan Program.
- Chase Manhattan Bank USA, N.A., dated September 30, 2003, as amended on March 1, 2004, September 8, 2004 and February 25, 2005, for loans that were originated under Chase's Chase Extra Loan Program.
- Citizens Bank of Rhode Island, dated April 30, 2004, for loans that were originated under Citizens Bank of Rhode Island's Compass Bank Loan Program.
- Citizens Bank of Rhode Island, dated April 30, 2004, for loans that were originated under Citizens Bank of Rhode Island's DTC Alternative Loan Program.
- Citizens Bank of Rhode Island, dated April 30, 2004, for loans that were originated under Citizens Bank of Rhode Island's Navy Federal Referral Loan Program.
- Citizens Bank of Rhode Island, dated April 30, 2004, for loans that were originated under Citizens Bank of Rhode Island's Xanthus Loan Program.
- GMAC Bank, dated May 30, 2003, as amended on March 1, 2005, for loans that were originated under GMAC Bank's GMAC Alternative Loan Program.
- HSBC Bank USA, National Association, dated April 17, 2002, as amended on June 2, 2003 and August 1, 2003, for loans that were originated under the HSBC Loan Program.
- The Huntington National Bank, dated May 20, 2003, for loans that were originated under The Huntington National Bank's Huntington Bank Education Loan Program.
- Manufacturers and Traders Trust Company, dated April 29, 2004, for loans that were originated under Manufacturers and Traders Trust Company's Alternative Loan Program.
- National City Bank, dated November 13, 2002, for loans that were originated under National City Bank's National City Loan Program.
- PNC Bank, N.A., dated April 22, 2004, for loans that were originated under PNC Bank's Alternative Conforming Loan Program.
- Sovereign Bank, dated April 30, 2004, for loans that were originated under Sovereign Bank's Alternative Loan Program.
- SunTrust Bank, dated March 1, 2002, for loans that were originated under SunTrust Bank's SunTrust Alternative Loan Program.

EX-10.15 16 ncslt_ex10-15.htm POOL SUPPLEMENT - BANK OF AMERICA

EXHIBIT 10.15

### 2005-3 POOL SUPPLEMENT

This Pool Supplement (the "Supplement") is entered into pursuant to and forms a part of that certain (i) Note Purchase Agreement dated as of April 30, 2001 and (ii) Note Purchase Agreement dated as of June 30, 2003, each as amended or supplemented from the date of execution of the Agreement through the date of this Supplement (together, the "Agreement"), by and between The First Marblehead Corporation and Bank of America, N.A. (the "Program Lender"). This Supplement is dated as of October 12, 2005. Capitalized terms used in this Supplement without definitions have the meanings set forth in the Agreement.

Article 1: Purchase and Sale.

In consideration of the Minimum Purchase Price set forth in Schedule 1 attached hereto, the Program Lender hereby transfers, sells, sets over and assigns to The National Collegiate Funding LLC (the "Depositor"), upon the terms and conditions set forth in the Agreement (which are incorporated herein by reference with the same force and effect as if set forth in full herein), each student loan set forth on the attached Schedule 2 (the "Transferred Bank of America Loans") along with all of the Program Lender's rights under the Guaranty Agreement relating to the Transferred Bank of America Loans. The Depositor in turn will sell the Transferred Bank of America Loans to The National Collegiate Student Loan Trust 2005-3 (the "Trust"). The Program Lender hereby transfers and delivers to the Depositor each Note evidencing such Transferred Bank of America Loan and all Origination Records relating thereto, in accordance with the terms of the Agreement. The Depositor hereby purchases said Notes on said terms and conditions.

Article 2: Price.

The amounts paid pursuant to this Supplement are the amounts set forth on Schedule 1 attached hereto.

Article 3: Representations and Warranties.

3.01.   By Program Lender.

The Program Lender repeats the representations and warranties contained in Section 5.02 of the Agreement for the benefit of each of the Depositor and the Trust and confirms the same are true and correct as of the date hereof with respect to the Agreement and to this Supplement.

3.02.   By Depositor.

The Depositor hereby represents and warrants to the Program Lender that at the date of execution and delivery of this Supplement by the Depositor:

(a)      The Depositor is duly organized and validly existing as a limited liability company under the laws of the State of Delaware with the due power and authority to own its properties and to conduct its business as such properties are currently owned and such business is presently

conducted, and had at all relevant times, and has, the power, authority and legal right to acquire and own the Transferred Bank of America Loans.

(b)     The Depositor is duly qualified to do business and has obtained all necessary licenses and approvals in all jurisdictions in which the ownership or lease of property or the conduct of its business shall require such qualifications.

(c)     The Depositor has the power and authority to execute and deliver this Supplement and to carry out its respective terms; the Depositor has the power and authority to purchase the Transferred Bank of America Loans and rights relating thereto as provided herein from the Program Lender, and the Depositor has duly authorized such purchase from the Program Lender by all necessary action; and the execution, delivery and performance of this Supplement has been duly authorized by the Depositor by all necessary action on the part of the Depositor.

(d)     This Supplement, together with the Agreement of which this Supplement forms a part, constitutes a legal, valid and binding obligation of the Depositor, enforceable in accordance with its terms.

(e)     The consummation of the transactions contemplated by the Agreement and this Supplement and the fulfillment of the terms hereof do not conflict with, result in any breach of any of the terms and provisions of, or constitute (with or without notice or lapse of time) a default under, the governing instruments of the Depositor or any indenture, agreement or other instrument to which the Depositor is a party or by which it is bound; or result in the creation or imposition of any lien upon any of its properties pursuant to the terms of any such indenture, agreement or other instrument; or violate any law or any order, rule or regulation applicable to the Depositor of any court or of any federal or state regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties.

(f)     There are no proceedings or investigations pending, or threatened, before any court, regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties: (i) asserting the invalidity of the Agreement or this Supplement, (ii) seeking to prevent the consummation of any of the transactions contemplated by the Agreement or this Supplement, or (iii) seeking any determination or ruling that is likely to materially or adversely affect the performance by the Depositor of its obligations under, or the validity or enforceability of the Agreement or this Supplement.

Article 4: Cross Receipt.

The Program Lender hereby acknowledges receipt of the Minimum Purchase Price. The Depositor hereby acknowledges receipt of the Transferred Bank of America Loans.

Article 5: Assignment of Origination, Guaranty and Servicing Rights.

The Program Lender hereby assigns and sets over to the Depositor any claims it may now or hereafter have under the Guaranty Agreement, the Origination Agreement and the Servicing Agreement to the extent the same relate to the Transferred Bank of America Loans described in Schedule 2, other than any right to obtain servicing after the date hereof. It is the intent of this provision to vest in the Depositor any claim of the Program Lender relating to defects in origination, guaranty or servicing of the loans purchased hereunder in order to permit the Depositor to assert

such claims directly and obviate any need to make the same claims against the Program Lender under this Supplement.

IN WITNESS WHEREOF, the parties have caused this Supplement to be executed as of the date set forth above.

THE FIRST MARBLEHEAD CORPORATION


By: /s/ John A. Hupalo
   Name: John A. Hupalo
   Title: Executive Vice President


BANK OF AMERICA, N.A.


By: /s/ Don Mills
   Name: Don Mills
   Title: Senior Vice President


THE NATIONAL COLLEGIATE FUNDING LLC

By:      GATE Holdings, Inc., Member


   By: /s/ Donald R. Peck
      Name: Donald R. Peck
      Title: Treasurer and Secretary

| LENDER_NAME | MARKETER | LOAN_DESC | BSSN | SEQ |
|---|---|---|---|---|
| BANK OF AMERICA | Bank of America | DTC - Undergraduate | xxx-xx-3085 | 0003 |

| ACTUAL_MARGIN | RECON_PRIN | RECON_INT |
|---|---|---|
| 0.0465 | $33,379.34 | $82.18 |

Case 15-01175-mkn   Doc 9-4   Entered 06/09/16 14:02:26   Page 108 of 240

```
ITS2X       3085;                    AES/PA        VTAM NAC6      TSX2Y
DATE 11/04/15 09:27:42 REPAYMENT SCHEDULE SUMMARY SELECTION   PAGE  1 OF  4

BORROWER SSN     3085   NAME JAVIER MEDINA

        SCHED   INSTALL  REPAY  REPAY  1ST DUE 1ST DISB   LOAN
SEL STA TYPE    AMOUNT   LVLS   TERM    DATE    DATE      PGM     OWNER


 3  I    L      346.17     2     216   05/17/11 08/29/05 ALPLN    NCT




 9  I    L      333.30     2     222   08/17/10 08/29/05 ALPLN    NCT



SELECTION   __


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

Nov 4, 2015 9:28:02 AM



```
  ITS2X      3085;                    AES/PA      VTAM NAC6      TSX2Y
  DATE 11/04/15 09:28:03 REPAYMENT SCHEDULE SUMMARY SELECTION   PAGE  2 OF  4

  BORROWER SSN       3085    NAME JAVIER MEDINA

          SCHED   INSTALL   REPAY  REPAY  1ST DUE 1ST DISB   LOAN
  SEL STA TYPE    AMOUNT    LVLS   TERM    DATE    DATE      PGM      OWNER


   4  I   RP       25.00      3     225   05/17/10 08/29/05 ALPLN     NCT



   9  I   L       323.37      2     226   03/17/10 08/29/05 ALPLN     NCT



  SELECTION  __


  F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

Nov 4, 2015 9:28:12 AM

ITS2X█████3085;                          AES/PA           VTAM NAC6        TSX2Y
DATE 11/04/15 09:28:14 REPAYMENT SCHEDULE SUMMARY SELECTION    PAGE  3 OF  4

BORROWER SSN █████-3085   NAME JAVIER MEDINA



```
         SCHED   INSTALL  REPAY  REPAY  1ST DUE 1ST DISB   LOAN
SEL STA  TYPE    AMOUNT   LVLS   TERM    DATE    DATE      PGM       OWNER

 3  I    L       313.19    2      231   11/01/09 08/29/05 ALPLN       NCT

 9  I    L       366.85    2      237   04/24/09 08/29/05 ALPLN       NCT
```

SELECTION  __                    .


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN

ITS2X▮▮;▮3085;                    AES/PA          VTAM NAC6        TSX2Y
DATE 11/04/15 09:28:24 REPAYMENT SCHEDULE SUMMARY SELECTION    PAGE  4 OF  4

BORROWER SSN ▮▮▮▮3085   NAME JAVIER MEDINA

|     | SCHED | INSTALL | REPAY | REPAY | 1ST DUE | 1ST DISB | LOAN |       |
|-----|-------|---------|-------|-------|---------|----------|------|-------|
| SEL STA TYPE | | AMOUNT | LVLS | TERM | DATE | DATE | PGM | OWNER |
| 3  I  L | | 370.05 | 2 | 239 | 08/18/08 | 08/29/05 | ALPLN | NCT |

SELECTION  __

F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN

Nov 4, 2015 9:28:33 AM

```
ITS2C    3085;;              AES/PA       VTAM NAC6     TSX2D
DATE 11/04/15 09:26:27   LOAN FINANCIAL ACTIVITY          PAGE  1 OF  5

BORROWER SSN:      -3085  NAME: MEDINA, JAVIER
1ST DISB: 08/29/05 LN SEQ: 0003  LN PGM: ALPLN     OWN: 122962QC-NCT
GUARANTOR: TERI                  CUST ACCT:  LT07  ORIG BAL: 33,149.17
BOND ISSUE: NCT20053  PD AHEAD:   STATUS: ACTIVE    CURR BAL:     0.00
```

|    | REV | EFFECTIVE | POSTED   | TRAN  | TRAN       | INTEREST | PRINCIPAL |
|----|-----|-----------|----------|-------|------------|----------|-----------|
|    | REA | DATE      | DATE     | TYPE  | AMOUNT     | ACCRUED  | BALANCE   |
| 1  |     | 12/02/11  | 12/02/11 | 5003A | 30.00CR    | 0.00     | 0.00      |
| 2  |     | 12/01/11  | 12/01/11 | 1030A | 51,092.16CR| 190.76   | 0.00      |
| 3  |     | 11/02/11  |          | 2601A | 5.00       | 197.34   | 49,505.13 |
| 4  |     | 10/03/11  |          | 2601A | 5.00       | 204.31   | 49,505.13 |
| 5  |     | 09/02/11  |          | 2601A | 5.00       | 204.34   | 49,505.13 |
| 6  |     | 08/02/11  |          | 2601A | 5.00       | 197.74   | 49,505.13 |
| 7  |     | 07/03/11  |          | 2601A | 5.00       | 206.30   | 49,505.13 |
| 8  |     | 06/02/11  |          | 2601A | 5.00       | 386.24   | 49,505.13 |
| 9  |     | 04/05/11  | 04/08/11 | 7001A | 0.00       | 683.55   | 49,505.13 |
| 10 |     | 12/22/10  | 04/08/11 | 7001A | 0.00       | 758.56   | 48,821.58 |

```
     SELECTION __

F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

Nov 4, 2015 9:26:49 AM

```
ITS2C      3085;;              AES/PA      VTAM NAC6      TSX2D
DATE 11/04/15 09:26:53    LOAN FINANCIAL ACTIVITY        PAGE  2 OF  5

BORROWER SSN:      -3085  NAME: MEDINA, JAVIER
1ST DISB: 08/29/05 LN SEQ: 0003  LN PGM: ALPLN    OWN: 122962QC-NCT
GUARANTOR: TERI                  CUST ACCT:  LT07  ORIG BAL:  33,149.17
BOND ISSUE: NCT20053  PD AHEAD:   STATUS: ACTIVE    CURR BAL:      0.00
```

| | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|---|---|---|---|---|---|---|---|
| 1 | | 08/27/10 | 08/27/10 | 1010C | 620.00CR | 161.85 | 47,836.08 |
| 2 | | 08/02/10 | 08/02/10 | 1010C | 28.20CR | 194.22 | 47,836.08 |
| 3 | | 08/02/10 | | 2601A | 1.25 | 0.00 | 47,836.08 |
| 4 | | 07/03/10 | | 2601A | 1.25 | 12.94 | 47,836.08 |
| 5 | | 07/01/10 | 07/01/10 | 1010C | 28.20CR | 185.47 | 47,836.08 |
| 6 | | 06/02/10 | | 2601A | 1.25 | 57.56 | 47,836.08 |
| 7 | | 05/24/10 | 05/25/10 | 1010C | 28.20CR | 134.30 | 47,836.08 |
| 8 | | 05/03/10 | | 2601A | 5.00 | 127.91 | 47,836.08 |
| 9 | | 04/13/10 | 04/13/10 | 1010C | 28.20CR | 76.74 | 47,836.08 |
| 10 | | 04/01/10 | 04/01/10 | 7001A | 0.00 | 375.14 | 47,836.08 |

```
        SELECTION __

F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

Nov 4, 2015 9:27:04 AM

```
ITS2C    3085;;              AES/PA        VTAM NAC6      TSX2D
DATE 11/04/15 09:27:05   LOAN FINANCIAL ACTIVITY        PAGE  3 OF  5

BORROWER SSN:      -3085  NAME: MEDINA, JAVIER
1ST DISB: 08/29/05 LN SEQ: 0003  LN PGM: ALPLN    OWN: 122962QC-NCT
GUARANTOR: TERI                  CUST ACCT:  LT07  ORIG BAL: 33,149.17
BOND ISSUE: NCT20053    PD AHEAD:    STATUS: ACTIVE    CURR BAL:    0.00
```

|    | REV | EFFECTIVE | POSTED | TRAN | TRAN | INTEREST | PRINCIPAL |
|----|-----|-----------|--------|------|------|----------|-----------|
|    | REA | DATE | DATE | TYPE | AMOUNT | ACCRUED | BALANCE |
| 1  |     | 02/01/10 | 02/01/10 | 7001A | 0.00 | 774.04 | 47,460.94 |
| 2  |     | 10/01/09 | 10/02/09 | 7001A | 0.00 | 1,222.88 | 46,686.90 |
| 3  |     | 03/25/09 | 03/25/09 | 7001A | 0.00 | 757.37 | 45,464.02 |
| 4  |     | 01/01/09 | 01/02/09 | 7001A | 0.00 | 786.05 | 44,706.65 |
| 5  |     | 10/01/08 | 11/07/08 | 7001A | 0.00 | 131.00 | 43,920.60 |
| 6  |     | 09/16/08 | 11/07/08 | 7001A | 0.00 | 577.46 | 43,789.60 |
| 7  |     | 07/11/08 | 11/07/08 | 7001A | 0.00 | 86.01 | 43,212.14 |
| 8  |     | 07/01/08 | 11/07/08 | 7001A | 0.00 | 868.89 | 43,126.13 |
| 9  |     | 04/01/08 | 11/07/08 | 7001A | 0.00 | 992.13 | 42,257.24 |
| 10 |     | 01/01/08 | 01/02/08 | 7001A | 0.00 | 1,026.40 | 41,265.11 |

```
     SELECTION __

F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```



Nov 4, 2015 9:27:14 AM

```
ITS2C    3085;;              AES/PA      VTAM NAC6     TSX2D
DATE 11/04/15 09:27:15   LOAN FINANCIAL ACTIVITY        PAGE  4 OF  5

BORROWER SSN:     3085  NAME: MEDINA, JAVIER
1ST DISB: 08/29/05 LN SEQ: 0003  LN PGM: ALPLN    OWN: 122962QC-NCT
GUARANTOR: TERI                  CUST ACCT:  LT07  ORIG BAL:  33,149.17
BOND ISSUE: NCT20053   PD AHEAD:    STATUS: ACTIVE    CURR BAL:      0.00
```

|   | REV<br>REA | EFFECTIVE<br>DATE | POSTED<br>DATE | TRAN<br>TYPE | TRAN<br>AMOUNT | INTEREST<br>ACCRUED | PRINCIPAL<br>BALANCE |
|---|---|---|---|---|---|---|---|
| 1 |  | 10/01/07 | 10/01/07 | 7001A | 0.00 | 986.40 | 40,238.71 |
| 2 |  | 07/01/07 | 07/02/07 | 7001A | 0.00 | 952.01 | 39,252.31 |
| 3 |  | 04/01/07 | 04/02/07 | 7001A | 0.00 | 919.86 | 38,300.30 |
| 4 |  | 01/01/07 | 01/02/07 | 7001A | 0.00 | 919.02 | 37,380.44 |
| 5 |  | 10/01/06 | 10/02/06 | 7001A | 0.00 | 864.92 | 36,461.42 |
| 6 |  | 07/01/06 | 07/03/06 | 7001A | 0.00 | 796.47 | 35,596.50 |
| 7 |  | 04/01/06 | 04/03/06 | 7001A | 0.00 | 733.32 | 34,800.03 |
| 8 |  | 01/01/06 | 01/03/06 | 7001A | 0.00 | 605.19 | 34,066.71 |
| 9 |  | 10/12/05 | 10/12/05 | 0390A | 33,461.52 | 0.00 | 33,379.34 |
| 10 |  | 10/12/05 | 10/12/05 | 0395A | 33,461.52CR | 82.18 | 0.00 |

```
     SELECTION __


F1=RELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

```
  ITS2C    3085;;              AES/PA       VTAM NAC6      TSX2D
DATE 11/04/15 09:27:27    LOAN FINANCIAL ACTIVITY        PAGE  5 OF  5

BORROWER SSN:      3085  NAME: MEDINA, JAVIER
1ST DISB: 08/29/05 LN SEQ: 0003  LN PGM: ALPLN    OWN: 122962QC~NCT
GUARANTOR: TERI                CUST ACCT:  LT07  ORIG BAL:  33,149.17
BOND ISSUE: NCT20053   PD AHEAD:   STATUS: ACTIVE    CURR BAL:      0.00
```

|   | REV<br>REA | EFFECTIVE<br>DATE | POSTED<br>DATE | TRAN<br>TYPE | TRAN<br>AMOUNT | INTEREST<br>ACCRUED | PRINCIPAL<br>BALANCE |
|---|---|---|---|---|---|---|---|
| 1 |   | 10/01/05 | 10/03/05 | 7001A | 0.00 | 230.17 | 33,379.34 |
| 2 |   | 08/29/05 | 08/29/05 | 0101A | 33,149.17 | 0.00 | 33,149.17 |

```
        SELECTION __

   F1=HELP   F3=EXIT   F5=RFR   F7=BKWD   F8=FWD   F9=PRT   F12=CAN
```

Nov 4, 2015 9:27:35 AM

```
ITS2V    3085;                    AES/PA        VTAM NAC6        TSX2W
DATE 11/04/15 09:25:10   DEFERMENT/FORBEARANCE SUMMARY      PAGE  1 OF  4

BORROWER SSN    3085   NAME JAVIER MEDINA

  DEFER/FORB    BEGIN    END
    TYPE        DATE     DATE      1ST DISB LOAN PGM          OWNER
  F-BANKRUPT  12/22/10 04/04/11  1 07/19/07 ALPLN        NCT
                                 2 06/21/06 ALPLN        NCT
                                 3 04/12/06 ALPLN        NCT
                                 4 08/29/05 ALPLN        NCT
                                 5 05/16/05 ALPLN        NCT
                                 6 07/23/04 ALPLN        NCT
  F-ADMINIST  09/17/10 12/21/10  7 07/19/07 ALPLN        NCT
                                 8 06/21/06 ALPLN        NCT
                                 9 04/12/06 ALPLN        NCT
                                10 08/29/05 ALPLN        NCT
                                11 05/16/05 ALPLN        NCT
                                12 07/23/04 ALPLN        NCT

                        SELECTION __


 F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

Nov 4, 2015 9:25:31 AM

```
ITS2V     3085;                    AES/PA        VTAM NAC6        TSX2W
DATE 11/04/15 09:25:32    DEFERMENT/FORBEARANCE SUMMARY      PAGE  2 OF  4

BORROWER SSN     -3085   NAME JAVIER MEDINA

   DEFER/FORB    BEGIN     END
      TYPE       DATE      DATE      1ST DISB LOAN PGM           OWNER
   F-ADMINIST   03/01/10 03/31/10  1 07/19/07 ALPLN        NCT
                                   2 06/21/06 ALPLN        NCT
                                   3 04/12/06 ALPLN        NCT
                                   4 08/29/05 ALPLN        NCT
                                   5 05/16/05 ALPLN        NCT
                                   6 07/23/04 ALPLN        NCT
   F-TEMP HRD   10/01/09 01/31/10  7 07/19/07 ALPLN        NCT
                                   8 06/21/06 ALPLN        NCT
                                   9 04/12/06 ALPLN        NCT
                                  10 08/29/05 ALPLN        NCT
                                  11 05/16/05 ALPLN        NCT
                                  12 07/23/04 ALPLN        NCT

                          SELECTION __


  F1=HELP   F3=EXIT   F5=RFR   F7=BKWD   F8=FWD   F9=PRT   F12=CAN
```

Case 15-01175-mkn   Doc 9-3   Entered 06/09/16 14:02:26   Page 119 of 240

```
ITS2V    3085;                    AES/PA       VTAM NAC6        TSX2W
DATE 11/04/15 09:25:43    DEFERMENT/FORBEARANCE SUMMARY      PAGE  3 OF  4

BORROWER SSN     -3085    NAME JAVIER MEDINA

  DEFER/FORB    BEGIN    END
    TYPE        DATE     DATE     1ST DISB LOAN PGM          OWNER
  F-TEMP HRD  04/01/09 09/30/09  1 07/19/07 ALPLN      NCT
                                 2 06/21/06 ALPLN      NCT
                                 3 04/12/06 ALPLN      NCT
                                 4 08/29/05 ALPLN      NCT
                                 5 05/16/05 ALPLN      NCT
                                 6 07/23/04 ALPLN      NCT
  D-SCHL FUL  09/16/08 11/29/10  7 07/19/07 ALPLN      NCT
                                 8 06/21/06 ALPLN      NCT
                                 9 04/12/06 ALPLN      NCT
                                10 08/29/05 ALPLN      NCT
                                11 05/16/05 ALPLN      NCT
                                12 07/23/04 ALPLN      NCT


                          SELECTION __


  F1=HELP   F3=EXIT   F5=RFR   F7=BKWD   F8=FWD   F9=PRT   F12=CAN
```

Nov 4, 2015 9:25:50 AM

```
ITS2V    3085;                    AES/PA        VTAM NAC6        TSX2W
DATE 11/04/15 09:25:51    DEFERMENT/FORBEARANCE SUMMARY        PAGE  4 OF  4

BORROWER SSN      -3085    NAME JAVIER MEDINA

   DEFER/FORB    BEGIN    END
     TYPE        DATE     DATE    1ST DISB LOAN PGM              OWNER
   F-TEMP HRD  08/01/08 01/31/09  1 07/19/07 ALPLN      NCT
                                  2 06/21/06 ALPLN      NCT
                                  3 04/12/06 ALPLN      NCT
                                  4 08/29/05 ALPLN      NCT
                                  5 05/16/05 ALPLN      NCT
                                  6 07/23/04 ALPLN      NCT




                          SELECTION __


   F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```



Nov 4, 2015 9:26:00 AM

# Loan Payment History Report
## Date: 2015-11-04

| | | | |
|---|---|---|---|
| Account Number: | 3085/003-001000 | | |
| Social Security Number: | 3085 | Product: | DFU DIRECT TO CONSUMER UNDERGRAD |
| Name: | MEDINA, JAVIER | Officer Code: | 777053 |
| Birth Date: | 1979- | School: | SPARTAN COLLEGE OF AERONAUTICS & TECH |
| Address 1: | C/O GOLDSTEIN PHILIP K | Program Year: | 2005-06 |
| Address 2: | 609 S 7TH ST | | |
| City: | LAS VEGAS | Variable Rate Code: | FU LIBOR |
| State: | NV | Interest Rate: | 4.84% |
| Zip Code: | 89101 | Last Payment Date: | 2010-08-27 |
| | | Last Payment Amount: | $620.00 |
| | | Payment Due Date: | 2011-11-17 |
| Contract Date: | 2005-08-29 | Last Interest Date: | 2015-11-04 |
| Date Assigned: | | Accrued Interest: | $9,762.59 |
| Charge Off Date: | 2011-12-01 | Recovered Interest: | $0.00 |
| Charge Off Amount: | $51,092.16 | Net Interest: | $9,762.59 |
| Recovered Principal: | $0.00 | Associated Costs: | $0.00 |
| Net Charge Off: | $51,092.16 | Recovered Costs: | $0.00 |
| Disbursement Date: | 2005-08-29 | Net Costs: | $0.00 |
| Disbursement Amount: | $33,149.17 | | |

## Transaction History

| System | 2011-12-31 | 00:01 | 82 | $51,092.16 @ 4.850 / 12/01/2011 - 12/31/2011 | $203.67 |
|---|---|---|---|---|---|
| System | 2012-01-03 | 00:01 | 82 | $51,092.16 @ 4.900 / 12/31/2011 - 01/03/2012 | $20.52 |
| System | 2012-01-31 | 00:01 | 82 | $51,092.16 @ 4.900 / 01/03/2012 - 01/31/2012 | $191.53 |
| System | 2012-02-01 | 00:01 | 82 | $51,092.16 @ 4.900 / 01/31/2012 - 02/01/2012 | $6.84 |
| System | 2012-02-29 | 00:01 | 82 | $51,092.16 @ 4.900 / 02/01/2012 - 02/29/2012 | $191.53 |
| System | 2012-03-01 | 00:01 | 82 | $51,092.16 @ 4.900 / 02/29/2012 - 03/01/2012 | $6.84 |
| System | 2012-03-31 | 00:01 | 82 | $51,092.16 @ 4.900 / 03/01/2012 - 03/31/2012 | $205.21 |
| System | 2012-04-02 | 00:01 | 82 | $51,092.16 @ 4.900 / 03/31/2012 - 04/02/2012 | $13.68 |
| System | 2012-04-30 | 00:01 | 82 | $51,092.16 @ 4.920 / 04/02/2012 - 04/30/2012 | $192.31 |
| System | 2012-05-02 | 00:01 | 82 | $51,092.16 @ 4.920 / 04/30/2012 - 05/02/2012 | $13.74 |
| System | 2012-05-31 | 00:01 | 82 | $51,092.16 @ 4.920 / 05/02/2012 - 05/31/2012 | $199.18 |
| System | 2012-06-01 | 00:01 | 82 | $51,092.16 @ 4.920 / 05/31/2012 - 06/01/2012 | $6.87 |
| System | 2012-06-30 | 00:01 | 82 | $51,092.16 @ 4.920 / 06/01/2012 - 06/30/2012 | $199.18 |
| System | 2012-07-01 | 00:01 | 82 | $51,092.16 @ 4.920 / 06/30/2012 - 07/01/2012 | $6.87 |
| System | 2012-07-02 | 00:01 | 82 | $51,092.16 @ 4.890 / 07/01/2012 - 07/02/2012 | $6.83 |
| System | 2012-07-31 | 00:01 | 82 | $51,092.16 @ 4.890 / 07/02/2012 - 07/31/2012 | $197.96 |

| System | 2012-08-01 | 00:01 | 82 | $51,092.16 @ 4.890 / 07/31/2012 - 08/01/2012 | $6.83 |
|--------|-----------|-------|----|----------------------------------------------|-------|
| System | 2012-08-31 | 00:01 | 82 | $51,092.16 @ 4.890 / 08/01/2012 - 08/31/2012 | $204.79 |
| System | 2012-09-04 | 00:01 | 82 | $51,092.16 @ 4.890 / 08/31/2012 - 09/04/2012 | $27.30 |
| System | 2012-09-30 | 00:01 | 82 | $51,092.16 @ 4.890 / 09/04/2012 - 09/30/2012 | $177.48 |
| System | 2012-10-01 | 00:01 | 82 | $51,092.16 @ 4.890 / 09/30/2012 - 10/01/2012 | $6.83 |
| System | 2012-10-31 | 00:01 | 82 | $51,092.16 @ 4.890 / 10/01/2012 - 10/31/2012 | $204.79 |
| System | 2012-11-09 | 00:01 | 82 | $51,092.16 @ 4.890 / 10/31/2012 - 11/09/2012 | $61.44 |
| System | 2012-12-03 | 00:01 | 82 | $51,092.16 @ 4.890 / 11/09/2012 - 12/03/2012 | $163.83 |
| System | 2012-12-05 | 00:01 | 82 | $51,092.16 @ 4.890 / 12/03/2012 - 12/05/2012 | $13.65 |
| System | 2012-12-11 | 00:01 | 82 | $51,092.16 @ 4.890 / 12/05/2012 - 12/11/2012 | $40.96 |
| System | 2012-12-17 | 00:01 | 82 | $51,092.16 @ 4.890 / 12/11/2012 - 12/17/2012 | $40.96 |
| System | 2012-12-18 | 00:01 | 82 | $51,092.16 @ 4.890 / 12/17/2012 - 12/18/2012 | $6.83 |
| System | 2012-12-26 | 00:01 | 82 | $51,092.16 @ 4.890 / 12/18/2012 - 12/26/2012 | $54.61 |
| System | 2012-12-31 | 00:01 | 82 | $51,092.16 @ 4.890 / 12/26/2012 - 12/31/2012 | $34.13 |
| System | 2013-01-01 | 00:01 | 82 | $51,092.16 @ 4.890 / 12/31/2012 - 01/01/2013 | $6.84 |
| System | 2013-01-03 | 00:01 | 82 | $51,092.16 @ 4.890 / 01/01/2013 - 01/03/2013 | $13.69 |
| System | 2013-01-31 | 00:01 | 82 | $51,092.16 @ 4.860 / 01/03/2013 - 01/31/2013 | $190.48 |
| System | 2013-02-01 | 00:01 | 82 | $51,092.16 @ 4.860 / 01/31/2013 - 02/01/2013 | $6.80 |
| System | 2013-02-04 | 00:01 | 82 | $51,092.16 @ 4.860 / 02/01/2013 - 02/04/2013 | $20.41 |
| System | 2013-02-07 | 00:01 | 82 | $51,092.16 @ 4.860 / 02/04/2013 - 02/07/2013 | $20.41 |
| System | 2013-02-11 | 00:01 | 82 | $51,092.16 @ 4.860 / 02/07/2013 - 02/11/2013 | $27.21 |
| System | 2013-02-13 | 00:01 | 82 | $51,092.16 @ 4.860 / 02/11/2013 - 02/13/2013 | $13.61 |
| System | 2013-02-14 | 00:01 | 82 | $51,092.16 @ 4.860 / 02/13/2013 - 02/14/2013 | $6.80 |
| System | 2013-02-28 | 00:01 | 82 | $51,092.16 @ 4.860 / 02/14/2013 - 02/28/2013 | $95.24 |
| System | 2013-03-31 | 00:01 | 82 | $51,092.16 @ 4.860 / 02/28/2013 - 03/31/2013 | $210.89 |
| System | 2013-04-09 | 00:01 | 82 | $51,092.16 @ 4.860 / 03/31/2013 - 04/09/2013 | $61.23 |
| System | 2013-04-30 | 00:01 | 82 | $51,092.16 @ 4.850 / 04/09/2013 - 04/30/2013 | $142.57 |
| System | 2013-05-31 | 00:01 | 82 | $51,092.16 @ 4.850 / 04/30/2013 - 05/31/2013 | $210.46 |
| System | 2013-06-30 | 00:01 | 82 | $51,092.16 @ 4.850 / 05/31/2013 - 06/30/2013 | $203.67 |
| System | 2013-07-31 | 00:01 | 82 | $51,092.16 @ 4.850 / 06/30/2013 - 07/31/2013 | $210.46 |
| System | 2013-08-02 | 00:01 | 82 | $51,092.16 @ 4.850 / 07/31/2013 - 08/02/2013 | $13.58 |
| System | 2013-08-31 | 00:01 | 82 | $51,092.16 @ 4.850 / 08/02/2013 - 08/31/2013 | $196.88 |
| System | 2013-09-03 | 00:01 | 82 | $51,092.16 @ 4.850 / 08/31/2013 - 09/03/2013 | $20.37 |
| System | 2013-12-05 | 00:01 | 82 | $51,092.16 @ 4.850 / 09/03/2013 - 12/05/2013 | $631.37 |
| System | 2013-12-31 | 00:01 | 82 | $51,092.16 @ 4.850 / 12/05/2013 - 12/31/2013 | $176.51 |
| System | 2014-01-06 | 00:01 | 82 | $51,092.16 @ 4.850 / 12/31/2013 - 01/06/2014 | $40.73 |
| System | 2014-01-31 | 00:01 | 82 | $51,092.16 @ 4.820 / 01/06/2014 - 01/31/2014 | $168.67 |
| System | 2014-02-28 | 00:01 | 82 | $51,092.16 @ 4.820 / 01/31/2014 - 02/28/2014 | $188.92 |
| System | 2014-04-03 | 00:01 | 82 | $51,092.16 @ 4.820 / 02/28/2014 - 04/03/2014 | $229.40 |
| System | 2014-05-21 | 00:01 | 82 | $51,092.16 @ 4.810 / 04/03/2014 - 05/21/2014 | $323.18 |
| System | 2014-06-13 | 00:01 | 82 | $51,092.16 @ 4.810 / 05/21/2014 - 06/13/2014 | $154.86 |
| System | 2014-06-19 | 00:01 | 82 | $51,092.16 @ 4.810 / 06/13/2014 - 06/19/2014 | $40.40 |
| System | 2014-07-03 | 00:01 | 82 | $51,092.16 @ 4.810 / 06/19/2014 - 07/03/2014 | $94.26 |
| System | 2014-07-31 | 00:01 | 82 | $51,092.16 @ 4.800 / 07/03/2014 - 07/31/2014 | $188.13 |
| System | 2014-08-01 | 00:01 | 82 | $51,092.16 @ 4.800 / 07/31/2014 - 08/01/2014 | $6.72 |
| System | 2014-08-31 | 00:01 | 82 | $51,092.16 @ 4.805 / 08/01/2014 - 08/31/2014 | $201.78 |
| System | 2014-09-02 | 00:01 | 82 | $51,092.16 @ 4.805 / 08/31/2014 - 09/02/2014 | $13.45 |
| System | 2014-09-30 | 00:01 | 82 | $51,092.16 @ 4.800 / 09/02/2014 - 09/30/2014 | $188.13 |

| System | 2014-10-31 | 00:01 | 82 | $51,092.16 @ 4.800 / 09/30/2014 - 10/31/2014 | $208.29 |
|--------|------------|-------|----|----------------------------------------------|---------|
| System | 2014-11-04 | 00:01 | 82 | $51,092.16 @ 4.800 / 10/31/2014 - 11/04/2014 | $26.88 |
| System | 2014-11-30 | 00:01 | 82 | $51,092.16 @ 4.810 / 11/04/2014 - 11/30/2014 | $175.06 |
| System | 2014-12-31 | 00:01 | 82 | $51,092.16 @ 4.810 / 11/30/2014 - 12/31/2014 | $208.72 |
| System | 2015-01-31 | 00:01 | 82 | $51,092.16 @ 4.810 / 12/31/2014 - 01/31/2015 | $208.72 |
| System | 2015-02-28 | 00:01 | 82 | $51,092.16 @ 4.810 / 01/31/2015 - 02/28/2015 | $188.52 |
| System | 2015-03-31 | 00:01 | 82 | $51,092.16 @ 4.810 / 02/28/2015 - 03/31/2015 | $208.72 |
| System | 2015-04-02 | 00:01 | 82 | $51,092.16 @ 4.810 / 03/31/2015 - 04/02/2015 | $13.47 |
| System | 2015-04-06 | 00:01 | 82 | $51,092.16 @ 4.820 / 04/02/2015 - 04/06/2015 | $26.99 |
| System | 2015-04-30 | 00:01 | 82 | $51,092.16 @ 4.820 / 04/06/2015 - 04/30/2015 | $161.93 |
| System | 2015-05-31 | 00:01 | 82 | $51,092.16 @ 4.820 / 04/30/2015 - 05/31/2015 | $209.16 |
| System | 2015-06-30 | 00:01 | 82 | $51,092.16 @ 4.820 / 05/31/2015 - 06/30/2015 | $202.41 |
| System | 2015-07-01 | 00:01 | 82 | $51,092.16 @ 4.820 / 06/30/2015 - 07/01/2015 | $6.75 |
| System | 2015-07-31 | 00:01 | 82 | $51,092.16 @ 4.830 / 07/01/2015 - 07/31/2015 | $202.83 |
| System | 2015-08-31 | 00:01 | 82 | $51,092.16 @ 4.830 / 07/31/2015 - 08/31/2015 | $209.59 |
| System | 2015-09-30 | 00:01 | 82 | $51,092.16 @ 4.830 / 08/31/2015 - 09/30/2015 | $202.83 |
| System | 2015-10-01 | 00:01 | 82 | $51,092.16 @ 4.830 / 09/30/2015 - 10/01/2015 | $6.76 |
| System | 2015-10-12 | 00:01 | 82 | $51,092.16 @ 4.840 / 10/01/2015 - 10/12/2015 | $74.52 |
| System | 2015-10-30 | 00:01 | 82 | $51,092.16 @ 4.840 / 10/12/2015 - 10/30/2015 | $121.95 |
| System | 2015-11-04 | 00:01 | 82 | $51,092.16 @ 4.840 / 10/30/2015 - 11/04/2015 | $33.87 |

Exhibit D

**• Creditworthy Student •    Loan Request/Credit Agreement – Signature Page**

NON-NEGOTIABLE CREDIT AGREEMENT – THIS IS A CONSUMER CREDIT TRANSACTION

### LOAN PROGRAM INFORMATION

TERI Undergraduate Loan                                    Academic Period: 01/2008-06/2008

Lender: Bank of America, National Association       School: SPARTAN COLLEGE OF AERONAUTICS

Loan Amount Requested: $30000.00       Repayment Option: Full Deferred

Deferral Period Margin: 4.45       Repayment Period Margin: 4.45       Loan Origination Fee Percentage: 9.50

### STUDENT BORROWER INFORMATION (Must be at least 18 years of age)

Borrower Name: Javier Medina                    Home Address: 11211 S 2nd St E          Jenks, OK 74037
Social Security #: Redacted                      Date of Birth: 09/30/1979       Home Telephone: 9186577785
Current Employer: DIRECTV                                                         Employer Telephone: 918282151
Current Position: Student                  Years Thus.
Years at Previous Employment: 3 Years 0 Months

Alimony, child support, or separate maintenance income do not have to be revealed if you do not want them considered for repaying this obligation. If you are relying on such additional income, please provide details on a separate sheet of paper.

Student Citizenship (check one box):  ☑ U.S. Citizen      ☐ Eligible Non-Citizen (Attach front & back copy of I-25 or student visa card)
Personal Reference Name: Juan Cortez                    Reference Home Tel #: (918) 254-4499       Work Tel #: (918) 280-5230
Reference Street Address: 3715 E Kern Pl Apt 9EH
Reference City/State/Zip:  Tulsa, OK 74137

By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all five (5) pages of this Loan Request/Credit Agreement (BK.05-08.CRWO.10SC.0105 ("Credit Agreement"). I understand that any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment. This Credit Agreement is signed under seal. I understand that I am not required to fax my signature or to sign electronically for this Credit Agreement and any related services that require signature, I intend: (i) my fax or electronic signature to be an electronic signature under applicable federal and state laws, (ii) any fax, printout or photout of Lender's electronic record of this Credit Agreement and related matters to be an original document, (iii) to transact business with the Lender by electronic records and electronic signatures, and (iv) that this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code, and any obligations under this Credit Agreement will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code.

FOR ALABAMA RESIDENTS: CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

FOR WISCONSIN RESIDENTS - NOTICE TO CUSTOMER:
(a) DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE WRITING ON THE FOLLOWING PAGES, EVEN IF OTHERWISE ADVISED.
(b) DO NOT SIGN THIS CREDIT AGREEMENT IF IT CONTAINS ANY BLANK SPACES.
(c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY CREDIT AGREEMENT YOU SIGN.
(d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS CREDIT AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

PLEASE SIGN BELOW – RETURN This Page With Proof of Income and Other Information (if available)
FAX TO:    800-320-8574

Signature of Borrower _____                    Date 04/06/06

BK.05-08.CRWO.10SC.0105                    LENDER COPY
PN01_BK_05-08_CRWO_F_X_MEDINA_A103671689.pdf

2008 APR 1
BKSCDP
A F 20

In this Credit Agreement, the words "I", "me", "my", and "mine" mean the person who signed this Credit Agreement as Borrower. The words "you", "your", "yours", and "Lender" mean Bank of America, National Association, its successors and assigns, and any other holder of this Credit Agreement. "School" means the school named at the top of the first page of this Credit Agreement. The "servicer" means the Lender or any entity it designates to service my loan.

**A. PROMISE TO PAY:** I promise to pay to you the Loan Amount Requested shown on the first page of this Credit Agreement, to the extent it is advanced to me or paid on my behalf, and any Loan Origination Fee added to my loan (see Paragraph F) (together, the "Principal Sum"), interest on such Principal Sum, interest on any unpaid interest added to the Principal Sum and late fees (see Paragraph E.6).

**B. IMPORTANT – READ THIS CAREFULLY:**
1. When you receive my signed Credit Agreement, you are not agreeing to lend me money. If you decide to make a loan to me, you will electronically transfer the loan funds to the School for me, mail a loan check to the School for me, or mail a loan check directly to me. You have the right to not make a loan or to lend an amount less than the Loan Amount Requested. I agree to accept an amount less than the Loan Amount Requested and to repay that portion of the Loan Amount Requested that you actually lend to me. You have the right to disburse my loan through an agent. At your option, you may also make any loan check co-payable to me and the School. You may also increase or decrease the amount of any disbursement by one cent ($.01) to equalize the amount of disbursements.
2. **HOW I AGREE TO THE TERMS OF THIS LOAN.** By signing this Credit Agreement, and submitting it to the Lender, I am requesting that you make this loan to me in an amount equal to the Loan Amount Requested plus any Loan Origination Fee described in Paragraph F of this Credit Agreement. If you approve this request and agree to make this loan, you will notify me in writing and provide me, as required by law, with one Disclosure Statement at the time of the first disbursement or a Disclosure Statement at the time of each disbursement. Each Disclosure Statement is incorporated herein by reference and made a part hereof. Each Disclosure Statement will tell me the amount of the loan that you have approved, the amount of the Loan Origination Fee, and other important information. I will let you know that I agree to the terms of the loan as set forth in this Credit Agreement and in each Disclosure Statement by doing either of the following: (a) endorsing or depositing the check that disburses the loan proceeds; or (b) allowing the loan proceeds to be used by or on behalf of the Student without objection. Upon receipt of each Disclosure Statement, I will review it and notify you in writing if I have any questions. If I am not satisfied with the terms of my loan as disclosed in a Disclosure Statement that covers my entire loan amount, I may cancel my loan by giving you a written cancellation notice within ten (10) days after I receive the Disclosure Statement. If I am not satisfied with the terms of my loan as disclosed in a Disclosure Statement that covers only one of multiple disbursements of my loan, to cancel the disbursement covered by that Disclosure Statement, I will give you a written cancellation notice within ten (10) days after I receive the Disclosure Statement and I understand that unless I withdraw from the School or I or my School specifies otherwise, the cancellation of any disbursement will not cancel any future disbursements or any previous disbursements. I understand that I must repay, in accordance with the terms of this Credit Agreement, all amounts disbursed but not canceled. If loan proceeds have been disbursed, I agree that I will immediately return the canceled disbursement to you, will not endorse any check that disburses the loan proceeds to be canceled, and will instruct the School to return the canceled disbursement to you. If I give notice of cancellation but do not cause the return of the disbursement as stated above, the disbursement will not be canceled and I will be in default of this Credit Agreement. (See Paragraph I.)

**C. DEFINITIONS:**
1. "Disbursement Date" means the date or dates on which you lend money to me in consideration for my Credit Agreement and will be the date(s) shown on any loan check you prepare or the date(s) you initiate any electronic funds transfer.
2. The "Deferment Period" will begin on the first Disbursement Date and end on the Deferment End Date.
3. "Deferment End Date" means the date specified below for the applicable loan program (the applicable loan program is stated on the first page of this Credit Agreement).

(a) **_Undergraduate Alternative Loan Program:_** If I have elected the "Immediate Repayment" option (the applicable repayment option is stated on the first page of this Credit Agreement), there is no Deferment Period, and my first payment will be 30-60 days after the final disbursement of my loan. If I have elected the "Interest Only" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then interest payments will begin 30-60 days after the first disbursement of my loan, the "Deferment End Date" will be the date the Student graduates or ceases to be enrolled at least half-time in the School (or another school participating in this loan program), and principal and interest payments will begin 30-60 days after that date. In any event, if I have elected the "Interest Only" repayment option, the Deferment End Date will be no more than 5 years after the first Disbursement Date. If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then the "Deferment End Date" will be 180 days after the Student graduates or ceases to be enrolled at least half-time in the School (or another school participating in this Loan Program). In any event, if I have elected the "Full Deferral" repayment option, the Deferment End Date will be no more than 5½ years after the first Disbursement Date.
(b) **_Graduate Professional Education Loan Program:_** 180 days after the Student graduates or ceases for any other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 4½ years after the first Disbursement Date provided; however, that if the Student begins a medical residency or internship during the Deferment Period, then the Deferment Period will end 180 days after the day the residency or internship ends, but no more than 8½ years after the first Disbursement Date.
(c) **_Health Professions Education Loan Program:_** 270 days after the Student graduates or ceases for any other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 6 ¾ years after the first Disbursement Date; provided, however, that if the Student begins a medical residency or internship during the Deferment Period, then the Deferment Period will end 270 days after the day the residency or internship ends, but no more than 10 ¾ years after the first Disbursement Date.
(d) **_Residency Loan Program:_** 270 days after the first Disbursement Date.
4. The "Repayment Period" begins the day after the Deferment Period ends. If there is no Deferment Period for my loan, the Repayment Period will begin when my loan is fully disbursed. The Repayment Period is 20 years (25 years for loans with a Principal Sum of $40,000 or more) unless monthly payments equal to the minimum monthly payment amount (see Paragraph E.2) will repay all amounts owed in less than 20 years, in which case the Repayment Period will be the number of months necessary to pay in full the amount I owe at the minimum payment.

**D. INTEREST:**
1. Accrual – Beginning on the first Disbursement Date, interest will be calculated at the Variable Rate (Paragraph D.2) and charged on the Principal Sum, and on any unpaid interest later added to the Principal Sum according to Paragraph D.3. During the Repayment Period, interest will be calculated at the Variable Rate and charged on the outstanding balance of this Credit Agreement until all amounts are paid in full. Interest will be calculated on a daily simple interest basis. The daily interest rate will be equal to the annual interest rate in effect on that day, divided by the number of days in that calendar year.
2. Variable Rate – The "Variable Rate" is equal to the Current Index plus a Margin. The Margins for both the Deferment Period and the Repayment Period are shown on the first page of this Credit Agreement. In no event will the Variable Rate exceed the maximum interest rate allowed by the laws of the State of California. The Variable Rate will change quarterly on the first day of each January, April, July and October (the "Change Date(s)") if the Current Index changes. The "Current Index" for any calendar quarter beginning on a Change Date (or for any shorter period beginning on any Disbursement Date and ending on the last day of a calendar quarter) is based on the one-month London Interbank Offered Rate ("LIBOR") as published in the "Money Rates" section of The Wall Street Journal. The index for each calendar quarter (or for any shorter period beginning on a Disbursement Date and ending on the last day of a calendar quarter) will equal the average of the LIBOR rates published on the first business day of each of the three (3) immediately preceding calendar months, rounded to the nearest one-hundredth percent (0.01%). If The Wall Street Journal is not published or the Current Index is not given on that date, then the Current

Index will be determined by using the immediately preceding published Current Index. If the Current Index is no longer available, you will choose a comparable index.

3. Capitalization – If I have elected the "Full Deferral" repayment option. I understand that you will add all accrued and unpaid interest to the principal balance of my loan ("capitalize interest") as of the last day of the Deferment Period. In addition, if my loan will be disbursed in multiple disbursements and if I have elected the "Immediate Repayment" option, you will capitalize interest that accrues between the first disbursement of my loan and the final disbursement of my loan. I understand that regardless of the repayment option I chose, you will capitalize interest at the end of any forbearance period. In all cases, the sum is thereafter considered the principal, and interest will accrue on the new principal balance.

**E. TERMS OF REPAYMENT:**

1. Deferment Period – If I have elected either the "Interest Only" repayment option or the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), you will send me statements during the Deferment Period (showing the total outstanding principal balance of my loan and the interest that has accrued on my loan). Statements will be sent to the address shown on your records. If I have elected the "Interest Only" repayment option, I agree to make payments each month during the Deferment Period equal to the accrued interest on the outstanding balance of this Credit Agreement. If I have elected the "Full Deferral" repayment option I may, but am not required to make payments during the Deferment Period. You will add any interest that I do not pay during the Deferment Period to the principal balance, as described in Paragraph D.3.

2. Repayment Period – The amount of my monthly payment ("Monthly Payment Amount") will be established based on the rules in this Credit Agreement when my Repayment Period begins. During the Repayment Period, you will send me monthly statements that show the Monthly Payment Amount and the payment due dates, and I will pay the Monthly Payment Amount shown on my monthly statement, which amount will in no event be less than $25 or the unpaid balance, whichever is less. I understand that the Monthly Payment Amount is due each month. I may pay more than my Monthly Payment Amount at any time without penalty or charge. If my loan is in paid-ahead status, I may, but will not be required to make monthly payments. Even if I do not receive monthly statements, I will make consecutive monthly payments in amounts at least equal to the Monthly Payment Amount by the applicable payment due dates until I have paid all of the principal and interest and any other charges I may owe under this Credit Agreement.

3. Repayment Terms – My Monthly Payment Amount will be calculated as of the day the Repayment Period begins ("Repayment Date"). It will be recalculated (a) once each year prior to the anniversary of the Repayment Date, (b) if the Variable Rate changes between anniversaries of the Repayment Date to the extent that the Monthly Payment Amount would not pay in full the accrued monthly interest on my loan, (c) following any subsequent deferment or forbearance period or (d) following any request by the Borrower to the servicer to change the monthly payment due date (each of which events is a new "Repayment Date"). As of any Repayment Date, my Monthly Payment Amount will be recalculated. My new Monthly Payment Amount will be disclosed to me by the servicer. The new Monthly Payment Amount will equal the amount necessary to pay in full, over the number of months remaining in the Repayment Period, the amount I owe in equal monthly installments of principal and interest at the Variable Rate in effect at the time of the calculation. I understand that this may result in a reduction or increase in my monthly payment as calculated as of each Repayment Date. I understand that during the Repayment Period (and, if I have elected the "Interest Only" repayment option, during the period of interest payments) the servicer may change the monthly payment due date of future payments to a later date for the convenience of the servicer in processing payments or in order to coordinate the due dates of all of my loans processed by the servicer.

4. Amounts Owing at the End of the Repayment Period – Since interest accrues daily upon the unpaid principal balance of my loan, if I make payments after my payment due dates, I may owe additional interest. If I have not paid any of my late fees, I will also owe additional amounts for those late fees. In such cases I will increase the amount of my last monthly payment to the amount necessary to repay my loan in full.

5. Payments – Payments will be applied first to late fees, other fees and charges, accrued interest, and the remainder to principal.

6. Other Charges - If any part of a monthly payment remains unpaid for a period of more than 15 days after the payment date, I will pay a late fee not exceeding $5.00 or 5% of the overdue payment amount, whichever is less. To the extent permitted by law, I agree to pay you all amounts you incur in enforcing the terms of this Credit Agreement, including reasonable collection agency and attorney's fees and court costs and other collection costs.

**F. LOAN ORIGINATION FEE:** If you charge me, I will pay you a Loan Origination Fee at the time my loan is disbursed. The dollar amount of any Loan Origination Fee will be determined by multiplying the Principal Sum times the Loan Origination Fee Percentage shown on the first page of this Credit Agreement. The percentage would be higher if computed on the amount advanced rather than on the entire Principal Sum (Loan Origination Fee plus the loan amount advanced). For example, a nominal Loan Origination Fee of 6.5% on the entire principal amount would equal 6.9519% of the amount advanced. The Loan Origination Fee I will pay, if any, will be shown on my Disclosure Statement and included with the Principal Sum. To the extent permitted by law, and unless I timely cancel this Credit Agreement (see Paragraph B.2), I will not be entitled to a refund of any Loan Origination Fee after my loan has been disbursed.

**G. RIGHT TO PREPAY:** I have the right to prepay all or any part of my loan at any time without penalty.

**H. FORBEARANCE:** If I am unable to repay my loan in accordance with the terms established under this Credit Agreement because of a hardship such as financial or medical difficulty, I may request that you modify these terms. I understand that such modification would be at your option. I understand that I will remain responsible for all interest accruing during any period of forbearance and that you will add any interest that I do not pay during any forbearance period to the principal balance, as described in Paragraph D.3.

**I. WHOLE LOAN DUE:** To the extent permitted by applicable law, I will be in default and you have the right to give me notice that the whole outstanding principal balance, accrued interest, and all other amounts payable to you under the terms of this Credit Agreement, are due and payable at once (subject to any applicable law which may give me a right to cure any default) if: (1) I fail to make any monthly payment to you when due, (2) I die, (3) I break any of my other promises in this Credit Agreement, (4) any bankruptcy proceeding is begun by or against me, or I assign any of my assets for the benefits of my creditors, or (5) I make any false written statement in applying for this loan or any other loan or at any time during the Deferment or Repayment Periods. If I default, I will be required to pay interest on this loan accruing after default. The interest rate after default will be subject to adjustment in the same manner as before default. Upon default, you may also capitalize any interest and fees (i.e., add accrued and unpaid interest and fees to the principal balance), and increase the Margin used to compute the Variable Rate by two percentage points (2%).

**J. NOTICES:**

1. I will send written notice to you, any subsequent holder of this Credit Agreement, and the servicer within ten days after any change in my name, address, or enrollment status (for example, if the Borrower withdraws from the School or transfers to another school participating in this loan program).

2. Any notice required to be given to me by you will be effective when mailed by first class mail to the latest address you have for me.

**K. INFORMATION:**

1. I must update the information I provided to you whenever you ask me to do so.

2. I authorize you from time to time to request and receive from others credit related information about me (and about my spouse if I live in a community property state).

3. CREDIT BUREAU REPORTING

> **You may report information about my account to credit bureaus. Late payments, missed payments, or other defaults in my account may be reflected in my credit report.**

I understand that the reporting of information about my account to credit bureaus may adversely affect my credit rating and my ability to obtain other credit. You may also report the status of my loan and my payment history,

including information about a late payment, missed payment or other defaults in accordance with applicable law.

**L. ADDITIONAL AGREEMENTS:**

1. I understand that you are located in California and that this Credit Agreement will be entered into in the same state. CONSEQUENTLY, THE PROVISIONS OF THIS CREDIT AGREEMENT WILL BE GOVERNED BY FEDERAL LAW AND THE LAWS OF THE STATE OF CALIFORNIA, WITHOUT REGARD TO CONFLICT OF LAW RULES.

2. The proceeds of this loan will be used only for my educational expenses at the School.

3. My responsibility for paying the loan evidenced by this Credit Agreement is unaffected by the liability of any other person to me or by your failure to notify me that a required payment has not been made. Without losing any of your rights under this Credit Agreement you may accept (a) late payments, (b) partial payments or (c) payments marked "paid in full" or with other restrictions. You may delay, fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise the right at any future time, or on any future occasion. You will not be obligated to make any demand upon me, send me any notice, present this Credit Agreement to me for payment or make protest of non-payment to me before suing to collect on this Credit Agreement if I am in default, and to the extent permitted by applicable law. I hereby waive any right I might otherwise have to require such actions. I WILL NOT SEND YOU PAYMENTS MARKED "PAID IN FULL", "WITHOUT RECOURSE" OR WITH OTHER SIMILAR LANGUAGE UNLESS THOSE PAYMENTS ARE MARKED FOR SPECIAL HANDLING AND SENT TO THE ADDRESS IDENTIFIED FOR SUCH PAYMENTS ON MY BILLING STATEMENT, OR TO SUCH OTHER ADDRESS AS I MAY BE GIVEN IN THE FUTURE.

4. I may not assign this Credit Agreement or any of its benefits or obligations. You may assign this Credit Agreement at any time.

5. The terms and conditions set forth in this Credit Agreement and Instructions and the Disclosure Statement constitute the entire agreement between you and me.

6. If any provision of this Credit Agreement is held invalid or unenforceable, that provision shall be considered omitted from this Credit Agreement without affecting the validity or enforceability of the remainder of this Credit Agreement.

7. A provision of this Credit Agreement may only be modified if jointly agreed upon in writing by you and me. Any modification will not affect the validity or enforceability of the remainder of this Credit Agreement.

8. To the extent permitted by law, you have the right to apply money from any of my deposit account(s) with you to pay all or a portion of any amount overdue under this Credit Agreement. I hereby authorize you to obtain from the School all amounts which may be owed to me by the School, including any refund due to overpayment, early termination of enrollment, or otherwise.

9. All dollar amounts stated in this Credit Agreement are in United States dollars. I will make all payments in United States Dollars with no deduction for currency exchange.

10. If I fail to complete the education program paid for with this loan, I am not relieved of any obligation within or pursuant to this Credit Agreement.

11. I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523 (a) (8) of the United States Bankruptcy Code. Specifically, I understand that you have purchased a guaranty of this loan, and that this loan is guaranteed by The Education Resources Institute, Inc. ("TERI"), a non-profit institution.

12. I authorize any school that I may attend to release to you, and any other persons designated by you, any requested information pertinent to this loan (e.g., enrollment status, prior loan history, and current address).

13. I authorize the Lender, any subsequent holder of this Credit Agreement, and their agents (including TERI) to: (1) advise the School of the status of my application and my loan, (2) respond to inquiries from prior or subsequent lenders or holders with respect to my Credit Agreement and related documents, (3) release information and make inquiries to the persons I have given you as references, for the purposes of learning my current address and telephone number, (4) check my credit and employment history and to answer questions about their credit experience with me, and (5) retain for use in any future transaction with the Borrower all information (including status information and non-public personal information) of the Borrower provided in connection with this Credit Agreement.

14. Waiver by Lender: You waive (give up) any right to claim a security interest in any property to secure this Credit Agreement. This does not affect any right to offset as a matter of law.

15. If I fax my signature on the first page of this Credit Agreement back to you and keep the copy I signed, I understand that under federal law the fax you receive will be an original of the first page of this Credit Agreement. You and I agree that all copies of this Credit Agreement (including the fax you receive and the copy I retain), taken together, shall constitute a single original agreement.

16. If I elect to sign electronically an electronic record of this Credit Agreement, then the following will apply as between Lender and me: (a) Lender will keep a non-modifiable electronic record of this document and provide a copy to me upon request, (b) I can and have downloaded and/or printed a copy of this document for my records or notified the Lender to mail me a copy of this document, and (c) the Lender's electronic record of this document and any printout from that record shall be an original for all purposes, including any lawsuit to collect amounts that I owe.

**M. DISCLOSURE NOTICES**

**ALL APPLICANTS:**
**IMPORTANT FEDERAL LAW NOTICE—**

*Important information about procedures for opening a new account:*
**To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.**

*What this means for you:*
**When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.**

CALIFORNIA RESIDENTS: I have the right to prohibit the use of information contained in my credit file in connection with transactions not initiated by me. I may exercise this right by notifying the consumer credit reporting agency. A married applicant may apply for a separate account. If you take any adverse action as defined by Section 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, I have the right to obtain within 60 days a free copy of my consumer credit report from the consumer reporting agency who furnished you my consumer credit report and from any other consumer credit reporting agency which compiles and maintains files on consumers on a nationwide basis. I have the right as described by Section 1785.16 of the California Civil Code to dispute the accuracy or completeness of any information in a consumer credit report furnished by the consumer credit reporting agency.

CALIFORNIA AND UTAH RESIDENTS: As required by California and Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations. IOWA, KANSAS AND NEBRASKA RESIDENTS (For purposes of the following notice, the word "you" refers to the Borrower, not the Lender): NOTICE TO CONSUMER. This is a consumer credit transaction. 1. DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THIS CREDIT AGREEMENT. 2. YOU ARE ENTITLED TO A COPY OF THIS CREDIT AGREEMENT. 3. YOU MAY PREPAY THE UNPAID BALANCE AT ANY TIME WITHOUT PENALTY AND MAY BE ENTITLED TO A REFUND OF UNEARNED CHARGES IN ACCORDANCE WITH LAW.

MARYLAND RESIDENTS: In Paragraph L.1, Lender and I have agreed that this Credit Agreement is governed by federal law and the laws of California, without regard to conflict of laws rules; if any court should nevertheless determine that this Credit Agreement is subject to Maryland laws concerning credit, then only to the extent that Maryland law applies, Lender and I agree and elect that this loan is made under and governed by Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland, except as preempted by federal law.

MISSOURI RESIDENTS: Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect me (borrower(s)) and you (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

NEVADA RESIDENTS: This is a loan for study.

NEW JERSEY RESIDENTS: The section headings of this Credit Agreement are a table of contents and not contract terms. Portions of this Credit Agreement with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Credit Agreement, acts or practices (i) by you which are or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law.

NEW YORK, RHODE ISLAND AND VERMONT RESIDENTS: A consumer report (credit report) may be obtained from a consumer-reporting agency (credit bureau) in connection with this loan. If I request (1) I will be informed whether or not consumer reports were obtained, and (2) if reports were obtained, I will be informed of the names and addresses of the credit bureaus that furnished the reports. If you agree to make this loan to me, a consumer credit report may be requested or used in connection with renewals or extensions of any credit for which I have applied, reviewing my loan, taking collection action on my loan, or legitimate purposes associated with my loan. OHIO RESIDENTS: The Ohio laws against discrimination require that all creditors make credit equally available to all credit worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

WISCONSIN RESIDENTS: For married Wisconsin residents, my signature on this Credit Agreement confirms that this loan obligation is being incurred in the interest of my marriage or family. No provision of any marital property agreement (pre-marital agreement), unilateral statement under Section 766.59 or court decree under Section 766.70 adversely affects the interest of the Lender unless the Lender, prior to the time that the loan is approved, is furnished with a copy of the agreement, statement, or decree or has actual knowledge of the adverse provision when the obligation to the Lender is incurred. If the loan for which I am applying is granted, my spouse will also receive notification that credit has been extended to me.

N.  BORROWER'S CERTIFICATION:  I declare under penalty of perjury under the laws of the United States of America that the following is true and correct. I certify that all information I provided to you in connection with this loan, including without limitation, the information contained in this Credit Agreement, is true, complete and correct to the best of my knowledge and belief and is made in good faith.  I understand that I am responsible for repaying immediately any funds that I receive which are not to be used or are not used for educational expenses related to attendance at the School for the academic period stated.  I certify that I am not now in default on a Federal Perkins Loan, a Federal Stafford Loan, a Federally Insured Student Loan, a Federal Supplemental Loan for Students (SLS), a Federal PLUS Loan, an Income Contingent Loan, a Federal Consolidation Loan, a Federal Ford Direct Loan, or any other education loan received for attendance at any school.  The legal age for entering into contracts is 18 years of age in every state in the United States except the following:  Alabama and Nebraska 19 years old, and Mississippi and Puerto Rico 21 years old.  I certify that I meet these state age requirements.

## NOTE DISCLOSURE STATEMENT

$ 10,809.94
03671640
Loan No.

Borrower(s)    JAVIER MEDINA

Student:    JAVIER MEDINA
Date:    April 12, 2006

JAVIER MEDINA
11211 S 2ND ST B
JENKS, OK 74037

Lender Name and Address
BANK OF AMERICA, N.A.
600 WILSHIRE BLVD, 4TH FLOOR
LOS ANGELES, CA 90013

This disclosure statement relates to one or more advances on your Loan Note disbursed on    April 12, 2006
Because your Loan is either being disbursed in whole or in part, or is entering repayment, or the repayment terms are being modified, the following information about your Loan is being given to you.

| ANNUAL PERCENTAGE RATE | | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|---|
| The cost of your credit as a yearly rate. | | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments scheduled. |
| 10.161   % | | $   15,831.40 | $   9,783.00 | $   25,614.40 |

Your payment schedule will be:

| Number of Payments | Amount of Payments* | When Payments are due |
|---|---|---|
| 240 | $   186.81 | On the  22nd day of each month beginning on   6/2037 |
|  |  |  |
|  |  |  |

**VARIABLE RATE:** The Annual Percentage Rate, which is based on an index plus a margin, may increase during the term of the loan if the index rate increases. The index is (check one):

☐ Prime Rate Index Adjusted Monthly - The highest U.S. bank prime rate published in the "Money Rates" section of The Wall Street Journal on the last business day of each calendar month

☐ Prime Rate Index Adjusted Quarterly - The highest U.S. bank prime rate published in the "Money Rates" section of The Wall Street Journal on the last business day of each calendar quarter (if the Lender identified above is Citibank ( New York State ), the index will be the highest U.S. Bank prime rate published in the "Money Rates" section of The Wall Street Journal on the date which is 30 days prior to the first day of each quarter).

☒ LIBOR Index Adjusted Quarterly - The average of the one-month London Interbank Offered Rate published in the "Money Rates" section of The Wall Street Journal on the first business day of each of the three (3) calendar months immediately preceding the first day of each calendar quarter.

Any increase in the index and the Annual Percentage Rate which occurs while principal payments are deferred will increase the amount of any current and all future payments. Any increase in the index and the Annual Percentage Rate which occurs while principal and interest payments are deferred will increase the amount of all future payments. Any increase in the index and the Annual Percentage Rate which occurs after you have begun to make principal and interest payments on your loan will increase the amount of your future principal and interest payments beginning with your next annual payment adjustment date. For example, assume you obtain a loan in your junior year, in the amount of $10,000 at an interest rate of 11%, and you defer principal and interest payments until after your graduation, and the repayment term of the loan is 20 years. If the interest rate increased to 12% on January 1st of your senior year, the interest which accrues while principal and interest payments are deferred will increase by $75.81, and your monthly principal and interest payments would increase by $9.03.

**SECURITY:** You have given a security interest in all refunds or amounts owed to you at any time by the student's educational institution. Collateral securing other loans with the Lender may also secure this Loan.
**LATE CHARGES:** If a payment is more than 15 days late, you may be charged $5.00 or 5% of the payment, whichever is less. If you default, Lender (or subsequent holder of your Loan Note) may increase the margin used to compute the Annual Percentage Rate by two percentage points (2%).
**PREPAYMENT:** If you pay off early, you will not have to pay a penalty.

See your contract documents for any additional information about non-payment, default, any required repayment in full before the scheduled date, any security interest, and prepayment refunds and penalties.

**Estimates:** All numerical disclosures except the late payment disclosure are estimates.

Principal Amount of Note (Amount Financed plus Prepaid Finance Charge) .    $   10,809.94

Itemization of Amount Financed

Amount paid to  SPARTAN COLLEGE OF AERONAUTICS and.    $

Amount paid to  JAVIER MEDINA    $   9,783.00

Total Amount Financed    $   9,783.00

Itemization of Prepaid Finance Charge

Origination or Guarantee Fee    $   1,026.94

Other Fees Paid (see terms contract)    $

Total Prepaid Finance Charge(s)    $   1,026.94

*If your Loan is disbursed in multiple advances, the monthly payment amount disclosed in the payment schedule reflects only that monthly payment necessary to repay this advance. The actual total monthly payment on your Loan will be based on the sum of all advances under your Loan Note and will be disclosed to you before your Loan enters repayment. Your minimum total monthly payment will be at least $25.00 each month or the entire loan balance is whichever is less.

TRAK 0021 07 02    BKSCDP TERI UNDERGRADUATE LOAN    File Copy

EX-99.6 8 p06-1554ex99_6.htm DEPOSIT AND SALE AGREEMENT

EXHIBIT 99.6

### DEPOSIT AND SALE AGREEMENT
### THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-3

This DEPOSIT AND SALE AGREEMENT (the "Sale Agreement"), dated as of September 28, 2006, between The National Collegiate Funding LLC, in its capacity as seller (in such capacity, the "Seller"), and The National Collegiate Student Loan Trust 2006-3, as purchaser (the "Purchaser"), shall be effective upon execution by the parties hereto.

WHEREAS, the Seller is the owner of certain student loans; and

WHEREAS, the Seller desires to sell its interest in such student loans and the Purchaser desires to purchase such loans from the Seller.

NOW, THEREFORE, in connection with the mutual promises contained herein, the parties hereto agree as follows:

### ARTICLE I
### TERMS

This Sale Agreement sets forth the terms under which the Seller is selling and the Purchaser is purchasing the student loans listed on Schedule 2 to each of the Pool Supplements set forth on Schedule A attached hereto (the "Transferred Student Loans").

### ARTICLE II
### DEFINITIONS

Capitalized terms used but not otherwise defined herein shall have the definitions set forth in Appendix A of the Indenture dated as of September 1, 2006 between U.S. Bank National Association (the "Indenture Trustee") and the Purchaser.

### ARTICLE III
### SALE AND PURCHASE

Section 3.01.    Sale of Loans. The Seller hereby sells and the Purchaser hereby purchases the Transferred Student Loans.

Section 3.02.    Assignment of Rights. The Seller hereby assigns to the Purchaser and the Purchaser hereby accepts all of the Seller's rights and interests under each of the Pool Supplements listed on Schedule A attached hereto and the related Student Loan Purchase Agreements listed on Schedule B attached hereto.

Section 3.03.    Settlement of the Payment. The Purchaser shall pay the Seller the purchase price set forth in Schedule 1 of each of the Pool Supplements by wire transfer in immediately available funds to the account specified by the Seller.

Section 3.04.    Assistance by Seller. Following the execution of this Sale Agreement, the Seller shall provide any reasonable assistance requested by the Purchaser in determining that all required documentation on the Transferred Student Loans is present and correct.

### ARTICLE IV
### REPRESENTATIONS, WARRANTIES AND COVENANTS OF SELLER

Section 4.01.     General. The Seller represents and warrants to the Purchaser that as of the date of this Sale Agreement:

(a)     The Seller is duly organized and existing under the laws of the State of Delaware; and

(b)     The Seller has all requisite power and authority to enter into and to perform the terms of this Sale Agreement.

Section 4.02.     Loan Representations. The Seller represents and warrants to the Purchaser that with respect to each Transferred Student Loan purchased by the Purchaser pursuant to this Sale Agreement, the Seller is making the same representations and warranties made by the respective program lender with respect to each Transferred Student Loan pursuant to the respective Student Loan Purchase Agreement listed on Schedule B attached hereto.

Section 4.03.     Covenants. The Seller, in its capacity as purchaser of the Transferred Student Loans pursuant to the Pool Supplements, hereby covenants that it will enforce the covenants and agreements of each program lender in the respective Student Loan Purchase Agreement and related Pool Supplement. The Seller further covenants that it will not waive, amend, modify, supplement or terminate any Student Loan Purchase Agreement or Pool Supplement or any provision thereof without the consent of the Purchaser, which consent the Purchaser hereby agrees not to provide without the prior written consent of the Indenture Trustee and the Interested Noteholders in accordance with the Purchaser's covenant in Section 3.07(c) of the Indenture.

### ARTICLE V
### PURCHASE OF LOANS; REIMBURSEMENT

Each party to this Sale Agreement shall give notice to the other such parties and to the Servicers, First Marblehead Data Services, Inc., the Indenture Trustee, and Wilmington Trust Company (the "Owner Trustee") promptly, in writing, upon the discovery of any breach of the Seller's representations and warranties made pursuant to this Sale Agreement which has a materially adverse effect on the interest of the Purchaser in any Transferred Student Loan. In the event of such a material breach, the Seller shall cure or repurchase the Transferred Student Loan in accordance with the remedies set forth in the respective Student Loan Purchase Agreement.

### ARTICLE VI
### LIABILITY OF SELLER; INDEMNITIES

The Seller shall be liable in accordance herewith only to the extent of the obligations specifically undertaken by the Seller under this Sale Agreement.

(a)     The Seller shall indemnify, defend and hold harmless the Purchaser and the Owner Trustee in its individual capacity and their officers, directors, employees and agents from and against any taxes that may at any time be asserted against any such Person with respect to the transactions contemplated herein and in the other Basic Documents (except any such income taxes arising out of fees paid to the Owner Trustee), including any sales, gross receipts, general corporation, tangible and intangible personal property, privilege or license taxes and costs and expenses in defending against the same.

(b)     The Seller shall indemnify, defend and hold harmless the Purchaser and the Owner Trustee in its individual capacity and their officers, directors, employees and agents from and against any and all costs, expenses, losses, claims, damages and liabilities arising out of, or imposed upon such Person through, the Seller's willful misfeasance, bad faith or gross negligence in the performance of its duties under this Sale Agreement, or by reason of reckless disregard of its obligations and duties under this Sale Agreement.

Indemnification under this Section shall survive the termination of this Sale Agreement and shall include reasonable fees and expenses of counsel and expenses of litigation. If the Seller shall have made any indemnity payments pursuant to this

Section and the Person to or for the benefit of whom such payments are made thereafter shall collect any of such amounts from others, such Person shall promptly repay such amounts to the Seller, without interest.

## ARTICLE VII
### MERGER OR CONSOLIDATION OF, OR ASSUMPTION OF THE OBLIGATIONS OF, SELLER

Any Person (a) into which the Seller may be merged or consolidated, (b) which may result from any merger or consolidation to which the Seller shall be a party or (c) which may succeed to the properties and assets of the Seller substantially as a whole, shall be the successor to the Seller without the execution or filing of any document or any further act by any of the parties to this Sale Agreement; provided, however, that the Seller hereby covenants that it will not consummate any of the foregoing transactions except upon satisfaction of the following: (i) the surviving Person, if other than the Seller, executes an agreement of assumption to perform every obligation of the Seller under this Sale Agreement, (ii) immediately after giving effect to such transaction, no representation or warranty made pursuant to this Sale Agreement shall have been breached, (iii) the surviving Person, if other than the Seller, shall have delivered an Officers' Certificate and an opinion of counsel each stating that such consolidation, merger or succession and such agreement of assumption comply with this Section and that all conditions precedent, if any, provided for in this Sale Agreement relating to such transaction have been complied with, and that the Rating Agency Condition shall have been satisfied with respect to such transaction, (iv) if the Seller is not the surviving entity, such transaction will not result in a material adverse federal or state tax consequence to the Purchaser or the Noteholders, and (v) if the Seller is not the surviving entity, the Seller shall have delivered an opinion of counsel either (A) stating that, in the opinion of such counsel, all financing statements and continuation statements and amendments thereto have been executed and filed that are necessary fully to preserve and protect the interest of the Purchaser in the Transferred Student Loans and reciting the details of such filings, or (B) stating that, in the opinion of such counsel, no such action shall be necessary to preserve and protect such interests.

## ARTICLE VIII
### LIMITATION ON LIABILITY OF SELLER AND OTHERS

The Seller and any director or officer or employee or agent thereof may rely in good faith on the advice of counsel or on any document of any kind, prima facie properly executed and submitted by any Person respecting any matters arising hereunder (provided that such reliance shall not limit in any way the Seller's obligations under this Sale Agreement). The Seller shall not be under any obligation to appear in, prosecute or defend any legal action that shall not be incidental to its obligations under this Sale Agreement or the Student Loan Purchase Agreements, and that in its opinion may involve it in any expense or liability.

## ARTICLE IX
### SURVIVAL OF COVENANTS

All covenants, agreements, representations and warranties made herein shall survive the consummation of the purchase of the Transferred Student Loans; provided, however, that to the extent any of the same relate to a corresponding covenant, agreement, representation or warranty contained in a Student Loan Purchase Agreement, the same shall survive to the extent that such corresponding covenant, agreement, representation or warranty survives the applicable Student Loan Purchase Agreement. All covenants, agreements, representations and warranties made or furnished pursuant hereto by or for the benefit of the Seller (including without limitation, under Article VI) shall bind and inure to the benefit of any successors or assigns of the Purchaser, including the Indenture Trustee. This Sale Agreement may be changed, modified or discharged, and any rights or obligations hereunder may be waived, only by a written instrument signed by a duly authorized officer of the party against whom enforcement of any such waiver, change, modification or discharge is sought. The waiver by the Indenture Trustee, at the direction of the Noteholders or otherwise pursuant to the Indenture, of any covenant, agreement, representation or warranty required to be made or furnished by the Seller or the waiver by the Indenture Trustee, at the direction of the Noteholders or otherwise pursuant to the Indenture, of any provision herein contained shall not be deemed to be a waiver of any breach of any other covenant, agreement, representation, warranty or provision herein contained, nor shall any waiver or any custom or practice which may evolve between the parties in the administration of the terms hereof, be construed to lessen the right of the Indenture Trustee, at the direction of the Noteholders pursuant to the Indenture, to insist upon the performance by the Seller in strict accordance with said terms.

## ARTICLE X
## COMMUNICATION AND NOTICE REQUIREMENTS

All communications, notices and approvals provided for hereunder shall be in writing and mailed or delivered to the Seller or the Purchaser, as the case may be. Notice given in any such communication, mailed to the Seller or the Purchaser by appropriately addressed registered mail, shall be deemed to have been given on the day following the date of such mailing and shall be addressed as follows:

If to the Purchaser, to:

> The National Collegiate Student Loan Trust 2006-3
> c/o Wilmington Trust Company, as Owner Trustee
> 100 North Market Street
> Wilmington, Delaware 19890-0001
> Attention: Corporate Trust Department

If to the Seller, to:

> The National Collegiate Funding LLC
> c/o First Marblehead Data Services, Inc.
> The Prudential Tower
> 800 Boylston Street - 34th Floor
> Boston, MA 02199-8157
> Attention: Ms. Rosalyn Bonaventure

with a copy to:

> First Marblehead Corporation
> The Prudential Tower
> 800 Boylston Street - 34th Floor
> Boston, MA 02199-8157
> Attention: Corporate Law Department

or to such other address as either party shall have provided to the other parties in writing. Any notice required to be in writing hereunder shall be deemed given if such notice is mailed by certified mail, postage prepaid, or hand delivered to the address of such party as provided above.

## ARTICLE XI
## AMENDMENT

This Sale Agreement may be amended by the parties hereto without the consent of the Noteholders for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of the Sale Agreement or of modifying in any manner the rights of such Noteholders; provided that such action will not, in the opinion of counsel reasonably satisfactory to the Indenture Trustee, materially affect the interest of any such Noteholder.

In addition, this Sale Agreement may also be amended from time to time by the Seller and the Purchaser, with the consent of the Noteholders of the Notes evidencing a majority of the Outstanding Amount of the Notes and the consent of the Certificateholders of the Certificates evidencing a majority of the outstanding principal amount of the Certificates, for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Sale Agreement or of modifying in any manner the rights of the Noteholders or the Certificateholders, respectively; provided, however, that no such amendment shall (a) increase or reduce in any manner the amount of, or accelerate or delay the time of, collections of payments with respect to Transferred Student Loans or distributions that shall be required to be made for the benefit of the Noteholders, or (b) reduce the aforesaid percentage of the Outstanding Amount of the Notes or the Certificates, the Noteholders or the Certificateholders of which are required to consent to any such amendment, without the consent of all

outstanding Noteholders or Certificateholders, respectively.

Promptly after the execution of any such amendment or consent (or, in the case of the Rating Agencies, five Business Days prior thereto), the Purchaser shall furnish written notification of the substance of such amendment or consent to the Indenture Trustee and each of the Rating Agencies.

It shall not be necessary for the consent of Noteholders pursuant to this Section to approve the particular form of any proposed amendment or consent, but it shall be sufficient if such consent shall approve the substance thereof.

Prior to the execution of any amendment to this Sale Agreement, the Owner Trustee shall be entitled to receive and rely upon an opinion of counsel stating that execution of such amendment is authorized or permitted by this Sale Agreement. The Owner Trustee may, but shall not be obligated to, enter into any such amendment which affects the Owner Trustee's own rights, duties or immunities under this Sale Agreement or otherwise.

## ARTICLE XII
## ASSIGNMENT

The Seller hereby assigns its entire right, title and interest as purchaser under this Sale Agreement and the Student Loan Purchase Agreement thereunder to the Purchaser as of the date hereof and acknowledges that the Purchaser will assign the same, together with the right, title and interest of the Purchaser hereunder, to the Indenture Trustee under the Indenture.

## ARTICLE XIII
## GOVERNING LAW

**THIS SALE AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, INCLUDING SECTIONS 5-1401 AND 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW, BUT OTHERWISE WITHOUT REGARD TO CONFLICT OF LAW PRINCIPLES, AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.**

## ARTICLE XIV
## LIMITATION OF LIABILITY OF OWNER TRUSTEE

Notwithstanding anything contained herein to the contrary, this instrument has been executed by Wilmington Trust Company, not in its individual capacity but solely in its capacity as Owner Trustee of the Purchaser, and in no event shall Wilmington Trust Company in its individual capacity or any beneficial owner of the Purchaser have any liability for the representations, warranties, covenants, agreements or other obligations of the Purchaser hereunder, as to all of which recourse shall be had solely to the assets of the Purchaser. For all purposes of this Sale Agreement, in the performance of any duties or obligations of the Purchaser hereunder, the Owner Trustee shall be subject to, and entitled to the benefits of, the terms and provisions of Articles VIII, IX and X of the Trust Agreement.

[Signature Pages Follow]

IN WITNESS WHEREOF, the parties hereto have caused this Sale Agreement to be duly executed by their respective officers hereunto duly authorized, as of the day and year first above written.

THE NATIONAL COLLEGIATE FUNDING LLC,
as Seller

By:      GATE Holdings, Inc., Member

By:      /s/ John A. Hupalo
Name:    John A. Hupalo
Title:   Vice President


THE NATIONAL COLLEGIATE STUDENT LOAN
TRUST 2006-3, as Purchaser

By:      Wilmington Trust Company, not in its
         individual capacity but solely as Owner
         Trustee

By:      /s/ J. Christopher Murphy
Name:    J. Christopher Murphy
Title:   Financial Services Officer

## SCHEDULE A

### Pool Supplements

Each of the following Pool Supplements was entered into by and among The First Marblehead Corporation, The National Collegiate Funding LLC and:

- Bank of America, N.A., dated September 28, 2006, for loans that were originated under Bank of America's BAGEL Loan Program, TERI Loan Program, Direct to Consumer Loan Program and ISLP Loan Program.

- JPMorgan Chase Bank, N.A., dated September 28, 2006, for loans that were originated under Bank One's CORPORATE ADVANTAGE Loan Program, EDUCATION ONE Loan Program, and Campus One Loan Program.

- Charter One Bank, N.A., dated September 28, 2006, for loans that were originated under the following Charter One programs: AAA Southern New England Bank, AES EducationGAIN Loan Program, Asrtive Education Loan Program, AstriveAlliance Education Loan Program, Axiom Alternative Loan Program, CFS Direct to Consumer Loan Program, Citibank Education Assistance Loan Program, College Board Alternative Loan Program, College Loan Corporation Loan Program, Collegiate Solutions Alternative Loan Program, Custom Educredit Loan Program, EdFinancial Loan Program, Extra Credit Ii Loan Program (North Texas Higher Education), M&I Alternative Loan Program, National Education Loan Program, NextStudent Alternative Loan Program, NextStudent Private Consolidation Loan Program, UPromise Alternative Loan Program, and WAMU Alternative Student Loan Program..

- Citizens Bank of Rhode Island, dated September 28, 2006, for loans that were originated under Citizens Bank of Rhode Island's Compass Bank Loan Program, Alternative Loan Program, Navy Federal Referral Loan Program, Penn State Undergraduate Loan Program, FinanSure Alternative Loan Program, and Xanthus Loan Program.

- First National Bank Northeast, dated September 28, 2006, for loans that were originated under First National Bank Northeast's Nelnet Alternative Loan Program.

- HSBC Bank USA, National Association, dated September 28, 2006, for loans that were originated under the HSBC Loan Program.

- The Huntington National Bank, dated September 28, 2006, for loans that were originated under The Huntington National Bank's Huntington Bank Education Loan Program.

- KeyBank, dated September 28, 2006, for loans that were originated under KeyBank's Private Education Loan Program.

- Manufacturers and Traders Trust Company, dated September 28, 2006, for loans that were originated under Manufacturers and Traders Trust Company's M&T Alternative Loan Program.

- National City Bank, dated September 28, 2006, for loans that were originated under National City Bank's Alternative Loan Program.

- PNC Bank, N.A., dated September 28, 2006, for loans that were originated under PNC Bank's PNC Bank Alternative Loan Program, Brazos Alternative Loan Program, Edvisors Alternative Loan Program, GE Money Bank Alternative Loan Prorgam, Old National Bank Alternative Loan Program, and Regions Bank Alternative Loan Program.

- Sovereign Bank, dated September 28, 2006, for loans that were originated under Sovereign Bank's Alternative Loan Program.

- SunTrust Bank, dated September 28, 2006, for loans that were originated under SunTrust Bank's SunTrust Alternative Loan Program.

- TCF National Bank, dated September 28, 2006, for loans that were originated under TCF National Bank's Alternative Loan Program.

- U.S. Bank, N.A., dated September 28, 2006, for loans that were originated under U.S Bank's Alternative Loan Program.

## SCHEDULE B

### *Student Loan Purchase Agreements*

Each of the following Note Purchase Agreements, as amended or supplemented, was entered into by and between The First Marblehead Corporation and:

- Bank of America, N.A., dated April 30, 2001, for loans that were originated under Bank of America's BAGEL Loan Program, TERI Alternative Loan Program and ISLP Loan Program.

- Bank of America, N.A., dated June 30, 2006, for loans that were originated under Bank of America's BAGEL Loan Program, TERI Alternative Loan Program and ISLP Loan Program.

- Bank of America, N.A., dated June 30, 2003, for loans that were originated under Bank of America's Direct to Consumer Loan Program.

- Bank of America, N.A., dated April 1, 2006, for loans that were originated under Bank of America's Direct to Consumer Loan Program.

- Bank One, N.A., dated May 1, 2002, for loans that were originated under Bank One's CORPORATE ADVANTAGE Loan Program, EDUCATION ONE Loan Program, and Campus One Loan Program.

- Charter One Bank, N.A., dated as of December 29, 2003 for loans that were originated under Charter One's AAA Southern New England Bank Loan Program.

- Charter One Bank, N.A., dated October 31, 2003, for loans that were originated under Charter One's AES EducationGAIN Loan Program.

- Charter One Bank, N.A., dated May 15, 2002, for loans that were originated under Charter One's CFS Direct to Consumer Loan Program.

- Charter One Bank, N.A., dated June 30, 2003, for loans that were originated under Charter One's Citibank Education Assistance Loan Program.

- Charter One Bank, N.A., dated July 1, 2002, for loans that were originated under Charter One's College Loan Corporation Loan Program.

- Charter One Bank, N.A., dated December 1, 2003, for loans that were originated under Charter One's Custom Educredit Loan Program.

- Charter One Bank, N.A., dated May 10, 2004, for loans that were originated under Charter One's EdFinancial Loan Program.

- Charter One Bank, N.A., dated September 15, 2003, for loans that were originated under Charter One's Extra Credit II Loan Program (North Texas Higher Education).

- Charter One Bank, N.A., dated September 20, 2003, for loans that were originated under Charter One's M&I Alternative Loan Program.

- Charter One Bank, N.A., dated November 17, 2003, for loans that were originated under Charter One's National Education Loan Program.

- Charter One Bank, N.A., dated May 15, 2002, for loans that were originated under Charter One's NextStudent Alternative Loan Program.

- Charter One Bank, N.A., dated March 26, 2004, for loans that were originated under Charter One's NextStudent Private Consolidation Loan Program.

- Charter One Bank, N.A., dated March 25, 2004, for loans that were originated under Charter One's Astrive and AstriveAlliance Education Loan Programs.

- Charter One Bank, N.A., dated May 15, 2003, for loans that were originated under Charter One's WAMU Alternative Student Loan Program.

- Charter One Bank, N.A., dated February 15, 2005, for loans that were originated under Charter One's Referral Loan Program (including loans in the UPromise Alternative Loan Program, Collegiate Solutions Alternative Loan Program, College Board Alternative Loan Program, and Axiom Alternative Loan Programs).

- Citizens Bank of Rhode Island, dated April 30, 2004, for loans that were originated under Citizens Bank of Rhode Island's Alternative Loan Program, Compass Bank Alternative Loan Program, FinanSure Alternative Loan Program, Navy Federal Alternative Loan Program, and Xanthus Alternative Loan Program.

- Citizens Bank of Rhode Island, dated October 1, 2002, for loans that were originated under Citizens Bank of Rhode Island's Penn State Undergraduate Loan Program.

- First National Bank Northeast, dated August 1, 2001, for loans that were originated under First National Bank Northeast's CASL Undergraduate Alternative Loan Program.

- HSBC Bank USA, National Association, dated April 17, 2002, as amended on June 2, 2003 and August 1, 2003, for loans that were originated under the HSBC Loan Program.

- The Huntington National Bank, dated May 20, 2003, for loans that were originated under The Huntington National Bank's Huntington Bank Education Loan Program.

- KeyBank, dated May 12, 2006, for loans that were originated under KeyBank's Private Education Loan Program.

- Manufacturers and Traders Trust Company, dated April 29, 2004, for loans that were originated under Manufacturers and Traders Trust Company's Alternative Loan Program.

- National City Bank, dated November 13, 2002, for loans that were originated under National City Bank's National City Loan Program.

- PNC Bank, N.A., dated April 22, 2004, for loans that were originated under PNC Bank's Alternative Conforming Loan Program, Brazos Alternative Loan Program, Edvisors Alternative Loan Program, GE Money Bank Alternative Loan Prorgam, Old National Bank Alternative Loan Program, and Regions Bank Alternative Loan Program.

- Sovereign Bank, dated April 30, 2004, for loans that were originated under Sovereign Bank's Alternative Loan Program.

- SunTrust Bank, dated March 1, 2002, for loans that were originated under SunTrust Bank's SunTrust Alternative Loan Program.

- TCF National Bank, dated July 22, 2005, for loans that were originated under TCF National Bank's Alternative Loan Program.

- U.S. Bank, N.A., dated May 1, 2005, for loans that were originated under U.S Bank's Alternative Loan Program.

EX-99.22 19 p06-1554ex99_22.htm POOL SUPPLEMENT

CONFIDENTIAL MATERIALS OMITTED AND FILED SEPARATELY WITH THE SECURITIES AND EXCHANGE
COMMISSION.
ASTERISKS DENOTE OMISSIONS.

**Exhibit 99.22**

**2006-3 POOL SUPPLEMENT (NON-DTC)**
**Bank of America, N.A.**

This Pool Supplement (the "Supplement") is entered into pursuant to and forms a part of that certain Note Purchase Agreement dated as of April 30, 2001, as amended or supplemented from the date of execution of the Agreement through the date of this Supplement (together, the "Agreement"), by and between The First Marblehead Corporation and Bank of America, N.A. (the "Program Lender"). This Supplement is dated as of September 28, 2006. Capitalized terms used in this Supplement without definitions have the meanings set forth in the Agreement.

Article 1: Purchase and Sale.

In consideration of the Minimum Purchase Price set forth below, the Program Lender hereby transfers, sells, sets over and assigns to The National Collegiate Funding LLC (the "Depositor"), upon the terms and conditions set forth in the Agreement (which are incorporated herein by reference with the same force and effect as if set forth in full herein), each student loan set forth on the attached Schedule 1 (the "Transferred Bank of America Loans") along with all of the Program Lender's rights under the Guaranty Agreement, and any agreement pursuant to which TERI granted collateral for its obligations under the Guaranty Agreement, relating to the Transferred Bank of America Loans. The Depositor in turn will sell the Transferred Bank of America Loans to The National Collegiate Student Loan Trust 2006-3 (the "Trust"). The Program Lender hereby transfers and delivers to the Depositor each Note evidencing such Transferred Bank of America Loan and all Origination Records relating thereto, in accordance with the terms of the Agreement. The Depositor hereby purchases said Notes on said terms and conditions.

Article 2: Price.

The amounts paid pursuant to this Supplement are the amounts set forth on Schedule 2 attached hereto.

Article 3: Representations and Warranties.

3.01. By Program Lender.

The Program Lender repeats the representations and warranties contained in Section 5.02 of the Agreement for the benefit of each of the Depositor and the Trust and confirms the same are true and correct as of the date hereof with respect to the Agreement and to this Supplement.

3.02. By Depositor.

The Depositor hereby represents and warrants to the Program Lender that at the date of execution and delivery of this Supplement by the Depositor:

(a) The Depositor is duly organized and validly existing as a limited liability company under the laws of the State of Delaware with the due power and authority to own its properties and to conduct its business as such properties are currently

owned and such business is presently conducted, and had at all relevant times, and has, the power, authority and legal right to acquire and own the Transferred Bank of America Loans.

(b) The Depositor is duly qualified to do business and has obtained all necessary licenses and approvals in all jurisdictions in which the ownership or lease of property or the conduct of its business shall require such qualifications.

(c) The Depositor has the power and authority to execute and deliver this Supplement and to carry out its respective terms; the Depositor has the power and authority to purchase the Transferred Bank of America Loans and rights relating thereto as provided herein from the Program Lender, and the Depositor has duly authorized such purchase from the Program Lender by all necessary action; and the execution, delivery and performance of this Supplement has been duly authorized by the Depositor by all necessary action on the part of the Depositor.

(d) This Supplement, together with the Agreement of which this Supplement forms a part, constitutes a legal, valid and binding obligation of the Depositor, enforceable in accordance with its terms.

(e) The consummation of the transactions contemplated by the Agreement and this Supplement and the fulfillment of the terms hereof do not conflict with, result in any breach of any of the terms and provisions of, or constitute (with or without notice or lapse of time) a default under, the governing instruments of the Depositor or any indenture, agreement or other instrument to which the Depositor is a party or by which it is bound; or result in the creation or imposition of any lien upon any of its properties pursuant to the terms of any such indenture, agreement or other instrument; or violate any law or any order, rule or regulation applicable to the Depositor of any court or of any federal or state regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties.

(f) There are no proceedings or investigations pending, or threatened, before any court, regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties: (i) asserting the invalidity of the Agreement or this Supplement, (ii) seeking to prevent the consummation of any of the transactions contemplated by the Agreement or this Supplement, or (iii) seeking any determination or ruling that is likely to materially or adversely affect the performance by the Depositor of its obligations under, or the validity or enforceability of the Agreement or this Supplement.

### Article 4: Cross Receipt.

The Program Lender hereby acknowledges receipt of the Minimum Purchase Price. The Depositor hereby acknowledges receipt of the Transferred Bank of America Loans.

### Article 5: Assignment of Origination, Guaranty and Servicing Rights.

The Program Lender hereby assigns and sets over to the Depositor any claims it may now or hereafter have under the Guaranty Agreement, the Origination Agreement and the Servicing Agreement to the extent the same relate to the Transferred Bank of America Loans described in Schedule 1, other than any right to obtain servicing after the date hereof. It is the intent of this provision to vest in the Depositor any claim of the Program Lender relating to defects in origination, guaranty or servicing of the loans purchased hereunder in order to permit the Depositor to assert such claims directly and obviate any need to make the same claims against the Program Lender under this Supplement. The Program Lender also hereby assigns and sets over to the Depositor any claims it may now have or hereafter have to any collateral pledged by TERI to the Program Lender to secure its obligations under the Guaranty Agreement that relates to the Transferred Bank of America Loans, and the Program Lender hereby releases any security interest it may have in such collateral. The Program Lender hereby authorizes the Depositor, its successors and assigns, to file in any public filing office where a Uniform Commercial Code Filing with respect to collateral pledged by TERI is of record, any partial release or assignment that it deems necessary or appropriate to reflect in the public records the conveyance and assignment effected hereby.

[Remainder of page intentionally blank]

IN WITNESS WHEREOF, the parties have caused this Supplement to be executed as of the date set forth above.

THE FIRST MARBLEHEAD CORPORATION

By: /s/ Donald R. Peck

    Donald R. Peck
    Executive Vice President

BANK OF AMERICA, N.A.

By: /s/ Elliott Lemon

    Name: Elliott Lemon
    Title: Vice President

THE NATIONAL COLLEGIATE FUNDING LLC

By: GATE Holdings, Inc., Member

By: /s/ John A. Hupalo

    John A. Hupalo
    Vice President

<u>Schedule 1</u>

[Transferred Bank of America Loans]

<u>Schedule 2</u>

BAGEL

For purposes of this Supplement the term "Minimum Purchase Price" shall mean the sum of the following amounts with respect to each of the Seasoned Loans to be purchased:

(a)    The unpaid principal amount of the Seasoned Loans in question [**]; plus

(b)     All accrued and unpaid interest on such Seasoned Loans, [**]; plus

(c)     [**], the amount of any guaranty fee paid by the Program Lender to The Education Resources Institute, Inc. ("TERI") (except that for [**]). If the terms of the Guaranty Agreement call for any Guaranty Fees to be paid to TERI [**]; plus

(d)     A marketing fee and loan premium, [**]:

    1.     with respect to Bank of America BAGEL Generic & Preferred School Channel Creditworthy Undergraduate Loans, [**]%;

    2.     with respect to Bank of America BAGEL Generic & Preferred School Channel Creditworthy Graduate Loans, [**]%;

    3.     with respect to Bank of America BAGEL Generic & Preferred School Channel Creditworthy Law Loans, [**]%;

    4.     with respect to Bank of America BAGEL Generic & Preferred School Channel Creditworthy Business Loans, [**]%;

    5.     with respect to Bank of America BAGEL Generic & Preferred School Channel Creditworthy Medical Loans, [**]%;

    6.     with respect to Bank of America BAGEL Generic & Preferred School Channel Creditworthy Dental Loans, [**]%;

    7.     with respect to Bank of America BAGEL Generic & Preferred School Channel Credit-ready Graduate Loans, [**]%;

    8.     with respect to Bank of America BAGEL Generic & Preferred School Channel Credit-ready Law Loans, [**]%;

    9.     with respect to Bank of America BAGEL Generic & Preferred School Channel Credit-ready Business Loans, [**]%;

    10.     with respect to Bank of America BAGEL Generic & Preferred School Channel Credit-ready Medical Loans, [**]%;

    11.     with respect to Bank of America BAGEL Generic & Preferred School Channel Credit-ready Dental Loans, [**]%;

    12.     with respect to Bank of America BAGEL Generic & Preferred School Channel Credit-ready Bar Loans, [**]%;

    13.     with respect to Bank of America BAGEL Generic & Preferred School Channel Credit-ready Relocation & Residency Loans, [**]%;

    14.     with respect to Bank of America BAGEL William & Mary School Channel Creditworthy Graduate Loans, [**]%;

    15.     with respect to Bank of America BAGEL William & Mary School Channel Creditworthy Law Loans, [**]%;

    16.     with respect to Bank of America BAGEL William & Mary School Channel Credit-ready Graduate Loans, [**]%;

    17.     with respect to Bank of America BAGEL William & Mary School Channel Credit-ready Law Loans, [**]%; and

    18.     with respect to Bank of America BAGEL William & Mary School Channel Credit-ready Business Loans, [**]%.

## TERI ALTERNATIVE

On the Purchase Date, Program Lender shall assign and convey all Seasoned Loans that are Bank of America TERI Program loans (other than Bank of America TERI ISLP Program loans) originated by Program Lender included in the Pool to FMC, or a Purchaser Trust, in consideration of receipt of the Minimum Purchase Price therefor. For purposes of this Agreement the term "Minimum Purchase Price" shall mean the sum of the following amounts with respect to each of the Seasoned Loans to be purchased that are Bank of America TERI Program loans (other than Bank of America TERI ISLP Program loans):

(a)     The unpaid principal amount of the Seasoned Loans in question [**]; plus

(b)     All accrued and unpaid interest on such Seasoned Loans, [**]; plus

(c)     [**], the amount of any guaranty fee paid by the Program Lender to The Education Resources Institute, Inc. ("TERI"). If the terms of the Guaranty Agreement call for any Guaranty Fees to be paid to TERI [**]; plus

(d)     A marketing fee and loan premium, [**]:

   1.   with respect to Bank of America TERI School Channel Undergraduate Creditworthy Loans, [**]% for [**], and [**]; plus
   2.   with respect to Bank of America TERI School Channel Graduate Creditworthy Loans, [**]% for [**], and [**]; plus
   3.   with respect to Bank of America TERI School Channel Graduate Credit-ready Loans, [**]%; plus
   4.   with respect to Bank of America TERI School Channel Continuing Education Loans, [**]% for [**]& [**]; plus
   5.   with respect to Bank of America TERI School Channel Creditworthy Health Professions Loans (excluding [**]), [**]% for [**], & [**]; plus
   6.   with respect to Bank of America TERI School Channel Credit-ready Health Professions Loans and CVS Creditworthy and Credit-ready Health Professions Loans eligible for purchase under the [**], [**]%; plus
   7.   with respect to Bank of America prepGATE (AKA K-12) Loans, [**]%.

## ISLP

For purposes of this Supplement the term "Minimum Purchase Price" shall mean the sum of the following amounts with respect to each of the Seasoned Loans to be purchased:

(a)     The unpaid principal amount ([**]) of the Seasoned Loans in the Pool; plus

(b)     All accrued and unpaid interest on such Seasoned Loans.[**]; plus

(c)     A marketing fee and loan premium, [**]:

   1.   with respect to Bank of America Bank School Channel ISLP Undergraduate Creditworthy Loans, [**]% for [**]& [**];
   2.   with respect to Bank of America Bank School Channel ISLP Graduate Creditworthy Loans, [**]% for [**]&[**];
   3.   with respect to Bank of America Bank School Channel ISLP Graduate Credit-ready Loans, [**]%;
   4.   with respect to Bank of America Bank School Channel ISLP Medical Creditworthy Loans, [**]%;
   5.   with respect to Bank of America Bank School Channel ISLP Medical Credit-ready Loans, [**]%;
   6.   with respect to Bank of America Bank School Channel ISLP Medical Creditworthy Residency Loans, [**]%;
   7.   with respect to Bank of America Bank School Channel ISLP Medical Credit-ready Residency Loans, [**]%.

**National Collegiate Student Loan Trust 2006-3**

Roster: **BANK OF AMERICA**

| LENDER_ NAME | LENDER | MARKETER | LOAN_ DESC | BSSN |
|---|---|---|---|---|
| BANK OF AMERICA | 614817 | Bank of America | SC - Undergraduate | 3085 |

| GUARREF | LAST_ DISB_ DATE | TIER | REPAY_ TYPE | ACTUAL_ MARGIN |
|---|---|---|---|---|
| 03671669 | 12-Apr-06 | 7 | DP | 0.0445 |

| 3_ % | 4A_ % | MARKETER_ FEE_ LENDER | RECON_ TOT_ DISB | RECON_ NET_ DISB_ $ |
|---|---|---|---|---|
| 0.095 | 0.015 | 0.03 | $10,809.94 | $9,783.00 |

| RECON_ NET_ CURPRIN_ $ | RECON_ TOTCAPINT | RECON_ PRIN | RECON_ INT | RECON_ ADMIN_ FEE_ $ |
|---|---|---|---|---|
| $9,783.00 | $0.00 | $10,809.94 | $461.58 | $0.00 |

| Final Reconciliation Settlement Figures | | | | |
|---|---|---|---|---|
| RECON_ ORIG_ FEE_ TO_ BANK_ $ | RECON_ M_ FEE_ LENDER_ $ | RECON_ DMI_ REIMBURSE | RECON_ MARKETING_ FEE_ LENDER | TOTAL_ AMT_ DUE_ BANK |
| $100.00 | $293.49 | $0.00 | $293.49 | $11,665.01 |

```
 ITS2X      3085;                      AES/PA        VTAM NAC6        TSX2Y
DATE 11/04/15 09:31:14 REPAYMENT SCHEDULE SUMMARY SELECTION    PAGE  1 OF  4

BORROWER SSN       -3085   NAME JAVIER MEDINA

          SCHED    INSTALL   REPAY   REPAY  1ST DUE 1ST DISB     LOAN
SEL STA TYPE     AMOUNT    LVLS    TERM     DATE    DATE       PGM      OWNER




 4  I   L        102.42     2      216   05/17/11 04/12/06 ALPLN      NCT





10  I   L         99.06     2      222   08/17/10 04/12/06 ALPLN      NCT



SELECTION   __


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

```
ITS2X     3085;                    AES/PA        VTAM NAC6       TSX2Y
DATE 11/04/15 09:31:37 REPAYMENT SCHEDULE SUMMARY SELECTION   PAGE  2 OF  4

BORROWER SSN      3085   NAME JAVIER MEDINA

        SCHED    INSTALL  REPAY  REPAY  1ST DUE 1ST DISB      LOAN
SEL STA TYPE     AMOUNT    LVLS   TERM    DATE    DATE        PGM      OWNER
 1  I   RP        25.00      3     225  05/17/10 04/12/06 ALPLN       NCT
```

```
10  I   L         96.13      2     226  03/17/10 04/12/06 ALPLN       NCT
```

SELECTION   __


F1=HELP   F3=EXIT   F5=RFR   F7=BKWD   F8=FWD   F9=PRT   F12=CAN
```



```
ITS2X    -3085;                    AES/PA        VTAM NAC6      .TSX2Y
DATE 11/04/15 09:31:46 REPAYMENT SCHEDULE SUMMARY SELECTION   PAGE  3 OF  4

BORROWER SSN    -3085   NAME JAVIER MEDINA

        SCHED   INSTALL  REPAY  REPAY 1ST DUE 1ST DISB    LOAN
SEL STA TYPE    AMOUNT   LVLS   TERM   DATE    DATE        PGM      OWNER
```

| SEL | STA | SCHED TYPE | INSTALL AMOUNT | REPAY LVLS | REPAY TERM | 1ST DUE DATE | 1ST DISB DATE | LOAN PGM | OWNER |
|-----|-----|------------|----------------|------------|------------|--------------|---------------|----------|-------|
| 4   | I   | L          | 93.15          | 2          | 231        | 11/01/09     | 04/12/06      | ALPLN    | NCT   |
| 10  | I   | L          | 109.35         | 2          | 237        | 04/24/09     | 04/12/06      | ALPLN    | NCT   |

```
SELECTION  __


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

Nov 4, 2015 9:31:54 AM

```
ITS2X    3085;                    AES/PA        VTAM NAC6      TSX2Y
DATE 11/04/15 09:31:56 REPAYMENT SCHEDULE SUMMARY SELECTION   PAGE  4 OF  4

BORROWER SSN       -3085   NAME JAVIER MEDINA

       SCHED    INSTALL   REPAY   REPAY  1ST DUE 1ST DISB    LOAN
  SEL STA TYPE  AMOUNT    LVLS    TERM    DATE    DATE       PGM      OWNER



   4  I   L      110.53     2     239   08/18/08 04/12/06 ALPLN      NCT




  SELECTION  __


F1=HELP   F3=EXIT   F5=RFR   F7=BKWD   F8=FWD   F9=PRT   F12=CAN
```

```
ITS2C     3085;;              AES/PA        VTAM NAC6      TSX2D
DATE 11/04/15 09:29:58    LOAN FINANCIAL ACTIVITY        PAGE  1 OF  3

BORROWER SSN:     -3085  NAME: MEDINA, JAVIER
1ST DISB: 04/12/06 LN SEQ: 0004  LN PGM: ALPLN    OWN: 122962  -NCT
GUARANTOR: TERI                  CUST ACCT:  LT10  ORIG BAL:  10,809.94
BOND ISSUE: NCT20063   PD AHEAD:    STATUS: ACTIVE    CURR BAL:      0.00
```

|   | REV<br>REA | EFFECTIVE<br>DATE | POSTED<br>DATE | TRAN<br>TYPE | TRAN<br>AMOUNT | INTEREST<br>ACCRUED | PRINCIPAL<br>BALANCE |
|---|---|---|---|---|---|---|---|
| 1 | | 12/02/11 | 12/02/11 | 5003A | 30.00CR | 0.00 | 0.00 |
| 2 | | 12/01/11 | 12/01/11 | 1030A | 15,332.55CR | 54.95 | 0.00 |
| 3 | | 11/02/11 | | 2601A | 5.00 | 56.85 | 14,875.26 |
| 4 | | 10/03/11 | | 2601A | 5.00 | 58.86 | 14,875.26 |
| 5 | | 09/02/11 | | 2601A | 5.00 | 58.87 | 14,875.26 |
| 6 | | 08/02/11 | | 2601A | 5.00 | 56.97 | 14,875.26 |
| 7 | | 07/03/11 | | 2601A | 5.00 | 59.46 | 14,875.26 |
| 8 | | 06/02/11 | | 2601A | 5.00 | 111.33 | 14,875.26 |
| 9 | | 04/05/11 | 04/08/11 | 7001A | 0.00 | 197.14 | 14,875.26 |
| 10 | | 12/22/10 | 04/08/11 | 7001A | 0.00 | 219.83 | 14,678.12 |

```
    SELECTION ___


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

Nov 4, 2015 9:30:47 AM

```
  ITS2C530593085;;                    AES/FA        VTAM NADC        TSX2D
  DATE 05/20/16 09:21:42     LOAN FINANCIAL ACTIVITY           PAGE  2 OF  3

BORROWER SSN: 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  NAME: MEDINA, JAVIER
1ST DISB: 04/12/06 LN SEQ: 0004  LN PGM: ALPLN    OWN: 122962  -NCT
GUARANTOR: TERI                  CUST ACCT:  LT10  ORIG BAL:  10,809.94
BOND ISSUE: NCT20063   PD AHEAD:     STATUS: ACTIVE     CURR BAL:      0.00
```

|  | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|---|---|---|---|---|---|---|---|
| 1 |  | 08/27/10 | 08/27/10 | 1010C | 239.00CR | 46.90 | 14,447.20 |
| 2 |  | 08/02/10 | 08/02/10 | 1010C | 8.38CR | 56.28 | 14,447.20 |
| 3 |  | 08/02/10 |  | 2601A | 1.25 | 0.00 | 14,447.20 |
| 4 |  | 07/03/10 |  | 2601A | 1.25 | 3.75 | 14,447.20 |
| 5 |  | 07/01/10 | 07/01/10 | 1010C | 8.38CR | 53.71 | 14,447.20 |
| 6 |  | 06/02/10 |  | 2601A | 1.25 | 16.67 | 14,447.20 |
| 7 |  | 05/24/10 | 05/25/10 | 1010C | 8.38CR | 38.90 | 14,447.20 |
| 8 |  | 05/03/10 |  | 2601A | 4.39 | 37.04 | 14,447.20 |
| 9 |  | 04/13/10 | 04/13/10 | 1010C | 8.38CR | 22.22 | 14,447.20 |
| 10 |  | 04/01/10 | 04/01/10 | 7001A | 0.00 | 108.70 | 14,447.20 |

```
        SELECTION __

F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

```
ITS2C      3085;;                    AES/PA        VTAM NAC6       TSX2D
DATE 11/04/15 09:31:00      LOAN FINANCIAL ACTIVITY         PAGE  3 OF  3

BORROWER SSN:        -3085  NAME: MEDINA, JAVIER
1ST DISB: 04/12/06 LN SEQ: 0004  LN PGM: ALPLN    OWN: 122962  -NCT
GUARANTOR: TERI                   CUST ACCT:  LT10  ORIG BAL:  10,809.94
BOND ISSUE: NCT20063    PD AHEAD:    STATUS: ACTIVE      CURR BAL:      0.00
```

|   | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|---|---|---|---|---|---|---|---|
| 1 |   | 02/01/10 | 02/01/10 | 7001A | 0.00 | 224.49 | 14,338.50 |
| 2 |   | 10/01/09 | 10/02/09 | 7001A | 0.00 | 355.74 | 14,114.01 |
| 3 |   | 03/25/09 | 03/25/09 | 7001A | 0.00 | 488.21 | 13,758.27 |
| 4 |   | 09/16/08 | 11/07/08 | 7001A | 0.00 | 170.26 | 13,270.06 |
| 5 |   | 07/11/08 | 11/07/08 | 7001A | 0.00 | 1,828.28 | 13,099.80 |
| 6 |   | 09/28/06 | 09/28/06 | 0390A | 11,271.52 | 0.00 | 10,809.94 |
| 7 |   | 09/28/06 | 09/28/06 | 0395A | 11,271.52CR | 461.58 | 0.00 |
| 8 |   | 04/12/06 | 04/12/06 | 0101A | 10,809.94 | 0.00 | 10,809.94 |

```
        SELECTION __

F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

Nov 4, 2015 9:31:09 AM

```
ITS2V    3085;                    AES/PA         VTAM NAC6        TSX2W
DATE 11/04/15 09:28:38    DEFERMENT/FORBEARANCE SUMMARY        PAGE  1 OF  4

BORROWER SSN      3085    NAME JAVIER MEDINA

  DEFER/FORB    BEGIN     END
    TYPE        DATE      DATE       1ST DISB LOAN PGM          OWNER
  F-BANKRUPT  12/22/10 04/04/11   1 07/19/07 ALPLN      NCT
                                  2 06/21/06 ALPLN      NCT
                                  3 04/12/06 ALPLN      NCT
                                  4 08/29/05 ALPLN      NCT
                                  5 05/16/05 ALPLN      NCT
                                  6 07/23/04 ALPLN      NCT
  F-ADMINIST  09/17/10 12/21/10   7 07/19/07 ALPLN      NCT
                                  8 06/21/06 ALPLN      NCT
                                  9 04/12/06 ALPLN      NCT
                                 10 08/29/05 ALPLN      NCT
                                 11 05/16/05 ALPLN      NCT
                                 12 07/23/04 ALPLN      NCT

                            SELECTION __


  F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

Nov 4, 2015 9:28:56 AM

```
ITS2V5    3085;                    AES/PA        VTAM NAC6        TSX2W
DATE 11/04/15 09:32:30    DEFERMENT/FORBEARANCE SUMMARY      PAGE  2 OF  4

BORROWER SSN      -3085   NAME JAVIER MEDINA

DEFER/FORB      BEGIN    END
   TYPE         DATE     DATE      1ST DISB LOAN PGM           OWNER
F-ADMINIST   03/01/10 03/31/10   1 07/19/07 ALPLN         NCT
                                 2 06/21/06 ALPLN         NCT
                                 3 04/12/06 ALPLN         NCT
                                 4 08/29/05 ALPLN         NCT
                                 5 05/16/05 ALPLN         NCT
                                 6 07/23/04 ALPLN         NCT
F-TEMP HRD   10/01/09 01/31/10   7 07/19/07 ALPLN         NCT
                                 8 06/21/06 ALPLN         NCT
                                 9 04/12/06 ALPLN         NCT
                                10 08/29/05 ALPLN         NCT
                                11 05/16/05 ALPLN         NCT
                                12 07/23/04 ALPLN         NCT


                         SELECTION __


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

```
ITS2V    3085;                    AES/PA         VTAM NAC6        TSX2W
DATE 11/04/15 09:29:05    DEFERMENT/FORBEARANCE SUMMARY       PAGE  3 OF  4

BORROWER SSN      3085   NAME JAVIER MEDINA

   DEFER/FORB    BEGIN    END
     TYPE        DATE     DATE      1ST DISB LOAN PGM          OWNER
   F-TEMP HRD  04/01/09 09/30/09  1 07/19/07 ALPLN      NCT
                                  2 06/21/06 ALPLN      NCT
                                  3 04/12/06 ALPLN      NCT
                                  4 08/29/05 ALPLN      NCT
                                  5 05/16/05 ALPLN      NCT
                                  6 07/23/04 ALPLN      NCT
   D-SCHL FUL  09/16/08 11/29/10  7 07/19/07 ALPLN      NCT
                                  8 06/21/06 ALPLN      NCT
                                  9 04/12/06 ALPLN      NCT
                                 10 08/29/05 ALPLN      NCT
                                 11 05/16/05 ALPLN      NCT
                                 12 07/23/04 ALPLN      NCT

                              SELECTION __


   F1=HELP   F3=EXIT   F5=RFR   F7=BKWD   F8=FWD   F9=PRT   F12=CAN
```

Nov 4, 2015 9:29:15 AM

```
ITS2V    3085;                    AES/PA        VTAM NAC6        TSX2W
DATE 11/04/15 09:33:08    DEFERMENT/FORBEARANCE SUMMARY        PAGE  4 OF  4

BORROWER SSN 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    NAME JAVIER MEDINA

   DEFER/FORB      BEGIN     END
     TYPE         DATE      DATE       1ST DISB LOAN PGM        OWNER
   F-TEMP HRD    08/01/08 01/31/09  1 07/19/07 ALPLN      NCT
                                    2 06/21/06 ALPLN      NCT
                                    3 04/12/06 ALPLN      NCT
                                    4 08/29/05 ALPLN      NCT
                                    5 05/16/05 ALPLN      NCT
                                    6 07/23/04 ALPLN      NCT




                           SELECTION __


 F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

# Loan Payment History Report
## Date: 2015-11-04

| | | | |
|---|---|---|---|
| Account Number: | 3085/004-001000 | | |
| Social Security Number: | 3085 | Product: | SFU DIRECT TO SCHOOL UNDERGRAD |
| Name: | MEDINA, JAVIER | Officer Code: | 777063 |
| Birth Date: | 1979- | School: | SPARTAN COLLEGE OF AERONAUTICS & TECH |
| Address 1: | C/O GOLDSTEIN PHILIP K | Program Year: | 2005-06 |
| Address 2: | 609 S 7TH ST | | |
| City: | LAS VEGAS | Variable Rate Code: | FU LIBOR |
| State: | NV | Interest Rate: | 4.64% |
| Zip Code: | 89101 | Last Payment Date: | 2010-08-27 |
| | | Last Payment Amount: | $239.00 |
| | | Payment Due Date: | 2011-11-17 |
| Contract Date: | 2006-04-12 | Last Interest Date: | 2015-11-04 |
| Date Assigned: | | Accrued Interest: | $2,808.79 |
| Charge Off Date: | 2011-12-01 | Recovered Interest: | $0.00 |
| Charge Off Amount: | $15,332.55 | Net Interest: | $2,808.79 |
| Recovered Principal: | $0.00 | Associated Costs: | $0.00 |
| Net Charge Off: | $15,332.55 | Recovered Costs: | $0.00 |
| Disbursement Date: | 2006-04-12 | Net Costs: | $0.00 |
| Disbursement Amount: | $10,809.94 | | |

## Transaction History

| | | | | | |
|---|---|---|---|---|---|
| System | 2011-12-31 | 00:01 | 82 | $15,332.55 @ 4.650 / 12/01/2011 - 12/31/2011 | $58.60 |
| System | 2012-01-03 | 00:01 | 82 | $15,332.55 @ 4.700 / 12/31/2011 - 01/03/2012 | $5.91 |
| System | 2012-01-31 | 00:01 | 82 | $15,332.55 @ 4.700 / 01/03/2012 - 01/31/2012 | $55.13 |
| System | 2012-02-01 | 00:01 | 82 | $15,332.55 @ 4.700 / 01/31/2012 - 02/01/2012 | $1.97 |
| System | 2012-02-29 | 00:01 | 82 | $15,332.55 @ 4.700 / 02/01/2012 - 02/29/2012 | $55.13 |
| System | 2012-03-01 | 00:01 | 82 | $15,332.55 @ 4.700 / 02/29/2012 - 03/01/2012 | $1.97 |
| System | 2012-03-31 | 00:01 | 82 | $15,332.55 @ 4.700 / 03/01/2012 - 03/31/2012 | $59.07 |
| System | 2012-04-02 | 00:01 | 82 | $15,332.55 @ 4.700 / 03/31/2012 - 04/02/2012 | $3.94 |
| System | 2012-04-30 | 00:01 | 82 | $15,332.55 @ 4.720 / 04/02/2012 - 04/30/2012 | $55.36 |
| System | 2012-05-02 | 00:01 | 82 | $15,332.55 @ 4.720 / 04/30/2012 - 05/02/2012 | $3.95 |
| System | 2012-05-31 | 00:01 | 82 | $15,332.55 @ 4.720 / 05/02/2012 - 05/31/2012 | $57.34 |
| System | 2012-06-01 | 00:01 | 82 | $15,332.55 @ 4.720 / 05/31/2012 - 06/01/2012 | $1.98 |
| System | 2012-06-30 | 00:01 | 82 | $15,332.55 @ 4.720 / 06/01/2012 - 06/30/2012 | $57.34 |
| System | 2012-07-01 | 00:01 | 82 | $15,332.55 @ 4.720 / 06/30/2012 - 07/01/2012 | $1.98 |
| System | 2012-07-02 | 00:01 | 82 | $15,332.55 @ 4.690 / 07/01/2012 - 07/02/2012 | $1.96 |
| System | 2012-07-31 | 00:01 | 82 | $15,332.55 @ 4.690 / 07/02/2012 - 07/31/2012 | $56.98 |

| System | 2012-08-01 | 00:01 | 82 | $15,332.55 @ 4.690 / 07/31/2012 - 08/01/2012 | $1.96 |
|---|---|---|---|---|---|
| System | 2012-08-31 | 00:01 | 82 | $15,332.55 @ 4.690 / 08/01/2012 - 08/31/2012 | $58.94 |
| System | 2012-09-04 | 00:01 | 82 | $15,332.55 @ 4.690 / 08/31/2012 - 09/04/2012 | $7.86 |
| System | 2012-09-30 | 00:01 | 82 | $15,332.55 @ 4.690 / 09/04/2012 - 09/30/2012 | $51.08 |
| System | 2012-10-01 | 00:01 | 82 | $15,332.55 @ 4.690 / 09/30/2012 - 10/01/2012 | $1.96 |
| System | 2012-10-31 | 00:01 | 82 | $15,332.55 @ 4.690 / 10/01/2012 - 10/31/2012 | $58.94 |
| System | 2012-11-09 | 00:01 | 82 | $15,332.55 @ 4.690 / 10/31/2012 - 11/09/2012 | $17.68 |
| System | 2012-12-03 | 00:01 | 82 | $15,332.55 @ 4.690 / 11/09/2012 - 12/03/2012 | $47.15 |
| System | 2012-12-05 | 00:01 | 82 | $15,332.55 @ 4.690 / 12/03/2012 - 12/05/2012 | $3.93 |
| System | 2012-12-11 | 00:01 | 82 | $15,332.55 @ 4.690 / 12/05/2012 - 12/11/2012 | $11.79 |
| System | 2012-12-17 | 00:01 | 82 | $15,332.55 @ 4.690 / 12/11/2012 - 12/17/2012 | $11.79 |
| System | 2012-12-18 | 00:01 | 82 | $15,332.55 @ 4.690 / 12/17/2012 - 12/18/2012 | $1.96 |
| System | 2012-12-26 | 00:01 | 82 | $15,332.55 @ 4.690 / 12/18/2012 - 12/26/2012 | $15.72 |
| System | 2012-12-31 | 00:01 | 82 | $15,332.55 @ 4.690 / 12/26/2012 - 12/31/2012 | $9.82 |
| System | 2013-01-01 | 00:01 | 82 | $15,332.55 @ 4.690 / 12/31/2012 - 01/01/2013 | $1.97 |
| System | 2013-01-03 | 00:01 | 82 | $15,332.55 @ 4.690 / 01/01/2013 - 01/03/2013 | $3.94 |
| System | 2013-01-31 | 00:01 | 82 | $15,332.55 @ 4.660 / 01/03/2013 - 01/31/2013 | $54.81 |
| System | 2013-02-01 | 00:01 | 82 | $15,332.55 @ 4.660 / 01/31/2013 - 02/01/2013 | $1.96 |
| System | 2013-02-04 | 00:01 | 82 | $15,332.55 @ 4.660 / 02/01/2013 - 02/04/2013 | $5.87 |
| System | 2013-02-07 | 00:01 | 82 | $15,332.55 @ 4.660 / 02/04/2013 - 02/07/2013 | $5.87 |
| System | 2013-02-11 | 00:01 | 82 | $15,332.55 @ 4.660 / 02/07/2013 - 02/11/2013 | $7.83 |
| System | 2013-02-13 | 00:01 | 82 | $15,332.55 @ 4.660 / 02/11/2013 - 02/13/2013 | $3.92 |
| System | 2013-02-14 | 00:01 | 82 | $15,332.55 @ 4.660 / 02/13/2013 - 02/14/2013 | $1.96 |
| System | 2013-02-28 | 00:01 | 82 | $15,332.55 @ 4.660 / 02/14/2013 - 02/28/2013 | $27.41 |
| System | 2013-03-31 | 00:01 | 82 | $15,332.55 @ 4.660 / 02/28/2013 - 03/31/2013 | $60.68 |
| System | 2013-04-09 | 00:01 | 82 | $15,332.55 @ 4.660 / 03/31/2013 - 04/09/2013 | $17.62 |
| System | 2013-04-30 | 00:01 | 82 | $15,332.55 @ 4.650 / 04/09/2013 - 04/30/2013 | $41.02 |
| System | 2013-05-31 | 00:01 | 82 | $15,332.55 @ 4.650 / 04/30/2013 - 05/31/2013 | $60.55 |
| System | 2013-06-30 | 00:01 | 82 | $15,332.55 @ 4.650 / 05/31/2013 - 06/30/2013 | $58.60 |
| System | 2013-07-31 | 00:01 | 82 | $15,332.55 @ 4.650 / 06/30/2013 - 07/31/2013 | $60.55 |
| System | 2013-08-02 | 00:01 | 82 | $15,332.55 @ 4.650 / 07/31/2013 - 08/02/2013 | $3.91 |
| System | 2013-08-31 | 00:01 | 82 | $15,332.55 @ 4.650 / 08/02/2013 - 08/31/2013 | $56.65 |
| System | 2013-09-03 | 00:01 | 82 | $15,332.55 @ 4.650 / 08/31/2013 - 09/03/2013 | $5.86 |
| System | 2013-12-05 | 00:01 | 82 | $15,332.55 @ 4.650 / 09/03/2013 - 12/05/2013 | $181.66 |
| System | 2013-12-31 | 00:01 | 82 | $15,332.55 @ 4.650 / 12/05/2013 - 12/31/2013 | $50.79 |
| System | 2014-01-06 | 00:01 | 82 | $15,332.55 @ 4.650 / 12/31/2013 - 01/06/2014 | $11.72 |
| System | 2014-01-31 | 00:01 | 82 | $15,332.55 @ 4.620 / 01/06/2014 - 01/31/2014 | $48.52 |
| System | 2014-02-28 | 00:01 | 82 | $15,332.55 @ 4.620 / 01/31/2014 - 02/28/2014 | $54.34 |
| System | 2014-04-03 | 00:01 | 82 | $15,332.55 @ 4.620 / 02/28/2014 - 04/03/2014 | $65.98 |
| System | 2014-05-21 | 00:01 | 82 | $15,332.55 @ 4.610 / 04/03/2014 - 05/21/2014 | $92.95 |
| System | 2014-07-03 | 00:01 | 82 | $15,332.55 @ 4.610 / 05/21/2014 - 07/03/2014 | $83.27 |
| System | 2014-07-31 | 00:01 | 82 | $15,332.55 @ 4.600 / 07/03/2014 - 07/31/2014 | $54.10 |
| System | 2014-08-01 | 00:01 | 82 | $15,332.55 @ 4.600 / 07/31/2014 - 08/01/2014 | $1.93 |
| System | 2014-08-31 | 00:01 | 82 | $15,332.55 @ 4.605 / 08/01/2014 - 08/31/2014 | $58.03 |
| System | 2014-09-02 | 00:01 | 82 | $15,332.55 @ 4.605 / 08/31/2014 - 09/02/2014 | $3.87 |
| System | 2014-09-30 | 00:01 | 82 | $15,332.55 @ 4.600 / 09/02/2014 - 09/30/2014 | $54.10 |
| System | 2014-10-31 | 00:01 | 82 | $15,332.55 @ 4.600 / 09/30/2014 - 10/31/2014 | $59.90 |
| System | 2014-11-04 | 00:01 | 82 | $15,332.55 @ 4.600 / 10/31/2014 - 11/04/2014 | $7.73 |

| System | 2014-11-30 | 00:01 | 82 | $15,332.55 @ 4.610 / 11/04/2014 - 11/30/2014 | $50.35 |
|--------|-----------|-------|----|----------------------------------------------|--------|
| System | 2014-12-31 | 00:01 | 82 | $15,332.55 @ 4.610 / 11/30/2014 - 12/31/2014 | $60.03 |
| System | 2015-01-31 | 00:01 | 82 | $15,332.55 @ 4.610 / 12/31/2014 - 01/31/2015 | $60.04 |
| System | 2015-02-05 | 00:01 | 82 | $15,332.55 @ 4.610 / 01/31/2015 - 02/05/2015 | $9.68 |
| System | 2015-02-28 | 00:01 | 82 | $15,332.55 @ 4.610 / 02/05/2015 - 02/28/2015 | $44.54 |
| System | 2015-03-31 | 00:01 | 82 | $15,332.55 @ 4.610 / 02/28/2015 - 03/31/2015 | $60.03 |
| System | 2015-04-02 | 00:01 | 82 | $15,332.55 @ 4.610 / 03/31/2015 - 04/02/2015 | $3.87 |
| System | 2015-04-30 | 00:01 | 82 | $15,332.55 @ 4.620 / 04/02/2015 - 04/30/2015 | $54.34 |
| System | 2015-05-31 | 00:01 | 82 | $15,332.55 @ 4.620 / 04/30/2015 - 05/31/2015 | $60.16 |
| System | 2015-06-30 | 00:01 | 82 | $15,332.55 @ 4.620 / 05/31/2015 - 06/30/2015 | $58.22 |
| System | 2015-07-01 | 00:01 | 82 | $15,332.55 @ 4.620 / 06/30/2015 - 07/01/2015 | $1.94 |
| System | 2015-07-31 | 00:01 | 82 | $15,332.55 @ 4.630 / 07/01/2015 - 07/31/2015 | $58.35 |
| System | 2015-08-06 | 00:01 | 82 | $15,332.55 @ 4.630 / 07/31/2015 - 08/06/2015 | $11.67 |
| System | 2015-08-31 | 00:01 | 82 | $15,332.55 @ 4.630 / 08/06/2015 - 08/31/2015 | $48.62 |
| System | 2015-09-30 | 00:01 | 82 | $15,332.55 @ 4.630 / 08/31/2015 - 09/30/2015 | $58.35 |
| System | 2015-10-01 | 00:01 | 82 | $15,332.55 @ 4.630 / 09/30/2015 - 10/01/2015 | $1.94 |
| System | 2015-10-30 | 00:01 | 82 | $15,332.55 @ 4.640 / 10/01/2015 - 10/30/2015 | $56.52 |
| System | 2015-11-04 | 00:01 | 82 | $15,332.55 @ 4.640 / 10/30/2015 - 11/04/2015 | $9.75 |

Exhibit E

From: 9188362314    Page: 1/4    Date: 6/18/2006 6:21:25 AM

**NON-NEGOTIABLE CREDIT AGREEMENT – THIS IS A CONSUMER CREDIT TRANSACTION**

**LOAN PROGRAM INFORMATION**

Education Maximizer Undergraduate Loan                    Academic Period: 07/2006-06/2007

Lender: Bank of America, National Association    School: SPARTAN COLLEGE OF AERONAUTICS

Loan Amount Requested: $30000.00    Repayment Option: Full Deferral

Deferral Period Margin: 4.85    Repayment Period Margin: 4.65    Loan Origination Fee Percentage: 9.50

**STUDENT/BORROWER INFORMATION (THE WORDS I, ME, MY...)**

Borrower Name: Javier Medina    Home Address: 11211 S 2nd St E    Jenks, OK 74037
Social Security #: [redacted]-3085    Date of Birth: [redacted]1979    Home Telephone: [redacted]2872
Current Employer: DIRECTV    Employer Telephone: [redacted]
Current Position: Student    Years There: 6 Years 9 Months
Years at Previous Employment: 3 Years 6 Months

Alimony, child support, or separate maintenance incomes do not have to be revealed if you do not want them considered for repaying this obligation. If you are relying on such additional income, please provide details on a separate sheet of paper.

Student Citizenship (check one box):   ☒ U.S. Citizen    ☐ Eligible Non-Citizen (Attach front & back copy of OIS or student visa card)
Personal Reference Name: Juan Ortiz    Reference Home Tel #: [redacted]    Work Tel #: [redacted]
Reference Street Address: [redacted]
Reference City/State/Zip: Tulsa, OK 74137

By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all five (5) pages of this Loan Request/Credit Agreement (BK.05-06.CRWO.10DC.0105) ("Credit Agreement"). I understand that any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment. This Credit Agreement is signed under seal. I understand that I am not required to use my signature on or to sign electronically this Credit Agreement and any related notices that require signature. If I choose to flex my signature on or to sign electronically this Credit Agreement and any related notices that require signature, I intend: (i) my flex or electronic signature to be an electronic signature under applicable federal and state law, (ii) any fax printout or printout of Lender's electronic record of this Credit Agreement and related notices to be an original document, (iii) to conduct business with the Lender by electronic records and electronic signatures, and (iv) that this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code, and my obligations under this Credit Agreement will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code.

**FOR ALABAMA RESIDENTS: CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

**FOR WISCONSIN RESIDENTS – NOTICE TO CUSTOMER:**
(a)   DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE WRITING ON THE FOLLOWING PAGES, EVEN IF OTHERWISE ADVISED.
(b)   DO NOT SIGN THIS CREDIT AGREEMENT IF IT CONTAINS ANY BLANK SPACES.
(c)   YOU ARE ENTITLED TO AN EXACT COPY OF ANY CREDIT AGREEMENT YOU SIGN.
(d)   YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS CREDIT AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

**PLEASE SIGN BELOW**

Signature of Borrower _____    Date _06/17/06_

JAVIER MEDINA

BK.05-06.CRWO.10DC.0105    LENDER COPY
PN01_BD_05-06_CRWO_F_X_MEDINA_A103886486.pdf

SKTCDP
2006 JUN 19 AM 8: 16

In this Credit Agreement, the words "I", "me", "my", and "mine" mean the person who signed this Credit Agreement as Borrower. The words "you", "your", "yours", and "Lender" mean Bank of America, National Association, its successors and assigns, and any other holder of this Credit Agreement. "School" means the school named at the top of the first page of this Credit Agreement. The "servicer" means the Lender or any entity it designates to service my loan.

**A. PROMISE TO PAY:** I promise to pay to you the Loan Amount Requested shown on the first page of this Credit Agreement, to the extent it is advanced to me or paid on my behalf, and any Loan Origination Fee added to my loan (see Paragraph F) (together, the "Principal Sum"), interest on such Principal Sum, interest on any unpaid interest added to the Principal Sum and late fees (see Paragraph E.6).

**B. IMPORTANT – READ THIS CAREFULLY:**

1. When you receive my signed Credit Agreement, you are not agreeing to lend me money. If you decide to make a loan to me, you will electronically transfer the loan funds to the School for me, mail a loan check to the School for me, or mail a loan check directly to me. You have the right to not make a loan or to lend an amount less than the Loan Amount Requested. I agree to accept an amount less than the Loan Amount Requested and to repay that portion of the Loan Amount Requested that you actually lend to me. You have the right to disburse my loan through an agent. At your option, you may also make any loan check co-payable to me and the School.

2. HOW I AGREE TO THE TERMS OF THIS LOAN. By signing this Credit Agreement, and submitting it to the Lender, I am requesting that you make this loan to me in an amount equal to the Loan Amount Requested plus any Loan Origination Fee described in Paragraph F of this Credit Agreement. If you approve this request and agree to make this loan, you will notify me in writing and provide me with a Disclosure Statement, as required by law, at the time the loan proceeds are disbursed. The Disclosure Statement is incorporated herein by reference and made a part hereof. The Disclosure Statement will tell me the amount of the loan which you have approved, the amount of the Loan Origination Fee, and other important information. I will let you know that I agree to the terms of the loan as set forth in this Credit Agreement and in the Disclosure Statement by doing either of the following: (a) endorsing or depositing the check that disburses the loan proceeds; or (b) using or allowing the loan proceeds to be used on my behalf without objection. Upon receipt of the Disclosure Statement, I will review the Disclosure Statement and notify you in writing if I have any questions. If I am not satisfied with the terms of my loan as disclosed in the Disclosure Statement, I may cancel my loan. To cancel my loan, I will give you a written cancellation notice within ten (10) days after I receive the Disclosure Statement. If loan proceeds have been disbursed, I agree that I will immediately return the loan proceeds to you, will not endorse any check which disburses the loan proceeds and will instruct the School to return any loan proceeds to you. If I give notice of cancellation but do not comply with the requirements of this Paragraph B.2, this Credit Agreement will not be canceled and I will be in default of this Credit Agreement. (See Paragraph I.)

**C. DEFINITIONS:**

1. "Disbursement Date" means the date or dates on which you lend money to me in consideration for my Credit Agreement and will be the date(s) shown on any loan check you prepare or the date(s) you initiate any electronic funds transfer.

2. The "Deferment Period" will begin on the Disbursement Date and end on the Deferment End Date.

3. "Deferment End Date" means the date specified below for the applicable loan program (the applicable loan program is stated on the first page of this Credit Agreement).

(a) *Undergraduate Alternative Loan Program:* If I have elected the "Immediate Repayment" option (the applicable repayment option is stated on the first page of this Credit Agreement), there is no Deferment Period, and my first payment will be 30-60 days after the disbursement of my loan. If I have elected the "Interest Only" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then interest payments will begin 30-60 days after the disbursement of my loan, the "Deferment End Date" will be the date the Student graduates or ceases to be enrolled at least half-time in the School (or another school participating in this loan program), and principal and interest payments will begin 30-60 days after that date. In any event, if I have elected the "Interest Only" repayment option, the Deferment End Date will be no more than 5 years after the Disbursement Date. If I have elected the "Full Deferral" repayment option

(the applicable repayment option is stated on the first page of this Credit Agreement), then the "Deferment End Date" will be 180 days after the Student graduates or ceases to be enrolled at least half-time in the School (or another school participating in this Loan Program). In any event, if I have elected the "Full Deferral" repayment option, the Deferment End Date will be no more than 5½ years after the Disbursement Date.

(b) *Graduate Professional Education Loan Program:* 180 days after the Student graduates or ceases for any other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 4½ years after the Disbursement Date; provided, however, that if the Student begins a medical residency or internship during the Deferment Period, then the Deferment Period will end 180 days after the day the residency or internship ends, but no more than 8½ years after the Disbursement Date.

4. The "Repayment Period" begins the day after the Deferment Period ends. If there is no Deferment Period for my loan, the Repayment Period will begin when my loan is fully disbursed. The Repayment Period is 20 years unless monthly payments equal to the minimum monthly payment amount (See Paragraph E.2) will repay all amounts owed in less than 20 years, in which case the Repayment Period will be the number of months necessary to pay in full the amount I owe at the minimum payment.

**D. INTEREST:**

1. Accrual – Beginning on the Disbursement Date, interest will be calculated at the Variable Rate (Paragraph D.2) and charged on the Principal Sum, and on any unpaid interest later added to the Principal Sum according to Paragraph D.3. During the Repayment Period, interest will be calculated at the Variable Rate and charged on the outstanding balance of this Credit Agreement until all amounts are paid in full. Interest will be calculated on a daily simple interest basis. The daily interest rate will be equal to the annual interest rate in effect on that day, divided by the number of days in that calendar year.

2. Variable Rate – The "Variable Rate" is equal to the Current Index plus a Margin. The Margins for both the Deferment Period and the Repayment Period are shown on the first page of this Credit Agreement. In no event will the Variable Rate exceed the maximum interest rate allowed by the laws of the State of California. The Variable Rate will change quarterly on the first day of each January, April, July and October (the "Change Date(s)") if the Current Index changes. The "Current Index" for any calendar quarter beginning on a Change Date (or for any shorter period beginning on the Disbursement Date and ending on the last day of a calendar quarter) is based on the one-month London Interbank Offered Rate ("LIBOR") as published in the "Money Rates" section of *The Wall Street Journal*. The index for each calendar quarter (or for any shorter period beginning on a Disbursement Date and ending on the last day of a calendar quarter) will equal the average of the LIBOR rates published on the first business day of each of the three (3) immediately preceding calendar months, rounded to the nearest one-hundredth percent (0.01%). If *The Wall Street Journal* is not published or the Current Index is not given on that date, then the Current Index will be determined by using the immediately preceding published Current Index. If the Current Index is no longer available, you will choose a comparable index.

3. Capitalization – If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), I am not obligated to make any payments until the loan enters the Repayment Period and you will add unpaid accrued interest to the principal loan balance as of the last day of each calendar quarter (the last day of December, March, June and September) during the Deferment Period and as of the last day of my Deferment Period. Interest that is added to principal is called "Capitalized" interest. Capitalized interest will be treated as principal. In addition, *if* I am in default (see Paragraph I) and the loan has been sold to TERI (see Paragraph L.12), TERI may capitalize accrued and unpaid interest as of the date it purchases my loan. I understand that you will also add all accrued and unpaid interest to the principal balance of my loan at the end of any forbearance period (see Paragraph H).

**E. TERMS OF REPAYMENT:**

1. Deferment Period – If I have elected either the "Interest Only" repayment option or the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), you will send me statements during the Deferment Period (showing the total outstanding principal balance of my loan and the interest that has accrued on my loan). Statements will be sent to the address shown on your records. If I have

elected the "Interest Only" repayment option, I agree to make payments each month during the Deferment Period equal to the accrued interest on the outstanding balance of this Credit Agreement. If I have elected the "Full Deferral" repayment option I may, but am not required to make payments during the Deferment Period. You will add any interest that I do not pay during the Deferment Period to the principal balance, as described in Paragraph D.3.

2. Repayment Period – The amount of my monthly payment ("Monthly Payment Amount") will be established based on the rules in this Credit Agreement when my Repayment Period begins. During the Repayment Period, you will send me monthly statements that show the Monthly Payment Amount and the payment due dates, and I will pay the Monthly Payment Amount shown on my monthly statement, which amount will in no event be less than $25 or the unpaid balance, whichever is less. I understand that the Monthly Payment Amount is due each month. I may pay more than my Monthly Payment Amount at any time without penalty or charge. If my loan is in paid-ahead status, I may, but will not be required to make monthly payments. Even if I do not receive monthly statements, I will make consecutive monthly payments in amounts at least equal to the Monthly Payment Amount by the applicable payment due dates until I have paid all of the principal and interest and any other charges I may owe under this Credit Agreement.

3. Repayment Terms – My Monthly Payment Amount will be calculated as of the day the Repayment Period begins ("Repayment Date"). It will be recalculated (a) once each year prior to the anniversary of the Repayment Date, (b) if the Variable Rate changes between anniversaries of the Repayment Date to the extent that the Monthly Payment Amount would not pay in full the accrued monthly interest on my loan, (c) following any subsequent deferment or forbearance period or (d) following any request by the Borrower to the servicer to change the monthly payment due date (each of which events is a new "Repayment Date"). As of any Repayment Date, my Monthly Payment Amount will be recalculated. My new Monthly Payment Amount will be disclosed to me by the servicer. The new Monthly Payment Amount will equal the amount necessary to pay in full, over the number of months remaining in the Repayment Period, the amount I owe in equal monthly installments of principal and interest at the Variable Rate in effect at the time of the calculation. I understand that this may result in a reduction or increase in my monthly payment as calculated as of each Repayment Date. I understand that during the Repayment Period (and, if I have elected the "Interest Only" repayment option, during the period of interest payments) the servicer may change the monthly payment due date of future payments to a later date for the convenience of the servicer in processing payments or in order to coordinate the due dates of all of my loans processed by the servicer.

4. Amounts Owing at the End of the Repayment Period – Since interest accrues daily upon the unpaid principal balance of my loan, if I make payments after my payment due dates, I may owe additional interest. If I have not paid any late fees, I will also owe additional amounts for those late fees. In such cases you will increase the amount of my last monthly payment to the amount necessary to repay my loan in full.

5. Payments – Payments will be applied first to late fees, other fees and charges, accrued interest, and the remainder to principal.

6. Other Charges - If any part of a monthly payment remains unpaid for a period of more than 15 days after the payment due date, I will pay a late fee not exceeding $5.00 or 5% of the overdue payment amount, whichever is less. To the extent permitted by law, I agree to pay you all amounts you incur in enforcing the terms of this Credit Agreement, including reasonable collection agency and attorney's fees and court costs and other collection costs.

F. LOAN ORIGINATION FEE: If you charge me, I will pay you a Loan Origination Fee at the time my loan is disbursed. The dollar amount of any Loan Origination Fee will be determined by multiplying the Principal Sum times the Loan Origination Fee Percentage shown on the first page of this Credit Agreement. The percentage would be higher if computed only on the amount advanced rather than on the entire Principal Sum (Loan Origination Fee plus the loan amount advanced). For example, a nominal Loan Origination Fee of 6.5% on the entire principal amount would equal 6.9519% of the amount advanced. The Loan Origination Fee I will pay, if any, will be shown on my Disclosure Statement and included with the Principal Sum. To the extent permitted by law, and unless I timely cancel this Credit Agreement

(see Paragraph B.2), I will not be entitled to a refund of any Loan Origination Fee after my loan has been disbursed.

G. RIGHT TO PREPAY: I have the right to prepay all or any part of my loan at any time without penalty.

H. FORBEARANCE: If I am unable to repay my loan in accordance with the terms established under this Credit Agreement because of a hardship such as financial or medical difficulty, I may request that you modify these terms. I understand that such modification would be at your option. I understand that I will remain responsible for all interest accruing during any period of forbearance and that you will add any interest that I do not pay during any forbearance period to the principal balance, as described in Paragraph D.3.

I. WHOLE LOAN DUE: To the extent permitted by applicable law, I will be in default and you have the right to give me notice that the whole outstanding principal balance, accrued interest, and all other amounts payable to you under the terms of this Credit Agreement, are due and payable at once (subject to any applicable law which may give me a right to cure my default) if: (1) I fail to make any monthly payment to you when due, (2) I die, (3) I break any of my other promises in this Credit Agreement, (4) any bankruptcy proceeding is begun by or against me, or I assign any of my assets for the benefits of my creditors, or (5) I make any false written statement in applying for this loan or any other loan or at any time during the Deferment or Repayment Periods. If I default, I will be required to pay interest on this loan accruing after default. The interest rate after default will be subject to adjustment in the same manner as before default. Upon default, you may also capitalize any interest and fees (i.e., add accrued and unpaid interest and fees to the principal balance), and increase the Margin used to compute the Variable Rate by two percentage points (2%).

J. NOTICES:

1. I will send written notice to you, any subsequent holder of this Credit Agreement, and the servicer within ten days after any change in my name, address, or enrollment status (for example, if the Borrower withdraws from the School or transfers to another school participating in this loan program).

2. Any notice required to be given to me by you will be effective when mailed by first class mail to the latest address you have for me.

K. INFORMATION:

1. I must update the information I provided to you whenever you ask me to do so.

2. I authorize you from time to time to request and receive from others credit related information about me (and about my spouse if I live in a community property state).

3. CREDIT BUREAU REPORTING

| You may report information about my account to credit bureaus. Late payments, missed payments, or other defaults in my account may be reflected in my credit report. |

I understand that the reporting of information about my account to credit bureaus may adversely affect my credit rating and my ability to obtain other credit. You may also report the status of my loan and my payment history, including information about a late payment, missed payment or other defaults in accordance with applicable law.

L. ADDITIONAL AGREEMENTS:

1. I understand that you are located in California and that this Credit Agreement will be entered into in the same state. CONSEQUENTLY, THE PROVISIONS OF THIS CREDIT AGREEMENT WILL BE GOVERNED BY FEDERAL LAW AND THE LAWS OF THE STATE OF CALIFORNIA, WITHOUT REGARD TO CONFLICT OF LAW RULES.

2. The proceeds of this loan will be used only for my educational expenses at the School.

3. My responsibility for paying the loan evidenced by this Credit Agreement is unaffected by the liability of any other person to me or by your failure to notify me that a required payment has not been made. Without losing any of your rights under this Credit Agreement you may accept (a) late payments, (b) partial payments or (c) payments marked "paid in full" or with other restrictions. You may delay, fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise the right at any future time, or on any future occasion. You will not be obligated to make any demand upon me, send me any notice, present this Credit Agreement to me for payment or make protest of non-payment to me before suing to collect on this Credit Agreement if I am in default, and to the extent permitted by

applicable law, I hereby waive any right I might otherwise have to require such actions. I WILL NOT SEND YOU PAYMENTS MARKED "PAID IN FULL", "WITHOUT RECOURSE" OR WITH OTHER SIMILAR LANGUAGE UNLESS THOSE PAYMENTS ARE MARKED FOR SPECIAL HANDLING AND SENT TO THE ADDRESS IDENTIFIED FOR SUCH PAYMENTS ON MY BILLING STATEMENT, OR TO SUCH OTHER ADDRESS AS I MAY BE GIVEN IN THE FUTURE.

4. I may not assign this Credit Agreement or any of its benefits or obligations. You may assign this Credit Agreement at any time.

5. The terms and conditions set forth in this Credit Agreement and instructions and the Disclosure Statement constitute the entire agreement between you and me.

6. If any provision of this Credit Agreement is held invalid or unenforceable, that provision shall be considered omitted from this Credit Agreement without affecting the validity or enforceability of the remainder of this Credit Agreement.

7. A provision of this Credit Agreement may only be modified if jointly agreed upon in writing by you and me. Any modification will not affect the validity or enforceability of the remainder of this Credit Agreement.

8. To the extent permitted by law, you have the right to apply money from any of my deposit account(s) with you to pay all or a portion of any amount overdue under this Credit Agreement. I hereby authorize you to obtain from the School all amounts which may be owed to me by the School, including any refund due to overpayment, early termination of enrollment, or otherwise.

9. All dollar amounts stated in this Credit Agreement are in United States dollars. I will make all payments in United States Dollars with no deduction for currency exchange.

10. If I fail to complete the education program paid for with this loan, I am not relieved of any obligation within or pursuant to this Credit Agreement.

11. I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523 (a) (8) of the United States Bankruptcy Code. Specifically, I understand that you have purchased a guaranty of this loan, and that this loan is guaranteed by The Education Resources Institute, Inc. ("TERI"), a non-profit institution.

12. I authorize any school that I may attend to release to you, and any other persons designated by you, any requested information pertinent to this loan (e.g., enrollment status, prior loan history, and current address).

13. I authorize the Lender, any subsequent holder of this Credit Agreement, and their agents (including TERI) to: (1) advise the School of the status of my application and my loan, (2) respond to inquiries from prior or subsequent lenders or holders with respect to my Credit Agreement and related documents, (3) release information and make inquiries to the persons I have given you as references, for the purposes of learning my current address and telephone number, (4) check my credit and employment history and to answer questions about their credit experience with me, and (5) retain for use in any future transaction with the Borrower all information (including status information and non-public personal information) of the Borrower provided in connection with this Credit Agreement.

14. Waiver by Lender: You waive (give up) any right to claim a security interest in any property to secure this Credit Agreement. This does not affect any right to offset as a matter of law.

15. If I fax my signature(s) on the first page of this Credit Agreement back to you and keep the copy I signed, I understand that under federal law the fax you receive will be an original of the first page of this Credit Agreement. You and I agree that all copies of this Credit Agreement (including the fax you receive and the copy I retain), taken together, shall constitute a single original agreement.

16. If I elect to sign electronically an electronic record of this Credit Agreement, then the following will apply as between Lender and me: (a) Lender will keep a non-modifiable electronic record of this document and provide a copy to me upon request, (b) I can and have downloaded and/or printed a copy of this document for my records or notified the Lender to mail me a copy of this document, and (c) the Lender's electronic record of this document and any printout from that record shall be an original for all purposes, including any lawsuit to collect amounts that I owe.

## M. DISCLOSURE NOTICES

**ALL APPLICANTS:**
**IMPORTANT FEDERAL LAW NOTICE—**

*Important Information about procedures for opening a new account:*
To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.

*What this means for you:*
When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

CALIFORNIA RESIDENTS: I have the right to prohibit the use of information contained in my credit file in connection with transactions not initiated by me. I may exercise this right by notifying the consumer credit reporting agency. A married applicant may apply for a separate account. If you take any adverse action as defined by Section 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, I have the right to obtain within 60 days a free copy of my consumer credit report from the consumer reporting agency who furnished you my consumer credit report and from any other consumer credit reporting agency which compiles and maintains files on consumers on a nationwide basis. I have the right as described by Section 1785.16 of the California Civil Code to dispute the accuracy or completeness of any information in a consumer credit report furnished by the consumer credit reporting agency.

CALIFORNIA AND UTAH RESIDENTS: As required by California and Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations.

IOWA, KANSAS AND NEBRASKA RESIDENTS (For purposes of the following notice, the word "you" refers to the Borrower, not the Lender): NOTICE TO CONSUMER. This is a consumer credit transaction. 1. DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THIS CREDIT AGREEMENT. 2. YOU ARE ENTITLED TO A COPY OF THIS CREDIT AGREEMENT. 3. YOU MAY PREPAY THE UNPAID BALANCE AT ANY TIME WITHOUT PENALTY AND MAY BE ENTITLED TO A REFUND OF UNEARNED CHARGES IN ACCORDANCE WITH LAW.

MARYLAND RESIDENTS: In Paragraph L.1, Lender and I have agreed that this Credit Agreement is governed by federal law and the laws of CALIFORNIA, without regard to conflict of laws rules; if any court should nevertheless determine that this Credit Agreement is subject to Maryland laws concerning credit, then only to the extent that Maryland law applies, Lender and I agree and elect that this loan is made under and governed by Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland, except as preempted by federal law.

MISSOURI RESIDENTS: Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect me (borrower(s)) and you (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

NEVADA RESIDENTS: This is a loan for study.

NEW JERSEY RESIDENTS: The section headings of this Credit Agreement are a table of contents and not contract terms. Portions of this Credit Agreement with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Credit Agreement, acts or practices (i) by you which are or may be permitted

by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law.

NEW YORK, RHODE ISLAND AND VERMONT RESIDENTS: A consumer report (credit report) may be obtained from a consumer-reporting agency (credit bureau) in connection with this loan. If I request (1) I will be informed whether or not consumer reports were obtained, and (2) if reports were obtained, I will be informed of the names and addresses of the credit bureaus that furnished the reports. If you agree to make this loan to me, a consumer credit report may be requested or used in connection with renewals or extensions of any credit for which I have applied, reviewing my loan, taking collection action on my loan, or legitimate purposes associated with my loan.

OHIO RESIDENTS: The Ohio laws against discrimination require that all creditors make credit equally available to all credit worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

WISCONSIN RESIDENTS: For married Wisconsin residents, my signature on this Credit Agreement confirms that this loan obligation is being incurred in the interest of my marriage or family. No provision of any marital property agreement (pre-martial agreement), unilateral statement under Section 766.59 or court decree under Section 766.70 adversely affects the interest of the Lender unless the Lender, prior to the time that the loan is approved, is furnished with a copy of the agreement, statement, or decree or has actual knowledge of the adverse provision when the obligation to the Lender is incurred. If the loan for which I am applying is granted, my spouse will also receive notification that credit has been extended to me.

N. BORROWER'S CERTIFICATION: I declare under penalty of perjury under the laws of the United States of America that the following is true and correct. I certify that all information I provided to you in connection with this loan, including without limitation, the information contained in this Credit Agreement, is true, complete and correct to the best of my knowledge and belief and is made in good faith. I understand that I am responsible for repaying immediately any funds that I receive which are not to be used or are not used for educational expenses related to attendance at the School for the academic period stated. I certify that I am not now in default on a Federal Perkins Loan, a Federal Stafford Loan, a Federally Insured Student Loan, a Federal Supplemental Loan for Students (SLS), a Federal PLUS Loan, an Income Contingent Loan, a Federal Consolidation Loan, a Federal Ford Direct Loan, or any other education loan received for attendance at any school. The legal age for entering into contracts is 18 years of age in every State in the United States except the following: Alabama and Nebraska (19 years old), and Mississippi and Puerto Rico (21 years old). I certify that I meet these state age requirements.

## NOTE DISCLOSURE STATEMENT

$ __33,149.17__
Loan No. __03BR6486__

Borrower(s)  __JAVIER MEDINA__

Student: __JAVIER MEDINA__
Date: __June 21, 2006__

JAVIER MEDINA
11211 S 2ND ST E
JENKS, OK 74037 USA

Lender Name and Address:
__BANK OF AMERICA, N.A.__
__600 WILSHIRE BLVD, 4TH FLOOR__
__LOS ANGELES, CA 90017__

This disclosure statement relates to your Loan Note disbursed on __June 21, 2006__
Because your Loan is either being disbursed or entering repayment, or the repayment terms are being modified, the following information about your Loan is being given to you.

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| __10.221__ % | $ __13,316.00__ | $ __30,000.00__ | $ __83,316.00__ |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments are due | |
|---|---|---|---|
| 240 | $ 347.15 | On the 30th day of each month beginning | 1/2008 |
| | | | |
| | | | |
| | | | |

**VARIABLE RATE:** The Annual Percentage Rate, which is based on an index plus a margin, may increase during the term of the loan if the index rate increases. The index is (check one):

☐ **Prime Rate Index Adjusted Monthly** - The highest U.S. bank prime rate published in the "Money Rates" section of **The Wall Street Journal (Eastern Edition)** on the last business day of each calendar month.

☐ **Prime Rate Index Adjusted Quarterly** - The highest U.S. bank prime rate published in the "Money Rates" section of **The Wall Street Journal (Eastern Edition)** on the last business day of each calendar quarter.

☒ **LIBOR Index Adjusted Quarterly** - The average of the one-month London Interbank Offered Rates published in the "Money Rates" section of **The Wall Street Journal (Eastern Edition)** on the first business day of each of the three (3) calendar months immediately preceding the first day of each calendar quarter.

☐ **LIBOR Index Adjusted Monthly** - The one-month London Interbank Offered Rate published in the "Money Rates" section of **The Wall Street Journal (Eastern Edition)** on the first business day of each calendar month.

Any increase in the index and the Annual Percentage Rate which occurs while principal payments are deferred will increase the amount of your current and all future payments. Any increase in the index and the Annual Percentage Rate which occurs while principal and interest payments are deferred will increase the amount of all future payments. Any increase in the index and the Annual Percentage Rate which occurs after you have begun to make principal and interest payments on your loan will increase the amount of your future principal and interest payments beginning with your next annual payment adjustment date. For example, assume you obtain a loan in your junior year, in the amount of $10,000, at an interest rate of 11%, and you defer principal and interest payments until after your graduation, and the repayment term of the loan is 20 years. If the interest rate increased to 12% on January 1st of your senior year, the interest which accrues while principal and interest payments are deferred will increase by $91.91, and your monthly principal and interest payments would increase by $3.37.

**LATE CHARGES:** If a payment is more than 15 days late, you may be charged $5.00 or 5% of the payment, whichever is less. If you default, Lender (or any subsequent holder of any subsequent holder of your Loan Note) may increase the margin used to compute the Annual Percentage Rate by two percentage points (2%).
**PREPAYMENT:** If you pay off early, you will not have to pay a penalty.

**Estimates:** All numerical disclosures except the late payment disclosure are estimates.

See your contract documents for any additional information about non-payment, default, any required repayment in full before the scheduled date, any security interest and prepayment refunds and penalties.

Principal Amount of Note (Amount Financed plus Prepaid Finance Charge)        $ __33,149.17__

Itemization of Amount Financed
Amount paid to  JAVIER MEDINA         $ __30,000.00__
Amount paid to                       $
Total Amount Financed                                        $ __30,000.00__

Itemization of Prepaid Finance Charge
  Origination Fee                    $ __3,149.17__
  Total Prepaid Finance Charge(s)                           $ __3,149.17__

**TERI**

TERI
31 St. James Avenue, 6th Floor
Boston, Massachusetts 02116

51-44/119

Bank of America
Hartford, CT

NO. 00126258

Void after 90 days from date

DATE
06/21/2006

AMOUNT
$*****30,000.00

PAY    THIRTY THOUSAND   AND   .00  DOLLARS

TO
THE
ORDER
OF

JAVIER MEDINA
11211 S 2ND ST E
JENKS
OK 74037

⑆Richard B Welt⑆

⑆00126258⑆ ⑆⑆⑆⑆⑆0445⑆ ⑆0160⑆ ⑆00030000000⑆



WARNING  THE BACK OF  THIS CHECK  CONTAINS A
SIMULATED WATERMARK  HELD AT  IS  ANGLE TO VIEW

X _____

Borrower(s) signing above agree to repay this education loan as per
Borrower(s) credit agreement

**DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE**

BANK OF AMERICA

0045000

EX-99.6 8 p06-1554ex99_6.htm DEPOSIT AND SALE AGREEMENT

EXHIBIT 99.6

## DEPOSIT AND SALE AGREEMENT
## THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-3

This DEPOSIT AND SALE AGREEMENT (the "Sale Agreement"), dated as of September 28, 2006, between The National Collegiate Funding LLC, in its capacity as seller (in such capacity, the "Seller"), and The National Collegiate Student Loan Trust 2006-3, as purchaser (the "Purchaser"), shall be effective upon execution by the parties hereto.

WHEREAS, the Seller is the owner of certain student loans; and

WHEREAS, the Seller desires to sell its interest in such student loans and the Purchaser desires to purchase such loans from the Seller.

NOW, THEREFORE, in connection with the mutual promises contained herein, the parties hereto agree as follows:

### ARTICLE I
### TERMS

This Sale Agreement sets forth the terms under which the Seller is selling and the Purchaser is purchasing the student loans listed on Schedule 2 to each of the Pool Supplements set forth on Schedule A attached hereto (the "Transferred Student Loans").

### ARTICLE II
### DEFINITIONS

Capitalized terms used but not otherwise defined herein shall have the definitions set forth in Appendix A of the Indenture dated as of September 1, 2006 between U.S. Bank National Association (the "Indenture Trustee") and the Purchaser.

### ARTICLE III
### SALE AND PURCHASE

Section 3.01.    Sale of Loans. The Seller hereby sells and the Purchaser hereby purchases the Transferred Student Loans.

Section 3.02.    Assignment of Rights. The Seller hereby assigns to the Purchaser and the Purchaser hereby accepts all of the Seller's rights and interests under each of the Pool Supplements listed on Schedule A attached hereto and the related Student Loan Purchase Agreements listed on Schedule B attached hereto.

Section 3.03.    Settlement of the Payment. The Purchaser shall pay the Seller the purchase price set forth in Schedule 1 of each of the Pool Supplements by wire transfer in immediately available funds to the account specified by the Seller.

Section 3.04.    Assistance by Seller. Following the execution of this Sale Agreement, the Seller shall provide any reasonable assistance requested by the Purchaser in determining that all required documentation on the Transferred Student Loans is present and correct.

### ARTICLE IV
### REPRESENTATIONS, WARRANTIES AND COVENANTS OF SELLER

Section 4.01.    <u>General</u>. The Seller represents and warrants to the Purchaser that as of the date of this Sale Agreement:

(a)    The Seller is duly organized and existing under the laws of the State of Delaware; and

(b)    The Seller has all requisite power and authority to enter into and to perform the terms of this Sale Agreement.

Section 4.02.    <u>Loan Representations</u>. The Seller represents and warrants to the Purchaser that with respect to each Transferred Student Loan purchased by the Purchaser pursuant to this Sale Agreement, the Seller is making the same representations and warranties made by the respective program lender with respect to each Transferred Student Loan pursuant to the respective Student Loan Purchase Agreement listed on <u>Schedule B</u> attached hereto.

Section 4.03.    <u>Covenants</u>. The Seller, in its capacity as purchaser of the Transferred Student Loans pursuant to the Pool Supplements, hereby covenants that it will enforce the covenants and agreements of each program lender in the respective Student Loan Purchase Agreement and related Pool Supplement. The Seller further covenants that it will not waive, amend, modify, supplement or terminate any Student Loan Purchase Agreement or Pool Supplement or any provision thereof without the consent of the Purchaser, which consent the Purchaser hereby agrees not to provide without the prior written consent of the Indenture Trustee and the Interested Noteholders in accordance with the Purchaser's covenant in Section 3.07(c) of the Indenture.

<div align="center">

**ARTICLE V**
**PURCHASE OF LOANS; REIMBURSEMENT**

</div>

Each party to this Sale Agreement shall give notice to the other such parties and to the Servicers, First Marblehead Data Services, Inc., the Indenture Trustee, and Wilmington Trust Company (the "<u>Owner Trustee</u>") promptly, in writing, upon the discovery of any breach of the Seller's representations and warranties made pursuant to this Sale Agreement which has a materially adverse effect on the interest of the Purchaser in any Transferred Student Loan. In the event of such a material breach, the Seller shall cure or repurchase the Transferred Student Loan in accordance with the remedies set forth in the respective Student Loan Purchase Agreement.

<div align="center">

**ARTICLE VI**
**LIABILITY OF SELLER; INDEMNITIES**

</div>

The Seller shall be liable in accordance herewith only to the extent of the obligations specifically undertaken by the Seller under this Sale Agreement.

(a)    The Seller shall indemnify, defend and hold harmless the Purchaser and the Owner Trustee in its individual capacity and their officers, directors, employees and agents from and against any taxes that may at any time be asserted against any such Person with respect to the transactions contemplated herein and in the other Basic Documents (except any such income taxes arising out of fees paid to the Owner Trustee), including any sales, gross receipts, general corporation, tangible and intangible personal property, privilege or license taxes and costs and expenses in defending against the same.

(b)    The Seller shall indemnify, defend and hold harmless the Purchaser and the Owner Trustee in its individual capacity and their officers, directors, employees and agents from and against any and all costs, expenses, losses, claims, damages and liabilities arising out of, or imposed upon such Person through, the Seller's willful misfeasance, bad faith or gross negligence in the performance of its duties under this Sale Agreement, or by reason of reckless disregard of its obligations and duties under this Sale Agreement.

Indemnification under this Section shall survive the termination of this Sale Agreement and shall include reasonable fees and expenses of counsel and expenses of litigation. If the Seller shall have made any indemnity payments pursuant to this

Section and the Person to or for the benefit of whom such payments are made thereafter shall collect any of such amounts from others, such Person shall promptly repay such amounts to the Seller, without interest.

## ARTICLE VII
## MERGER OR CONSOLIDATION OF, OR ASSUMPTION
## OF THE OBLIGATIONS OF, SELLER

Any Person (a) into which the Seller may be merged or consolidated, (b) which may result from any merger or consolidation to which the Seller shall be a party or (c) which may succeed to the properties and assets of the Seller substantially as a whole, shall be the successor to the Seller without the execution or filing of any document or any further act by any of the parties to this Sale Agreement; provided, however, that the Seller hereby covenants that it will not consummate any of the foregoing transactions except upon satisfaction of the following: (i) the surviving Person, if other than the Seller, executes an agreement of assumption to perform every obligation of the Seller under this Sale Agreement, (ii) immediately after giving effect to such transaction, no representation or warranty made pursuant to this Sale Agreement shall have been breached, (iii) the surviving Person, if other than the Seller, shall have delivered an Officers' Certificate and an opinion of counsel each stating that such consolidation, merger or succession and such agreement of assumption comply with this Section and that all conditions precedent, if any, provided for in this Sale Agreement relating to such transaction have been complied with, and that the Rating Agency Condition shall have been satisfied with respect to such transaction, (iv) if the Seller is not the surviving entity, such transaction will not result in a material adverse federal or state tax consequence to the Purchaser or the Noteholders, and (v) if the Seller is not the surviving entity, the Seller shall have delivered an opinion of counsel either (A) stating that, in the opinion of such counsel, all financing statements and continuation statements and amendments thereto have been executed and filed that are necessary fully to preserve and protect the interest of the Purchaser in the Transferred Student Loans and reciting the details of such filings, or (B) stating that, in the opinion of such counsel, no such action shall be necessary to preserve and protect such interests.

## ARTICLE VIII
## LIMITATION ON LIABILITY OF SELLER AND OTHERS

The Seller and any director or officer or employee or agent thereof may rely in good faith on the advice of counsel or on any document of any kind, prima facie properly executed and submitted by any Person respecting any matters arising hereunder (provided that such reliance shall not limit in any way the Seller's obligations under this Sale Agreement). The Seller shall not be under any obligation to appear in, prosecute or defend any legal action that shall not be incidental to its obligations under this Sale Agreement or the Student Loan Purchase Agreements, and that in its opinion may involve it in any expense or liability.

## ARTICLE IX
## SURVIVAL OF COVENANTS

All covenants, agreements, representations and warranties made herein shall survive the consummation of the purchase of the Transferred Student Loans; provided, however, that to the extent any of the same relate to a corresponding covenant, agreement, representation or warranty contained in a Student Loan Purchase Agreement, the same shall survive to the extent that such corresponding covenant, agreement, representation or warranty survives the applicable Student Loan Purchase Agreement. All covenants, agreements, representations and warranties made or furnished pursuant hereto by or for the benefit of the Seller (including without limitation, under Article VI) shall bind and inure to the benefit of any successors or assigns of the Purchaser, including the Indenture Trustee. This Sale Agreement may be changed, modified or discharged, and any rights or obligations hereunder may be waived, only by a written instrument signed by a duly authorized officer of the party against whom enforcement of any such waiver, change, modification or discharge is sought. The waiver by the Indenture Trustee, at the direction of the Noteholders or otherwise pursuant to the Indenture, of any covenant, agreement, representation or warranty required to be made or furnished by the Seller or the waiver by the Indenture Trustee, at the direction of the Noteholders or otherwise pursuant to the Indenture, of any provision herein contained shall not be deemed to be a waiver of any breach of any other covenant, agreement, representation, warranty or provision herein contained, nor shall any waiver or any custom or practice which may evolve between the parties in the administration of the terms hereof, be construed to lessen the right of the Indenture Trustee, at the direction of the Noteholders pursuant to the Indenture, to insist upon the performance by the Seller in strict accordance with said terms.

## ARTICLE X
## COMMUNICATION AND NOTICE REQUIREMENTS

All communications, notices and approvals provided for hereunder shall be in writing and mailed or delivered to the Seller or the Purchaser, as the case may be. Notice given in any such communication, mailed to the Seller or the Purchaser by appropriately addressed registered mail, shall be deemed to have been given on the day following the date of such mailing and shall be addressed as follows:

If to the Purchaser, to:

> The National Collegiate Student Loan Trust 2006-3
> c/o Wilmington Trust Company, as Owner Trustee
> 100 North Market Street
> Wilmington, Delaware 19890-0001
> Attention: Corporate Trust Department

If to the Seller, to:

> The National Collegiate Funding LLC
> c/o First Marblehead Data Services, Inc.
> The Prudential Tower
> 800 Boylston Street - 34th Floor
> Boston, MA 02199-8157
> Attention: Ms. Rosalyn Bonaventure

with a copy to:

> First Marblehead Corporation
> The Prudential Tower
> 800 Boylston Street - 34th Floor
> Boston, MA 02199-8157
> Attention: Corporate Law Department

or to such other address as either party shall have provided to the other parties in writing. Any notice required to be in writing hereunder shall be deemed given if such notice is mailed by certified mail, postage prepaid, or hand delivered to the address of such party as provided above.

## ARTICLE XI
## AMENDMENT

This Sale Agreement may be amended by the parties hereto without the consent of the Noteholders for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of the Sale Agreement or of modifying in any manner the rights of such Noteholders; provided that such action will not, in the opinion of counsel reasonably satisfactory to the Indenture Trustee, materially affect the interest of any such Noteholder.

In addition, this Sale Agreement may also be amended from time to time by the Seller and the Purchaser, with the consent of the Noteholders of the Notes evidencing a majority of the Outstanding Amount of the Notes and the consent of the Certificateholders of the Certificates evidencing a majority of the outstanding principal amount of the Certificates, for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Sale Agreement or of modifying in any manner the rights of the Noteholders or the Certificateholders, respectively; provided, however, that no such amendment shall (a) increase or reduce in any manner the amount of, or accelerate or delay the time of, collections of payments with respect to Transferred Student Loans or distributions that shall be required to be made for the benefit of the Noteholders, or (b) reduce the aforesaid percentage of the Outstanding Amount of the Notes or the Certificates, the Noteholders or the Certificateholders of which are required to consent to any such amendment, without the consent of all

outstanding Noteholders or Certificateholders, respectively.

Promptly after the execution of any such amendment or consent (or, in the case of the Rating Agencies, five Business Days prior thereto), the Purchaser shall furnish written notification of the substance of such amendment or consent to the Indenture Trustee and each of the Rating Agencies.

It shall not be necessary for the consent of Noteholders pursuant to this Section to approve the particular form of any proposed amendment or consent, but it shall be sufficient if such consent shall approve the substance thereof.

Prior to the execution of any amendment to this Sale Agreement, the Owner Trustee shall be entitled to receive and rely upon an opinion of counsel stating that execution of such amendment is authorized or permitted by this Sale Agreement. The Owner Trustee may, but shall not be obligated to, enter into any such amendment which affects the Owner Trustee's own rights, duties or immunities under this Sale Agreement or otherwise.

## ARTICLE XII
### ASSIGNMENT

The Seller hereby assigns its entire right, title and interest as purchaser under this Sale Agreement and the Student Loan Purchase Agreement thereunder to the Purchaser as of the date hereof and acknowledges that the Purchaser will assign the same, together with the right, title and interest of the Purchaser hereunder, to the Indenture Trustee under the Indenture.

## ARTICLE XIII
### GOVERNING LAW

THIS SALE AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, INCLUDING SECTIONS 5-1401 AND 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW, BUT OTHERWISE WITHOUT REGARD TO CONFLICT OF LAW PRINCIPLES, AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

## ARTICLE XIV
### LIMITATION OF LIABILITY OF OWNER TRUSTEE

Notwithstanding anything contained herein to the contrary, this instrument has been executed by Wilmington Trust Company, not in its individual capacity but solely in its capacity as Owner Trustee of the Purchaser, and in no event shall Wilmington Trust Company in its individual capacity or any beneficial owner of the Purchaser have any liability for the representations, warranties, covenants, agreements or other obligations of the Purchaser hereunder, as to all of which recourse shall be had solely to the assets of the Purchaser. For all purposes of this Sale Agreement, in the performance of any duties or obligations of the Purchaser hereunder, the Owner Trustee shall be subject to, and entitled to the benefits of, the terms and provisions of Articles VIII, IX and X of the Trust Agreement.

[Signature Pages Follow]

IN WITNESS WHEREOF, the parties hereto have caused this Sale Agreement to be duly executed by their respective officers hereunto duly authorized, as of the day and year first above written.

THE NATIONAL COLLEGIATE FUNDING LLC, as Seller

By:     GATE Holdings, Inc., Member

By:     /s/ John A. Hupalo
Name:   John A. Hupalo
Title:  Vice President

THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-3, as Purchaser

By:     Wilmington Trust Company, not in its individual capacity but solely as Owner Trustee

By:     /s/ J. Christopher Murphy
Name:   J. Christopher Murphy
Title:  Financial Services Officer

## SCHEDULE A

### *Pool Supplements*

Each of the following Pool Supplements was entered into by and among The First Marblehead Corporation, The National Collegiate Funding LLC and:

- Bank of America, N.A., dated September 28, 2006, for loans that were originated under Bank of America's BAGEL Loan Program, TERI Loan Program, Direct to Consumer Loan Program and ISLP Loan Program.

- JPMorgan Chase Bank, N.A., dated September 28, 2006, for loans that were originated under Bank One's CORPORATE ADVANTAGE Loan Program, EDUCATION ONE Loan Program, and Campus One Loan Program.

- Charter One Bank, N.A., dated September 28, 2006, for loans that were originated under the following Charter One programs: AAA Southern New England Bank, AES EducationGAIN Loan Program, Asrtive Education Loan Program, AstriveAlliance Education Loan Program, Axiom Alternative Loan Program, CFS Direct to Consumer Loan Program, Citibank Education Assistance Loan Program, College Board Alternative Loan Program, College Loan Corporation Loan Program, Collegiate Solutions Alternative Loan Program, Custom Educredit Loan Program, EdFinancial Loan Program, Extra Credit II Loan Program (North Texas Higher Education), M&I Alternative Loan Program, National Education Loan Program, NextStudent Alternative Loan Program, NextStudent Private Consolidation Loan Program,. UPromise Alternative Loan Program, and WAMU Alternative Student Loan Program..

- Citizens Bank of Rhode Island, dated September 28, 2006, for loans that were originated under Citizens Bank of Rhode Island's Compass Bank Loan Program, Alternative Loan Program, Navy Federal Referral Loan Program, Penn State Undergraduate Loan Program, FinanSure Alternative Loan Program, and Xanthus Loan Program.

- First National Bank Northeast, dated September 28, 2006, for loans that were originated under First National Bank Northeast's Nelnet Alternative Loan Program.

- HSBC Bank USA, National Association, dated September 28, 2006, for loans that were originated under the HSBC Loan Program.

- The Huntington National Bank, dated September 28, 2006, for loans that were originated under The Huntington National Bank's Huntington Bank Education Loan Program.

- KeyBank, dated September 28, 2006, for loans that were originated under KeyBank's Private Education Loan Program.

- Manufacturers and Traders Trust Company, dated September 28, 2006, for loans that were originated under Manufacturers and Traders Trust Company's M&T Alternative Loan Program.

- National City Bank, dated September 28, 2006, for loans that were originated under National City Bank's Alternative Loan Program.

- PNC Bank, N.A., dated September 28, 2006, for loans that were originated under PNC Bank's PNC Bank Alternative Loan Program, Brazos Alternative Loan Program, Edvisors Alternative Loan Program, GE Money Bank Alternative Loan Prorgam, Old National Bank Alternative Loan Program, and Regions Bank Alternative Loan Program.

- Sovereign Bank, dated September 28, 2006, for loans that were originated under Sovereign Bank's Alternative Loan Program.

- SunTrust Bank, dated September 28, 2006, for loans that were originated under SunTrust Bank's SunTrust Alternative Loan Program.

- TCF National Bank, dated September 28, 2006, for loans that were originated under TCF National Bank's Alternative Loan Program.

- U.S. Bank, N.A., dated September 28, 2006, for loans that were originated under U.S Bank's Alternative Loan Program.

## SCHEDULE B

### *Student Loan Purchase Agreements*

Each of the following Note Purchase Agreements, as amended or supplemented, was entered into by and between The First Marblehead Corporation and:

- Bank of America, N.A., dated April 30, 2001, for loans that were originated under Bank of America's BAGEL Loan Program, TERI Alternative Loan Program and ISLP Loan Program.

- Bank of America, N.A., dated June 30, 2006, for loans that were originated under Bank of America's BAGEL Loan Program, TERI Alternative Loan Program and ISLP Loan Program.

- Bank of America, N.A., dated June 30, 2003, for loans that were originated under Bank of America's Direct to Consumer Loan Program.

- Bank of America, N.A., dated April 1, 2006, for loans that were originated under Bank of America's Direct to Consumer Loan Program.

- Bank One, N.A., dated May 1, 2002, for loans that were originated under Bank One's CORPORATE ADVANTAGE Loan Program, EDUCATION ONE Loan Program, and Campus One Loan Program.

- Charter One Bank, N.A., dated as of December 29, 2003 for loans that were originated under Charter One's AAA Southern New England Bank Loan Program.

- Charter One Bank, N.A., dated October 31, 2003, for loans that were originated under Charter One's AES EducationGAIN Loan Program.

- Charter One Bank, N.A., dated May 15, 2002, for loans that were originated under Charter One's CFS Direct to Consumer Loan Program.

- Charter One Bank, N.A., dated June 30, 2003, for loans that were originated under Charter One's Citibank Education Assistance Loan Program.

- Charter One Bank, N.A., dated July 1, 2002, for loans that were originated under Charter One's College Loan Corporation Loan Program.

- Charter One Bank, N.A., dated December 1, 2003, for loans that were originated under Charter One's Custom Educredit Loan Program.

- Charter One Bank, N.A., dated May 10, 2004, for loans that were originated under Charter One's EdFinancial Loan Program.

- Charter One Bank, N.A., dated September 15, 2003, for loans that were originated under Charter One's Extra Credit II Loan Program (North Texas Higher Education).

- Charter One Bank, N.A., dated September 20, 2003, for loans that were originated under Charter One's M&I Alternative Loan Program.

- Charter One Bank, N.A., dated November 17, 2003, for loans that were originated under Charter One's National Education Loan Program.

- Charter One Bank, N.A., dated May 15, 2002, for loans that were originated under Charter One's NextStudent Alternative Loan Program.

- Charter One Bank, N.A., dated March 26, 2004, for loans that were originated under Charter One's NextStudent Private Consolidation Loan Program.

- Charter One Bank, N.A., dated March 25, 2004, for loans that were originated under Charter One's Astrive and AstriveAlliance Education Loan Programs.

- Charter One Bank, N.A., dated May 15, 2003, for loans that were originated under Charter One's WAMU Alternative Student Loan Program.

- Charter One Bank, N.A., dated February 15, 2005, for loans that were originated under Charter One's Referral Loan Program (including loans in the UPromise Alternative Loan Program, Collegiate Solutions Alternative Loan Program, College Board Alternative Loan Program, and Axiom Alternative Loan Programs).

- Citizens Bank of Rhode Island, dated April 30, 2004, for loans that were originated under Citizens Bank of Rhode Island's Alternative Loan Program, Compass Bank Alternative Loan Program, FinanSure Alternative Loan Program, Navy Federal Alternative Loan Program, and Xanthus Alternative Loan Program.

- Citizens Bank of Rhode Island, dated October 1, 2002, for loans that were originated under Citizens Bank of Rhode Island's Penn State Undergraduate Loan Program.

- First National Bank Northeast, dated August 1, 2001, for loans that were originated under First National Bank Northeast's CASL Undergraduate Alternative Loan Program.

- HSBC Bank USA, National Association, dated April 17, 2002, as amended on June 2, 2003 and August 1, 2003, for loans that were originated under the HSBC Loan Program.

- The Huntington National Bank, dated May 20, 2003, for loans that were originated under The Huntington National Bank's Huntington Bank Education Loan Program.

- KeyBank, dated May 12, 2006, for loans that were originated under KeyBank's Private Education Loan Program.

- Manufacturers and Traders Trust Company, dated April 29, 2004, for loans that were originated under Manufacturers and Traders Trust Company's Alternative Loan Program.

- National City Bank, dated November 13, 2002, for loans that were originated under National City Bank's National City Loan Program.

- PNC Bank, N.A., dated April 22, 2004, for loans that were originated under PNC Bank's Alternative Conforming Loan Program, Brazos Alternative Loan Program, Edvisors Alternative Loan Program, GE Money Bank Alternative Loan Prorgam, Old National Bank Alternative Loan Program, and Regions Bank Alternative Loan Program.

- Sovereign Bank, dated April 30, 2004, for loans that were originated under Sovereign Bank's Alternative Loan Program.

- SunTrust Bank, dated March 1, 2002, for loans that were originated under SunTrust Bank's SunTrust Alternative Loan Program.

- TCF National Bank, dated July 22, 2005, for loans that were originated under TCF National Bank's Alternative Loan Program.

- U.S. Bank, N.A., dated May 1, 2005, for loans that were originated under U.S Bank's Alternative Loan Program.

Unassociated Document

EX-99.21 18 p06-1554ex99_21.htm POOL SUPPLEMENT

CONFIDENTIAL MATERIALS OMITTED AND FILED SEPARATELY WITH THE SECURITIES AND EXCHANGE COMMISSION.
ASTERISKS DENOTE OMISSIONS.

Exhibit 99.21

### 2006-3 POOL SUPPLEMENT (DTC ONLY)
### Bank of America, N.A.

This Pool Supplement (the "Supplement") is entered into pursuant to and forms a part of that certain Amended and Restated Note Purchase Agreement dated as of April 1, 2006, as amended or supplemented from the date of execution of the Agreement through the date of this Supplement (together, the "Agreement"), by and between The First Marblehead Corporation and Bank of America, N.A, (the "Program Lender"). This Supplement is dated as of September 28, 2006. Capitalized terms used in this Supplement without definitions have the meanings set forth in the Agreement.

#### Article 1: Purchase and Sale.

In consideration of the Minimum Purchase Price set forth below, the Program Lender hereby transfers, sells, sets over and assigns to The National Collegiate Funding LLC (the "Depositor"), upon the terms and conditions set forth in the Agreement (which are incorporated herein by reference with the same force and effect as if set forth in full herein), each student loan set forth on the attached Schedule 1 (the "Transferred Bank of America Loans") along with all of the Program Lender's rights under the Guaranty Agreement, and any agreement pursuant to which TERI granted collateral for its obligations under the Guaranty Agreement, relating to the Transferred Bank of America Loans. The Depositor in turn will sell the Transferred Bank of America Loans to The National Collegiate Student Loan Trust 2006-3 (the "Trust"). The Program Lender hereby transfers and delivers to the Depositor each Note evidencing such Transferred Bank of America Loan and all Origination Records relating thereto, in accordance with the terms of the Agreement. The Depositor hereby purchases said Notes on said terms and conditions.

#### Article 2: Price.

The amounts paid pursuant to this Supplement are the amounts set forth on Schedule 2 attached hereto.

#### Article 3: Representations and Warranties.

##### 3.01. By Program Lender.

The Program Lender repeats the representations and warranties contained in Section 5.02 of the Agreement for the benefit of each of the Depositor and the Trust and confirms the same are true and correct as of the date hereof with respect to the Agreement and to this Supplement.

##### 3.02. By Depositor.

The Depositor hereby represents and warrants to the Program Lender that at the date of execution and delivery of this Supplement by the Depositor:

(a) The Depositor is duly organized and validly existing as a limited liability company under the laws of the State of Delaware with the due power and authority to own its properties and to conduct its business as such properties are currently

Unassociated Document

owned and such business is presently conducted, and had at all relevant times, and has, the power, authority and legal right to acquire and own the Transferred Bank of America Loans.

(b) The Depositor is duly qualified to do business and has obtained all necessary licenses and approvals in all jurisdictions in which the ownership or lease of property or the conduct of its business shall require such qualifications.

(c) The Depositor has the power and authority to execute and deliver this Supplement and to carry out its respective terms; the Depositor has the power and authority to purchase the Transferred Bank of America Loans and rights relating thereto as provided herein from the Program Lender, and the Depositor has duly authorized such purchase from the Program Lender by all necessary action; and the execution, delivery and performance of this Supplement has been duly authorized by the Depositor by all necessary action on the part of the Depositor.

(d) This Supplement, together with the Agreement of which this Supplement forms a part, constitutes a legal, valid and binding obligation of the Depositor, enforceable in accordance with its terms.

(e) The consummation of the transactions contemplated by the Agreement and this Supplement and the fulfillment of the terms hereof do not conflict with, result in any breach of any of the terms and provisions of, or constitute (with or without notice or lapse of time) a default under, the governing instruments of the Depositor or any indenture, agreement or other instrument to which the Depositor is a party or by which it is bound; or result in the creation or imposition of any lien upon any of its properties pursuant to the terms of any such indenture, agreement or other instrument; or violate any law or any order, rule or regulation applicable to the Depositor of any court or of any federal or state regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties.

(f) There are no proceedings or investigations pending, or threatened, before any court, regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties: (i) asserting the invalidity of the Agreement or this Supplement, (ii) seeking to prevent the consummation of any of the transactions contemplated by the Agreement or this Supplement, or (iii) seeking any determination or ruling that is likely to materially or adversely affect the performance by the Depositor of its obligations under, or the validity or enforceability of the Agreement or this Supplement.

<u>Article 4: Cross Receipt.</u>

The Program Lender hereby acknowledges receipt of the Minimum Purchase Price. The Depositor hereby acknowledges receipt of the Transferred Bank of America Loans.

<u>Article 5: Assignment of Origination, Guaranty and Servicing Rights.</u>

The Program Lender hereby assigns and sets over to the Depositor any claims it may now or hereafter have under the Guaranty Agreement, the Origination Agreement and the Servicing Agreement to the extent the same relate to the Transferred Bank of America Loans described in <u>Schedule 1</u>, other than any right to obtain servicing after the date hereof. It is the intent of this provision to vest in the Depositor any claim of the Program Lender relating to defects in origination, guaranty or servicing of the loans purchased hereunder in order to permit the Depositor to assert such claims directly and obviate any need to make the same claims against the Program Lender under this Supplement. The Program Lender also hereby assigns and sets over to the Depositor any claims it may now have or hereafter have to any collateral pledged by TERI to the Program Lender to secure its obligations under the Guaranty Agreement that relates to the Transferred Bank of America Loans, and the Program Lender hereby releases any security interest it may have in such collateral. The Program Lender hereby authorizes the Depositor, its successors and assigns, to file in any public filing office where a Uniform Commercial Code Filing with respect to collateral pledged by TERI is of record, any partial release or assignment that it deems necessary or appropriate to reflect in the public records the conveyance and assignment effected hereby.

[Remainder of page intentionally blank]

8/22/2011

Unassociated Document

IN WITNESS WHEREOF, the parties have caused this Supplement to be executed as of the date set forth above.

THE FIRST MARBLEHEAD CORPORATION

By: /s/ Donald R. Peck
_____
Donald R. Peck
Executive Vice President

BANK OF AMERICA, N.A.

By: /s/ Elliott Lemon
_____
Name: Elliott Lemon
Title: Vice President

THE NATIONAL COLLEGIATE FUNDING LLC

By: GATE Holdings, Inc., Member

By: /s/ John A. Hupalo
_____
John A. Hupalo
Vice President

Schedule 2

**Direct to Consumer - Prior to June 22, 2006**

For Transferred Bank of America Loans for which applications were received by the Program Lender prior to June 22, 2006, for purposes of this Supplement the term "Minimum Purchase Price" shall mean the sum of the following amounts with respect to each of such Transferred Bank of America Loans to be purchased:

(a) The unpaid principal amount ([**]) of the Transferred Bank of America Loans; plus

(b) All accrued and unpaid interest on such Transferred Bank of America Loans, in accordance with the terms of the Bank of America DTC Notes [**]; plus

8/22/2011

Unassociated Document

(c) All fees paid by the Program Lender to TERI with respect to such Transferred Bank of America Loans [**]; plus

(d) The amount of any Guaranty Fees [**]; plus

(e) A marketing fee and loan premium, [**]:

1. With respect to K-12 Creditworthy Loans, [**]%;

2. With respect to Continuing Education Creditworthy Loans, [**]% for [**] and [**]% for [**];

3. With respect to Undergraduate Creditworthy Loans, [**]% for [**], [**]% for [**]; [**]% for [**]; and [**]% for [**]; and

4. With respect to Graduate Creditworthy Loans, [**]% for [**]; [**]% for [**]; [**]% for [**]; and [**]% for [**].


**Direct to Consumer - On or After June 22, 2006**

For Transferred Bank of America Loans for which applications were received by the Program Lender on or after June 22, 2006, for purposes of this Supplement the term "Minimum Purchase Price" shall mean the sum of the following amounts with respect to each of such Transferred Bank of America Loans to be purchased:

(a) The unpaid principal amount ([**]) of the Transferred Bank of America Loans; plus

(b) All accrued and unpaid interest on such Transferred Bank of America Loans, in accordance with the terms of the Bank of America Direct to Consumer Notes (as defined in the Guaranty Agreement) [**]; plus

(c) To the extent not paid by Advanced Fees (as defined in Schedule 3.3 of the Guaranty Agreement):

(i) [**] paid by Program Lender to TERI with respect to such Transferred Bank of America Loans [**]; plus

(ii) The amount of any Subsequent Administrative Guaranty Fees (as defined in the Guaranty Agreement) [**]; plus

(iii) The amount of any Guaranty Fees [**]; plus

(iv) The amount of any Subsequent DSA Guaranty Fees (as defined in the Guaranty Agreement) [**]; plus

Unassociated Document

(d) A marketing fee and loan premium, [**]:

    1. with respect to Direct to Consumer K-12 Creditworthy Loans, [**]%;

    2. with respect to Direct to Consumer Continuing Education Creditworthy Loans, [**]% for [**], and [**]% for [**];

    3. with respect to Direct to Consumer Undergraduate Creditworthy Loans, [**]% for [**] and [**]% for [**];

    4. with respect to Direct to Consumer Graduate Creditworthy Loans, [**]% for [**], and [**]% for [**];

    5. with respect to Direct to Consumer Undergraduate Creditworthy Expanded Tier Loans, [**]% for [**];

    6. with respect to Direct to Consumer Graduate Creditworthy Expanded Tier Loans, [**]% for [**]; and

    7. with respect to Direct to Consumer Continuing Education Creditworthy Expanded Tier Loans, [**]% for [**].

(e) MINUS any Advanced Fees (as defined in Schedule 3.3 to the Guaranty Agreement) [**]

**National Collegiate Student Loan Trust 2006-3**
**Roster**      **BANK OF AMERICA**

| LENDER_ NAME | LENDER | MARKETER | LOAN_ DESC | BSSN |
|---|---|---|---|---|
| BANK OF AMERICA | 900008QC | Bank of America | DTC - Undergraduate | 3085 |

| GUARREF | LAST_ DISB_ DATE | TIER | REPAY_ TYPE | ACTUAL_ MARGIN |
|---|---|---|---|---|
| 03886486 | 21-Jun-06 | 2 | DP | 0.0465 |

| 3_ % | 4A_ % | MARKETER_ FEE_ LENDER | RECON_ TOT_ DISB | RECON_ NET_ DISB_ $ |
|---|---|---|---|---|
| 0.095 | 0.015 | 0.075 | $33,149.17 | $30,000.00 |

| RECON_ NET_ CURPRIN_ $ | RECON_ TOTCAPINT | RECON_ PRIN | RECON_ INT | RECON_ ADMIN_ FEE_ $ |
|---|---|---|---|---|
| $30,000.00 | $0.00 | $33,149.17 | $862.56 | $0.00 |

| **Final Reconciliation Settlement Figures** | | | | |
|---|---|---|---|---|
| RECON_ ORIG_ FEE_ TO_ BANK_ $ | RECON_ M_ FEE_ LENDER_ $ | RECON_ DMI_ REIMBURSE | RECON_ MARKETING_ FEE_ LENDER | TOTAL_ AMT_ DUE_ BANK |
| $100.00 | $2,250.00 | $0.00 | $2,250.00 | $36,361.73 |

```
  ITS2X530593085;                    AES/PA         VTAM NADC        TSX2Y
DATE 05/20/16 09:33:46 REPAYMENT SCHEDULE SUMMARY SELECTION    PAGE  1 OF  4

BORROWER SSN 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   NAME JAVIER MEDINA
```

|     |     | SCHED | INSTALL | REPAY | REPAY | 1ST DUE | 1ST DISB | LOAN |       |
|-----|-----|-------|---------|-------|-------|---------|----------|------|-------|
| SEL | STA | TYPE  | AMOUNT  | LVLS  | TERM  | DATE    | DATE     | PGM  | OWNER |
| 1   | I   | L     | 372.26  | 2     | 216   | 05/17/11 | 07/23/04 | ALPLN | NCT   |
| 2   | I   | L     | 353.64  | 2     | 216   | 05/17/11 | 05/16/05 | ALPLN | NCT   |
| 3   | I   | L     | 346.17  | 2     | 216   | 05/17/11 | 08/29/05 | ALPLN | NCT   |
| 4   | I   | L     | 102.42  | 2     | 216   | 05/17/11 | 04/12/06 | ALPLN | NCT   |
| 5   | I   | L     | 323.12  | 2     | 216   | 05/17/11 | 06/21/06 | ALPLN | NCT   |
| 6   | I   | L     | 352.55  | 2     | 216   | 05/17/11 | 07/19/07 | ALPLN | NCT   |
| 7   | I   | L     | 358.39  | 2     | 222   | 08/17/10 | 07/23/04 | ALPLN | NCT   |
| 8   | I   | L     | 340.48  | 2     | 222   | 08/17/10 | 05/16/05 | ALPLN | NCT   |
| 9   | I   | L     | 333.30  | 2     | 222   | 08/17/10 | 08/29/05 | ALPLN | NCT   |
| 10  | I   | L     | 99.06   | 2     | 222   | 08/17/10 | 04/12/06 | ALPLN | NCT   |
| 11  | I   | L     | 311.15  | 2     | 222   | 08/17/10 | 06/21/06 | ALPLN | NCT   |
| 12  | I   | L     | 335.78  | 2     | 222   | 08/17/10 | 07/19/07 | ALPLN | NCT   |

```
SELECTION   __


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```



ITS2X██████3085;                    AES/PA        VTAM NAC6      TSX2Y
DATE 11/04/15 09:36:43 REPAYMENT SCHEDULE SUMMARY SELECTION    PAGE  2 OF  4

BORROWER SSN ██████-3085   NAME JAVIER MEDINA

```
         SCHED   INSTALL  REPAY  REPAY  1ST DUE 1ST DISB    LOAN
SEL STA  TYPE    AMOUNT    LVLS   TERM    DATE    DATE       PGM      OWNER
```

 5  I   RP        25.00     3     225   05/17/10 06/21/06 ALPLN        NCT

11  I   L        301.88     2     226   03/17/10 06/21/06 ALPLN        NCT

SELECTION  __


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN

```
ITS2X       3085;                    AES/PA        VTAM NAC6       TSX2Y
DATE 11/04/15 09:36:56 REPAYMENT SCHEDULE SUMMARY SELECTION    PAGE  3 OF  4

BORROWER SSN     -3085    NAME JAVIER MEDINA

         SCHED   INSTALL   REPAY  REPAY  1ST DUE 1ST DISB   LOAN
SEL STA TYPE    AMOUNT    LVLS   TERM    DATE    DATE      PGM        OWNER
```

5  I  L      292.37     2    231   11/01/09 06/21/06 ALPLN       NCT

```
SELECTION   __


F1=HELP   F3=EXIT   F5=RFR   F7=BKWD   F8=FWD   F9=PRT   F12=CAN
```

```
ITS2X      3085;                    AES/PA        VTAM NAC6        TSX2Y
DATE 11/04/15 09:37:07 REPAYMENT SCHEDULE SUMMARY SELECTION    PAGE  4 OF  4

BORROWER SSN      -3085    NAME JAVIER MEDINA


        SCHED    INSTALL   REPAY  REPAY  1ST DUE 1ST DISB    LOAN
SEL STA TYPE     AMOUNT    LVLS   TERM    DATE    DATE       PGM      OWNER
    ████████████████████████████████████████████████████████████████
    ████████████████████████████████████████████████████████████████
    ████████████████████████████████████████████████████████████████
 5  I   L        345.45      2     239   08/18/08 06/21/06 ALPLN      NCT
    ████████████████████████████████████████████████████████████████




   SELECTION   __


   F1=HELP   F3=EXIT   F5=RFR   F7=BKWD   F8=FWD   F9=PRT   F12=CAN
```

```
ITS2C      3085;;                  AES/PA        VTAM NAC6        TSX2D
DATE 11/04/15 09:34:53      LOAN FINANCIAL ACTIVITY          PAGE  1 OF  4

BORROWER SSN:      3085  NAME: MEDINA, JAVIER
1ST DISB: 06/21/06 LN SEQ: 0005  LN PGM: ALPLN      OWN: 122962QC-NCT
GUARANTOR: TERI                   CUST ACCT: LT10  ORIG BAL:  33,149.17
BOND ISSUE: NCT20063    PD AHEAD:   STATUS: ACTIVE     CURR BAL:      0.00
```

| | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|---|---|---|---|---|---|---|---|
| 1 | | 12/02/11 | 12/02/11 | 5003A | 30.00CR | 0.00 | 0.00 |
| 2 | | 12/01/11 | 12/01/11 | 1030A | 47,690.44CR | 178.06 | 0.00 |
| 3 | | 11/02/11 | | 2601A | 5.00 | 184.20 | 46,209.06 |
| 4 | | 10/03/11 | | 2601A | 5.00 | 190.71 | 46,209.06 |
| 5 | | 09/02/11 | | 2601A | 5.00 | 190.73 | 46,209.06 |
| 6 | | 08/02/11 | | 2601A | 5.00 | 184.58 | 46,209.06 |
| 7 | | 07/03/11 | | 2601A | 5.00 | 192.57 | 46,209.06 |
| 8 | | 06/02/11 | | 2601A | 5.00 | 360.53 | 46,209.06 |
| 9 | | 04/05/11 | 04/08/11 | 7001A | 0.00 | 638.04 | 46,209.06 |
| 10 | | 12/22/10 | 04/08/11 | 7001A | 0.00 | 708.14 | 45,571.02 |

```
      SELECTION __

F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

```
ITS2C    3085;;              AES/PA        VTAM NAC6      TSX2D
DATE 11/04/15 09:35:19    LOAN FINANCIAL ACTIVITY        PAGE  2 OF  4

BORROWER SSN:     3085  NAME: MEDINA, JAVIER
1ST DISB: 06/21/06 LN SEQ: 0005  LN PGM: ALPLN     OWN: 122962QC-NCT
GUARANTOR: TERI                 CUST ACCT:  LT10  ORIG BAL: 33,149.17
BOND ISSUE: NCT20063    PD AHEAD:    STATUS: ACTIVE    CURR BAL:    0.00
```

|    | REV | EFFECTIVE | POSTED | TRAN | TRAN | INTEREST | PRINCIPAL |
|----|-----|-----------|--------|------|------|----------|-----------|
|    | REA | DATE | DATE | TYPE | AMOUNT | ACCRUED | BALANCE |
| 1  |  | 08/27/10 | 08/27/10 | 1010C | 585.00CR | 151.09 | 44,656.65 |
| 2  |  | 08/02/10 | 08/02/10 | 1010C | 26.33CR | 181.31 | 44,656.65 |
| 3  |  | 08/02/10 |  | 2601A | 1.25 | 0.00 | 44,656.65 |
| 4  |  | 07/03/10 |  | 2601A | 1.25 | 12.08 | 44,656.65 |
| 5  |  | 07/01/10 | 07/01/10 | 1010C | 26.32CR | 173.14 | 44,656.65 |
| 6  |  | 06/02/10 |  | 2601A | 1.25 | 53.73 | 44,656.65 |
| 7  |  | 05/24/10 | 05/25/10 | 1010C | 26.33CR | 125.38 | 44,656.65 |
| 8  |  | 05/03/10 |  | 2601A | 5.00 | 119.41 | 44,656.65 |
| 9  |  | 04/13/10 | 04/13/10 | 1010C | 26.32CR | 71.64 | 44,656.65 |
| 10 |  | 04/01/10 | 04/01/10 | 7001A | 0.00 | 350.21 | 44,656.65 |

```
       SELECTION __

F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

```
ITS2C     3085;;                    AES/PA        VTAM NAC6      TSX2D
DATE 11/04/15 09:35:35      LOAN FINANCIAL ACTIVITY          PAGE  3 OF   4

BORROWER SSN:      3085  NAME: MEDINA, JAVIER
1ST DISB: 06/21/06 LN SEQ: 0005  LN PGM: ALPLN     OWN: 122962QC-NCT
GUARANTOR: TERI                   CUST ACCT:  LT10  ORIG BAL: 33,149.17
BOND ISSUE: NCT20063   PD AHEAD:    STATUS: ACTIVE    CURR BAL:      0.00
```

|   | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|---|---|---|---|---|---|---|---|
| 1 | | 02/01/10 | 02/01/10 | 7001A | 0.00 | 722.59 | 44,306.44 |
| 2 | | 10/01/09 | 10/02/09 | 7001A | 0.00 | 1,141.60 | 43,583.85 |
| 3 | | 03/25/09 | 03/25/09 | 7001A | 0.00 | 707.04 | 42,442.25 |
| 4 | | 01/01/09 | 01/02/09 | 7001A | 0.00 | 733.81 | 41,735.21 |
| 5 | | 10/01/08 | 11/07/08 | 7001A | 0.00 | 122.30 | 41,001.40 |
| 6 | | 09/16/08 | 11/07/08 | 7001A | 0.00 | 539.07 | 40,879.10 |
| 7 | | 07/11/08 | 11/07/08 | 7001A | 0.00 | 80.29 | 40,340.03 |
| 8 | | 07/01/08 | 11/07/08 | 7001A | 0.00 | 811.14 | 40,259.74 |
| 9 | | 04/01/08 | 11/07/08 | 7001A | 0.00 | 926.19 | 39,448.60 |
| 10 | | 01/01/08 | 01/02/08 | 7001A | 0.00 | 958.18 | 38,522.41 |

```
       SELECTION __

F1=HELP   F3=EXIT   F5=RFR   F7=BKWD   F8=FWD   F9=PRT   F12=CAN
```

```
ITS2C     3085;;                    AES/PA        VTAM NAC6      TSX2D
DATE 11/04/15 09:35:47      LOAN FINANCIAL ACTIVITY          PAGE  4 OF  4

BORROWER SSN:      -3085  NAME: MEDINA, JAVIER
1ST DISB: 06/21/06 LN SEQ: 0005  LN PGM: ALPLN      OWN: 122962QC-NCT
GUARANTOR: TERI                   CUST ACCT:  LT10  ORIG BAL:  33,149.17
BOND ISSUE: NCT20063  PD AHEAD:   STATUS: ACTIVE     CURR BAL:      0.00
```

|   | REV<br>REA | EFFECTIVE<br>DATE | POSTED<br>DATE | TRAN<br>TYPE | TRAN<br>AMOUNT | INTEREST<br>ACCRUED | PRINCIPAL<br>BALANCE |
|---|---|---|---|---|---|---|---|
| 1 |  | 10/01/07 | 10/01/07 | 7001A | 0.00 | 920.84 | 37,564.23 |
| 2 |  | 07/01/07 | 07/02/07 | 7001A | 0.00 | 888.74 | 36,643.39 |
| 3 |  | 04/01/07 | 04/02/07 | 7001A | 0.00 | 858.72 | 35,754.65 |
| 4 |  | 01/01/07 | 01/02/07 | 7001A | 0.00 | 857.94 | 34,895.93 |
| 5 |  | 10/01/06 | 10/02/06 | 7001A | 0.00 | 26.26 | 34,037.99 |
| 6 |  | 09/28/06 | 09/28/06 | 0390A | 34,011.73 | 0.00 | 33,149.17 |
| 7 |  | 09/28/06 | 09/28/06 | 0395A | 34,011.73CR | 862.56 | 0.00 |
| 8 |  | 06/21/06 | 06/21/06 | 0101A | 33,149.17 | 0.00 | 33,149.17 |

```
       SELECTION ___

F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

```
ITS2V  3085;              AES/PA        VTAM NAC6        TSX2W
DATE 11/04/15 09:37:19   DEFERMENT/FORBEARANCE SUMMARY      PAGE  1 OF  4

BORROWER SSN    -3085   NAME JAVIER MEDINA

   DEFER/FORB   BEGIN    END
     TYPE       DATE     DATE      1ST DISB LOAN PGM        OWNER
   F-BANKRUPT  12/22/10 04/04/11  1 07/19/07 ALPLN      NCT
                                  2 06/21/06 ALPLN      NCT
                                  3 04/12/06 ALPLN      NCT
                                  4 08/29/05 ALPLN      NCT
                                  5 05/16/05 ALPLN      NCT
                                  6 07/23/04 ALPLN      NCT
   F-ADMINIST  09/17/10 12/21/10  7 07/19/07 ALPLN      NCT
                                  8 06/21/06 ALPLN      NCT
                                  9 04/12/06 ALPLN      NCT
                                 10 08/29/05 ALPLN      NCT
                                 11 05/16/05 ALPLN      NCT
                                 12 07/23/04 ALPLN      NCT

                         SELECTION __


  F1=HELP   F3=EXIT   F5=RFR   F7=BKWD   F8=FWD   F9=PRT   F12=CAN
```

Nov 4, 2015 9:38:12 AM

```
ITS2V      3085;                    AES/PA         VTAM NAC6        TSX2W
DATE 11/04/15 09:38:13   DEFERMENT/FORBEARANCE SUMMARY      PAGE  2 OF  4

BORROWER SSN     -3085   NAME JAVIER MEDINA

   DEFER/FORB    BEGIN    END
     TYPE        DATE     DATE      1ST DISB LOAN PGM        OWNER
   F-ADMINIST  03/01/10 03/31/10  1 07/19/07 ALPLN      NCT
                                  2 06/21/06 ALPLN      NCT
                                  3 04/12/06 ALPLN      NCT
                                  4 08/29/05 ALPLN      NCT
                                  5 05/16/05 ALPLN      NCT
                                  6 07/23/04 ALPLN      NCT
   F-TEMP HRD  10/01/09 01/31/10  7 07/19/07 ALPLN      NCT
                                  8 06/21/06 ALPLN      NCT
                                  9 04/12/06 ALPLN      NCT
                                 10 08/29/05 ALPLN      NCT
                                 11 05/16/05 ALPLN      NCT
                                 12 07/23/04 ALPLN      NCT

                            SELECTION __


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

```
ITS2V      3085;                AES/PA        VTAM NAC6      TSX2W
DATE 11/04/15 09:38:22   DEFERMENT/FORBEARANCE SUMMARY      PAGE  3 OF  4


BORROWER SSN     -3085   NAME JAVIER MEDINA


   DEFER/FORB    BEGIN    END
     TYPE        DATE     DATE     1ST DISB LOAN PGM          OWNER
   F-TEMP HRD  04/01/09 09/30/09  1 07/19/07 ALPLN      NCT
                                  2 06/21/06 ALPLN      NCT
                                  3 04/12/06 ALPLN      NCT
                                  4 08/29/05 ALPLN      NCT
                                  5 05/16/05 ALPLN      NCT
                                  6 07/23/04 ALPLN      NCT
   D-SCHL FUL  09/16/08 11/29/10  7 07/19/07 ALPLN      NCT
                                  8 06/21/06 ALPLN      NCT
                                  9 04/12/06 ALPLN      NCT
                                 10 08/29/05 ALPLN      NCT
                                 11 05/16/05 ALPLN      NCT
                                 12 07/23/04 ALPLN      NCT


                         SELECTION __


   F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

```
ITS2V    3085;                    AES/PA        VTAM NAC6        TSX2W
DATE 11/04/15 09:38:53    DEFERMENT/FORBEARANCE SUMMARY        PAGE  4 OF  4

BORROWER SSN    3085    NAME JAVIER MEDINA

DEFER/FORE    BEGIN    END
   TYPE       DATE     DATE     1ST DISB LOAN PGM          OWNER
F-TEMP HRD  08/01/08 01/31/09  1 07/19/07 ALPLN      NCT
                               2 06/21/06 ALPLN      NCT
                               3 04/12/06 ALPLN      NCT
                               4 08/29/05 ALPLN      NCT
                               5 05/16/05 ALPLN      NCT
                               6 07/23/04 ALPLN      NCT




                        SELECTION __


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

# Loan Payment History Report
## Date: 2015-11-04

| | | | |
|---|---|---|---|
| Account Number: | ▮ 3085/005-001000 | | |
| Social Security Number: | ▮ 3085 | Product: | DFU DIRECT TO CONSUMER UNDERGRAD |
| Name: | MEDINA, JAVIER | Officer Code: | 777063 |
| Birth Date: | 1979-▮▮ | School: | SPARTAN COLLEGE OF AERONAUTICS & TECH |
| Address 1: | C/O GOLDSTEIN PHILIP K | Program Year: | 2005-06 |
| Address 2: | 609 S 7TH ST | | |
| City: | LAS VEGAS | Variable Rate Code: | FU LIBOR |
| State: | NV | Interest Rate: | 4.84% |
| Zip Code: | 89101 | Last Payment Date: | 2010-08-27 |
| | | Last Payment Amount: | $585.00 |
| | | Payment Due Date: | 2011-11-17 |
| Contract Date: | 2006-06-21 | Last Interest Date: | 2015-11-04 |
| Date Assigned: | | Accrued Interest: | $9,112.62 |
| Charge Off Date: | 2011-12-01 | Recovered Interest: | $0.00 |
| Charge Off Amount: | $47,690.44 | Net Interest: | $9,112.62 |
| Recovered Principal: | $0.00 | Associated Costs: | $0.00 |
| Net Charge Off: | $47,690.44 | Recovered Costs: | $0.00 |
| Disbursement Date: | 2006-06-21 | Net Costs: | $0.00 |
| Disbursement Amount: | $33,149.17 | | |

## Transaction History

| System | Date | Time | Code | Description | Amount |
|---|---|---|---|---|---|
| System | 2011-12-31 | 00:01 | 82 | $47,690.44 @ 4.850 / 12/01/2011 - 12/31/2011 | $190.11 |
| System | 2012-01-03 | 00:01 | 82 | $47,690.44 @ 4.900 / 12/31/2011 - 01/03/2012 | $19.15 |
| System | 2012-01-31 | 00:01 | 82 | $47,690.44 @ 4.900 / 01/03/2012 - 01/31/2012 | $178.77 |
| System | 2012-02-01 | 00:01 | 82 | $47,690.44 @ 4.900 / 01/31/2012 - 02/01/2012 | $6.38 |
| System | 2012-02-29 | 00:01 | 82 | $47,690.44 @ 4.900 / 02/01/2012 - 02/29/2012 | $178.77 |
| System | 2012-03-01 | 00:01 | 82 | $47,690.44 @ 4.900 / 02/29/2012 - 03/01/2012 | $6.38 |
| System | 2012-03-31 | 00:01 | 82 | $47,690.44 @ 4.900 / 03/01/2012 - 03/31/2012 | $191.54 |
| System | 2012-04-02 | 00:01 | 82 | $47,690.44 @ 4.900 / 03/31/2012 - 04/02/2012 | $12.77 |
| System | 2012-04-30 | 00:01 | 82 | $47,690.44 @ 4.920 / 04/02/2012 - 04/30/2012 | $179.50 |
| System | 2012-05-02 | 00:01 | 82 | $47,690.44 @ 4.920 / 04/30/2012 - 05/02/2012 | $12.82 |
| System | 2012-05-31 | 00:01 | 82 | $47,690.44 @ 4.920 / 05/02/2012 - 05/31/2012 | $185.91 |
| System | 2012-06-01 | 00:01 | 82 | $47,690.44 @ 4.920 / 05/31/2012 - 06/01/2012 | $6.41 |
| System | 2012-06-30 | 00:01 | 82 | $47,690.44 @ 4.920 / 06/01/2012 - 06/30/2012 | $185.91 |
| System | 2012-07-01 | 00:01 | 82 | $47,690.44 @ 4.920 / 06/30/2012 - 07/01/2012 | $6.41 |
| System | 2012-07-02 | 00:01 | 82 | $47,690.44 @ 4.890 / 07/01/2012 - 07/02/2012 | $6.37 |
| System | 2012-07-31 | 00:01 | 82 | $47,690.44 @ 4.890 / 07/02/2012 - 07/31/2012 | $184.78 |

| System | 2012-08-01 | 00:01 | 82 | $47,690.44 @ 4.890 / 07/31/2012 - 08/01/2012 | $6.37 |
|--------|-----------|-------|----|----|----|
| System | 2012-08-31 | 00:01 | 82 | $47,690.44 @ 4.890 / 08/01/2012 - 08/31/2012 | $191.15 |
| System | 2012-09-04 | 00:01 | 82 | $47,690.44 @ 4.890 / 08/31/2012 - 09/04/2012 | $25.49 |
| System | 2012-09-30 | 00:01 | 82 | $47,690.44 @ 4.890 / 09/04/2012 - 09/30/2012 | $165.67 |
| System | 2012-10-01 | 00:01 | 82 | $47,690.44 @ 4.890 / 09/30/2012 - 10/01/2012 | $6.37 |
| System | 2012-10-31 | 00:01 | 82 | $47,690.44 @ 4.890 / 10/01/2012 - 10/31/2012 | $191.15 |
| System | 2012-11-09 | 00:01 | 82 | $47,690.44 @ 4.890 / 10/31/2012 - 11/09/2012 | $57.35 |
| System | 2012-12-03 | 00:01 | 82 | $47,690.44 @ 4.890 / 11/09/2012 - 12/03/2012 | $152.92 |
| System | 2012-12-05 | 00:01 | 82 | $47,690.44 @ 4.890 / 12/03/2012 - 12/05/2012 | $12.74 |
| System | 2012-12-11 | 00:01 | 82 | $47,690.44 @ 4.890 / 12/05/2012 - 12/11/2012 | $38.23 |
| System | 2012-12-17 | 00:01 | 82 | $47,690.44 @ 4.890 / 12/11/2012 - 12/17/2012 | $38.23 |
| System | 2012-12-18 | 00:01 | 82 | $47,690.44 @ 4.890 / 12/17/2012 - 12/18/2012 | $6.37 |
| System | 2012-12-26 | 00:01 | 82 | $47,690.44 @ 4.890 / 12/18/2012 - 12/26/2012 | $50.97 |
| System | 2012-12-31 | 00:01 | 82 | $47,690.44 @ 4.890 / 12/26/2012 - 12/31/2012 | $31.86 |
| System | 2013-01-01 | 00:01 | 82 | $47,690.44 @ 4.890 / 12/31/2012 - 01/01/2013 | $6.39 |
| System | 2013-01-03 | 00:01 | 82 | $47,690.44 @ 4.890 / 01/01/2013 - 01/03/2013 | $12.78 |
| System | 2013-01-31 | 00:01 | 82 | $47,690.44 @ 4.860 / 01/03/2013 - 01/31/2013 | $177.80 |
| System | 2013-02-01 | 00:01 | 82 | $47,690.44 @ 4.860 / 01/31/2013 - 02/01/2013 | $6.35 |
| System | 2013-02-04 | 00:01 | 82 | $47,690.44 @ 4.860 / 02/01/2013 - 02/04/2013 | $19.05 |
| System | 2013-02-07 | 00:01 | 82 | $47,690.44 @ 4.860 / 02/04/2013 - 02/07/2013 | $19.05 |
| System | 2013-02-11 | 00:01 | 82 | $47,690.44 @ 4.860 / 02/07/2013 - 02/11/2013 | $25.40 |
| System | 2013-02-13 | 00:01 | 82 | $47,690.44 @ 4.860 / 02/11/2013 - 02/13/2013 | $12.70 |
| System | 2013-02-14 | 00:01 | 82 | $47,690.44 @ 4.860 / 02/13/2013 - 02/14/2013 | $6.35 |
| System | 2013-02-28 | 00:01 | 82 | $47,690.44 @ 4.860 / 02/14/2013 - 02/28/2013 | $88.90 |
| System | 2013-03-31 | 00:01 | 82 | $47,690.44 @ 4.860 / 02/28/2013 - 03/31/2013 | $196.85 |
| System | 2013-04-09 | 00:01 | 82 | $47,690.44 @ 4.860 / 03/31/2013 - 04/09/2013 | $57.15 |
| System | 2013-04-30 | 00:01 | 82 | $47,690.44 @ 4.850 / 04/09/2013 - 04/30/2013 | $133.08 |
| System | 2013-05-31 | 00:01 | 82 | $47,690.44 @ 4.850 / 04/30/2013 - 05/31/2013 | $196.45 |
| System | 2013-06-30 | 00:01 | 82 | $47,690.44 @ 4.850 / 05/31/2013 - 06/30/2013 | $190.11 |
| System | 2013-07-31 | 00:01 | 82 | $47,690.44 @ 4.850 / 06/30/2013 - 07/31/2013 | $196.45 |
| System | 2013-08-02 | 00:01 | 82 | $47,690.44 @ 4.850 / 07/31/2013 - 08/02/2013 | $12.67 |
| System | 2013-08-31 | 00:01 | 82 | $47,690.44 @ 4.850 / 08/02/2013 - 08/31/2013 | $183.77 |
| System | 2013-09-03 | 00:01 | 82 | $47,690.44 @ 4.850 / 08/31/2013 - 09/03/2013 | $19.01 |
| System | 2013-12-05 | 00:01 | 82 | $47,690.44 @ 4.850 / 09/03/2013 - 12/05/2013 | $589.34 |
| System | 2013-12-31 | 00:01 | 82 | $47,690.44 @ 4.850 / 12/05/2013 - 12/31/2013 | $164.76 |
| System | 2014-01-06 | 00:01 | 82 | $47,690.44 @ 4.850 / 12/31/2013 - 01/06/2014 | $38.02 |
| System | 2014-01-31 | 00:01 | 82 | $47,690.44 @ 4.820 / 01/06/2014 - 01/31/2014 | $157.44 |
| System | 2014-02-28 | 00:01 | 82 | $47,690.44 @ 4.820 / 01/31/2014 - 02/28/2014 | $176.34 |
| System | 2014-04-03 | 00:01 | 82 | $47,690.44 @ 4.820 / 02/28/2014 - 04/03/2014 | $214.12 |
| System | 2014-05-21 | 00:01 | 82 | $47,690.44 @ 4.810 / 04/03/2014 - 05/21/2014 | $301.66 |
| System | 2014-07-03 | 00:01 | 82 | $47,690.44 @ 4.810 / 05/21/2014 - 07/03/2014 | $270.24 |
| System | 2014-07-31 | 00:01 | 82 | $47,690.44 @ 4.800 / 07/03/2014 - 07/31/2014 | $175.61 |
| System | 2014-08-01 | 00:01 | 82 | $47,690.44 @ 4.800 / 07/31/2014 - 08/01/2014 | $6.27 |
| System | 2014-08-31 | 00:01 | 82 | $47,690.44 @ 4.805 / 08/01/2014 - 08/31/2014 | $188.34 |
| System | 2014-09-02 | 00:01 | 82 | $47,690.44 @ 4.805 / 08/31/2014 - 09/02/2014 | $12.56 |
| System | 2014-09-30 | 00:01 | 82 | $47,690.44 @ 4.800 / 09/02/2014 - 09/30/2014 | $175.61 |
| System | 2014-10-31 | 00:01 | 82 | $47,690.44 @ 4.800 / 09/30/2014 - 10/31/2014 | $194.42 |
| System | 2014-11-04 | 00:01 | 82 | $47,690.44 @ 4.800 / 10/31/2014 - 11/04/2014 | $25.09 |

| System | 2014-11-30 | 00:01 | 82 | $47,690.44 @ 4.810 / 11/04/2014 - 11/30/2014 | $163.40 |
|--------|------------|-------|----|----------------------------------------------|---------|
| System | 2014-12-31 | 00:01 | 82 | $47,690.44 @ 4.810 / 11/30/2014 - 12/31/2014 | $194.83 |
| System | 2015-01-31 | 00:01 | 82 | $47,690.44 @ 4.810 / 12/31/2014 - 01/31/2015 | $194.82 |
| System | 2015-02-05 | 00:01 | 82 | $47,690.44 @ 4.810 / 01/31/2015 - 02/05/2015 | $31.42 |
| System | 2015-02-28 | 00:01 | 82 | $47,690.44 @ 4.810 / 02/05/2015 - 02/28/2015 | $144.55 |
| System | 2015-03-31 | 00:01 | 82 | $47,690.44 @ 4.810 / 02/28/2015 - 03/31/2015 | $194.83 |
| System | 2015-04-02 | 00:01 | 82 | $47,690.44 @ 4.810 / 03/31/2015 - 04/02/2015 | $12.57 |
| System | 2015-04-30 | 00:01 | 82 | $47,690.44 @ 4.820 / 04/02/2015 - 04/30/2015 | $176.34 |
| System | 2015-05-31 | 00:01 | 82 | $47,690.44 @ 4.820 / 04/30/2015 - 05/31/2015 | $195.23 |
| System | 2015-06-30 | 00:01 | 82 | $47,690.44 @ 4.820 / 05/31/2015 - 06/30/2015 | $188.93 |
| System | 2015-07-01 | 00:01 | 82 | $47,690.44 @ 4.820 / 06/30/2015 - 07/01/2015 | $6.30 |
| System | 2015-07-31 | 00:01 | 82 | $47,690.44 @ 4.830 / 07/01/2015 - 07/31/2015 | $189.32 |
| System | 2015-08-06 | 00:01 | 82 | $47,690.44 @ 4.830 / 07/31/2015 - 08/06/2015 | $37.86 |
| System | 2015-08-31 | 00:01 | 82 | $47,690.44 @ 4.830 / 08/06/2015 - 08/31/2015 | $157.77 |
| System | 2015-09-30 | 00:01 | 82 | $47,690.44 @ 4.830 / 08/31/2015 - 09/30/2015 | $189.32 |
| System | 2015-10-01 | 00:01 | 82 | $47,690.44 @ 4.830 / 09/30/2015 - 10/01/2015 | $6.31 |
| System | 2015-10-30 | 00:01 | 82 | $47,690.44 @ 4.840 / 10/01/2015 - 10/30/2015 | $183.39 |
| System | 2015-11-04 | 00:01 | 82 | $47,690.44 @ 4.840 / 10/30/2015 - 11/04/2015 | $31.62 |

Exhibit F

From: 9182002872   Page: 2/5   Date: 7/16/2007 5:37:51 PM

## Creditworthy Student Loan Request/Credit Agreement - Signature Page

### NON-NEGOTIABLE CREDIT AGREEMENT – THIS IS A CONSUMER CREDIT TRANSACTION

### LOAN PROGRAM INFORMATION

Education Maximizer Undergraduate Loan                    Academic Period: 07/2007-12/2007

Lender: Bank of America, National Association          School: SPARTAN COLLEGE OF AERONAUTICS

Loan Amount Requested: $30000.00      Repayment Option: Full Deferral

Deferral Period Margin: 7.75      Repayment Period Margin: 7.75      Loan Origination Fee Percentage: 10.50

### BORROWER INFORMATION (Must be age of majority in state of residence)

Borrower Name: Javier Medina                Home Address: 11211 S 2nd St E      Jenks, OK 74037
Social Security Redacted                     Date of Birth: 09/30/1979      Home Telephone: (918) 200-2872
Mobile Telephone:                            E-mail Address:
Current Employer: DIRECTV                                                   Employer Telephone: (918) 587-7708
Current Position: Other                      Years There: 2 Years 6 Months
Years at Previous Employment: 0 Years

Alimony, child support, or separate maintenance incomes do not have to be revealed if you do not want them considered for repaying this obligation. If you are relying on such additional income, please provide details on a separate sheet of paper.

Student Citizenship (check one box):   ☒ U.S. Citizen          ☐ Eligible Non-Citizen (Attach front & back copy of CIS or student visa card)
Personal Reference Name: Juan Corter                            Reference Home Tel #: (918) 260-5255      Work Tel #: (918) 260-5255
Reference Street Address: 8412 S 77 E Ave apt 2258
Reference City/State/Zip: Tulsa, OK 74133

By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all five (5) pages of this Loan Request/Credit Agreement BK.07-08.CRWO.10DC.0107 ("Credit Agreement"). I understand that any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment. This Credit Agreement is signed under seal. I understand that I am not required to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature. If I choose to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature, I hereby (I) my fax or electronic signature to be an electronic signature under applicable federal and state law, (ii) any fax printout or printout of Lender's electronic record of this Credit Agreement and related notices to be an original document, (iii) to conduct business with the Lender by electronic records and electronic signatures, and (iv) that this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code, and my obligations under this Credit Agreement will not be subject to, but any transfer of any obligations will be subject to, Article 9 of the Uniform Commercial Code

For purposes of the following notices, "you" means the Borrower, not the Lender.

FOR ALABAMA RESIDENTS: CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

FOR WISCONSIN RESIDENTS - NOTICE TO CUSTOMER:
(a)  DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE WRITING ON THE FOLLOWING PAGES, EVEN IF OTHERWISE ADVISED.
(b)  DO NOT SIGN THIS CREDIT AGREEMENT IF IT CONTAINS ANY BLANK SPACES.
(c)  YOU ARE ENTITLED TO AN EXACT COPY OF ANY CREDIT AGREEMENT YOU SIGN.
(d)  YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS CREDIT AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

PLEASE SIGN BELOW. RETURN This Page With Proof of Income and Other Information if applicable to:   FAX TO: 1-800-XXX-8408

Signature of Borrower                                             Date  07/16/07

BK.07-08.CRWO.10DC.0107          LENDER COPY
PN01_BO_07-08_CRWO_F_X_MEDINA_A105365689.pdf                    BKJUOP

In this Credit Agreement, the words "I", "me", "my", and "mine" mean the person who signed this Credit Agreement as Borrower. The words "you", "your", "yours", and "Lender" mean Bank of America, National Association, its successors and assigns, and any other holder of this Credit Agreement. "School" means the school named at the top of the first page of this Credit Agreement. The "servicer" means the Lender or any entity it designates to service my loan.

**A. PROMISE TO PAY:** I promise to pay to you the Loan Amount Requested shown on the first page of this Credit Agreement, to the extent it is advanced to me or paid on my behalf, and any Loan Origination Fee added to my loan (see Paragraph F) (together, the "Principal Sum"), interest on such Principal Sum, interest on any unpaid interest added to the Principal Sum and late fees (see Paragraph E.6).

**B. IMPORTANT – READ THIS CAREFULLY:**

1. When you receive my signed Credit Agreement, you are not agreeing to lend me money. If you decide to make a loan to me, you will electronically transfer the loan funds to the School for me, mail a loan check to the School for me, or mail a loan check directly to me. You have the right to not make a loan or to lend an amount less than the Loan Amount Requested. I agree to accept an amount less than the Loan Amount Requested and to repay that portion of the Loan Amount Requested that you actually lend to me along with interest and all other amounts I owe (see Paragraph A). You have the right to disburse my loan through an agent. At your option, you may also make any loan check co-payable to me and the School.

2. **HOW I AGREE TO THE TERMS OF THIS LOAN.** By signing this Credit Agreement, and submitting it to the Lender, I am requesting that you make this loan to me in an amount equal to the Loan Amount Requested plus any Loan Origination Fee described in Paragraph F of this Credit Agreement. If you approve this request and agree to make this loan, you will notify me in writing and provide me with a Disclosure Statement, as required by law, at the time the loan proceeds are disbursed. The Disclosure Statement is incorporated herein by reference and made a part hereof. The Disclosure Statement will tell me the amount of the loan which you have approved, the amount of the Loan Origination Fee, and other important information. I will let you know that I agree to the terms of the loan as set forth in this Credit Agreement and in the Disclosure Statement by doing either of the following: (a) endorsing or depositing the check that disburses the loan proceeds; or (b) using or allowing the loan proceeds to be used on my behalf without objection. Upon receipt of the Disclosure Statement, I will review the Disclosure Statement and notify you in writing if I have any questions. If I **am not satisfied with the terms of my loan as disclosed in the Disclosure Statement, I may cancel my loan. To cancel my loan, I will give you a written cancellation notice within ten (10) days after I receive the Disclosure Statement.** If loan proceeds have been disbursed, I agree that I will immediately return the loan proceeds to you, will not endorse any check which disburses the loan proceeds and will instruct the School to return any loan proceeds to you. If I give notice of cancellation but do not comply with the requirements of this Paragraph B.2, this Credit Agreement will not be canceled and I will be in default of this Credit Agreement. (See Paragraph I.)

**C. DEFINITIONS:**

1. "Disbursement Date" means the date or dates on which you lend money to me in consideration for my Credit Agreement and will be the date(s) shown on any loan check you prepare or the date(s) you initiate any electronic funds transfer.

2. The "Deferment Period" will begin on the Disbursement Date and end on the Deferment End Date.

3. "Deferment End Date" means the date specified below for the applicable loan program (the applicable loan program is stated on the first page of this Credit Agreement).

(a) *Undergraduate Alternative Loan Program:* If I have elected the "Immediate Repayment" option (the applicable repayment option is stated on the first page of this Credit Agreement), there is no Deferment Period, and my first payment will be 30-60 days after the disbursement of my loan. If I have elected the "Interest Only" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then interest payments will begin 30-60 days after the disbursement of my loan, the "Deferment End Date" will be the date the Student first graduates or ceases to be enrolled at least half-time in the School (or another school participating in this loan program), and principal and interest payments will begin 30-60

days after that date. In any event, if I have elected the "Interest Only" repayment option, the Deferment End Date will be no more than 5 years after the Disbursement Date. If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then the "Deferment End Date" will be 180 days after the date the Student first graduates or ceases to be enrolled at least half-time in the School (or another school participating in this Loan Program). In any event, if I have elected the "Full Deferral" repayment option, the Deferment End Date will be no more than 5½ years after the Disbursement Date. For borrowers who chose the "Interest Only" or "Full Deferral" repayment options, joint and serial (associates to bachelors) degree recipients may continue in-school deferment while completing their second degree, up to the 5-year or 5½-year maximum.

(b) *Graduate Professional Education Loan Program:* The Deferment End Date will be 180 days after the Student graduates or ceases for any other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 4½ years after the Disbursement Date; provided, however, that if the Student begins a medical residency or internship during the Deferment Period, then the Deferment Period will end 180 days after the day the residency or internship ends, but no more than 8½ years after the Disbursement Date.

4. The "Repayment Period" begins the day after the Deferment Period ends. If there is no Deferment Period for my loan, the Repayment Period will begin when my loan is fully disbursed. The Repayment Period is 20 years unless monthly payments equal to the minimum monthly payment amount (See Paragraph E.2) will repay all amounts owed in less than 20 years, in which case the Repayment Period will be the number of months necessary to pay in full the amount I owe at the minimum payment.

**D. INTEREST:**

1. Accrual – Beginning on the Disbursement Date, interest will be calculated at the Variable Rate (Paragraph D.2) and charged on the Principal Sum, and on any unpaid interest later added to the Principal Sum according to Paragraph D.3. During the Repayment Period, interest will be calculated at the Variable Rate and charged on the outstanding balance of this Credit Agreement until all amounts are paid in full. Interest will be calculated on a daily simple interest basis. The daily interest rate will be equal to the annual interest rate in effect on that day, divided by the number of days in that calendar year.

2. Variable Rate – The "Variable Rate" is equal to the Current Index plus a Margin. The Margins for both the Deferment Period and the Repayment Period are shown on the first page of this Credit Agreement. In no event will the Variable Rate exceed the maximum interest rate allowed by the laws of the State of California. The Variable Rate will change monthly on the first day of each calendar month (the "Change Date(s)") if the Current Index changes. The "Current Index" for any calendar month (or for any shorter period beginning on the Disbursement Date and ending on the last day of a calendar month) is based on the one-month London Interbank Offered Rate ("LIBOR") as published in the "Money Rates" section of *The Wall Street Journal* (Eastern Edition). The index for each calendar month (or for any shorter period beginning on a Disbursement Date and ending on the last day of a calendar month) will equal the LIBOR rate published on the first business day of the immediately preceding calendar month, rounded to the nearest one-hundredth of one percent (0.01%). If *The Wall Street Journal* (Eastern Edition) is not published or the Current Index is not given on that date, then the Current Index will be determined by using the immediately preceding published Current Index. If the Current Index is no longer available, you will choose a comparable index.

3. Capitalization – If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement). I am not obligated to make any payments until the loan enters the Repayment Period and you will add unpaid accrued interest to the principal loan balance as of the last day of each calendar quarter (the last day of December, March, June and September) during the Deferment Period and as of the last day of my Deferment Period. Interest that is added to principal is called "Capitalized" interest. Capitalized interest will be treated as principal. In addition, if I am in default (see Paragraph I) and the loan has been sold to TERI (see Paragraph L.12), TERI may capitalize accrued and unpaid interest as of the date it purchases my loan. I understand that you will also add all accrued and unpaid interest to the principal balance of my loan at the end of any forbearance period (see Paragraph H).

## E. TERMS OF REPAYMENT:

1. Deferment Period – If I have elected either the "Interest Only" repayment option or the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), you may, or, if required by applicable law, will send me statements during the Deferment Period (showing the total outstanding principal balance of my loan and the interest that has accrued on my loan). Statements will be sent to the address shown on your records. If I have elected the "Interest Only" repayment option, I agree to make payments each month during the Deferment Period equal to the accrued interest on the outstanding balance of this Credit Agreement. If I have elected the "Full Deferral" repayment option I may, but am not required to make payments during the Deferment Period. You will add any interest that I do not pay during the Deferment Period to the principal balance, as described in Paragraph D.3.

2. Repayment Period – The amount of my monthly payment ("Monthly Payment Amount") will be established based on the rules in this Credit Agreement when my Repayment Period begins. During the Repayment Period, you will send me monthly statements that show the Monthly Payment Amount and the payment due dates, and I will pay the Monthly Payment Amount shown on my monthly statement, which amount will in no event be less than $25 or the unpaid balance, whichever is less. I understand that the Monthly Payment Amount is due each month. I may pay more than my Monthly Payment Amount at any time without penalty or charge. If my loan is in paid-ahead status, I may, but will not be required to make monthly payments. Even if I do not receive monthly statements, I will make consecutive monthly payments in amounts at least equal to the Monthly Payment Amount by the applicable payment due dates until I have paid all of the principal and interest and any other charges I may owe under this Credit Agreement.

3. Repayment Terms – My Monthly Payment Amount will be calculated as of the day the Repayment Period begins ("Repayment Date"). It will be recalculated (a) once each year prior to the anniversary of the Repayment Date, (b) if the Variable Rate changes between anniversaries of the Repayment Date to the extent that the Monthly Payment Amount would not pay in full the accrued monthly interest on my loan, (c) following any subsequent deferment or forbearance period or (d) following any request by the Borrower to the servicer to change the monthly payment due date (each of which events is a new "Repayment Date"). As of any Repayment Date, my Monthly Payment Amount will be recalculated. My new Monthly Payment Amount will be disclosed to me by the servicer. The new Monthly Payment Amount will equal the amount necessary to pay in full, over the number of months remaining in the Repayment Period, the amount I owe in equal monthly installments of principal and interest at the Variable Rate in effect at the time of the calculation. I understand that this may result in a reduction or increase in my monthly payment as calculated as of each Repayment Date. I understand that during the Repayment Period (and, if I have elected the "Interest Only" repayment option, during the period of interest payments) the servicer may change the monthly payment due date of future payments to a later date for the convenience of the servicer in processing payments or in order to coordinate the due dates of all of my loans processed by the servicer.

4. Amounts Owing at the End of the Repayment Period – Since interest accrues daily upon the unpaid principal balance of my loan, if I make payments after my payment due dates. I may owe additional interest. If I have not paid my late fees, I will also owe additional amounts for those late fees. In such cases you will increase the amount of my last monthly payment to the amount necessary to repay my loan in full.

5. Payments – Payments will be applied first to late fees, other fees and charges, accrued interest, and the remainder to principal.

6. Other Charges - If any part of a monthly payment remains unpaid for a period of more than 15 days after the payment due date, I will pay a late fee not exceeding $5.00 or 5% of the overdue payment amount, whichever is less. To the extent permitted by law, I agree to pay you all amounts you incur in enforcing the terms of this Credit Agreement, including reasonable collection agency and attorney's fees and court costs and other collection costs.

## F. LOAN ORIGINATION FEE: If you charge me, I will pay you a Loan Origination Fee at the time my loan is disbursed. The dollar amount of any Loan Origination Fee will be determined by multiplying the Principal Sum times the Loan Origination Fee Percentage shown on the first page of this

Credit Agreement. The percentage would be higher if computed only on the amount advanced rather than on the entire Principal Sum (Loan Origination Fee plus the loan amount advanced). For example, a nominal Loan Origination Fee of 6.5% on the entire principal amount would equal 6.9519% of the amount advanced. The Loan Origination Fee I will pay, if any, will be shown on my Disclosure Statement and included with the Principal Sum. To the extent permitted by law, and unless I timely cancel this Credit Agreement (see Paragraph B.2), I will not be entitled to a refund of any Loan Origination Fee after my loan has been disbursed.

## G. RIGHT TO PREPAY: I have the right to prepay all or any part of my loan at any time without penalty.

## H. FORBEARANCE: If I am unable to repay my loan in accordance with the terms established under this Credit Agreement because of a hardship such as financial or medical difficulty, I may request that you modify these terms. I understand that such modification would be at your option, and, to the extent not prohibited by applicable law, you may charge me a fee equal to two percent 2% of the outstanding principal balance if you agree to modify the terms of this Credit Agreement. I understand that I will remain responsible for all interest accruing during any period of forbearance and that you will add any 2% fee described in the previous sentence and all interest that I do not pay during any forbearance period to the principal balance, as described in Paragraph D.3.

## I. WHOLE LOAN DUE: To the extent permitted by applicable law, I will be in default and you have the right to give me notice that the whole outstanding principal balance, accrued interest, and all other amounts payable to you under the terms of this Credit Agreement, are due and payable at once (subject to any applicable law which may give me a right to cure my default) if: (1) I fail to make any monthly payment to you when due, (2) I die, (3) I break any of my other promises in this Credit Agreement, (4) any bankruptcy proceeding is begun by or against me, or I assign any of my assets for the benefit of my creditors, or (5) I make any false written statement in applying for this loan or any other loan or at any time during the Deferment or Repayment Periods. If I default, I will be required to pay interest on this loan accruing after default. The interest rate after default will be subject to adjustment in the same manner as before default. Upon default, you may also capitalize any interest and fees (i.e., add accrued and unpaid interest and fees to the principal balance), and increase the Margin used to compute the Variable Rate by two percentage points (2%).

## J. NOTICES:

1. I will send written notice to you, any subsequent holder of this Credit Agreement, and the servicer within ten days after any change in my name, address, or enrollment status (for example, if the Borrower withdraws from the School or transfers to another school participating in this loan program).

2. Any notice required to be given to me by you will be effective when mailed by first class mail to the latest address you have for me.

## K. INFORMATION:

1. I must update the information I provided to you whenever you ask me to do so.

2. I authorize you from time to time to request and receive from others credit related information about me (and about my spouse if I live in a community property state).

## 3. CREDIT BUREAU REPORTING

> **You may report information about my account to credit bureaus. Late payments, missed payments, or other defaults in my account may be reflected in my credit report.**

I understand that the reporting of information about my account to credit bureaus may adversely affect my credit rating and my ability to obtain other credit. You may also report this status of my loan and my payment history, including information about a late payment, missed payment or other defaults in accordance with applicable law.

## L. ADDITIONAL AGREEMENTS:

1. I understand that you and I are located in California and that this Credit Agreement will be entered into in the same state. CONSEQUENTLY, THE PROVISIONS OF THIS CREDIT AGREEMENT WILL BE GOVERNED BY FEDERAL LAW AND THE LAWS OF THE STATE OF CALIFORNIA, WITHOUT REGARD TO CONFLICT OF LAW RULES.

2. The proceeds of this loan will be used only for my educational expenses at the School.

3. My responsibility for paying the loan evidenced by this Credit Agreement is unaffected by the liability of any other person to me or by your failure to notify me that a required payment has not been made. Without losing any of your rights under this Credit Agreement you may accept (a) late payments, (b) partial payments or (c) payments marked "paid in full" or with other restrictions. You may delay, fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise the right at any future time, or on any future occasion. You will not be obligated to make any demand upon me, send me any notice, present this Credit Agreement to me for payment or make protest of non-payment to me before suing to collect on this Credit Agreement if I am in default, and to the extent permitted by applicable law, I hereby waive any right I might otherwise have to require such actions. I WILL NOT SEND YOU PAYMENTS MARKED "PAID IN FULL", "WITHOUT RECOURSE" OR WITH OTHER SIMILAR LANGUAGE UNLESS THOSE PAYMENTS ARE MARKED FOR SPECIAL HANDLING AND SENT TO THE ADDRESS IDENTIFIED FOR SUCH PAYMENTS ON MY BILLING STATEMENT, OR TO SUCH OTHER ADDRESS AS I MAY BE GIVEN IN THE FUTURE.
4. I may not assign this Credit Agreement or any of its benefits or obligations. You may assign this Credit Agreement at any time.
5. The terms and conditions set forth in this Credit Agreement and the Disclosure Statement constitute the entire agreement between you and me.
6. If any provision of this Credit Agreement is held invalid or unenforceable, that provision shall be considered omitted from this Credit Agreement without affecting the validity or enforceability of the remainder of this Credit Agreement.
7. A provision of this Credit Agreement may only be modified if jointly agreed upon in writing by you and me. Any modification will not affect the validity or enforceability of the remainder of this Credit Agreement.
8. To the extent permitted by law, you have the right to apply money from any of my deposit account(s) with you to pay all or a portion of any amount overdue under this Credit Agreement. I hereby authorize you to obtain from the School all amounts which may be owed to me by the School, including any refund due to overpayment, early termination of enrollment, or otherwise.
9. All dollar amounts stated in this Credit Agreement are in United States dollars. I will make all payments in United States Dollars with no deduction for currency exchange.
10. If I fail to complete the education program paid for with this loan, I am not relieved of any obligation within or pursuant to this Credit Agreement.
11. I understand and agree that this loan is an education loan and certify that it will be used only for costs of attendance at the School. I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523 (a) (8) of the United States Bankruptcy Code because either or both of the following apply: (a) this loan was made pursuant to a program funded in whole or in part by The Education Resources Institute, Inc. ("TERI"), a non-profit institution, or (b) this is a qualified education loan as defined in the Internal Revenue Code. This means that if, in the event of bankruptcy, my other debts are discharged, I will probably still have to pay this loan in full.
12. I authorize any school that I may attend to release to you, and any other persons designated by you, any requested information pertinent to this loan (e.g., enrollment status, prior loan history, and current address).
13. I authorize the Lender, any subsequent holder of this Credit Agreement, and their agents (including TERI) to: (1) advise the School of the status of my application and my loan, (2) respond to inquiries from prior or subsequent lenders or holders with respect to my Credit Agreement and related documents, (3) release information and make inquiries to the persons I have given you as references, for the purposes of learning my current address and telephone number, (4) check my credit and employment history and to answer questions about their credit experience with me, and (5) retain for use in any future transaction with the Borrower all information (including status information and non-public personal information) of the Borrower provided in connection with this Credit Agreement.
14. Waiver by Lender  You waive (give up) any right to claim a security interest in any property to secure this Credit Agreement. This does not affect any right to offset as a matter of law.
15. If I fax my signature(s) on the first page of this Credit Agreement back to you and keep the copy I signed, I understand that under federal law the fax you receive will be an original of the first page of this Credit Agreement. You

and I agree that all copies of this Credit Agreement (including the fax you receive and the copy I retain), taken together, shall constitute a single original agreement.
16. If I elect to sign electronically an electronic record of this Credit Agreement, then the following will apply as between Lender and me:  (a) Lender will keep a non-modifiable electronic record of this document and provide a copy to me upon request, (b) I can and have downloaded and/or printed a copy of this document for my records or notified the Lender to mail me a copy of this document, and (c) the Lender's electronic record of this document and any printout from that record shall be an original for all purposes, including any lawsuit to collect amounts that I owe.
**M. DISCLOSURE NOTICES**

**ALL APPLICANTS:**
**IMPORTANT FEDERAL LAW NOTICE—**

*Important information about procedures for opening a new account:*
**To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.**

*What this means for you:*
**When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.**

CALIFORNIA RESIDENTS: I have the right to prohibit the use of information contained in my credit file in connection with transactions not initiated by me. I may exercise this right by notifying the consumer credit reporting agency.  A married applicant may apply for a separate account.  If you take any adverse action as defined by Section 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, I have the right to obtain within 60 days a free copy of my consumer credit report from the consumer reporting agency who furnished you my consumer credit report and from any other consumer credit reporting agency which compiles and maintains files on consumers on a nationwide basis.  I have the right as described by Section 1765.16 of the California Civil Code to dispute the accuracy or completeness of any information in a consumer credit report furnished by the consumer credit reporting agency.
CALIFORNIA AND UTAH RESIDENTS: As required by California and Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations.
IOWA, KANSAS AND NEBRASKA RESIDENTS (For purposes of the following notice, the word "you" refers to the Borrower, not the Lender): NOTICE TO CONSUMER.  This is a consumer credit transaction. 1. DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THIS CREDIT AGREEMENT. 2. YOU ARE ENTITLED TO A COPY OF THIS CREDIT AGREEMENT. 3. YOU MAY PREPAY THE UNPAID BALANCE AT ANY TIME WITHOUT PENALTY AND MAY BE ENTITLED TO A REFUND OF UNEARNED CHARGES IN ACCORDANCE WITH LAW.
MARYLAND RESIDENTS: In Paragraph L.1, Lender and I have agreed that this Credit Agreement is governed by federal law and the laws of CALIFORNIA, without regard to conflict of laws rules; if any court should nevertheless determine that this Credit Agreement is subject to Maryland laws concerning credit, then only to the extent that Maryland law applies, Lender and I agree and elect that this loan is made under and governed by Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland, except as preempted by federal law.
MISSOURI RESIDENTS: Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable.

To protect me (borrower(s)) and you (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

NEVADA RESIDENTS: This is a loan for study.

NEW JERSEY RESIDENTS: The section headings of this Credit Agreement are a table of contents and not contract terms. Portions of this Credit Agreement with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Credit Agreement, acts or practices (i) by you which are or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law.

NEW YORK, RHODE ISLAND AND VERMONT RESIDENTS: A consumer report (credit report) may be obtained from a consumer-reporting agency (credit bureau) in connection with this loan. If I request (1) I will be informed whether or not consumer reports were obtained, and (2) if reports were obtained, I will be informed of the names and addresses of the credit bureaus that furnished the reports. If you agree to make this loan to me, a consumer credit report may be requested or used in connection with renewals or extensions of any credit for which I have applied, reviewing my loan, taking collection action on my loan, or legitimate purposes associated with my loan.

OHIO RESIDENTS: The Ohio laws against discrimination require that all creditors make credit equally available to all credit worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

WISCONSIN RESIDENTS: For married Wisconsin residents, my signature on this Credit Agreement confirms that this loan obligation is being incurred in the interest of my marriage or family. No provision of any marital property agreement (pre-marital agreement), unilateral statement under Section 766.59 or court decree under Section 766.70 adversely affects the interest of the Lender unless the Lender, prior to the time that the loan is approved, is furnished with a copy of the agreement, statement, or decree or has actual knowledge of the adverse provision when the obligation to the Lender is incurred. If the loan for which I am applying is granted, my spouse will also receive notification that credit has been extended to me.

**N. BORROWER'S CERTIFICATION:** I declare under penalty of perjury under the laws of the United States of America that the following is true and correct. I certify that all information I provided to you in connection with this loan, including without limitation, the information contained in this Credit Agreement, is true, complete and correct to the best of my knowledge and belief and is made in good faith. I understand that I am responsible for repaying immediately any funds that I receive which are not to be used or are not used for educational expenses related to attendance at the School for the academic period stated. I certify that I am not now in default on a Federal Perkins Loan, a Federal Stafford Loan, a Federally Insured Student Loan, a Federal Supplemental Loan for Students (SLS), a Federal PLUS Loan, an Income Contingent Loan, a Federal Consolidation Loan, a Federal Ford Direct Loan, or any other education loan received for attendance at any school. The legal age for entering into contracts is 18 years of age in every State in the United States except the following: Alabama and Nebraska (19 years old), and Mississippi and Puerto Rico (21 years old). I certify that I meet these state age requirements.

**By signing this Credit Agreement, to the extent permitted by applicable law, I hereby ratify, confirm, and acknowledge the validity of all prior credit agreements I have signed with the Lender for this loan program. I intend and agree that all such credit agreements shall be binding on me. The consideration for this affirmation is the new credit extended by the Lender to me under this Credit Agreement.**

## NOTE DISCLOSURE STATEMENT

$ __33,519.55__
__05365689__
Loan No. _____

Borrower(s)    __JAVIER MEDINA__

Student:    __JAVIER MEDINA__
Date:    __July 19, 2007__

JAVIER MEDINA
11211 S 2ND ST E
JENKS, OK 74037   USA

Lender Name and Address
__BANK OF AMERICA, N.A.__
__603 WILSHIRE BLVD. 8TH FLOOR__
__LOS ANGELES, CA 90017__

This disclosure statement relates to your Loan Note disbursed on        July 19, 2007
Because your Loan is either being disbursed or entering repayment, or the repayment terms are being modified, the following information about your Loan is being given to you.

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments scheduled. |
| 14.772  % | $   77,018.40 | $   30,000.00 | $   107,018.40 |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments are due |
|---|---|---|
| 240 | $   445.91 | On the   30th day of each month beginning   7/2008 |
|  |  |  |
|  |  |  |
|  |  |  |

**VARIABLE RATE:** The Annual Percentage Rate, which is based on an index plus a margin, may increase during the term of the loan if the index rate increases. The index is (check one):

☐ Prime Rate Index Adjusted Monthly - The highest U.S. bank prime rate published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the last business day of each calendar month.

☐ Prime Rate Index Adjusted Quarterly - The highest U.S. bank prime rate published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the last business day of each calendar quarter.

☐ LIBOR Index Adjusted Quarterly - The average of the one-month London Interbank Offered Rates published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the first business day of each of the three (3) calendar months immediately preceding the first day of each calendar quarter.

☒ LIBOR Index Adjusted Monthly - The one-month London Interbank Offered Rate published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the first business day of the preceding calendar month.

Any increase in the index and the Annual Percentage Rate which occurs while principal payments are deferred will increase the amount of any current and all future payments. Any increase in the index and the Annual Percentage Rate which occurs while principal and interest payments are deferred will increase the amount of all future payments. Any increase in the index and the Annual Percentage Rate which occurs after you have begun to make principal and interest payments on your loan will increase the amount of your future principal and interest payments beginning with your next annual payment adjustment date. For example, assume you obtain a loan in your junior year, in the amount of $10,000, at an interest rate of 11%, and you defer principal and interest payments until after your graduation, and the repayment term of the loan is 20 years. If the interest rate increased to 12% on January 1st of your senior year, the interest which accrues while principal and interest payments are deferred will increase by $91.01, and your monthly principal and interest payments would increase by $9.17.

**LATE CHARGES:** If a payment is more than 15 days late, you may be charged $5.00 or 5% of the payment, whichever is less. If you default, Lender (or any subsequent holder of your Loan Note) may increase the margin used to compute the Annual Percentage Rate by two percentage points (2%).
**PREPAYMENT:** If you pay off early, you will not have to pay a penalty.

**Estimates:** All numerical disclosures except the late payment disclosure are estimates.

See your contract documents for any additional information about non-payment, default, any required repayment in full before the scheduled date, any security interest and prepayment refunds and penalties.

Principal Amount of Note (Amount Financed plus Prepaid Finance Charge)         $    33,519.55

Itemization of Amount Financed
Amount paid to   JAVIER MEDINA          $    30,000.00
Amount paid to              $
Total Amount Financed            $    30,000.00

Itemization of Prepaid Finance Charge
Origination Fee          $    3,519.55
Total Prepaid Finance Charge(s)         $    3,519.55

BKJUDP   Education Maximizer Ugrad Loan        File Copy

EX-99.4 9 d719503.htm DEPOSIT AND SALE AGREEMENT

EXHIBIT 99.4

## DEPOSIT AND SALE AGREEMENT

## THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-4

This DEPOSIT AND SALE AGREEMENT (the "Sale Agreement"), dated as of September 20, 2007, between The National Collegiate Funding LLC, as seller (in such capacity, the "Seller"), and The National Collegiate Student Loan Trust 2007-4, as purchaser (the "Purchaser"), shall be effective upon execution by the parties hereto.

WHEREAS, the Seller is the owner of certain student loans; and

WHEREAS, the Seller desires to sell its interest in such student loans and the Purchaser desires to purchase such loans from the Seller.

NOW, THEREFORE, in connection with the mutual promises contained herein, the parties hereto agree as follows:

## ARTICLE I
## TERMS

This Sale Agreement sets forth the terms under which the Seller is selling and the Purchaser is purchasing the student loans listed on Schedule 1 or Schedule 2 to each of the Pool Supplements set forth on Schedule A attached hereto (the "Transferred Student Loans").

## ARTICLE II
## DEFINITIONS

Capitalized terms used but not otherwise defined herein shall have the definitions set forth in Appendix A of the Indenture dated as of September 1, 2007 between U.S. Bank National Association (the "Indenture Trustee") and the Purchaser.

## ARTICLE III
## SALE AND PURCHASE

Section 3.01.    Sale of Loans.  The Seller hereby sells and the Purchaser hereby purchases the Transferred Student Loans.

Section 3.02.    Assignment of Rights.  The Seller hereby assigns to the Purchaser and the Purchaser hereby accepts all of the Seller's rights and interests under each of the Pool Supplements listed on Schedule A attached hereto and the related Student Loan Purchase Agreements listed on Schedule B attached hereto.

Section 3.03.    Settlement of the Payment.  The Purchaser shall pay the Seller the purchase price set forth in Article 2 of each of the Pool Supplements by wire transfer in immediately available funds to the account specified by the Seller.

Section 3.04.    Assistance by Seller.  Following the execution of this Sale Agreement, the Seller shall provide any reasonable assistance requested by the Purchaser in determining that all required documentation on the Transferred Student Loans is present and correct.

## ARTICLE IV
## REPRESENTATIONS, WARRANTIES AND COVENANTS OF SELLER

Section 4.01.    General. The Seller represents and warrants to the Purchaser that as of the date of this Sale Agreement:

(a)    The Seller is duly organized and existing under the laws of the State of Delaware; and

(b)    The Seller has all requisite power and authority to enter into and to perform the terms of this Sale Agreement.

Section 4.02.    Loan Representations. The Seller represents and warrants to the Purchaser that with respect to each Transferred Student Loan purchased by the Purchaser pursuant to this Sale Agreement, the Seller is making the same representations and warranties made by the respective program lender with respect to each Transferred Student Loan pursuant to the respective Student Loan Purchase Agreement listed on Schedule B attached hereto.

Section 4.03.    Covenants. The Seller, in its capacity as purchaser of the Transferred Student Loans pursuant to the Pool Supplements, hereby covenants that it will enforce the covenants and agreements of each program lender in the respective Student Loan Purchase Agreement and related Pool Supplement. The Seller further covenants that it will not waive, amend, modify, supplement or terminate any Student Loan Purchase Agreement or Pool Supplement or any provision thereof without the consent of the Purchaser, which consent the Purchaser hereby agrees not to provide without the prior written consent of the Indenture Trustee and the Controlling Party in accordance with the Purchaser's covenant in Section 3.07(c) of the Indenture.

<div align="center">

**ARTICLE V**
**PURCHASE OF LOANS; REIMBURSEMENT**

</div>

Each party to this Sale Agreement shall give notice to the other such parties and to the Servicers, First Marblehead Data Services, Inc., the Indenture Trustee and Wilmington Trust Company (the "Owner Trustee") promptly, in writing, upon the discovery of any breach of the Seller's representations and warranties made pursuant to this Sale Agreement which has a materially adverse effect on the interest of the Purchaser in any Transferred Student Loan. In the event of such a material breach, the Seller shall cure or repurchase the Transferred Student Loan in accordance with the remedies set forth in the respective Student Loan Purchase Agreement.

<div align="center">

**ARTICLE VI**
**LIABILITY OF SELLER; INDEMNITIES**

</div>

The Seller shall be liable in accordance herewith only to the extent of the obligations specifically undertaken by the Seller under this Sale Agreement.

(a)    The Seller shall indemnify, defend and hold harmless the Purchaser and the Owner Trustee in its individual capacity and their officers, directors, employees and agents from and against any taxes that may at any time be asserted against any such Person with respect to the transactions contemplated herein and in the other Basic Documents (except any such income taxes arising out of fees paid to the Owner Trustee), including any sales, gross receipts, general corporation, tangible and intangible personal property, privilege or license taxes and costs and expenses in defending against the same.

(b)    The Seller shall indemnify, defend and hold harmless the Purchaser and the Owner Trustee in its individual capacity and their officers, directors, employees and agents from and against any and all costs, expenses, losses, claims, damages and liabilities arising out of, or imposed upon such Person through, the Seller's willful misfeasance, bad faith or gross negligence in the performance of its duties under this Sale Agreement, or by reason of reckless disregard of its obligations and duties under this Sale Agreement.

Indemnification under this Section shall survive the termination of this Sale Agreement and shall include reasonable fees and expenses of counsel and expenses of litigation. If the Seller shall have made any indemnity payments pursuant to this Section and the Person to or for the benefit of whom such payments are made thereafter shall collect any of such amounts from others, such Person shall promptly repay such amounts to the Seller, without interest.

### ARTICLE VII
### MERGER OR CONSOLIDATION OF, OR ASSUMPTION
### OF THE OBLIGATIONS OF, SELLER

Any Person (a) into which the Seller may be merged or consolidated, (b) which may result from any merger or consolidation to which the Seller shall be a party or (c) which may succeed to the properties and assets of the Seller substantially as a whole, shall be the successor to the Seller without the execution or filing of any document or any further act by any of the parties to this Sale Agreement; provided, however, that the Seller hereby covenants that it will not consummate any of the foregoing transactions except upon satisfaction of the following: (i) the surviving Person, if other than the Seller, executes an agreement of assumption to perform every obligation of the Seller under this Sale Agreement, (ii) immediately after giving effect to such transaction, no representation or warranty made pursuant to this Sale Agreement shall have been breached, (iii) the surviving Person, if other than the Seller, shall have delivered an Officers' Certificate and an opinion of counsel each stating that such consolidation, merger or succession and such agreement of assumption comply with this Section and that all conditions precedent, if any, provided for in this Sale Agreement relating to such transaction have been complied with, and that the Rating Agency Condition shall have been satisfied with respect to such transaction and, so long as any of the Notes are outstanding or any amounts are owed to the Note Insurer, the consent of the Note Insurer, (iv) if the Seller is not the surviving entity, such transaction will not result in a material adverse federal or state tax consequence to the Purchaser or the Noteholders, and (v) if the Seller is not the surviving entity, the Seller shall have delivered an opinion of counsel either (A) stating that, in the opinion of such counsel, all financing statements and continuation statements and amendments thereto have been executed and filed that are necessary fully to preserve and protect the interest of the Purchaser in the Transferred Student Loans and reciting the details of such filings, or (B) stating that, in the opinion of such counsel, no such action shall be necessary to preserve and protect such interests.

### ARTICLE VIII
### LIMITATION ON LIABILITY OF SELLER AND OTHERS

The Seller and any director or officer or employee or agent thereof may rely in good faith on the advice of counsel or on any document of any kind, prima facie properly executed and submitted by any Person respecting any matters arising hereunder (provided that such reliance shall not limit in any way the Seller's obligations under this Sale Agreement). The Seller shall not be under any obligation to appear in, prosecute or defend any legal action that shall not be incidental to its obligations under this Sale Agreement or the Student Loan Purchase Agreements, and that in its opinion may involve it in any expense or liability.

### ARTICLE IX
### SURVIVAL OF COVENANTS

All covenants, agreements, representations and warranties made herein shall survive the consummation of the purchase of the Transferred Student Loans; provided, however, that to the extent any of the same relate to a corresponding covenant, agreement, representation or warranty contained in a Student Loan Purchase Agreement, the same shall survive to the extent that such corresponding covenant, agreement, representation or warranty survives the applicable Student Loan Purchase Agreement. All covenants, agreements, representations and warranties made or furnished pursuant hereto by or for the benefit of the Seller (including without limitation, under Article VI) shall bind and inure to the benefit of any successors or assigns of the Purchaser, including the Indenture Trustee. This Sale Agreement may be changed, modified or discharged, and any rights or obligations hereunder may be waived, only by a written instrument signed by a duly authorized officer of the party against whom enforcement of any such waiver, change, modification or discharge is sought. The waiver by the Indenture Trustee, at the direction of the Controlling Party or otherwise pursuant to the Indenture, of any covenant, agreement, representation or warranty required to be made or furnished by the Seller or the waiver by the Indenture Trustee, at the direction of the Controlling Party or otherwise pursuant to the Indenture, of any provision herein contained shall not be deemed to be a waiver of any breach of any other covenant, agreement, representation, warranty or provision herein contained, nor shall any waiver or any custom or practice which may evolve between the parties in the administration of the terms hereof, be construed to lessen the right of the Indenture Trustee, at the direction of the Controlling Party pursuant to the Indenture, to insist upon the performance by the Seller in strict accordance with said terms.

### ARTICLE X

## COMMUNICATION AND NOTICE REQUIREMENTS

All communications, notices and approvals provided for hereunder shall be in writing and mailed or delivered to the Seller or the Purchaser, as the case may be. Notice given in any such communication, mailed to the Seller or the Purchaser by appropriately addressed registered mail, shall be deemed to have been given on the day following the date of such mailing and shall be addressed as follows:

If to the Purchaser, to:

> The National Collegiate Student Loan Trust 2007-4
> c/o Wilmington Trust Company, as Owner Trustee
> Rodney Square North
> 100 North Market Street
> Wilmington, Delaware 19890-0001
> Attention: Corporate Trust Department

If to the Seller, to:

> The National Collegiate Funding LLC
> c/o First Marblehead Data Services, Inc.
> The Prudential Tower
> 800 Boylston Street - 34th Floor
> Boston, MA 02199-8157
> Attention: Ms. Rosalyn Bonaventure

with a copy to:

> First Marblehead Corporation
> The Prudential Tower
> 800 Boylston Street - 34th Floor
> Boston, MA 02199-8157
> Attention: Corporate Law Department

or to such other address as either party shall have provided to the other parties in writing. Any notice required to be in writing hereunder shall be deemed given if such notice is mailed by certified mail, postage prepaid, or hand delivered to the address of such party as provided above.

## ARTICLE XI
## AMENDMENT

This Sale Agreement may be amended by the parties hereto with the consent of the Note Insurer, but without the consent of the Noteholders, for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Sale Agreement or of modifying in any manner the rights of such Noteholders; provided that such action will not, in the opinion of counsel reasonably satisfactory to the Indenture Trustee, materially affect the interest of any such Noteholder.

In addition, this Sale Agreement may also be amended from time to time by the Seller and the Purchaser, with the consent of the Noteholders of the Notes evidencing a majority of the Outstanding Amount of the Notes and the consent of the Certificateholders of the Certificates evidencing a majority of the percentage interest in the Certificates and, so long as any of the Notes are outstanding or any amounts are owed to the Note Insurer, the consent of the Note Insurer, for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Sale Agreement or of modifying in any manner the rights of the Noteholders or the Certificateholders, respectively; provided, however, that no such amendment shall (a) increase or reduce in any manner the amount of, or accelerate or delay the time of, collections of payments with respect to Transferred Student Loans or distributions that shall be required to be made for the benefit of the Noteholders,

or (b) reduce the aforesaid percentage of the Outstanding Amount of the Notes or the Certificates, the Noteholders or the Certificateholders of which are required to consent to any such amendment, without the consent of all outstanding Noteholders or Certificateholders, respectively.

Promptly after the execution of any such amendment or consent (or, in the case of the Rating Agencies, five Business Days prior thereto), the Purchaser shall furnish written notification of the substance of such amendment or consent to the Indenture Trustee, the Note Insurer and each of the Rating Agencies.

It shall not be necessary for the consent of Noteholders pursuant to this Section to approve the particular form of any proposed amendment or consent, but it shall be sufficient if such consent shall approve the substance thereof.

Prior to the execution of any amendment to this Sale Agreement, the Owner Trustee shall be entitled to receive and rely upon an opinion of counsel stating that execution of such amendment is authorized or permitted by this Sale Agreement. The Owner Trustee may, but shall not be obligated to, enter into any such amendment which affects the Owner Trustee's own rights, duties or immunities under this Sale Agreement or otherwise.

## ARTICLE XII
## ASSIGNMENT

The Seller hereby assigns its entire right, title and interest as purchaser under this Sale Agreement and each Student Loan Purchase Agreement to the Purchaser as of the date hereof and acknowledges that the Purchaser will assign the same, together with the right, title and interest of the Purchaser hereunder, to the Indenture Trustee under the Indenture.

## ARTICLE XIII
## THIRD PARTY BENEFICIARY

The Noteholders and the Note Insurer are third party beneficiaries hereof.

## ARTICLE XIV
## GOVERNING LAW

THIS SALE AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, INCLUDING SECTIONS 5-1401 AND 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW, BUT OTHERWISE WITHOUT REGARD TO CONFLICT OF LAW PRINCIPLES, AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

## ARTICLE XV
## LIMITATION OF LIABILITY OF OWNER TRUSTEE

Notwithstanding anything contained herein to the contrary, this instrument has been executed by Wilmington Trust Company, not in its individual capacity but solely in its capacity as Owner Trustee of the Purchaser, and in no event shall Wilmington Trust Company in its individual capacity or any beneficial owner of the Purchaser have any liability for the representations, warranties, covenants, agreements or other obligations of the Purchaser hereunder, as to all of which recourse shall be had solely to the assets of the Purchaser. For all purposes of this Sale Agreement, in the performance of any duties or obligations of the Purchaser hereunder, the Owner Trustee shall be subject to, and entitled to the benefits of, the terms and provisions of Articles VIII, IX and X of the Trust Agreement.

[Signature Pages Follow]

IN WITNESS WHEREOF, the parties hereto have caused this Sale Agreement to be duly executed by their respective officers hereunto duly authorized, as of the day and year first above written.

THE NATIONAL COLLEGIATE FUNDING
LLC,
as Seller

By: GATE Holdings, Inc., Member


By: /s/ John A. Foxgrover
    Name:   John A. Foxgrover
    Title:   Vice President

THE NATIONAL COLLEGIATE STUDENT
LOAN TRUST 2007-4, as Purchaser

By: Wilmington Trust Company, not in its
    individual capacity but solely as Owner
    Trustee

By: /s/ Patricia A. Evans
    Name:   Patricia A. Evans
    Title:   Vice President

**SCHEDULE A**

*Pool Supplements*

Each of the following Pool Supplements was entered into by and among The First Marblehead Corporation, The National Collegiate Funding LLC and:

- Bank of America, N.A., dated September 20, 2007, for loans that were originated under Bank of America's Direct to Consumer Loan Program.

- Bank of America, N.A., dated September 20, 2007, for loans that were originated under Bank of America's Private Loan Program, TERI (School Channel) Loan Program and TERI ISLP Loan Program.

- RBS Citizens, N.A., successor by merger to Charter One Bank, N.A., dated September 20, 2007, for loans that were originated under the following Charter One programs: AAA Southern New England Bank, AES EducationGAIN Loan Program, Citibank Education Assistance Loan Program, College Loan Corporation Loan Program, National Education Loan Program, NextStudent Alternative Loan Program, Astrive Education (f/k/a START) Loan Program, AstriveAlliance Education (f/k/a START) Loan Program, Alternative Loan Program, E-Loan Private Loan Program, UPromise Alternative Loan Program, Collegiate Solutions Alternative Loan Program, College Board Alternative Loan Program, Axiom Alternative Loan Program, American Student Loan Services Private Loan Program, nBuy Private Loan Program and ThinkFinancial Alternative Loan Program.

- RBS Citizens, N.A., successor by merger to Citizens Bank of Rhode Island, dated September 20, 2007, for loans that were originated under Citizens Bank of Rhode Island's Alternative Loan Program, ISLP Loan Program, Compass Bank Loan Program, Navy Federal Alternative Loan Program, FinanSure Alternative Loan Program, Xanthus Alternative Loan Program and Penn State Undergraduate Loan Program.

- Comerica Bank, dated September 20, 2007, for loans that were originated under Comerica Bank's Private Loan Program.

- HSBC Bank USA, National Association, dated September 20, 2007, for loans that were originated under the HSBC Loan Program.

- The Huntington National Bank, dated September 20, 2007, for loans that were originated under the Huntington Education Loan Program.

- InsurBanc, dated September 20, 2007, for loans that were originated under the InsurBanc Loan Program.

- JPMorgan Chase Bank, N.A. (successor to Bank One, N.A.) dated September 20, 2007, for loans that were originated under Bank One's CORPORATE ADVANTAGE Loan Program, EDUCATION ONE Loan Program, and Campus One Loan Program.

- KeyBank National Association, dated September 20, 2007, for loans that were originated under KeyBank's Private Education Loan Program.

- Manufacturers and Traders Trust Company, dated September 20, 2007, for loans that were originated under the M&T Alternative Loan Program.

- National City Bank, dated September 20, 2007, for loans that were originated under the National City Loan Program.

- National City Bank, dated September 20, 2007, for loans that were originated under the National City Bank Referral Loan Program, including the Astute Private Loan Program and Student Lending Works Private Loan Program.

- PNC Bank, N.A., dated September 20, 2007, for loans that were originated under PNC Bank's PNC Bank Alternative Loan Program, Brazos Alternative Loan Program, Edvisors Alternative Loan Program, Fondo Futuro Loan Program, GE Money Bank Student Loan Program, Old National Bank Private Loan Program, and Regions Bank Private Loan Program.

- Sovereign Bank, dated September 20, 2007, for loans that were originated under Sovereign Bank's Alternative Student Loan Program.

- SunTrust Bank, dated September 20, 2007, for loans that were originated under the SunTrust Loan Program.

- TCF National Bank, dated September 20, 2007, for loans that were originated under the TCF National Bank Alternative Loan Program.

- Union Federal Savings Bank, dated September 20, 2007, for loans that were originated under the UFSB Astrive Loan Program.

## SCHEDULE B

### *Note Purchase Agreements*

Each of the Note Purchase Agreements, as amended or supplemented, was entered into by and between The First Marblehead Corporation and:

- Bank of America, N.A., dated April 30, 2001, for loans that were originated under Bank of America's Private Loan Program, TERI School Channel Loan Program and ISLP Loan Program.

- Bank of America, N.A., dated June 30, 2006, for loans that were originated under Bank of America's Private Loan Program, TERI School Channel Loan Program and ISLP Loan Program.

- Bank of America, N.A., dated April 1, 2006, for loans that were originated under Bank of America's Direct to Consumer Loan Program.

- Charter One Bank, N.A., dated as of December 29, 2003 for loans that were originated under Charter One's AAA Southern New England Bank Loan Program.

- Charter One Bank, N.A., dated October 31, 2003, for loans that were originated under Charter One's AES EducationGAIN Loan Program.

- Charter One Bank, N.A., dated June 30, 2003, for loans that were originated under Charter One's Citibank Education Assistance Loan Program.

- Charter One Bank, N.A., dated July 1, 2002, for loans that were originated under Charter One's College Loan Corporation Loan Program.

- Charter One Bank, N.A., dated November 17, 2003, for loans that were originated under Charter One's National Education Loan Program.

- Charter One Bank, N.A., dated May 15, 2002, for loans that were originated under Charter One's NextStudent Alternative Loan Program.

- Charter One Bank, N.A., dated March 25, 2004, for loans that were originated under Charter One's Astrive and AstriveAlliance Education (f/k/a START) Loan Programs.

- Charter One Bank, N.A., dated February 15, 2005, for loans that were originated under Charter One's Referral Loan Program (including loans in the Charter One Bank Alternative Loan Program, E-Loan Private Loan Program, UPromise Alternative Loan Program, Collegiate Solutions Alternative Loan Program, College Board Alternative Loan Program, Axiom Alternative Loan Program, American Student Loan Services Private Loan Program, nBuy Private Loan Program, and ThinkFinancial Alternative Loan Program).

- Citizens Bank of Rhode Island, dated April 30, 2004, for loans that were originated under Citizens Bank of Rhode Island's Alternative Loan Program, ISLP Loan Program, Compass Bank Loan Program, FinanSure Alternative Loan Program, Navy Federal Alternative Loan Program, and Xanthus Alternative Loan Program.

- Citizens Bank of Rhode Island, dated October 1, 2002, for loans that were originated under Citizens Bank of Rhode Island's Penn State Undergraduate Loan Program.

- Comerica Bank, dated June 30, 2006, for loans that were originated under Comerica Bank's Private Loan Program.

- HSBC Bank USA, National Association, dated April 17, 2002, as amended on June 2, 2003 and August 1, 2003, for loans that were originated under the HSBC Loan Program.

- The Huntington National Bank, dated May 20, 2003, for loans that were originated under the Huntington Education Loan Program.

- InsurBanc, dated July 1, 2006, for loans that were originated under the InsurBanc Loan Program.

- JPMorgan Chase Bank, N.A., (successor to Bank One, N.A.), dated May 1, 2002, for loans that were originated under Bank One's CORPORATE ADVANTAGE Loan Program, EDUCATION ONE Loan Program, and Campus One Loan Program.

- KeyBank National Association, dated May 12, 2006, for loans that were originated under KeyBank's Private Education Loan Program.

- Manufacturers and Traders Trust Company, dated April 29, 2004, for loans that were originated under the M&T Alternative Loan Program.

- National City Bank, dated November 13, 2002, for loans that were originated under the National City Loan Program.

- National City Bank, dated July 21, 2006, for loans that were originated under the National City Referral Loan Program, including the Astute Private Loan Program and Student Lending Works Private Loan Program.

- PNC Bank, N.A., dated April 22, 2004, for loans that were originated under PNC Bank's Alternative Loan Program, Brazos Alternative Loan Program, Edvisors Alternative Loan Program, Fondo Futuro Loan Program, GE Money Bank Student Loan Program, Old National Bank Private Loan Program, and Regions Bank Private Loan Program.

- Sovereign Bank, dated April 30, 2004, for loans that were originated under Sovereign Bank's Alternative Student Loan

Program.

- SunTrust Bank, dated March 1, 2002, for loans that were originated under the SunTrust Loan Program.

- TCF National Bank, dated July 22, 2005, for loans that were originated under the TCF National Bank Alternative Loan Program.

- Union Federal Savings Bank, dated March 26, 2007, for loans that were originated under the UFSB Astrive Loan Program.

## POOL SUPPLEMENT (DTC ONLY)
## BANK OF AMERICA, N.A.

This Pool Supplement (the "Supplement") is entered into pursuant to and forms a part of that certain Amended and Restated Note Purchase Agreement dated as of April 1, 2006, as amended or supplemented from the date of execution of the Agreement through the date of this Supplement (together, the "Agreement"), by and between The First Marblehead Corporation and Bank of America, N.A. (the "Program Lender"). This Supplement is dated as of September 20, 2007. Capitalized terms used in this Supplement without definitions have the meanings set forth in the Agreement.

### Article 1: Purchase and Sale.

In consideration of the Minimum Purchase Price set forth below, the Program Lender hereby transfers, sells, sets over and assigns to The National Collegiate Funding LLC (the "Depositor"), upon the terms and conditions set forth in the Agreement (which are incorporated herein by reference with the same force and effect as if set forth in full herein), each student loan set forth on the attached Schedule 1 (the "Transferred Bank of America Loans") along with all of the Program Lender's rights under the Guaranty Agreement, and any agreement pursuant to which TERI granted collateral for its obligations under the Guaranty Agreement, relating to the Transferred Bank of America Loans. The Depositor in turn will sell the Transferred Bank of America Loans to a Purchaser Trust. The Program Lender hereby transfers and delivers to the Depositor each Note evidencing such Transferred Bank of America Loan and all Origination Records relating thereto, together with any additional information relating to the Transferred Bank of America Loans heretofore provided by TERI (as origination agent) to the Servicer or FMC in connection with the subject Securitization Transaction. The Depositor hereby purchases said Notes on said terms and conditions.

### Article 2: Price.

The amounts paid pursuant to this Supplement are the amounts set forth on Schedule 2 attached hereto.

### Article 3: Representations and Warranties.

#### 3.01. By Program Lender.

The Program Lender repeats the representations and warranties contained in Section 5.02 of the Agreement for the benefit of each of the Depositor and the Purchaser Trust and confirms the same are true and correct as of the date hereof with respect to the Agreement and to this Supplement.

#### 3.02. By Depositor.

The Depositor hereby represents and warrants to the Program Lender that at the date of execution and delivery of this Supplement by the Depositor:

(a)     The Depositor is duly organized and validly existing as a limited liability company under the laws of the State of Delaware with the due power and authority to own its properties and to conduct its business as such properties are currently owned and such business is presently conducted, and had at all relevant times, and has, the power, authority and legal right to acquire and own the Transferred Bank of America Loans.

(b)     The Depositor is duly qualified to do business and has obtained all necessary licenses and approvals in all jurisdictions in which the ownership or lease of property or the conduct of its business shall require such qualifications.

(c)     The Depositor has the power and authority to execute and deliver this Supplement and to carry out its respective terms; the Depositor has the power and authority to purchase the Transferred Bank of America Loans and rights relating thereto as provided herein from the Program Lender, and the Depositor has duly authorized such purchase from the Program Lender by all necessary action; and the execution, delivery and performance of this Supplement has been duly authorized by the Depositor by all necessary action on the part of the Depositor.

(d)     This Supplement, together with the Agreement of which this Supplement forms a part, constitutes a legal, valid and binding obligation of the Depositor, enforceable in accordance with its terms.

(e)     The consummation of the transactions contemplated by the Agreement and this Supplement and the fulfillment of the terms hereof do not conflict with, result in any breach of any of the terms and provisions of, or constitute (with or without notice or lapse of time) a default under, the governing instruments of the Depositor or any indenture, agreement or other instrument to which the Depositor is a party or by which it is bound; or result in the creation or imposition of any lien upon any of its properties pursuant to the terms of any such indenture, agreement or other instrument; or violate any law or any order, rule or regulation applicable to the Depositor of any court or of any federal or state regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties.

(f)     There are no proceedings or investigations pending, or threatened, before any court, regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties: (i) asserting the invalidity of the Agreement or this Supplement, (ii) seeking to prevent the consummation of any of the transactions contemplated by the Agreement or this Supplement, or (iii) seeking any determination or ruling that is likely to materially or adversely affect the performance by the Depositor of its obligations under, or the validity or enforceability of the Agreement or this Supplement.

<u>Article 4: Cross Receipt</u>.

The Program Lender hereby acknowledges receipt of the Minimum Purchase Price.  The Depositor hereby acknowledges receipt of the Transferred Bank of America Loans.

### Article 5:  Assignment of Origination, Guaranty and Servicing Rights.

The Program Lender hereby assigns and sets over to the Depositor any claims it may now or hereafter have under the Guaranty Agreement, the Origination Agreement and the Servicing Agreement to the extent the same relate to the Transferred Bank of America Loans described in Schedule 1, other than any right to obtain servicing after the date hereof. It is the intent of this provision to vest in the Depositor any claim of the Program Lender relating to defects in origination, guaranty or servicing of the loans purchased hereunder in order to permit the Depositor to assert such claims directly and obviate any need to make the same claims against the Program Lender under this Supplement. The Program Lender also hereby assigns and sets over to the Depositor any claims it may now have or hereafter have to any collateral pledged by TERI to the Program Lender to secure its obligations under the Guaranty Agreement that relates to the Transferred Bank of America Loans, and the Program Lender hereby releases any security interest it may have in such collateral.  The Program Lender hereby authorizes the Depositor, its successors and assigns, to file in any public filing office where a Uniform Commercial Code Filing with respect to collateral pledged by TERI is of record, any partial release or assignment that it deems necessary or appropriate to reflect in the public records the conveyance and assignment effected hereby.

[Remainder of page intentionally blank]

[F0013443 1 ]

IN WITNESS WHEREOF, the parties have caused this Supplement to be executed as of the date set forth above.

THE FIRST MARBLEHEAD CORPORATION

By: _____
John A. Foxgrover
Senior Vice President

BANK OF AMERICA, N.A.

By: _____
    Name:
    Title:

THE NATIONAL COLLEGIATE FUNDING LLC

By:    GATE Holdings, Inc., Member

By: _____
John A. Foxgrover
Vice President

-4-

IN WITNESS WHEREOF, the parties have caused this Supplement to be executed as of the date set forth above.

THE FIRST MARBLEHEAD CORPORATION

By:_____
     John A. Foxgrover
     Senior Vice President

BANK OF AMERICA, N.A.

By: _____
     Name: ANDREW IRWIN
     Title: SENIOR VICE PRESIDENT

THE NATIONAL COLLEGIATE FUNDING LLC

By:    GATE Holdings, Inc., Member

     By: _____
          John A. Foxgrover
          Vice President

-4-

{F0013443.1}

| National Collegiate Student Loan Trust 2007-4 | | | | |
|---|---|---|---|---|
| Roster: | BANK OF AMERICA | | Final Reconciliation Settlement Figures | |
| **Lender** | **Lender Code** | **Marketer** | **Loan Product** | **BSSN** |
| BANK OF AMERICA | 900008QC | Bank of America | DTC - Undergraduate | 3085 |
| **GUARREF** | **Disb. Date** | **Tier** | **Repay Type** | **Margin** |
| 5365689 | 7/19/2007 | 9 | DP | 7.75% |
| **Fee to Borrower** | **TERI Admin Fee** | **Marketing Fee** | **Total Gross Disbursed** | **Total Net Disbursed** |
| 10.50% | 1.75% | 7.50% | 33519.55 | 29999.9972 |
| **Total Net Principal** | **Total Capitalized Interest** | **Total Outstanding Gross Principal** | **Total Outstanding Unpaid Interest** | **Administrative Fee Reimbursement on 0% Fee Loans** |
| 29999.9972 | 0 | 33519.55 | 756.17 | 0 |
| **Origination Fee Reimbursement Due Bank** | **Total Marketing Fees** | **Marketing Fees Due FMC** | **Marketing Fees Due Bank** | **Total Amount Due Bank** |
| 225 | 2249.9998 | 0 | 2249.9998 | 36750.7198 |

Case 15-01175-mkn   Doc 9-3   Entered 06/09/16 14:02:26   Page 226 of 240

```
ITS2V     3085;                    AES/PA         VTAM NAC6        TSX2W
DATE 11/04/15 09:19:30   DEFERMENT/FORBEARANCE SUMMARY      PAGE 1 OF  4

BORROWER SSN     -3085   NAME JAVIER MEDINA

DEFER/FORB    BEGIN    END
   TYPE       DATE     DATE      1ST DISB LOAN PGM         OWNER
F-BANKRUPT  12/22/10 04/04/11  1 07/19/07 ALPLN      NCT
                               2 06/21/06 ALPLN      NCT
                               3 04/12/06 ALPLN      NCT
                               4 08/29/05 ALPLN      NCT
                               5 05/16/05 ALPLN      NCT
                               6 07/23/04 ALPLN      NCT
F-ADMINIST  09/17/10 12/21/10  7 07/19/07 ALPLN      NCT
                               8 06/21/06 ALPLN      NCT
                               9 04/12/06 ALPLN      NCT
                              10 08/29/05 ALPLN      NCT
                              11 05/16/05 ALPLN      NCT
                              12 07/23/04 ALPLN      NCT

                          SELECTION __


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

Nov 4, 2015 9:19:54 AM

```
ITS2V      3085;                    AES/PA        VTAM NAC6        TSX2W
DATE 11/04/15 09:19:56    DEFERMENT/FORBEARANCE SUMMARY      PAGE  2 OF  4

BORROWER SSN      3085   NAME JAVIER MEDINA

  DEFER/FORB   BEGIN     END
    TYPE       DATE      DATE       1ST DISB LOAN PGM           OWNER
  F-ADMINIST   03/01/10 03/31/10  1 07/19/07 ALPLN      NCT
                                  2 06/21/06 ALPLN      NCT
                                  3 04/12/06 ALPLN      NCT
                                  4 08/29/05 ALPLN      NCT
                                  5 05/16/05 ALPLN      NCT
                                  6 07/23/04 ALPLN      NCT
  F-TEMP HRD   10/01/09 01/31/10  7 07/19/07 ALPLN      NCT
                                  8 06/21/06 ALPLN      NCT
                                  9 04/12/06 ALPLN      NCT
                                 10 08/29/05 ALPLN      NCT
                                 11 05/16/05 ALPLN      NCT
                                 12 07/23/04 ALPLN      NCT

                         SELECTION __


 F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

```
ITS2V     3085;                    AES/PA        VTAM NAC6      TSX2W
DATE 11/04/15 09:20:06    DEFERMENT/FORBEARANCE SUMMARY      PAGE  3 OF  4

BORROWER SSN     3085    NAME JAVIER MEDINA

  DEFER/FORB    BEGIN     END
    TYPE        DATE      DATE      1ST DISB LOAN PGM         OWNER
  F-TEMP HRD  04/01/09 09/30/09   1 07/19/07 ALPLN      NCT
                                  2 06/21/06 ALPLN      NCT
                                  3 04/12/06 ALPLN      NCT
                                  4 08/29/05 ALPLN      NCT
                                  5 05/16/05 ALPLN      NCT
                                  6 07/23/04 ALPLN      NCT
  D-SCHL FUL  09/16/08 11/29/10   7 07/19/07 ALPLN      NCT
                                  8 06/21/06 ALPLN      NCT
                                  9 04/12/06 ALPLN      NCT
                                 10 08/29/05 ALPLN      NCT
                                 11 05/16/05 ALPLN      NCT
                                 12 07/23/04 ALPLN      NCT

                            SELECTION __


  F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

```
ITS2V ▨▨ 3085;                    AES/PA        VTAM NAC6        TSX2W
DATE 11/04/15 09:20:18    DEFERMENT/FORBEARANCE SUMMARY      PAGE  4 OF  4

BORROWER SSN ██▨▨ 3085   NAME JAVIER MEDINA

  DEFER/FORB    BEGIN     END
    TYPE        DATE      DATE     1ST DISB LOAN PGM        OWNER
  F-TEMP HRD  08/01/08 01/31/09  1 07/19/07 ALPLN     NCT
                                 2 06/21/06 ALPLN     NCT
                                 3 04/12/06 ALPLN     NCT
                                 4 08/29/05 ALPLN     NCT
                                 5 05/16/05 ALPLN     NCT
                                 6 07/23/04 ALPLN     NCT




                        SELECTION __


  F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

Nov 4, 2015 9:20:29 AM

Redacted3085;;                    AES/PA          VTAM NAFC        TSX2D
DATE 05/20/16 09:56:25    LOAN FINANCIAL ACTIVITY          PAGE  1 OF  4

BORROWER SSN: Redacted3085  NAME: MEDINA, JAVIER
1ST DISB: 07/19/07 LN SEQ: 0006  LN PGM: ALPLN   OWN: 122962QC-NCT
GUARANTOR: TERI - DTC           CUST ACCT:  LT15  ORIG BAL:  33,519.55
BOND ISSUE: NCT20074   PD AHEAD:    STATUS: ACTIVE     CURR BAL:      0.00

|   | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|---|---|---|---|---|---|---|---|
| 1 | | 12/02/11 | 12/02/11 | 5003A | 30.00CR | 0.00 | 0.00 |
| 2 | | 12/01/11 | 12/01/11 | 1030A | 42,268.33CR | 131.88 | 0.00 |
| 3 | | 11/16/11 | | 2601A | 5.00 | 263.43 | 40,164.40 |
| 4 | | 10/17/11 | | 2601A | 5.00 | 271.37 | 40,164.40 |
| 5 | | 09/16/11 | | 2601A | 5.00 | 270.85 | 40,164.40 |
| 6 | | 08/16/11 | | 2601A | 5.00 | 262.11 | 40,164.40 |
| 7 | | 07/17/11 | | 2601A | 5.00 | 271.18 | 40,164.40 |
| 8 | | 06/16/11 | | 2601A | 5.00 | 633.11 | 40,164.40 |
| 9 | | 04/05/11 | 04/08/11 | 7001A | 0.00 | 896.11 | 40,164.40 |
| 10 | | 12/22/10 | 04/08/11 | 7001A | 0.00 | 972.02 | 39,268.29 |

SELECTION ._

F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN

Redacted 3085;;                    AES/PA        VTAM NAFC        TSX2D
DATE 05/20/16 09:56:33        LOAN FINANCIAL ACTIVITY            PAGE  2 OF  4

BORROWER SSN: Redacted 3085  NAME: MEDINA, JAVIER
1ST DISB: 07/19/07 LN SEQ: 0006  LN PGM: ALPLN    OWN: 122962QC-NCT
GUARANTOR: TERI – DTC             CUST ACCT:  LT15  ORIG BAL:  33,519.55
BOND ISSUE: NCT20074   PD AHEAD:    STATUS: ACTIVE     CURR BAL:      0.00

| | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|---|---|---|---|---|---|---|---|
| 1 | | 08/27/10 | 08/27/10 | 1010C | 620.00CR | 92.24 | 37,787.45 |
| 2 | | 08/16/10 | | 2601A | 1.25 | 117.39 | 37,787.45 |
| 3 | | 08/02/10 | 08/02/10 | 1010C | 27.96CR | 134.17 | 37,787.45 |
| 4 | | 07/17/10 | | 2601A | 1.25 | 134.17 | 37,787.45 |
| 5 | | 07/01/10 | 07/01/10 | 1010C | 27.97CR | 124.69 | 37,787.45 |
| 6 | | 06/16/10 | | 2601A | 1.25 | 190.95 | 37,787.45 |
| 7 | | 05/24/10 | 05/25/10 | 1010C | 27.96CR | 57.97 | 37,787.45 |
| 8 | | 05/17/10 | | 2601A | 5.00 | 281.22 | 37,787.45 |
| 9 | | 04/13/10 | 04/13/10 | 1010C | 27.97CR | 99.13 | 37,787.45 |
| 10 | | 04/01/10 | 04/01/10 | 7001A | 0.00 | 481.21 | 37,787.45 |

        SELECTION __                        ╱

F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN

Redacted                              May 20, 2016 9:56:27 AM

Redacted 3085;;                    AES/PA            VTAM NAFC        TSX2D
DATE 05/20/16 09:56:37        LOAN FINANCIAL ACTIVITY          PAGE 3 OF 4

BORROWER SSN: Redacted 3085  NAME: MEDINA, JAVIER
1ST DISB: 07/19/07 LN SEQ: 0006  LN PGM: ALPLN    OWN: 122962QC-NCT
GUARANTOR: TERI - DTC          CUST ACCT:  LT15  ORIG BAL:  33,519.55
BOND ISSUE: NCT20074    PD AHEAD:    STATUS: ACTIVE    CURR BAL:      0.00

|   | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|---|---------|----------------|-------------|-----------|-------------|------------------|-------------------|
| 1 |  | 02/01/10 | 02/01/10 | 7001A | 0.00 | 979.03 | 37,306.24 |
| 2 |  | 10/01/09 | 10/02/09 | 7001A | 0.00 | 1,476.31 | 36,327.21 |
| 3 |  | 03/25/09 | 03/25/09 | 7001A | 0.00 | 678.34 | 34,850.90 |
| 4 |  | 01/01/09 | 01/02/09 | 7001A | 0.00 | 898.28 | 34,172.56 |
| 5 |  | 10/01/08 | 11/07/08 | 7001A | 0.00 | 138.65 | 33,274.28 |
| 6 |  | 09/16/08 | 11/07/08 | 7001A | 0.00 | 607.95 | 33,135.63 |
| 7 |  | 07/11/08 | 11/07/08 | 7001A | 0.00 | 90.48 | 32,527.68 |
| 8 |  | 07/01/08 | 11/07/08 | 7001A | 0.00 | 834.32 | 32,437.20 |
| 9 |  | 04/01/08 | 11/07/08 | 7001A | 0.00 | 136.39 | 31,602.88 |
| 10 |  | 03/17/08 | 03/25/08 | 1040C | 4,942.46CR | 907.02 | 30,559.47 |

        SELECTION __

F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN

Redacted

May 20, 2016 9:56:30 AM

Redacted 3085;;                        AES/PA         VTAM NAFC        TSX2D
DATE 05/20/16 09:56:40       LOAN FINANCIAL ACTIVITY           PAGE  4 OF  4

BORROWER SSN: Redacted 3085   NAME: MEDINA, JAVIER
1ST DISB: 07/19/07 LN SEQ: 0006  LN PGM: ALPLN    OWN: 122962QC-NCT
GUARANTOR: TERI - DTC              CUST ACCT:  LT15  ORIG BAL:  33,519.55
BOND ISSUE: NCT20074   PD AHEAD:     STATUS: ACTIVE     CURR BAL:      0.00

|   | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|---|---------|----------------|-------------|-----------|-------------|------------------|-------------------|
| 1 |         | 01/01/08       | 01/02/08    | 7001A     | 0.00        | 1,226.21         | 35,501.93         |
| 2 |         | 09/20/07       | 09/20/07    | 0390A     | 34,275.72   | 0.00             | 33,519.55         |
| 3 |         | 09/20/07       | 09/20/07    | 0395A     | 34,275.72CR | 756.17           | 0.00              |
| 4 |         | 07/19/07       | 07/19/07    | 0101A     | 33,519.55   | 0.00             | 33,519.55         |

        SELECTION __

 F1=HELP   F3=EXIT   F5=RFR   F7=BKWD   F8=FWD   F9=PRT   F12=CAN

Redacted

                                            May 20, 2016 9:56:34 AM

Redacted3085;                          AES/PA        VTAM NAFC        TSX2Y
DATE 05/20/16 09:57:22 REPAYMENT SCHEDULE SUMMARY SELECTION   PAGE  1 OF  4


BORROWER SSN Redacted3085   NAME JAVIER MEDINA


|     |     | SCHED | INSTALL | REPAY | REPAY | 1ST DUE  | 1ST DISB | LOAN |       |
|-----|-----|-------|---------|-------|-------|----------|----------|------|-------|
| SEL | STA | TYPE  | AMOUNT  | LVLS  | TERM  | DATE     | DATE     | PGM  | OWNER |
| 1   | I   | L     | 372.26  | 2     | 216   | 05/17/11 | 07/23/04 | ALPLN | NCT  |
| 2   | I   | L     | 353.64  | 2     | 216   | 05/17/11 | 05/16/05 | ALPLN | NCT  |
| 3   | I   | L     | 346.17  | 2     | 216   | 05/17/11 | 08/29/05 | ALPLN | NCT  |
| 4   | I   | L     | 102.42  | 2     | 216   | 05/17/11 | 04/12/06 | ALPLN | NCT  |
| 5   | I   | L     | 323.12  | 2     | 216   | 05/17/11 | 06/21/06 | ALPLN | NCT  |
| 6   | I   | L     | 352.55  | 2     | 216   | 05/17/11 | 07/19/07 | ALPLN | NCT  |
| 7   | I   | L     | 358.39  | 2     | 222   | 08/17/10 | 07/23/04 | ALPLN | NCT  |
| 8   | I   | L     | 340.48  | 2     | 222   | 08/17/10 | 05/16/05 | ALPLN | NCT  |
| 9   | I   | L     | 333.30  | 2     | 222   | 08/17/10 | 08/29/05 | ALPLN | NCT  |
| 10  | I   | L     | 99.06   | 2     | 222   | 08/17/10 | 04/12/06 | ALPLN | NCT  |
| 11  | I   | L     | 311.15  | 2     | 222   | 08/17/10 | 06/21/06 | ALPLN | NCT  |
| 12  | I   | L     | 335.78  | 2     | 222   | 08/17/10 | 07/19/07 | ALPLN | NCT  |


SELECTION    __


F1=HELP   F3=EXIT   F5=RFR   F7=BKWD   F8=FWD   F9=PRT   F12=CAN

Redacted3085;                    AES/PA           VTAM NAFC          TSX2Y
DATE 05/20/16 09:57:28 REPAYMENT SCHEDULE SUMMARY SELECTION   PAGE  2 OF  4

BORROWER SSN Redacted3085   NAME JAVIER MEDINA

| SEL | STA | SCHED TYPE | INSTALL AMOUNT | REPAY LVLS | REPAY TERM | 1ST DUE DATE | 1ST DISB DATE | LOAN PGM | OWNER |
|-----|-----|------------|----------------|------------|------------|--------------|---------------|----------|-------|
| 1   | I   | RP | 25.00  | 3 | 225 | 05/17/10 | 04/12/06 | ALPLN | NCT |
| 2   | I   | RP | 25.00  | 3 | 225 | 05/17/10 | 07/23/04 | ALPLN | NCT |
| 3   | I   | RP | 25.00  | 3 | 225 | 05/17/10 | 05/16/05 | ALPLN | NCT |
| 4   | I   | RP | 25.00  | 3 | 225 | 05/17/10 | 08/29/05 | ALPLN | NCT |
| 5   | I   | RP | 25.00  | 3 | 225 | 05/17/10 | 06/21/06 | ALPLN | NCT |
| 6   | I   | RP | 25.00  | 3 | 225 | 05/17/10 | 07/19/07 | ALPLN | NCT |
| 7   | I   | L  | 347.72 | 2 | 226 | 03/17/10 | 07/23/04 | ALPLN | NCT |
| 8   | I   | L  | 330.34 | 2 | 226 | 03/17/10 | 05/16/05 | ALPLN | NCT |
| 9   | I   | L  | 323.37 | 2 | 226 | 03/17/10 | 08/29/05 | ALPLN | NCT |
| 10  | I   | L  | 96.13  | 2 | 226 | 03/17/10 | 04/12/06 | ALPLN | NCT |
| 11  | I   | L  | 301.88 | 2 | 226 | 03/17/10 | 06/21/06 | ALPLN | NCT |
| 12  | I   | L  | 320.70 | 2 | 226 | 03/17/10 | 07/19/07 | ALPLN | NCT |

SELECTION   __


F1=HELP   F3=EXIT   F5=RFR   F7=BKWD   F8=FWD   F9=PRT   F12=CAN

Redacted                                      May 20, 2016 9:57:22 AM

Redacted 3085;                   AES/PA          VTAM NAFC        TSX2Y
DATE 05/20/16 09:57:32 REPAYMENT SCHEDULE SUMMARY SELECTION   PAGE  3 OF  4

BORROWER SSN  Redacted 3085    NAME JAVIER MEDINA

|     |     | SCHED | INSTALL | REPAY | REPAY | 1ST DUE | 1ST DISB | LOAN |       |
| SEL | STA | TYPE  | AMOUNT  | LVLS  | TERM  | DATE    | DATE     | PGM  | OWNER |
| 1   | I   | L     | 336.77  | 2     | 231   | 11/01/09 | 07/23/04 | ALPLN | NCT   |
| 2   | I   | L     | 319.93  | 2     | 231   | 11/01/09 | 05/16/05 | ALPLN | NCT   |
| 3   | I   | L     | 313.19  | 2     | 231   | 11/01/09 | 08/29/05 | ALPLN | NCT   |
| 4   | I   | L     | 93.15   | 2     | 231   | 11/01/09 | 04/12/06 | ALPLN | NCT   |
| 5   | I   | L     | 292.37  | 2     | 231   | 11/01/09 | 06/21/06 | ALPLN | NCT   |
| 6   | I   | L     | 308.13  | 2     | 231   | 11/01/09 | 07/19/07 | ALPLN | NCT   |
| 7   | I   | L     | 394.47  | 2     | 237   | 04/24/09 | 07/23/04 | ALPLN | NCT   |
| 8   | I   | L     | 374.75  | 2     | 237   | 04/24/09 | 05/16/05 | ALPLN | NCT   |
| 9   | I   | L     | 366.85  | 2     | 237   | 04/24/09 | 08/29/05 | ALPLN | NCT   |
| 10  | I   | L     | 109.35  | 2     | 237   | 04/24/09 | 04/12/06 | ALPLN | NCT   |
| 11  | I   | L     | 342.46  | 2     | 237   | 04/24/09 | 06/21/06 | ALPLN | NCT   |
| 12  | I   | L     | 297.10  | 2     | 237   | 04/24/09 | 07/19/07 | ALPLN | NCT   |

SELECTION   __


F1=HELP   F3=EXIT   F5=RFR   F7=BKWD   F8=FWD   F9=PRT   F12=CAN

Redacted                                         May 20, 2016 9:57:26 AM

Redacted 3085;                    AES/PA          VTAM NAFC       TSX2Y
DATE 05/20/16 09:57:35 REPAYMENT SCHEDULE SUMMARY SELECTION    PAGE  4 OF  4

BORROWER SSN Redacted 3085    NAME JAVIER MEDINA

|     |     | SCHED | INSTALL | REPAY | REPAY | 1ST DUE | 1ST DISB | LOAN |       |
| SEL | STA | TYPE  | AMOUNT  | LVLS  | TERM  | DATE    | DATE     | PGM  | OWNER |
| 1   | I   | L     | 397.91  | 2     | 239   | 08/18/08 | 07/23/04 | ALPLN | NCT  |
| 2   | I   | L     | 378.02  | 2     | 239   | 08/18/08 | 05/16/05 | ALPLN | NCT  |
| 3   | I   | L     | 370.05  | 2     | 239   | 08/18/08 | 08/29/05 | ALPLN | NCT  |
| 4   | I   | L     | 110.53  | 2     | 239   | 08/18/08 | 04/12/06 | ALPLN | NCT  |
| 5   | I   | L     | 345.45  | 2     | 239   | 08/18/08 | 06/21/06 | ALPLN | NCT  |
| 6   | I   | L     | 324.72  | 2     | 239   | 08/18/08 | 07/19/07 | ALPLN | NCT  |

SELECTION  __


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN

Redacted                                    May 20, 2016 9:57:29 AM

# Loan Payment History Report
## Date: 2015-10-29

| | | | |
|---|---|---|---|
| Account Number: | Redacted 3085/006-001000 | Product: | DFU DIRECT TO CONSUMER UNDERGRAD |
| Social Security Number: | Redacted 3065 | | |
| Name: | MEDINA, JAVIER | Officer Code: | 777074 |
| Birth Date: | 1979 Redacted | School: | SPARTAN COLLEGE OF AERONAUTICS & TECH |
| Address 1: | C/O GOLDSTEIN PHILIP K | Program Year: | 2007-08 |
| Address 2: | 609 S 7TH ST | | |
| City: | LAS VEGAS | Variable Rate Code: | F3 MONTHLY LIBOR |
| State: | NV | Interest Rate: | 7.95% |
| Zip Code: | 89101 | Last Payment Date: | 2010-08-27 |
| | | Last Payment Amount: | $620.00 |
| | | Payment Due Date: | 2011-11-17 |
| Contract Date: | 2007-07-19 | Last Interest Date: | 2015-10-29 |
| Date Assigned: | 2015-10-14 | Accrued Interest: | $13,222.34 |
| Charge Off Date: | 2011-12-01 | Recovered Interest: | $0.00 |
| Charge Off Amount: | $42,268.33 | Net Interest: | $13,222.34 |
| Recovered Principal: | $0.00 | Associated Costs: | $0.00 |
| Net Charge Off: | $42,268.33 | Recovered Costs: | $0.00 |
| Disbursement Date: | 2007-07-19 | Net Costs: | $0.00 |
| Disbursement Amount: | $33,519.55 | | |

## Transaction History

| | | | | | |
|---|---|---|---|---|---|
| System | 2011-12-31 | 00:01 | 82 | $42,268.33 @ 8.000 / 12/01/2011 - 12/31/2011 | $277.93 |
| System | 2012-01-03 | 00:01 | 82 | $42,268.33 @ 8.020 / 12/31/2011 - 01/03/2012 | $27.78 |
| System | 2012-01-31 | 00:01 | 82 | $42,268.33 @ 8.020 / 01/03/2012 - 01/31/2012 | $259.34 |
| System | 2012-02-01 | 00:01 | 82 | $42,268.33 @ 8.020 / 01/31/2012 - 02/01/2012 | $9.26 |
| System | 2012-02-29 | 00:01 | 82 | $42,268.33 @ 8.050 / 02/01/2012 - 02/29/2012 | $260.31 |
| System | 2012-03-01 | 00:01 | 82 | $42,268.33 @ 8.010 / 02/29/2012 - 03/01/2012 | $9.25 |
| System | 2012-03-31 | 00:01 | 82 | $42,268.33 @ 8.010 / 03/01/2012 - 03/31/2012 | $277.52 |
| System | 2012-04-02 | 00:01 | 82 | $42,268.33 @ 8.010 / 03/31/2012 - 04/02/2012 | $18.50 |
| System | 2012-04-30 | 00:01 | 82 | $42,268.33 @ 7.990 / 04/02/2012 - 04/30/2012 | $258.37 |
| System | 2012-06-02 | 00:01 | 82 | $42,268.33 @ 7.990 / 04/30/2012 - 05/02/2012 | $18.45 |
| System | 2012-05-31 | 00:01 | 82 | $42,268.33 @ 7.990 / 05/02/2012 - 05/31/2012 | $267.60 |
| System | 2012-06-01 | 00:01 | 82 | $42,268.33 @ 7.990 / 05/31/2012 - 06/01/2012 | $9.23 |
| System | 2012-06-30 | 00:01 | 82 | $42,268.33 @ 7.990 / 06/01/2012 - 06/30/2012 | $267.60 |
| System | 2012-07-01 | 00:01 | 82 | $42,268.33 @ 7.990 / 06/30/2012 - 07/01/2012 | $9.23 |
| System | 2012-07-02 | 00:01 | 82 | $42,268.33 @ 7.990 / 07/01/2012 - 07/02/2012 | $9.23 |

| | | | | | |
|---|---|---|---|---|---|
| System | 2012-07-31 | 00:01 | 82 | $42,268.33 @ 7.990 / 07/02/2012 - 07/31/2012 | $267.60 |
| System | 2012-08-01 | 00:01 | 82 | $42,268.33 @ 7.990 / 07/31/2012 - 08/01/2012 | $9.23 |
| System | 2012-08-31 | 00:01 | 82 | $42,268.33 @ 8.000 / 08/01/2012 - 08/31/2012 | $277.17 |
| System | 2012-09-04 | 00:01 | 82 | $42,268.33 @ 8.000 / 08/31/2012 - 09/04/2012 | $36.96 |
| System | 2012-09-30 | 00:01 | 82 | $42,268.33 @ 8.000 / 09/04/2012 - 09/30/2012 | $240.21 |
| System | 2012-10-01 | 00:01 | 82 | $42,268.33 @ 8.000 / 09/30/2012 - 10/01/2012 | $9.24 |
| System | 2012-10-31 | 00:01 | 82 | $42,268.33 @ 7.980 / 10/01/2012 - 10/31/2012 | $276.48 |
| System | 2012-11-06 | 00:01 | 82 | $42,268.33 @ 7.980 / 10/31/2012 - 11/06/2012 | $55.30 |
| System | 2012-11-09 | 00:01 | 82 | $42,268.33 @ 7.960 / 11/06/2012 - 11/09/2012 | $27.58 |
| System | 2012-12-03 | 00:01 | 82 | $42,268.33 @ 7.960 / 11/09/2012 - 12/03/2012 | $220.63 |
| System | 2012-12-05 | 00:01 | 82 | $42,268.33 @ 7.960 / 12/03/2012 - 12/05/2012 | $18.39 |
| System | 2012-12-11 | 00:01 | 82 | $42,268.33 @ 7.960 / 12/05/2012 - 12/11/2012 | $55.16 |
| System | 2012-12-17 | 00:01 | 82 | $42,268.33 @ 7.960 / 12/11/2012 - 12/17/2012 | $55.16 |
| System | 2012-12-18 | 00:01 | 82 | $42,268.33 @ 7.960 / 12/17/2012 - 12/18/2012 | $9.19 |
| System | 2012-12-26 | 00:01 | 82 | $42,268.33 @ 7.960 / 12/18/2012 - 12/26/2012 | $73.54 |
| System | 2012-12-31 | 00:01 | 82 | $42,268.33 @ 7.960 / 12/26/2012 - 12/31/2012 | $45.96 |
| System | 2013-01-01 | 00:01 | 82 | $42,268.33 @ 7.960 / 12/31/2012 - 01/01/2013 | $9.22 |
| System | 2013-01-31 | 00:01 | 82 | $42,268.33 @ 7.960 / 01/01/2013 - 01/31/2013 | $276.54 |
| System | 2013-02-01 | 00:01 | 82 | $42,268.33 @ 7.960 / 01/31/2013 - 02/01/2013 | $9.22 |
| System | 2013-02-04 | 00:01 | 82 | $42,268.33 @ 7.960 / 02/01/2013 - 02/04/2013 | $27.65 |
| System | 2013-02-07 | 00:01 | 82 | $42,268.33 @ 7.960 / 02/04/2013 - 02/07/2013 | $27.65 |
| System | 2013-02-11 | 00:01 | 82 | $42,268.33 @ 7.960 / 02/07/2013 - 02/11/2013 | $36.87 |
| System | 2013-02-13 | 00:01 | 82 | $42,268.33 @ 7.960 / 02/11/2013 - 02/13/2013 | $18.44 |
| System | 2013-02-14 | 00:01 | 82 | $42,268.33 @ 7.960 / 02/13/2013 - 02/14/2013 | $9.22 |
| System | 2013-02-28 | 00:01 | 82 | $42,268.33 @ 7.960 / 02/14/2013 - 02/28/2013 | $129.05 |
| System | 2013-03-01 | 00:01 | 82 | $42,268.33 @ 7.960 / 02/28/2013 - 03/01/2013 | $9.22 |
| System | 2013-03-31 | 00:01 | 82 | $42,268.33 @ 7.950 / 03/01/2013 - 03/31/2013 | $276.19 |
| System | 2013-04-30 | 00:01 | 82 | $42,268.33 @ 7.950 / 03/31/2013 - 04/30/2013 | $276.19 |
| System | 2013-05-31 | 00:01 | 82 | $42,268.33 @ 7.950 / 04/30/2013 - 05/31/2013 | $285.40 |
| System | 2013-06-30 | 00:01 | 82 | $42,268.33 @ 7.950 / 05/31/2013 - 06/30/2013 | $276.19 |
| System | 2013-07-04 | 00:01 | 82 | $42,268.33 @ 7.950 / 06/30/2013 - 07/04/2013 | $36.83 |
| System | 2013-07-31 | 00:01 | 82 | $42,268.33 @ 7.940 / 07/04/2013 - 07/31/2013 | $248.26 |
| System | 2013-08-02 | 00:01 | 82 | $42,268.33 @ 7.940 / 07/31/2013 - 08/02/2013 | $18.39 |
| System | 2013-08-31 | 00:01 | 82 | $42,268.33 @ 7.940 / 08/02/2013 - 08/31/2013 | $266.65 |
| System | 2013-09-03 | 00:01 | 82 | $42,268.33 @ 7.940 / 08/31/2013 - 09/03/2013 | $27.58 |
| System | 2013-12-05 | 00:01 | 82 | $42,268.33 @ 7.940 / 09/03/2013 - 12/05/2013 | $855.12 |
| System | 2013-12-31 | 00:01 | 82 | $42,268.33 @ 7.940 / 12/05/2013 - 12/31/2013 | $239.07 |
| System | 2014-01-06 | 00:01 | 82 | $42,268.33 @ 7.940 / 12/31/2013 - 01/06/2014 | $55.16 |
| System | 2014-01-31 | 00:01 | 82 | $42,268.33 @ 7.920 / 01/06/2014 - 01/31/2014 | $229.29 |
| System | 2014-02-28 | 00:01 | 82 | $42,268.33 @ 7.920 / 01/31/2014 - 02/28/2014 | $256.81 |
| System | 2014-04-03 | 00:01 | 82 | $42,268.33 @ 7.920 / 02/28/2014 - 04/03/2014 | $311.84 |
| System | 2014-05-07 | 00:01 | 82 | $42,268.33 @ 7.910 / 04/03/2014 - 05/07/2014 | $311.44 |
| System | 2014-05-21 | 00:01 | 82 | $42,268.33 @ 7.900 / 05/07/2014 - 05/21/2014 | $128.08 |
| System | 2014-07-31 | 00:01 | 82 | $42,268.33 @ 7.900 / 05/21/2014 - 07/31/2014 | $649.54 |
| System | 2014-08-31 | 00:01 | 82 | $42,268.33 @ 7.900 / 07/31/2014 - 08/31/2014 | $283.60 |
| System | 2014-09-02 | 00:01 | 82 | $42,268.33 @ 7.900 / 08/31/2014 - 09/02/2014 | $18.30 |
| System | 2014-09-30 | 00:01 | 82 | $42,268.33 @ 7.910 / 09/02/2014 - 09/30/2014 | $256.48 |
| System | 2014-10-31 | 00:01 | 82 | $42,268.33 @ 7.910 / 09/30/2014 - 10/31/2014 | $283.96 |

| System | 2014-11-30 | 00:01 | 82 | $42,268.33 @ 7.910 / 10/31/2014 - 11/30/2014 | $274.80 |
|--------|------------|-------|----|-----------------------------------------------|---------|
| System | 2014-12-31 | 00:01 | 82 | $42,268.33 @ 7.910 / 11/30/2014 - 12/31/2014 | $283.96 |
| System | 2015-01-05 | 00:01 | 82 | $42,268.33 @ 7.910 / 12/31/2014 - 01/05/2015 | $45.80 |
| System | 2015-01-31 | 00:01 | 82 | $42,268.33 @ 7.900 / 01/05/2015 - 01/31/2015 | $237.86 |
| System | 2015-02-03 | 00:01 | 82 | $42,268.33 @ 7.900 / 01/31/2015 - 02/03/2015 | $27.45 |
| System | 2015-02-05 | 00:01 | 82 | $42,268.33 @ 7.920 / 02/03/2015 - 02/05/2015 | $18.34 |
| System | 2015-02-28 | 00:01 | 82 | $42,268.33 @ 7.920 / 02/05/2015 - 02/28/2015 | $210.95 |
| System | 2015-03-31 | 00:01 | 82 | $42,268.33 @ 7.920 / 02/28/2015 - 03/31/2015 | $284.32 |
| System | 2015-04-30 | 00:01 | 82 | $42,268.33 @ 7.920 / 03/31/2015 - 04/30/2015 | $275.15 |
| System | 2015-05-01 | 00:01 | 82 | $42,268.33 @ 7.920 / 04/30/2015 - 05/01/2015 | $9.17 |
| System | 2015-05-31 | 00:01 | 82 | $42,268.33 @ 7.930 / 05/01/2015 - 05/31/2015 | $275.50 |
| System | 2015-06-30 | 00:01 | 82 | $42,268.33 @ 7.930 / 05/31/2015 - 06/30/2015 | $275.50 |
| System | 2015-07-31 | 00:01 | 82 | $42,268.33 @ 7.930 / 06/30/2015 - 07/31/2015 | $284.68 |
| System | 2015-08-03 | 00:01 | 82 | $42,268.33 @ 7.930 / 07/31/2015 - 08/03/2015 | $27.55 |
| System | 2015-08-06 | 00:01 | 82 | $42,268.33 @ 7.940 / 08/03/2015 - 08/06/2015 | $27.58 |
| System | 2015-08-31 | 00:01 | 82 | $42,268.33 @ 7.940 / 08/06/2015 - 08/31/2015 | $229.87 |
| System | 2015-09-30 | 00:01 | 82 | $42,268.33 @ 7.940 / 08/31/2015 - 09/30/2015 | $275.84 |
| System | 2015-10-01 | 00:01 | 82 | $42,268.33 @ 7.940 / 09/30/2015 - 10/01/2015 | $9.19 |
| System | 2015-10-14 | 00:01 | 82 | $42,268.33 @ 7.950 / 10/01/2015 - 10/14/2015 | $119.68 |
| System | 2015-10-29 | 00:01 | 82 | $42,268.33 @ 7.950 / 10/14/2015 - 10/29/2015 | $138.10 |