David Mincin, Esq.
Nevada Bar No. 5427
MINCIN LAW, PLLC
528 S. Casino Center, #325
Las Vegas, Nevada 89101
dmincin@lawlasvegas.com
Phone: 702-589-9881
Fax: 702-589-9882
*Attorney for Debtor/Defendant*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| Re: JAVIER MEDINA,<br><br>                            Debtor.<br>_____ | Case No.: BK-S-10-33712-MKN<br><br>Chapter: 7 |
| JAVIER MEDINA,<br><br>                            Plaintiff,<br><br>vs.<br><br>NATIONAL COLLEGIATE STUDENT<br>LOAN TRUST 2004-2; NATIONAL<br>COLLEGIATE STUDENT LOAN TRUST<br>2005-2; NATIONAL COLLEGIATE<br>STUDENT LOAN TRUST 2005-3; and<br>NATIONAL COLLEGIATE STUDENT<br>LOAN TRUST 2006-3, Delaware Statutory<br>Trust (s).<br><br>                            Defendants. | Adversary Case No.: BK-S-15-01175-MKN<br><br>Hearing Date: July 18, 2016<br>Hearing Time: 1:30 p.m. |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT/ COUNTER-MOTION FOR SUMMARY JUDGMENT**

Plaintiff opposes as follows the above captioned motion and moves the court for

summary judgment in his favor.  This Opposition and Counter-Motion are made and based on

the pleadings and papers on file in this action and on the following Points and Authorities and

Exhibits including the verified answers to Interrogatories provided by Plaintiff.

/ / /

1

## POINTS AND AUTHORITIES

2      The Motion For Summary Judgment must be denied for the following primary

3 reasons: 1) Defendants have failed to meet their burden of proving that the loans qualify as

4 loans made, insured, or guaranteed by a governmental unit, or made under any program

5 funded in whole or in part by a governmental unit or nonprofit institution or is a qualified

6 education loan- especially in light of DOE audits that the programs were ineligible for

7 federally subsidized student loans (Exhibit A); 2) triable issues of fact exist concerning the

8 sham nature of the school and unaccredited program which Medina attended and which

9 produced nothing more than worthless school credits; 3) triable issues of fact exist concerning

10 whether imposing Debtor with monthly payments of $2,778 would impose an undue hardship

11 on Debtor; 4) in the alternative and at a minimum, whether Debtor is entitled to a partial

12 discharge.

13   1.      Recitations In Loan Documents Are Not Conclusive Evidence That The Loans At
             Issue Qualify As Student Loans Exempt From Discharge- Especially Since The
14           Department Of Education Audit Found That The School Improperly Disbursed
             Student Loan Money To Ineligible Programs.
15
             Defendants have failed to offer admissible evidence to meet their prima facie burden
16
   of showing that the loans qualify as loans made, insured, or guaranteed by a governmental
17
   unit, or made under any program funded in whole or in part by a governmental unit or
18
   nonprofit institution or is a qualified education loan as required by 11 USC 523 (a)(8).  *In re*
19
   *McFadyen*, 192 B.R. 328 (US Bk Ct N.D.N.Y.,1995) (For debt to be nondischargeable student
20
   loan, creditor must establish by preponderance of evidence that debt was educational loan,
21
   that loan was made as part of program, and that loan was made by nonprofit institution).
22
             Defendants are oblivious to the fact that the school in question, Spartan School of
23
   Aeronautics, was audited by the US Department of Education which found that it improperly
24
   disbursed student loan funds for the ineligible programs that Medina participated in. (Exhibit
25
   1, p. 2).
26

27

28

Further, *In re Campbell*, 547 B.R. 49 (US Bk Ct E.D. NY 2016) held that a law school student who obtained a loan to study for the bar examination could discharge the loan because it was not obtained for an "educational benefit" even if the loan documents recited that it was a non-dischargeable student loan.[1]

See also *In re Jones*, 242 B.R. 441 (US Bk Ct, W.D. Tenn, 1999) (Debt incurred by Chapter 13 debtor to pay for truck driving school and owed to for-profit business which was not connected to government guaranteed student loan program did not fall within student loan discharge exception, even though debt was received as educational benefit); *In re Shorts*, 209 B.R. 818 (Bk .D.R.I. 1997) (Chapter 7 debtor's student loan debt, which was owed to for-profit institution and was neither insured nor guaranteed by governmental unit, was not excepted from discharge).

In his verified Answers to Interrogatories, Medina disputes that the loans at issue were made by a qualified institution and disputes that they were used for an educational benefit as follows:

**INTERROGATORY NO. 21:**

Describe and identify all facts supporting your allegation in ¶ 13 of the Complaint that the loans "were not used solely for educational purposes."

**ANSWER TO INTERROGATORY NO. 21:**

To the best of his recollection, federally guaranteed student loans were taken out concurrently with the loans at issue in this case which loans were in fact used to pay tuition and which loans are under hardship repayment plan. The loans at issue were not used to pay tuition and instead were disbursed to Medina with no restrictions on their use. To the best of recollection, the loans were used for living expenses and other non educational purposes. see also List of Witnesses and documents provided concurrently. ee attachments.

**INTERROGATORY NO. 22:**

Describe and identify all facts supporting your allegation in ¶ 14 of the Complaint that "the underlying school which provided the course work was not properly certified and/or the programs in which Medina enrolled were not properly certified."

---

[1] The court however also ruled that the borrower could not affirmatively sue the lender for damages for fraud.

**ANSWER TO INTERROGATORY NO. 22:**

Medina has never received or seen any evidence that the programs he attended were certified.  In addition, see List of Witnesses and documents provided concurrently which provide various articles and records that show the programs Medina attended were not properly certified.

(Exhibit B).

Further, Medina objects to the conclusory statements offered by Defendants that the loans were qualified and used for educational purposes as these statements lack proper foundation, are hearsay, and violate the best evidence rule.  Quite simply, if Defendants have certificates that show the loans were qualified, that the coursework provided was eligible,  and that the loans were used for educational purposes, then it should produce them.

Further, Medina disputes that these loans were used for educational purposes.  Instead, a different set of loans were used to pay for tuition and the balance was disbursed carte blanche. See *In re Shipman*, 33 B.R. 80 (Bkrtcy.W.D.Mo.1983) (Money advanced to debtor in work-study leave program with Missouri Department of Mental Health was not advanced directly for educational purpose and therefore monthly advancements did not constitute "educational loan," which would be nondischargeable).

Defendants have failed to meet their burden of showing the loans at issue qualify for an exception to discharge under 11 USC 523 (a)(8).

2.    The Loans At Issued Funded A Sham Program At A Sham School.

As also described in his verified Answers to Interrogatories, Medina was encouraged to run up these substantial student loans with illusory promises that he would be able to obtain a valid pilot license and enter the lucrative aviation industry.  In reality, the coursework that was provided was not properly accredited and worse yet the school at issue refused to give Medina the necessary hours to qualify for a pilots license.  Instead of being provided with an education that would open the door to lucrative pilot jobs with commercial airlines, Medina was given shoddy coursework and n viable opportunity to actually earn his wings.

**INTERROGATORY NO. 23:**

Describe and identify all facts supporting your allegation in ¶ 15 of the Complaint that "the underlying programs purportedly funded by the loans were either shams, or as applied to Medina, was a sham, as Medina was not given a legitimate opportunity to complete his program of instruction and thereby become qualified to earn an income as a licensed aviator."

**ANSWER TO INTERROGATORY NO. 23:**

See above answers.  In addition, the school gave preference to international students (blocking time to fly with instructors frequently, minimizing instructors hours to instruct domestic students) which Medina is informed and believes paid cash and/ or higher tuition rates.  Regardless, the school failed and refused to give Medina sufficient opportunities to earn flight time which made it impossible to obtain a proper degree, licensing or meaningful employment.  see List of Witnesses and documents provided concurrently.

The sham aviation program which Medina was in bad faith ushered into has placed

Medina squarely within numerous set forth in the *In re Nys*, 446 F.3d 938 (9th Cir., 2006),

each of which is listed and analyzed in turn:

(3) debtor's lack of, or severely limited, education- in spite of the substantial size of the loans

at issue, approximately a quarter of a million dollars, Medina does not have a degree, does not

have the ability to become a pilot, and does not have any meaningful advanced skills that

would typically be associated with student loan debt of this size.

(4) poor quality of education- similarly, Medina was thrown into a program which

simultaneously imposed huge tuition costs while depriving him of the flight hours necessary

to obtain a pilot's license which would make the degree useful and productive.

(5) lack of usable or marketable job skills;- instead of having marketable skills that could lead

to a lucrative job in the aviation industry, Medina is stuck in the food service industry as a

food runner.

(6) underemployment- rather than be able to pursue lucrative 6 figure jobs as a commercial

pilot, Medina instead labors for an average of less than $50,000 per year as a food server.

(7) fact that debtor has maximized income potential in chosen field and has no other more

lucrative job skills;- there is no indication that Medina has the necessary education or training

to obtain a more lucrative form of employment.

Summary judgment cannot be granted because the court must hear and weigh the testimony about the sham nature of the programs that Medina was given. Further, the courts need to address and properly police the rampant abuse of the student loan system that Medina has been exposed to. See also *Salazar v. King* 822 F.3d 61 (2nd Cir. 2016) providing in depth discussion of abuses and abject failure of student loan program for schools and programs similar to the one Medina attended.

3. <u>The Imposition Of Monthly Payments In The Approximate Amount Of $2,800 Would Create An Undue Hardship On Medina.</u>

Defendants take the basic position that because Medina can afford to send his children to a catholic school and because he pays for Directv and Internet access, forcing Medina to pay for the loans at issue would not cause a hardship. Defendants are of course oblivious to the fact that based on a 10 year amortization and 4.75% rate, Medina would be required to pay approximately $2,800 per month to satisfy the approximate $265,000 Defendants allege is owed. Based on the $45,000 annual income (($3,750) Medina has averaged over the past 6 years, 75% of Medina's <u>gross- pre-tax</u>- income would be absorbed by servicing the student loans at issue here. Spreading this out to twenty years ($1,712 monthly payments) or thirty years ($1,400) will still devour Medina's income and leave him with essentially nothing to live on after paying taxes (Exhibit C).

With this in mind, and discussing the *Brunner* factors specifically, if discharge is not granted, Medina will be unable to maintain a minimal standard of living for himself, his wife and his children who are of school age. Further, circumstances exist that this state of affairs will persist. As discussed, Medina was thrown into a sham program with no opportunity to achieve the stated objective of the program- namely becoming a licensed pilot. Medina did not obtain any necessary skills required to advance his career or ability to make a more substantial living.

Further, Medina has entered into a repayment plan under the Federal Income Contingency Repayment Plan for those other student loans that are listed on his chapter 7

1   schedules and which are not being pursued here.  (See Exhibit B, Answer to Interrogatory No.

2   24).  *In re Gubrath*, 526 B.R. 863 (D.Colo. 2014) (all of the debtors student loans are

3   properly  considered when determining hardship).

4           In this case, after never hearing from this lender at all, in spite of the lapse of 16 years

5   and the filing of this chapter 7 case, Medina was suddenly subjected to a state court lawsuit

6   attempting to impose a $260,000 judgment against him for a debt Medina believed had

7   already been discharged (Exhibit B and D).

8           Summary judgment cannot be granted to Defendants on the hardship issue.

9   <u>4.        In The Alternative And At Best For Defendants, A Trial Is Needed To Determine Is A</u>
    <u>Partial Discharge Is Appropriate.</u>

10          *In re Nys*, 446 F.3d 938 (9th Cir., 2006) acknowledged, and in that particular case

11  ordered a remand, for the bankruptcy court to determine if  a partial discharge is appropriate.

12  See Fn 8. "It may be that Nys is entitled to only a partial discharge due to the amount of the

13  debt and the unlikelihood that her income will increase substantially between now and her

14  retirement. Nys conceded that she has the ability to pay a portion of the debt. Therefore, on

15  remand, the bankruptcy court should consider whether Nys is entitled to only a partial

16  discharge."

17          Indeed, given that the federal government has already determined that Medina should

18  only be required to pay $100 per month for the other student loans he holds and does not seek

19  discharge for, it would seem that, at best, Defendants would be entitled to an order imposing a

20  similar $100 monthly payment on Medina.

21  <u>5.        Counter-Motion For Summary Judgment.</u>

22          As highlighted above, the Department of Education Audit indicated that the programs

23  Medina attended were not eligible for the receipt of federally insured student loans.  Further,

24  Defendants have not produced proper documentary evidence to show the loans at issue qualify

25  under 11 USC 523(a)(8).  Accordingly, if summary judgment is granted, it should be granted

26  to Plaintiff and an order entered that the loans held by defendants are subject to discharge.

27

28

6.    Conclusion.

For the reasons stated, the Defendants Motion for Summary Judgment must be denied, and instead, judgment must be entered in Medina's favor.

DATED this 15th day of July, 2016.

MINCIN LAW, PLLC

By:   /s/ David Mincin
        David Mincin, Esq.
        Nevada State Bar No. 5427
        528 S. Casino Center, #325
        Las Vegas, Nevada 89101
        *Attorney for Debtor/Defendant*

**CERTIFICATE OF SERVICE**

Pursuant to Fed.R.Bank.P. 2002 and LR 2002, I certify that I am an employee of Mincin Law, PLLC, and on the 15th day of July, 2016, service of a true and correct copy of the PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT/ COUNTER-MOTION FOR SUMMARY JUDGMENT was made by:

X    ECF SERVICE: That service was made by electronic transmission through the ECF filing system of the U.S. Bankruptcy Court, District of Nevada to the parties as listed below: and/or

SHANNON G SPLAINE on behalf of Defendant NATIONAL COLLEGIATE STUDENT LOAN TRUST 2004-2; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-2; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-3; and NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-3
ssplaine@lgclawoffice.com, sibarra@lgclawoffice.com

                /s/  Carol Burke
            An Employee of Mincin Law, PLLC

W:\2015 - DM\4103med.ncslt\Bankruptcy 10-33712\Adversary\Opp to MSJ and counter MSJ DM 07-14-16.wpd                July 15, 2016 (2:40pm)

# EXHIBIT A



**UNITED STATES DEPARTMENT OF EDUCATION**
OFFICE OF INSPECTOR GENERAL
1999 BRYAN STREET, HARWOOD CENTER, SUITE 2630
DALLAS, TEXAS 75201-6817
PHONE: (214) 880-3031   FAX: (214) 880-2492



FEB 1 9 2004

Mr. Terrell Harrison
President and CEO
National Education Center – Spartan School of Aeronautics
Tulsa International Airport
8820 E. Pine St.
P.O. Box 582833
Tulsa, Oklahoma 74158-2833

Dear Mr. Harrison:

This **Final Audit Report** (Control Number ED-OIG/A06-D0016) presents the results of our audit of National Education Center – Spartan School of Aeronautics' compliance with Student Financial Assistance program eligibility requirements, under Title IV of the Higher Education Act of 1965, as amended (HEA). Our objective was to determine if National Education Center – Spartan School of Aeronautics (NEC) disbursed Title IV aid to students enrolled in ineligible, non-degree Federal Aviation Administration (FAA) certified flight-training programs.

A draft of this Office of Inspector General (OIG) report was provided to NEC. NEC did not agree with our finding and recommendations. We have summarized NEC's comments after the Recommendation section in this report. A copy of NEC's response is included as an Attachment to this report.

## BACKGROUND

NEC is a proprietary school, and its main campus is in Tulsa, Oklahoma. The school received initial approval to participate in the Title IV, Student Financial Assistance programs on March 24, 1967. The Accrediting Commission of Career Schools and Colleges of Technology (Accrediting Agency) accredited NEC. The school is licensed by the Oklahoma Board of Private Vocational Schools (State Agency) and certified by the FAA.

NEC offers flight-training programs in which students may earn baccalaureate degrees, associate degrees, or Professional Pilot non-degree diplomas. The Professional Pilot non-degree diploma (diploma) program is intended for individuals with no previous flight experience who want to obtain the necessary FAA ratings to become a professional pilot. At NEC, these individuals can enroll in one of three diploma programs, ranging in length from 57 credit hours to 71 credit hours.

Each of the three non-degree diploma programs provide core ground school and flight courses that allow a student to earn a Private Pilot rating, Commercial Pilot rating, and Instrument rating (Professional Pilot Core Courses) from the FAA. The three non-degree diploma programs also offer the Certified Flight Instructor rating and the following additional FAA ratings:

- Certified Flight Instructor Instrument, under the 57-credit-hour Professional Pilot Option 1 (PP1) program, offered from January 1, 1991, to May 1, 1998, as a 76-credit-hour program.

- Multiengine, under the 57-credit-hour Professional Pilot Option 2 (PP2) program, first offered in 1998.

- Certified Flight Instructor Instrument, Multiengine Flight Instructor, and Multiengine, under the 71-credit-hour Professional Pilot Option 3 (PP3) program, first offered in 1998.

NEC also offers other Title IV eligible programs; in total, NEC disbursed over $19 million in Title IV aid for the award year July 1, 2000, through June 30, 2001. This amount included $15.51 million in Federal Family Education Loan (FFEL) Program loans (PLUS, Subsidized, and Unsubsidized Loans), $3.22 million in Federal Pell Grants (Pell), $187,956 in Federal Supplemental Educational Opportunity Grant (FSEOG), and $86,490 in Federal Work Study (FWS).

## AUDIT RESULTS

NEC disbursed Title IV aid to students enrolled in two ineligible programs. We concluded that although the Department of Education (Department) approved only one program, the 57-credit-hour PP1 "Aircraft Pilot and Navigator (Professional)" program, NEC disbursed Title IV aid for attendance in two additional Professional Pilot programs (PP2 and PP3) that were not approved by the Department. For the period July 1, 2000, through June 30, 2002, NEC disbursed approximately $312,000 in Title IV aid to students enrolled in these two ineligible programs.

### Title IV Program Eligibility Requirements

If a school adds a program after it has become eligible to participate in the Title IV programs, that program may, under certain circumstances, be considered eligible for Title IV funds without notification to the Department. However, this interim program eligibility does not continue indefinitely. When the school's eligibility is recertified, the school must report that new program on the Application for Approval to Participate in the Federal Student Financial Aid Programs (Application) it submits to the Department.

- "An eligible institution that adds an educational program after it has been designated as an eligible institution by the Secretary does not have to apply to the Secretary to have that additional program designated as an eligible program of that institution if the additional program . . . [p]repares students for gainful employment in the same or related recognized

On the ECAR, the Department lists programs that meet the program eligibility requirements. The 2000/2001 Student Financial Aid Handbook (Handbook) states—

> The ECAR contains the most critical of the data elements that form the basis of the school's approval and also a list of the highest level of offering, any nondegree program or short-term programs, and any additional locations that have been approved for the SFA Programs.

For the purpose of our audit, we are questioning the approximately $312,000 in Title IV aid disbursed to students enrolled in the PP2 and PP3 programs for the time period of July 1, 2000, through June 30, 2002, and the Title IV aid disbursed after June 2002, for periods during which the PP2 and PP3 programs were not approved by the Department.

## RECOMMENDATIONS

We recommend that the Chief Operating Officer for Federal Student Aid require NEC to—

1. Take appropriate action to ensure that funds are not disbursed to students in PP2 and PP3 until program eligibility is established.

2. Refund to lenders PLUS loan funds of $114,090, subsidized loan funds of $71,034, and unsubsidized FFEL loans of $82,622 for award years 2000/2001 and 2001/2002, plus applicable interest.

3. Refund to the Department Pell funds of $37,203 and FSEOG funds of $7,200 for award years 2000/2001 and 2001/2002.

4. Calculate and pay the amount of all Title IV funds disbursed to students at NEC enrolled in the PP2 and PP3 programs after June 30, 2002, plus applicable interest, for periods during which the Department did not approve those programs.

## NEC'S COMMENTS

NEC did not concur with our finding and recommendations. A copy of the letter from NEC is included as an Attachment to this report. In its letter, NEC stated that—

- At the time of recertification in March 2000, the Case Management Team in Dallas advised NEC that since the three Professional Pilot Programs offered were essentially the same program, with three options, the program only needed to be reported once on the institution's application. NEC continued to act on this advice when it submitted its change of ownership application in July 2001, and did not list the programs separately.

# EXHIBIT B

David Mincin, Esq.
Nevada Bar No. 5427
MINCIN LAW, PLLC
528 S. Casino Center, #325
Las Vegas, Nevada 89101
dmincin@lawlasvegas.com
Phone: 702-589-9881
Fax: 702-589-9882
*Attorney for Debtor/Defendant*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Re: JAVIER MEDINA,<br><br>Debtor.<br>_____<br>JAVIER MEDINA,<br><br>Plaintiff,<br><br>vs.<br><br>NATIONAL COLLEGIATE STUDENT LOAN TRUST 2004-2; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-2; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-3; and NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-3, Delaware Statutory Trust (s).<br><br>Defendants. | Case No.: BK-S-10-33712-MKN<br><br>Chapter: 7<br><br><br>Adversary Case No.: BK-S-15-01175-MKN |

**PLAINTIFF'S ANSWERS TO INTERROGATORIES**
**PROPOUNDED ON JANUARY 29, 2015**

Javier Medina answers to Interrogatories as follows:

**INTERROGATORY NO. 1:**

Identify each and every person who provided any information in connection with answers to these Interrogatories and Requests for Production of Documents served contemporaneously with these Interrogatories.

1 | **ANSWER TO INTERROGATORY NO. 1:**

2 |     Object to extent seeks to invade attorney client privileges.  Without waiving, Javier

3 | Medina.

4 | **INTERROGATORY NO. 2:**

5 |     Identify Javier Medina.

6 | **ANSWER TO INTERROGATORY NO. 2:**

7 |     Objection, vague.   Without waiving see information provided in other answers.

8 | **INTERROGATORY NO. 3:**

9 |     Are you married, and if so, state the name of your spouse, and your household income

10 | for the past 5 years.

11 | **ANSWER TO INTERROGATORY NO. 3:**

12 |     Yes. See Attached Marriage Certificate.

13 |     a.    Income 2010 - $35,338

14 |         i.    Javier Medina - MC Steak - $33,445.84

15 |         ii.    Javier Medina - U.S. Department of Commerce (U.S. Census Bureau) -

16 |         $1,892.27

17 |     b.    Income 2011 - $44,771

18 |         i.    Javier Medina - MC Steak - $35,575.55

19 |         ii.    Javier Medina - State of Nevada Department of Employment, Training

20 |         and Rehabilitation Employment Security Division - $ 717.00

21 |         iii.    Odeth Meda - Taco Tio Inc -  $8,478.00

22 |     c.    Income 2012 - $54,044

23 |         i.    Javier Medina - MC Steak - $38,849.89

24 |         ii.    Javier Medina - Internet Lava LLC - $1,794.35

25 |         iii.    Odeth Meda - Taco Tio - $1,795.50

26 |         iv.    Odeth Meda - Javian LLC - $11,603.77

27 |

28 |

W:\2015 - DM\4103med.ncslt\Bankruptcy 10-33712\Adversary\Answ To 1st Req For Rogs...DMcb...2-1-2016.wpd         March 8, 2016 (3:56pm)

1    d.    Income 2013 - $39,258

2        i.    Javier Medina - MC Steak $ 38,371.14

3        ii.    Javier Medina - State of Nevada Department of Employment, Training

4            and Rehabilitation Employment Security Division - 309.00

5        iii.    Odeth Meda - Javian LLC - $577.50

6    e.    Income 2014 - $54,053

7        i.    MC Steak $10,639.74

8        ii.    MGM Victoria Partners - $15,777.47

9        iii.    Carmine's NYC Las Vegas, LLC - $22,784.52

10        iv.    Internet Lava, LLC - $6,543.81

11    f.    Income 2015 - $47,213

12        i.    MGM Victoria Partners - $35,365.31

13        ii.    Carmine's NYC Las Vegas, LLC - $6,352.30

14        iii.    Directv Pension - $2,625.16

15    **INTERROGATORY NO. 4:**

16        Please state your complete residence addresses (street address, city, county, state, zip

17    code) for the past 10 years.

18    **ANSWER TO INTERROGATORY NO. 4:**

19    a.    4410 Tomer Lane, Las Vegas, NV, Clark County, 89121; 05/2013 - Present

20    b.    3330 E University Ave. Las Vegas, NV, Clark County 89121 - 05/2008 -

21        05/2013

22    c.    11211 S 2nd st. Jenks, OK, Tulsa County, 74037 - 01/2004 - 05/2008

23    **INTERROGATORY NO. 5:**

24        Please state whether or not you own your home, and if so, state the price of the home

25    at the time of purchase, the total costs of all improvements made from the date of purchase

26    and the current market value of your home.

27    / / /

28

1   **ANSWER TO INTERROGATORY NO. 5:**

2      Do not own home.

3   **INTERROGATORY NO. 6:**

4      Regarding your income taxes returns for the last five years, please state -

5      a.     The source and amount of each item of income listed;

6      b.     The total income received for each year, whether reported or not;

7      c.     The date each return was filed and the address of the Internal Revenue Service

8             office where filed;

9      d.     The amount and source of each receipt of income that is not shown on any of

10            the returns that you are attached to your answers; and

11      e.     The full name and complete address of each person who worked on or helped

12             prepare each return.

13   **ANSWER TO INTERROGATORY NO. 6:**

14      a.     Income 2010 - $35,338

15           i.     Javier Medina - MC Steak - $33,445.84

16           ii.     Javier Medina - U.S. Department of Commerce (U.S. Census Bureau) -

17               $1,892.27

18      b.     Income 2011 - $44,771

19           i.     Javier Medina - MC Steak - $35,575.55

20           ii.     Javier Medina - State of Nevada Department of Employment, Training

21               and Rehabilitation Employment Security Division - $ 717.00

22           iii.     Odeth Meda - Taco Tio Inc -  $8,478.00

23      c.     Income 2012 - $54,044

24           i.     Javier Medina - MC Steak - $38,849.89

25           ii.     Javier Medina - Internet Lava LLC - $1,794.35

26           iii.     Odeth Meda - Taco Tio - $1,795.50

27           iv.     Odeth Meda - Javian LLC - $11,603.77

28

d.    Income 2013 - $39,258

    i.    Javier Medina - MC Steak $ 38,371.14

    ii.    Javier Medina - State of Nevada Department of Employment, Training and Rehabilitation Employment Security Division - 309.00

    iii.    Odeth Meda - Javian LLC - $577.50

e.    Income 2014 - $54,053

    i.    MC Steak $10,639.74

    ii.    MGM Victoria Partners - $15,777.47

    iii.    Carmine's NYC Las Vegas, LLC - $22,784.52

    iv.    Internet Lava, LLC - $6,543.81

f.    Income 2015 - $47,213

    i.    MGM Victoria Partners - $35,365.31

    ii.    Carmine's NYC Las Vegas, LLC - $6,352.30

    iii.    Directv Pension - $2,625.16

**INTERROGATORY NO. 7:**

Do you currently have an ownership interest in, option to purchase, contract to sell, leasehold in, or other interest in any real property, including, but not limited to, real estate and mineral interests?  If so, for each property please state -

a.    The legal and common descriptions and location of the property;

b.    The size of the property;

c.    A description of every structure or other improvement on the property;

d.    The full name and complete address of each person or other entity having an interest in it;

e.    The ownership of the property as stated in the title documents and the location of each document;

f.    The present value of the limited partnership's equity interest in the property;

g.    The present market value of th property; and

h.     The amount paid for the property.

**ANSWER TO INTERROGATORY NO. 7:**

Do not have any ownership interest and do not plan to purchase any real property.

**INTERROGATORY NO. 8:**

Identify every person who has knowledge regarding the claims contained in the Complaint and provide a brief description of the substance of his/her knowledge.

**ANSWER TO INTERROGATORY NO. 8:**

See List of Witnesses and documents provided concurrently.

**INTERROGATORY NO. 9:**

Describe your educational background and history, including whether or not you graduated from high school, attended any vocational-technical or trade schools, attended any college or university, and whether you graduated from any college or university and if so your degree and major.

**ANSWER TO INTERROGATORY NO. 9:**

BS Aviation Science - Spartan School of Aeronautics and Technology (Spartan College of Aeronautics and Technology) - Did not graduate.

BS Information Technology - Phoenix University - did not graduate.

Graduated High School 1999.

**INTERROGATORY NO. 10:**

Identify by name, address and telephone number your current and past employers for the last 5 years including dates of employment, position or job title and salary and reason for separation.

**ANSWER TO INTERROGATORY NO. 10:**

a.     Brand Steakhouse - Food Runner - average $ 38,000/ year- Monte Carlo Resorts and Casino - Owned and Operated by The Light Group; Owned and Operated by MGM Resorts International - From: 12/2009 to 12/2015

1       b.      MGM Resorts International - Flight Coordinator $44,000/ year - From 12/2015

2   to present

3       c.      Carmine's NYC Las Vegas - Food Server - average $15,000/year Caesar's

4   Palace Casino - 01/2014 to 10/2014 and 09/2015 to present.

5       d.      Internet Lava, LLC - Freelance work - Freelance Translator - Average $2,000/

6   year/ only 2 years so far from 2008 to present

7       e.      U.S. Department of Commerce (U.S. Census Bureau) - 2010

8   **INTERROGATORY NO 11:**

9       Identify all other lawsuits and court proceedings in which you are or were a party,

10  including for each suit the case number, the name of the Court, the style of the case, and the

11  subject matter of the case.

12  **ANSWER TO INTERROGATORY NO. 11;**

13      No other lawsuits.

14  **INTERROGATORY NO. 12:**

15      Describe any criminal record that you have, including whether you have ever been

16  convicted of a crime or have pleaded guilty or *nolo contendere* to a crime, and if so, the date

17  of each conviction or plea, the name of the court, the crime involved, and the prison or jail, if

18  any, where incarcerated.

19  **ANSWER TO INTERROGATORY NO. 12:**

20      No criminal record.

21  **INTERROGATORY NO. 13:**

22      Do you maintain any bank accounts, including but not limited to, checking accounts

23  and savings accounts?  If so, for each account, please state -

24      a.      The fully name and complete address of the institution holding the account;

25      b.      Where the account is located;

26      c.      The full name and number under which it is carried;

27      d.      The balance of the account, and

28

W:\2015 - DM\4103med.ncsd\Bankruptcy 10-33712\Adversary\Answ To 1st Req For Rogs...DMcb...2-1-2016.wpd

March 8, 2016 (3:56pm)

1        e.      The identity of each authorized signature for the account at any time in the last

2              five years.

3 **ANSWER TO INTERROGATORY NO. 13:**

4        a.      Bank of America - Oklahoma Account - Checking Account - Javier Medina

5 and Odeth A. Meda Pinales. Refer to Passports for ID of signature holders.

6        b.      US Bank - Nevada Account - Checking Account - Javier Medina and Odeth A.

7 Meda Pinales. Refer to Passports for ID of Signature holders.

8        c.      US Bank - Nevada Account - Savings Account - Javier Medina and Odeth A.

9 Meda Pinales. Refer to Passports for ID of Signature holders.

10      d.      US Bank - Nevada Account - Checking Account - Javier Medina - Sole holder,

11 refer to Passport for Signature holder.

12      e.      Nevada One Bank - Nevada Account - Checking Account - Javier Medina -

13 Sole holder, refer to Passport for Signature holder.

14 **INTERROGATORY NO. 14:**

15      Identify any calendars, diaries, logs, notes, journals, or any other written or recorded

16 summary of events maintained by you that in any way relate to this lawsuit.

17 **ANSWER TO INTERROGATORY NO. 14:**

18      None.

19 **INTERROGATORY NO. 15:**

20      Are you the beneficiary under the terms of any will?  If so, for each will, please fully

21 state -

22        a.      The fully name of the testator;

23        b.      A complete description of the property and/or amount of money given to you

24              under the will;

25        c.      The name, number, and location of the court administering the estate.

26 **ANSWER TO INTERROGATORY NO. 15:**

27      None.

28

1    **INTERROGATORY NO. 16:**

2        Please state and itemize all currently monthly expenses.

3    **ANSWER TO INTERROGATORY NO. 16:**

4        Objection, overly broad and cumbersome.  Without waiving, see schedules I and J and

5    means test on file in this bankruptcy case.

6    **INTERROGATORY NO. 17:**

7        Do you have any stocks or bonds, and if so, state the value.

8    **ANSWER TO INTERROGATORY NO. 17:**

9        None.

10   **INTERROGATORY NO. 18:**

11       Do you have any 401K or other retirement account(s) and, if so, state the current value

12   of each.

13   **ANSWER TO INTERROGATORY NO. 18:**

14       None.

15   **INTERROGATORY NO. 19:**

16       Do you have any cash value accrued in any life insurance policies, and if so, state the

17   name of the insurer and the amount of cash value accumulated.

18   **ANSWER TO INTERROGATORY NO. 19:**

19       None.

20   **INTERROGATORY NO. 20:**

21       Describe and identify all facts supporting your allegations in ¶ 12 of the Complaint

22   that "Medina is informed and believes that the loans held by Defendants are not held or

23   funded by a governmental or non-profit entity."

24   **ANSWER TO INTERROGATORY NO. 20:**

25       Object to the extent that Medina has requested that Defendants provide proof of this

26   alleged status in this case and none has been provided.  Without waiving, see List of

27   Witnesses and documents provided concurrently.

28

**INTERROGATORY NO. 21:**

Describe and identify all facts supporting your allegation in ¶ 13 of the Complaint that the loans "were not used solely for educational purposes."

**ANSWER TO INTERROGATORY NO. 21:**

To the best of his recollection, federally guaranteed student loans were taken out concurrently with the loans at issue in this case which loans were in fact used to pay tuition and which loans are under hardship repayment plan. The loans at issue were not used to pay tuition and instead were disbursed to Medina with no restrictions on their use. To the best of recollection, the loans were used for living expenses and other non educational purposes. see also List of Witnesses and documents provided concurrently. ee attachments.

**INTERROGATORY NO. 22:**

Describe and identify all facts supporting your allegation in ¶ 14 of the Complaint that "the underlying school which provided the course work was not properly certified and/or the programs in which Medina enrolled were not properly certified."

**ANSWER TO INTERROGATORY NO. 22:**

Medina has never received or seen any evidence that the programs he attended were certified. In addition, see List of Witnesses and documents provided concurrently which provide various articles and records that show the programs Medina attended were not properly certified.

**INTERROGATORY NO. 23:**

Describe and identify all facts supporting your allegation in ¶ 15 of the Complaint that "the underlying programs purportedly funded by the loans were either shams, or as applied to Medina, was a sham, as Medina was not given a legitimate opportunity to complete his program of instruction and thereby become qualified to earn an income as a licensed aviator."

**ANSWER TO INTERROGATORY NO. 23:**

See above answers. In addition, the school gave preference to international students (blocking time to fly with instructors frequently, minimizing instructors hours to instruct

domestic students) which Medina is informed and believes paid cash and/ or higher tuition rates.  Regardless, the school failed and refused to give Medina sufficient opportunities to earn flight time which made it impossible to obtain a proper degree, licensing or meaningful employment.  see List of Witnesses and documents provided concurrently.

**INTERROGATORY NO. 24:**

Describe and identify all facts supporting your allegation in ¶ 16 that imposing the debt held by Defendants would impose an undue hardship of Medina."

**ANSWER TO INTERROGATORY NO. 24:**

The above and concurrently produced financial records demonstrate that based on Medina's current and historic income levels, Medina does not make sufficient income to repay the loans at issue.  In addition, Medina has been granted hardship relief for federally guaranteed student loans not at issue in this case.

DATED this ⁹ᵗʰ day of March, 2016.

MINCIN LAW, PLLC

By:___/s/ David Mincin___
        David Mincin, Esq.
        Nevada State Bar No. 5427
        528 S. Casino Center, #325
        Las Vegas, Nevada 89101
        *Attorney for Debtor/Defendant*

**VERIFICATION**

I declare under penalty of perjury under the laws of the State of Nevada, that I have read the foregoing, know the contents thereof, and that the same is true of my own knowledge, except as to those matters stated therein on information and belief, and as to those matters, I believe them to be true.

Executed this 26 day of O 2 , 2016 at State of Nevada.

Javier Medina

Page 11 of 12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

Pursuant to Fed.R.Bank.P. 2002 and LR 2002, I certify that I am an employee of Mincin Law, PLLC, and on the ___9___ day of March, 2016, service of a true and correct copy of the PLAINTIFF'S ANSWERS TO INTERROGATORIES PROPOUNDED ON JANUARY 29, 2015 & CD was made by:

[X]    ELECTRONIC SERVICE: That service was made by electronic transmission through email, to the parties as listed below: and/or

SHANNON G SPLAINE on behalf of Defendant NATIONAL COLLEGIATE STUDENT LOAN TRUST 2004-2; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-2; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-3; and NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-3
ssplaine@lgclawoffice.com, sibarra@lgclawoffice.com

/s/ Carol Burke
An Employee of Mincin Law, PLLC

Page 12 of 12

WA2015 - DM\4103med.ncslt\Bankruptcy 10-33712\Adversary\Answ To 1st Req For Rogs...DMcb...2-1-2016.wpd                    March 8, 2016 (3:56pm)

# EXHIBIT C

## Amortization Schedule Calculator

$ 265,000    Term 10    % 4.75    ZIP 89102    Jul ▼    2016 ▼    Calculate

### Loan Summary

**$2,778**
Monthly Payment

**$333,416**
Total of 120 Payments

**$68,416**
Total Interest Paid

**Jun, 2026**
Pay-off Date



| **Mortgage Rates** | **Amortization Schedule** |
| --- | --- |

$ 265,000    ZIP 89102    Refinance ▼    10 year fixed ▼    20% down ▼    740+ scol ▼    Search



| | | | |
| --- | --- | --- | --- |
| Sebonic Financial | **$2,513** per month | **APR: 2.855%** Rate: 2.625% Thu Jul 14 | Fees: $0 Points: 1.100 Lock: 60 days | Next > |
| Sebonic Financial | **$2,528** per month | **APR: 2.844%** Rate: 2.750% Thu Jul 14 | Fees: $925 Points: 0.100 Lock: 60 days | Next > |
| Sebonic Financial | **$2,544** per month | **APR: 2.875%** Rate: 2.875% Thu Jul 14 | Fees: $0 Points: 0.000 Lock: 60 days | Next > |

Many lenders have different rates on their own Websites than those posted on Bankrate.com. In order to get the Bankrate.com rate, please identify yourself as a Bankrate.com customer. If you believe that you have received an inaccurate quote or are otherwise not satisfied with the services provided to you by the lender you choose, please click here. The rates above were collected by Bankrate.com on the dates specified. Rates are subject to change without notice and may vary from branch to branch. Rate/APR and terms may vary based on the creditworthiness of the individual and the extent to which the loan differs from the one used for Bankrate.com quotes. For criteria used in surveys of rates above, click here. These quotes are from banks, thrifts, and brokers, some of whom have paid for a link to their own Web site, where you can find additional information.



Nationwide Fixed Rate **2.75** % APR    1 5YR FIXED T&Cs APPLY    RateZip.com

*This should only be used to estimate your repayments since it doesn't include taxes or insurance.*

Home  |  Loan Calculator  |  Mortgage Calculator  |  Auto Loan Calculator          © 2005-2016 Amortization-calc.com

## Amortization Schedule Calculator

| $ | 265,000 | Term | 20 | % | 4.75 | ZIP | 89102 | Jul ▼ | 2016 ▼ | Calculate |

### Loan Summary

**$1,712**
Monthly Payment

**$410,998**
Total of 240 Payments



**$145,998**
Total Interest Paid

**Jun, 2036**
Pay-off Date

---

| Mortgage Rates | Amortization Schedule |

| $ | 265,000 | ZIP | 89102 | Refinance ▼ | 20 year fixed ▼ | 20% down ▼ | 740+ sco ▼ | Search |

| Sebonic Financial | **$1,486** per month | **APR: 3.296%** Rate: 3.125% Thu Jul 14 | Fees: $3,752 Points: 0.100 Lock: 60 days | Next > |
| Sebonic Financial | **$1,470** per month | **APR: 3.240%** Rate: 3.000% Thu Jul 14 | Fees: $2,750 Points: 1.100 Lock: 60 days | Next > |
| Sebonic Financial | **$1,520** per month | **APR: 3.426%** Rate: 3.375% Thu Jul 14 | Fees: $1,195 Points: 0.000 Lock: 60 days | Next > |
| Sebonic Financial | **$1,503** per month | **APR: 3.439%** Rate: 3.250% Fri Jul 8 | Fees: $789 Points: 1.375 Lock: 60 days | |
| **Bank of America, NA** | **$1,503** per month | **APR: 3.384%** Rate: 3.250% Tue Jul 12 | Fees: $1,139 Points: 0.758 Lock: 60 days | |

Many lenders have different rates on their own Websites than those posted on Bankrate.com. In order to get the Bankrate.com rate, please identify yourself as a Bankrate.com customer. If you believe that you have received an inaccurate quote or are otherwise not satisfied with the services provided to you by the lender you choose, please click here. The rates above were collected by Bankrate.com on the dates specified. Rates are subject to change without notice and may vary from branch to branch. Rate/APR and terms may vary based on the creditworthiness of the individual and the extent to which the loan differs from the one used for Bankrate.com quotes. For criteria used in surveys of rates above, click here. These quotes are from banks, thrifts, and brokers, some of whom have paid for a link to their own Web site, where you can find additional information.

**Nationwide Fixed Rate 2.75 % APR**   1 5YR FIXED T&Cs APPLY   RateZip.com   **Continue >>**

*This should only be used to estimate your repayments since it doesn't include taxes or insurance.*

---

Home  |  Loan Calculator  |  Mortgage Calculator  |  Auto Loan Calculator        © 2005-2016 Amortization-calc.com

Amortization Schedule Calculator

## Amortization Schedule Calculator

| $ | 265,000 | Term | 30 | % | 4.75 | ZIP | 89102 | Jul ▼ | 2016 ▼ | Calculate |

### Loan Summary

**$1,382**
Monthly Payment

**$497,652**
Total of 360 Payments

**$232,652**
Total Interest Paid

**Jun, 2046**
Pay-off Date



| Mortgage Rates | Amortization Schedule |

| $ | 265,000 | ZIP | 89102 | Refinance ▼ | 30 year fixed ▼ | 20% down ▼ | 740+ scoi ▼ | Search |

| Sebonic Financial | **$1,172** per month | **APR: 3.438%** Rate: 3.375% Thu Jul 14 | Fees: $2,065 Points: 0.000 Lock: 60 days | Next > |
|---|---|---|---|---|
| **Capital One** | **$1,190** per month | **APR: 3.612%** Rate: 3.500% Thu Jul 14 | Fees: $990 Points: 1.000 Lock: 60 days | Next > |
| Sebonic Financial | **$1,117** per month | **APR: 3.209%** Rate: 3.000% Thu Jul 14 | Fees: $4,035 Points: 1.100 Lock: 60 days | Next > |
| Sebonic Financial | **$1,153** per month | **APR: 3.364%** Rate: 3.250% Thu Jul 14 | Fees: $3,507 Points: 0.100 Lock: 60 days | Next > |
| **Capital One** | **$1,227** per month | **APR: 3.781%** Rate: 3.750% Thu Jul 14 | Fees: $990 Points: 0.000 Lock: 60 days | Next > |
| **Capital One** | **$1,172** per month | **APR: 3.568%** Rate: 3.375% Thu Jul 14 | Fees: $990 Points: 2.000 Lock: 60 days | Next > |
| Sebonic Financial | **$1,246** per month | **APR: 3.900%** Rate: 3.875% Tue Jul 12 | Fees: $793 Points: 0.000 Lock: 60 days | |
| Sebonic Financial | **$1,172** per month | **APR: 3.510%** Rate: 3.375% Fri Jul 8 | Fees: $789 Points: 1.375 Lock: 60 days | |
| Sebonic Financial | **$1,265** per month | **APR: 4.025%** Rate: 4.000% Fri Jul 8 | Fees: $800 Points: 0.000 Lock: 30 days | |
| Bank of America, NA | **$1,209** per month | **APR: 3.700%** Rate: 3.625% Tue Jul 12 | Fees: $1,139 Points: 0.487 Lock: 60 days | |
| Raymond James Bank, NA | **$1,209** per month | **APR: 3.667%** Rate: 3.625% Tue Jul 12 | Fees: $1,354 Points: 0.000 Lock: 45 days | |

# EXHIBIT D

**Bank of America** ⋙

March 19, 2014

Javier Medina
3330 E. University Avenue
Las Vegas, NV  89121-5139

Dear Mr. Medina:

Your inquiry filed with the Consumer Financial Protection Bureau (CFPB) has been forwarded to the executive office of Bank of America for further review and investigation. As a customer advocate in the Office of the CEO and President, I welcome the opportunity to respond to your concerns.

Mr. Medina, we regret any difficulties you may have encountered as a result of this matter. We have reviewed your inquiry and appreciate this opportunity to respond.

Our records indicate that Bank of America issued six student loans to you from July 23, 2004 through July 19, 2007. However, shortly after disbursement, the loans were sold to National Collegiate Trust (NCT).

Here is the timeline for the origination, disbursement, and sale dates of each loan:

- PA00001 was issued in 2004, disbursed on July 23, 2004, and sold to NCT on October 28, 2004.
- PA00002 was issued in 2005, disbursed on May 16, 2005, and sold to NCT on June 9, 2005.
- PA00003 was issued in 2005, disbursed on August 29, 2005, and sold to NCT on October 12, 2005.
- PA00004 was issued in 2006, disbursed on April 12, 2006, and sold to NCT on September 28, 2006.
- PA00005 was issued in 2006, disbursed on June 21, 2006, and sold to NCT on September 28, 2006.
- PA00006 was issued in 2007, disbursed on July 19, 2007, and sold to NCT on September 20, 2007.

Regrettably, Bank of America does not have contact information for NCT. However, American Education Services (AES) was the servicing company for NCT, and you may contact them directly at 1.800.233.0557 for further information.

Mr. Medina, thank you for allowing me the opportunity to respond. If you should have additional questions regarding this matter, please contact me at the number listed below.

Sincerely,

Jasmine Arakel
Officer/ Customer Advocate
Office of the CEO and President
1.800.445.4542, extension 467002
C-3461549

cc:  Consumer Financial Protection Bureau

Recycled Paper

November 26, 2014

Javier Medina
3330 University Ave
Las Vegas, Nevada 89121
November 26, 2014


CERTIFIED MAIL, RETURN RECEIPT REQUESTED:  7014 0150 0000 6005 1062

NCO Financial Systems, Inc.
P.O. Box 15109
Wilmington, DE 19850-5109
Re: Account Number 63443579


To Whom It May Concern:

I am responding to your contact about a debt you are attempting to collect. You have contacted me by phone repeatedly and by mail. You identified the debt as National Collegiate Trust. This debt was discharged in a Chapter 7 Bankruptcy in the United States Bankruptcy Court District of Nevada, Case No. 10-33712-MKN. As such, I dispute the validity of this debt.

Please stop all communication with me about this debt.

Thank you for your cooperation.


Sincerely,

Javier Medina


Enclosure:    Chapter 7 Bankruptcy Schedule and Final Discharge